ELLEN F. ROSENBLUM
Attorney General
CARLA A. SCOTT #054725
Senior Assistant Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
CRAIG M. JOHNSON #080902
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Carla.A.Scott@doj.state.or.us
        Sheila.Potter@doj.state.or.us
        Craig.M.Johnson@doj.state.or.us

Attorneys for Defendants Patrick Allen and Dolores Matteucci


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON, | Case No.  3:21-cv-01637-HZ |
| Plaintiffs, | DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |
| v. | |
| DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity, | |
| Defendants. | |

Defendants Patrick Allen and Dolores Matteucci, in their individual capacities and in

their official capacities as Director of the Oregon Health Authority and Superintendent of the

Oregon State Hospital, respectively, submit this response to Plaintiffs' motion for a temporary

restraining order.

Page 1 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER
            CAS/mm8

                                    Department of Justice
                                    100 SW Market Street
                                    Portland, OR 97201
                               (971) 673-1880 / Fax: (971) 673-5000

## INTRODUCTION

Defendants have been and remain wholly sympathetic to Plaintiffs' situations. Plaintiffs have been waiting for admission to OSH after having been found guilty except for insanity (GEI) longer than any of the parties to this case would have liked. But, given all the constraints under which OSH has been operating during the COVID-19 pandemic pursuant to the *Mink* Injunction—which governs admissions for those who have been found to be unable to aid and assist in their defense (.370 patients)—Defendants do not believe that they may voluntarily admit Plaintiffs, while .370 patients are waiting for admission, without running afoul of that injunction.

As explained in more detail below, Plaintiffs' motion for an order that they be immediately admitted to OSH presents a piecemeal solution to a larger problem. Moreover, any solution will have a direct, practical effect on rights held by the .370 patients protected under the *Mink* Injunction. Defendants believe the modification (or some variation thereof) that they had proposed to the *Mink* Injunction (but which was rejected because GEI patients were not before the court in that case), described below, provides a global, more equitable solution. To facilitate such a solution, Defendants propose that this case be consolidated with the *Mink* case and/or that the *Mink* Plaintiffs be joined in this case pursuant to FRCP 19(a)(1)(B)[1] so that a global approach in federal court can be designed to equitably address the due process rights of *both* GEI and .370 patients. Defendants, therefore, respectfully ask that the motion for a temporary restraining order

---

[1] FRCP 19(a)(1)(B) provides:

> (1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> . . .
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Page 2 -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER
CAS/mm8

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

be denied as a piecemeal solution to a systemic problem.

## FACTUAL BACKGROUND

**A.      Overview of the Oregon State Hospital and the populations it serves.**

The Oregon State Hospital (OSH) is part of the Oregon Health Authority (OHA) and
provides patient-centered psychiatric treatment for adults from throughout the state who need
hospital level of care.  OSH serves three types of patient populations: (1) civilly committed
patients, people who have been found by the court to be an imminent danger to themselves or
others, or who are unable to provide for their own basic health and safety needs due to their
mental illness;[2] (2) those found Guilty Except for Insanity in a criminal case (GEI patients); and
(3) aid-and-assist patients, people who have been arrested but are not able to participate in their
defense because of a mental illness, and who have been committed to the custody of OSH
pursuant to ORS 161.370 (.370 patients).  Wehr Decl. ¶ 4.  OSH has two campuses, one in Salem
and one in Junction City.  OSH serves more than 1,565 people per year and employs more than
2,000 staff.  *Id.* at ¶ 5.  The campuses are composed of units containing various numbers of beds;
most can house between 19 and 25 patients.  *Id.*

**B.      Once admitted, patients remain at OSH until they can be discharged or placed into
a more appropriate setting.**

For the time period of December 2020 through September 2021, the median length of
stay of a GEI patient at OSH is 1070 days.  Wehr. Decl. ¶ 6.  GEI patients cannot be removed
from OSH and housed in the community until the Oregon Psychiatric Security Review Board
(PSRB) approves a specific community placement and a specific plan for their continued
treatment.  *Id.*

For the time period of December 2020 and September 2021, the median length of stay for
a .370 patient at OSH is 90 days.  When .370 patients are determined to be able to aid and assist

---

[2] The number of civil commitments at OSH is very few, due to the needs of the patients who are
being committed out of the criminal justice system, and due to there being options for civil
commitment placement in private hospitals. Wehr Decl. ¶ 8.

Page 3 -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER
            CAS/mm8                        Department of Justice
                                           100 SW Market Street
                                           Portland, OR 97201
                                   (971) 673-1880 / Fax: (971) 673-5000

in their own defense, or are found to be permanently unable to aid and assist, OSH returns those patients to jail placements unless their lawyer contests the determination. *Id*. ¶ 7. The .370 patients who no longer require a hospital level of care but still require restoration services can be moved into community restoration, but only if a court approves the move and if a placement can be found within the patient's community. *Id.* OSH cannot control whether courts approve a community placement, and cannot compel county mental health programs to accept patients for community restoration. *Id.*

When a state court determines that a .370 patient still requires hospital level of care and thus must remain at OSH, notwithstanding OSH's expert determination to the contrary, OSH social workers nonetheless make weekly contact with their liaisons in the patients' counties to support removing any barriers from that patient entering the community and continue to provide monthly clinical assessments showing that the patient is ready to be placed in the community. *Id.*

**C.     Capacity building efforts.**

As has been thoroughly reported in the course of the *Mink* litigation over the last several years, Defendants have taken numerous steps to expand services and placements in the community for patients who do not require a hospital level of care.

The state courts decide whether a patient must remain at the hospital, and a combination of the pandemic and a high number of court orders requiring hospital level of care for patients has resulted in patients waiting for admission into a limited number of hospital beds. Wehr Decl. ¶ 9. To expand bed capacity for patients who must be provided with a hospital level of care, OSH is working to open two new units in Junction City—the last two units that were not already operating—which the legislature permitted in the last session. *Id.* But until those are open, OSH cannot cause there to be more beds; it can only operate the hospital as efficiently as it can, admitting patients as quickly as it can under the current pandemic conditions (using an admissions cohort process described in the next section), and finding beds outside OSH for patients who can be placed elsewhere. *Id.* The first of two units in Junction City will open on

Page 4 -     DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
                RESTRAINING ORDER
                CAS/mm8                             Department of Justice
                                                    100 SW Market Street
                                                    Portland, OR 97201
                                          (971) 673-1880 / Fax: (971) 673-5000

November 15, 2021.  The second unit is projected to open during the first quarter of 2022.  *Id.*

**D.      The continuing impact of the pandemic on OSH operations.**

The pandemic created significant health, safety, and operational barriers to patient admission, which required the development of new procedures, new training, modified facilities, and which, in turn, resulted in more challenges to admitting patients quickly. Declaration of Sara Walker (Walker Decl.) ¶ 3.  In March of 2020, OSH suspended admission of patients due to the pandemic to allow OSH to determine how to admit patients while managing the infection risk.  *Id.* ¶ 4.  "Based on the recommendations of the World Health Organization and the Centers for Disease Control, and in consultation with the Oregon State epidemiologist, OSH implemented COVID-19 procedures."  *Id.*  The implementation of these procedures required a significant shifting of OSH's existing patient population, structural modifications of OSH's facilities, and reorganization of staffing to protect patients determined to be at severe risk from COVID-19.  *Id.*

OSH implemented a cohort admission procedure whereby new patients are admitted to an admission monitoring unit in cohorts of 19 or 23 (depending on the size of the unit).  *Id.*  New patients are tested (and placed in medical isolation, if they test positive), and once the cohort is filled the patients in it are quarantined for at least 14 days and then tested before being placed elsewhere in OSH.  The unit is then cleaned and prepared for the next admissions cohort.  Wehr Decl. ¶ 10.  OSH's cohort admissions process was not only necessary but also effective. OSH was the last state hospital in the country to have a COVID-positive patient.  *Id.*  OSH did not experience a COVID-19 outbreak until October 2020 and had two additional outbreaks in November and December of 2020.  *Id.*  Each outbreak of COVID-19 resulted in a one- to two-week pause in admissions.  *Id.* Had the cohort admissions process and those pauses in admissions not been implemented, there likely would have been additional outbreaks, which would have spread further within OSH.  *Id.*

Page 5 -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
CAS/mm8

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

E.    **Impact of the *Mink* Injunction on admissions decisions for GEI patients.**

When OSH does not have the capacity to simply admit at once every patient whom OSH

has been ordered to treat—which it has not had during the pandemic—OSH must decide which

patients to admit and in what order to admit those patients.  Over the last year or so, that

decision-making process has been controlled in large part by the *Mink* Injunction.  In 2002,

Oregon District Court Judge Owen Panner issued a permanent injunction (the *Mink* Injunction)

requiring OSH "to ensure that persons who are declared unable to proceed to trial pursuant to

ORS 161.370(2) be committed to the custody of the superintendent of a state hospital . . . as soon

as practicable. . . . These admissions must be done in a reasonably timely manner, and completed

not later than seven days after the issuance of an order determining a criminal defendant to be

unfit to proceed to trial because of mental incapacities under ORS 161.370(2)." *Oregon*

*Advocacy Ctr. et al. v. Mink et al.*, 2002 WL 35578910, *7 (D. Or. 2002).

When capacity is reached at OSH, Defendants have understood that the *Mink* Injunction

required OSH to prioritize the admission of .370 patients.  Wehr. Decl. ¶ 11.  This group is also

the largest group, the fastest-growing group, and the most dynamic.  *Id.*  Because the original

*Mink* Injunction requires that this group be admitted within seven days of the issuance of the 370

order, as explained in more detail below, these patients have often been admitted ahead of GEI

patients who may have been ordered into OSH custody long before the .370 patient.  *See id.*

1.    **COVID-19 and the resulting first modification of *Mink* Injunction.**

Due to the unforeseen, changed circumstances of the pandemic and the protective steps

necessary to prevent the spread of COVID-19 within the hospital, by the Spring of 2020 OSH

became unable to safely comply with the *Mink* Injunction.  *See Oregon Advocacy Ctr. et al. v.*

*Mink et al.*, 3:02-cv-00339-MO, Dkt. No. 151 at p. 7.  On April 17, 2020, OSH filed a motion to

modify the *Mink* Injunction, which the court granted.[3]  This modification approved the cohort

---

[3]Judge Mosman's May 13, 2020, order granted OSH's motion to modify. *Oregon Advocacy Ctr.*
*et al. v. Mink et al., 3*:02-cv-00339-MO*, Dkt. No. 167.  The modifications ultimately sought and
granted were set forth in OSH's Supplemental Brief in Support of Motion for Modification of

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

admission procedure to stagger admissions to allowing for COVID testing, which the court adopted. *Id.*, Dkt. No. 166-67. Judge Mosman ordered OSH to comply with its proposed admission strategy and required OSH to: "Test and quarantine all incoming patients to OSH .... The testing and quarantine period for incoming cohorts should not exceed 14 days—i.e., every 14 days, a cohort should be tested, quarantined, and admitted to the general population, and a new cohort should be admitted for testing and quarantine." *Id.* Thus, not only did this federal court order OSH to admit .370 patients first,[4] but the court also mandated the manner and timing for patients to be admitted.

Judge Mosman subsequently approved Defendants' request to suspend admissions in November 2020 and again in December 2020/January 2021 due to the pandemic. *Oregon Advocacy Ctr. et al. v. Mink et al.*, 3:02-cv-00339-MO, Dkt. Nos. 186 & 189. These temporary suspensions of admissions were necessary to ensure the health of the patients in OSH, but they had a significant impact on OSH's patient population, and the admissions list grew longer. Maintaining a list of .370 patients waiting for admission necessarily, then, affected OSH's ability to manage admission of other patient populations. Wehr Decl. ¶ 12. OSH's progress in complying with Judge Mosman's order and efforts to return to the seven-day timeframe were regularly reported to the court. *See Oregon Advocacy Ctr. et al. v. Mink et al.*, 3:02-cv-00339-MO, Dkt. Nos. 171-73, 176, 181, 183.

The *Mink* plaintiffs appealed the first modification. In August 2021, the Ninth Circuit Court of Appeals remanded the modification to Judge Mosman for further consideration. *Oregon Advoc. Ctr. v. Allen*, No. 20-35540, 2021 WL 3615536 (9th Cir. Aug. 16, 2021). The Ninth Circuit reasoned that, while OSH had met its burden to demonstrate that the COVID-19 pandemic had made compliance with the *Mink* Injunction more onerous, the district court should have issued a modification order that was suitably tailored to the factual circumstances. The

Injunction, filed May 11, 2020. *See Oregon Advocacy Ctr. et al. v. Mink et al.,* 3:02-cv-00339-MO, Dkt. No. 162 at p. 8.

[4] *See Oregon Advocacy Ctr. et al. v. Mink et al.*, 3:02-cv-00339-MO, Dkt. No. 162 at p. 4.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Ninth Circuit instructed the district court to reconsider whether a modification was needed, and whether an open-ended modification order was consistent with the "urgent need to transfer individuals with .370 orders out of jails." *Id*.

**2.    Modification of the *Mink* Injunction following remand.**

In an effort to respond to the Ninth Circuit's ruling (and to more timely admit GEI patients), on August 30, 2021, OSH proposed, among other things, modifying the *Mink* Injunction to permit OSH to admit up to three GEI patients per week until that admissions list was current, and then to allow for GEI patients to be admitted along with .370 patients in order of their commitment dates.[5]  *See Oregon Advocacy Ctr. et al. v. Mink et al.,* 3:02-cv-00339-MO*,* Dkt. No. 217 & 271-1.  Such an approach, if approved by a federal court, would have helped to alleviate the problem of GEI patients in 2021 waiting so much longer for admission than .370 patients.  *See id*.  The *Mink* plaintiffs opposed this modification and instead sought a return to the mandate of admitting .370 patients within 7 days of the court order.  *See Oregon Advocacy Ctr. et al. v. Mink et al.,* 3:02-cv-00339-MO*,* Dkt. No. 222 at pp. 11-13.

During the September 22, 2021, hearing on Defendants' motion for a modification, Judge Mosman indicated that he understood the issues regarding GEI patients and that he had spoken to Multnomah County Circuit Court Judge Nan Waller about her concerns regarding those patients. Declaration of Sheila Potter (Potter Decl.) ¶ 4.  But he declined to modify the *Mink* Injunction to address GEI patients.  *Id.*  Instead, on September 22, 2021, Judge Mosman issued a temporary modification of the *Mink* Injunction to excuse Defendants from strict compliance with the seven-day admission requirement for .370 patients only until December 3, 2021, subject to a variety of reporting requirements.  *Oregon Advocacy Ctr. et al. v. Mink et al.,* 3:02-cv-00339-MO*,* Dkt. No. 226.  Defendants are in compliance with this temporary modification.  Potter Decl. ¶ 5.

---

[5] This approach was drawn from a suggestion from Multnomah County Circuit Court Judge Nan Waller during the course of state court contempt proceedings.  Potter Decl. ¶ 3.

Page 8 -    DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER
CAS/mm8                              Department of Justice
                                    100 SW Market Street
                                    Portland, OR 97201
                               (971) 673-1880 / Fax: (971) 673-5000

**F.     Status of admissions lists for .370 and GEI patients ordered to OSH's custody.**

As noted above, the *Mink* Injunction has to date governed how OSH is to admit its .370 patients, and OSH's compliance with that order has compelled it to make its .370 patients waiting for admission a priority over GEI patients.  There are now, as an inadvertent result of that circumstance, 28 GEI patients who have been waiting for months for admission (two were committed in January 2021).  Wehr Decl. ¶ 13.  As of November 12, 2021, 31 individuals await admission to OSH pursuant to .370 commitment orders.  *Id.*  Again, the median time a GEI patient spends at OSH is 1070 days and the median time a .370 patient spends there is 90 days.  Wehr Decl., ¶ 7.

## ARGUMENT

Circuit court judges around the state are understandably expressing concern and frustration with the delays in admitting people found GEI, including Plaintiffs in this case, who are waiting in jail to be admitted to OSH.  These judges are threatening to hold (and are holding) OSH in contempt for those delays.  But so long as there have been patients committed under ORS 161.370 up to OSH's capacity, Defendants have understood that the *Mink* Injunction has compelled their admission first, which has left no beds available for GEI patients, who are likewise waiting in jail for a bed at OSH.

To overcome this obstacle, Plaintiffs' motion for a temporary restraining order seeks an order from this court requiring OSH to immediately admit the two individual plaintiffs in this case.  But a piecemeal solution will not solve the problem.  As noted above, in an attempt to address the problem globally, OSH had proposed a modification to the *Mink* Injunction to allow for the admission of up to three GEI patients per week, until the GEI list is brought current, and then would have allowed for GEI patients to be admitted along with .370 patients, in order of their commitment dates.  Defendants believe that this approach (or some variation thereof) would better address the problem presented in this case by allowing admission of GEI patients alongside the .370 patients in an equitable fashion.  If this Court were to allow OSH to include

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

up to three GEI patients in each cohort, along with the .370 patients, absent another unprecedented increase in the number of .370 orders or another significant COVID-19 outbreak, OSH anticipates it would be able to admit those on the current GEI admissions list within two months. Wehr Decl. ¶ 14.

Such an order was vigorously opposed by the plaintiffs in *Mink*. For this reason, they may be necessary parties here pursuant to FRCP 19(a)(1)(B), an argument that Defendants intend to raise in response to the complaint. Accordingly, Defendants propose that this case be consolidated with the *Mink* case and/or that the *Mink* Plaintiffs be joined as necessary parties in this case pursuant to FRCP 19(a)(1)(B) so that a global approach in federal court can equitably address the due process rights of *both* GEI and .370 patients.

## CONCLUSION

There are more patients committed to OSH custody than OSH currently has beds, a problem which has been significantly exacerbated by the pandemic. The prioritization of the admission of patients when OSH is at capacity has been conducted to date according to the *Mink* Injunction. Now that GEI patients are also before this Court, Defendants believe that this case should be considered in conjunction with the *Mink* case so that a global solution can be reached to enable OSH to admit GEI and .370 patients in an equitable fashion.

Page 10 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER
            CAS/mm8                          Department of Justice
                                             100 SW Market Street
                                             Portland, OR 97201
                                             (971) 673-1880 / Fax: (971) 673-5000

Accordingly, Defendants respectfully ask that the motion for a temporary restraining order be denied as a piecemeal solution to a systemic problem.

DATED November __12__, 2021.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_____s/ Carla A. Scott_____
CARLA A. SCOTT #054725
Senior Assistant Attorney General
SHEILA H. POTTER #993485
Deputy Chief Trial Counsel
CRAIG M. JOHNSON #080902
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Carla.A.Scott@doj.state.or.us
Sheila.Potter@doj.state.or.us
Craig.M.Johnson@doj.state.or.us
Of Attorneys for Defendants

Page 11 -  DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY
            RESTRAINING ORDER
            CAS/mm8                           Department of Justice
                                            100 SW Market Street
                                            Portland, OR 97201
                                        (971) 673-1880 / Fax: (971) 673-5000