```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF OREGON

 3   OREGON ADVOCACY CENTER,        )
     et al.,                        )
 4                                  )
              Plaintiffs,           )   Case No. 3:02-cv-00339-MO
 5                                  )
         v.                         )
 6                                  )
     BOBBY MINK, et al.,            )
 7                                  )
              Defendants.           )
 8   _____)
     JAROD BOWMAN, et al.,          )
 9                                  )
              Plaintiffs,           )   Case No. 3:21-cv-01637-MO
10                                  )
         v.                         )
11                                  )
     DELORES MATTEUCCI, et al.,     )
12                                  )
              Defendants.           )
13   _____)
     LEGACY HEALTH SYSTEM, et al.,  )
14                                  )
              Plaintiffs,           )   Case No. 6:22-cv-01460-MO
15                                  )
         v.                         )
16                                  )   November 21, 2022
     PATRICK ALLEN,                 )
17                                  )   Portland, Oregon
              Defendant.            )
18   _____)

19

20                       **Oral Argument**

21                   TRANSCRIPT OF PROCEEDINGS

22            BEFORE THE HONORABLE MICHAEL W. MOSMAN

23            UNITED STATES DISTRICT COURT SENIOR JUDGE

24

25
```

```
 1
 2                               APPEARANCES
 3
 4   FOR THE PLAINTIFFS:      Ms. Emily R. Cooper
                              Mr. Thomas Stenson
 5                            Disability Rights Oregon
                              511 S.W. Tenth Avenue, Suite 200
 6                            Portland, OR 97205
 7
 8                            Mr. Jesse A. Merrithew
                              Levi Merrithew Horst LLP
 9                            610 S.W. Alder Street, Suite 415
                              Portland, OR 97205
10
11   FOR PLAINTIFF HEALTH
     SYSTEMS:                 Mr. Eric J. Neiman
12                            Lewis Brisbois Bisgaard & Smith LLP
                              888 S.W. Fifth Avenue, Suite 900
13                            Portland, OR 97204
14
15
16   FOR THE DEFENDANTS:      Ms. Sheila H. Potter
                              Oregon Department of Justice
17                            Trial Division
                              100 S.W. Market Street
18                            Portland, OR 97201
19
20   FOR AMICUS
     WASHINGTON COUNTY:       Mr. Thomas A. Carr
21                            Washington County Counsel
                              155 N. First Avenue, Suite 340
22                            Hillsboro, OR 97124
23   FOR AMICUS MARION
     COUNTY:                  Ms. Jane E. Vetto
24                            Marion County Legal Counsel
                              P.O. Box 14500
25                            Salem, OR 97124
```

```
 1   FOR AMICI WASHINGTON
     COUNTY DISTRICT
 2   ATTORNEY, CLACKAMAS
     COUNTY DISTRICT
 3   ATTORNEY, AND MARION
     COUNTY DISTRICT
 4   ATTORNEY:              Mr. Billy Williams
                            Best Best Krieger LLP
 5                          360 S.W. Bond Street, Suite 400
                            Bend, OR 97702
 6

 7   FOR AMICI JUDGES:      Mr. Keith M. Garza
                            Law Office of Keith M. Garza
 8                          P.O. Box 68106
                            Oak Grove, OR 9268
 9

10

11   COURT REPORTER:        Bonita J. Shumway, CSR, RMR, CRR
                            United States District Courthouse
12                          1000 S.W. Third Ave., Room 301
                            Portland, OR  97204
13                          (503) 326-8188

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (P R O C E E D I N G S)

 2                 (November 21, 2022; 1:35 p.m.)

 3                    * * * * * * * * *

 4          THE COURTROOM DEPUTY:  We are here this afternoon for

 5    oral argument in Case No. 3:02-cv-339-MO, Oregon Advocacy

 6    Center v. Mink, et al.

 7          THE COURT:  Thank you all for being here today.  I

 8    want to start with some preliminary comments and then hear

 9    arguments, particularly from intervenors here who haven't had

10    this opportunity.

11             I want to back up a little bit and just sort of

12    remind us how we got here.  I'll say at the outset that you

13    could probably scour the country and not find a federal judge

14    more reluctant than I am to step on the prerogatives of those

15    working hard to solve these problems in government and

16    elsewhere, and most particularly the prerogatives of my friends

17    and colleagues on the state court trial bench who deal with

18    these issues so frequently and at such a personal level.  But

19    we're here because, as Judge Panner found some time ago, the

20    Constitution requires something better than allowing people

21    found unable to aid and assist to languish in jails for a long

22    time without getting the care that they need.  And so it's a

23    little more complicated than that as it unfolds, but what the

24    Constitution demands is pretty much literally what I'm hired to

25    enforce, and so that's how we got here in the first place.
```

1          In the course of that, I received evidence and
2    engaged the work of Dr. Pinals and others to take a look at the
3    problem of how the state statutory system was impacting the
4    ability to get people out of jails and into OSH.  And that
5    lengthy evidentiary trail led me to the conclusion that an
6    otherwise textually neutral state statute was resulting --
7    directly resulting in these constitutional violations, so I
8    issued the order that is the subject of intervenors' motions.

9          Because it's textually neutral, it raises issues that
10   are somewhat different from a court simply finding that a
11   statute is on its face unconstitutional, and I left open the
12   possibility at our last hearing that that might raise what I'll
13   call direct constitutional challenges to my authority to issue
14   such an order.  I think I'm of the mind that what I have in
15   front of me here today isn't that sort of challenge.  It's not
16   a -- it's not a challenge that says sort of from the get-go
17   that I just don't have any authority to issue such an order.
18   Rather it's a challenge under the test for such orders, which
19   focuses on using the least restrictive means.  That is sort of
20   a mixed question of law and fact.

21         I've never really been fond of that phrase.  It's the
22   phrase that the Ninth Circuit uses when they want to reverse
23   me, so I'm reluctant to use it today, but that's sort of what
24   it is.  Everyone agrees on the general standard in play here,
25   and to answer the question whether I have used the least

1    restrictive means to solve this problem through the order

2    requires looking not just at the test itself but the facts on

3    the ground.  And the parties have done their best, I think, to

4    try to make their arguments to me that there are other less

5    intrusive means that could be used on the one hand, or on the

6    other hand that the means I have chosen results in drastically

7    more significant burdens or harms or failures than perhaps I

8    had contemplated.  That's the kind of arguments I have in front

9    of me here today.

10                Again, just on my tentative views -- I'm not making

11    any decision right now, I'm very interested in what you have to

12    say -- it does appear that to a large degree -- not a hundred

13    percent but to a large degree I'm faced with the order that is

14    grounded in a substantial body of evidence carefully acquired

15    and vetted for purposes of reliability on the one hand

16    versus -- again, I don't mean to say this is 100 percent, but

17    versus concerns about how the order will play out in the future

18    on the other, not grounded yet -- it can't be -- not grounded

19    yet in solid evidence or data.  If I'm right about that, of

20    course, then one thing to do is to wait at least a little while

21    to see if the feared and predicted negative outcomes that would

22    impact whether this is the least restrictive method or means

23    really pan out.

24                I have also, of course, arguments that there are

25    other things I could do that while true and important are

1    more -- significantly more long term and don't even purport to

2    solve the problem in any shorter medium term.  For example,

3    it's true, as it has been briefed, that a better solution to

4    this problem than what the order does perhaps is to have more

5    facilities and hire more people in the mental health field.

6            I can only say that I hope that day comes --

7    fervently hope that day comes, but it's not a solution that

8    evades the constitutional violation in anything like the short

9    or middle term, and of course even now Jacksonville is a good

10   example.  Getting something up and running and hiring enough

11   people to work there is a significant challenge.  Ask anyone

12   who is hiring anybody in the -- well, in the health field, let

13   alone the mental health field right now.

14           I should say that that's a better -- I said a moment

15   ago that was a better solution, but I will say that the shorter

16   terms at OSH mandated by the order aren't simply desperate

17   expediencies adopted to get more people in through the front

18   door by hurrying them out the back door.  Instead that's also

19   grounded in data and evidence and research about how long it's

20   useful to keep people in that position factually and legally

21   before trying the next thing.  But in any event, my general

22   impression is that overall the order should stand until it

23   plays out for a while to see whether some of the worst outcomes

24   really happen.

25           There is one argument that isn't encompassed by

anything I've said yet, and that's the challenge raised by the
hospitals to Section 2.b., and the high bar set in that section
for civil commitments.  And there's multiple arguments made
about that.  One is that it's such a high bar that I'm leaving
dangerous people out, not cared for or not committed, at least,
and that I'm even leaving people out who should be civilly
committed who don't meet the high bar but that are -- but who
are more dangerous than people that are getting committed under
my order.

        And then the second argument is that because of
the -- because of the shortened timetables, more people will be
released sooner, and the prediction is that they're just going
to end up civilly committed because they weren't in long
enough, and then they bump up against Section 2.b. or just
against the inability to get very many people civilly
committed, and that will be a problem.

        As to the high bar, I guess what the parties agree to
is that that bar actually didn't come out of the blue.  It
represents a codification of the status quo ante -- in fact,
the status quo ante for quite some time.  And the parties to
the litigation -- not the intervenors -- have briefed that both
that is true, which in a hydraulic system makes me concerned
about changing it, and also that there are mechanisms built
into the system to create a more individualized assessment for
where that's necessary.

1        So those are my tentative thoughts.  I thought I'd

2    start -- well, we'll just run.  I think you've been given

3    certain timetables.  Those are flexible.  We'll see where we go

4    and we'll just start with the intervenors.

5        I don't know which of you goes first.

6        MS. VETTO:  Your Honor, for the record, I'm Jane

7    Vetto with Marion County.  I believe under your original order

8    you invited Amicus Marion County and Washington County to split

9    their time, and then I think the other intervenors and the

10   amicus have 15 minutes.

11       THE COURT:  Very well.  And if you want to go first,

12   if you'd pull that microphone a little closer to you.

13       MS. VETTO:  I was wondering if I could use the

14   podium.

15       THE COURT:  Yes, that's fine.

16       MS. VETTO:  Thank you, Your Honor.

17       Again, for the record, I'm Jane Vetto.  I am Marion

18   County counsel, and I'm here on behalf of the amicus counties,

19   Marion and Washington County.  As I said to Mr. Carr, I will be

20   dividing our argument time.

21       I'm going to begin by addressing the Court's

22   doctrinal question and the applicable law which requires the

23   Court to make findings on the record when contravening state

24   law that the remedy is the least intrusive alternative

25   available to the Court, and then Mr. Carr will discuss those

1  potential alternatives.  At the close of the hearing, we will

2  ask the Court to find that the remedies on September 1st were

3  not the least intrusive alternatives and that the Court rescind

4  its September 1st order in whole or at least in part.

5      Before I address the legal authority and

6  requirements, though, I would like to briefly comment on the

7  statements that the plaintiffs made in their response brief,

8  questioning why Marion and Washington Counties are even here,

9  because the counties are only indirectly affected by the

10  Court's September 1st order.  Unfortunately, that's not true.

11  Mr. Carr and I were directed by our respective county governing

12  bodies to request this Court allow us to appear as amicus

13  because the September 1st order directly impacts how each of

14  our two largest county departments serve the approximately

15  1 million Oregonians that collectively live in our two

16  counties.  Specifically, our county health departments and our

17  sheriff's office jail divisions carry out the local

18  implementations of the Oregon aid-and-assist statutes.  The

19  September 1st order shifts additional responsibility and

20  liability on to them from the State, which is a significant

21  departure from Oregon law.

22      Regarding the health department, the September 1st

23  order will absolutely result in a large increase in community

24  restoration workers, straining already limited local staffing

25  resources.  More importantly, though, the county health

1    departments are now being asked to provide community
2    restoration to individuals who, as they're being released
3    early, may still at some point need a hospital level of care.
4    Under the aid-and-assist statutes, local health departments
5    cannot involuntarily medicate aid-and-assist patients.  They do
6    not have any ability to direct SRTF beds.  Again, that control
7    lies with the State.  So when aid-and-assist individuals on
8    community restoration need a hospital level of care, there's no
9    ability for the county to have the State Hospital take these
10   individuals back.
11          THE COURT:  Could I pause you there for just a
12   moment.
13          MS. VETTO:  Yes.
14          THE COURT:  So based on what is your premise that
15   people being released earlier than the state statute previously
16   allowed, or at least earlier than the maximum in the state
17   statute will result in releasing people who need a hospital
18   level of care?
19          MS. VETTO:  That's a good question, Your Honor.  I am
20   using the information that I have actually from our jails.  And
21   I can talk a little bit about that, but if people coming out of
22   the state --
23          THE COURT:  I guess I'm just -- it's hard to have
24   information -- right? -- if it hasn't happened much yet.  So
25   are you getting it from some other analogous situation where

1    you have to add up somehow already?

2              MS. VETTO:  So I've talked to our health department

3    director, I've talked to our behavioral health managers, and

4    I've also talked to our jail staff.  And what their findings

5    are, even without this order, what happens is when people come

6    out from the State Hospital, if they come out and they're put

7    either on community restoration or they come back into the

8    jail, many times if they don't -- if they take their

9    medication, great, but if they don't, they decompensate, and

10   there is no way for the county either through the health

11   department or through jail staff to involuntarily medicate

12   them.

13             THE COURT:  I understand that very regrettable

14   situation.

15             MS. VETTO:  Yes.

16             THE COURT:  I've experienced it in many cases that

17   I've had --

18             MS. VETTO:  Yes.

19             THE COURT:  -- although not with the frequency that

20   your state court judge have.  But the question remains, this

21   process of getting out and then not taking your medication and

22   decompensating, based on what do you think that the percentage

23   of people who experience that will go up if we release them

24   earlier as opposed to stay the same?

25             MS. VETTO:  I think -- I think anecdotally the

1  more -- the more hospitalization -- or the more hospital level

2  of care for psychotic and schizophrenic individuals, the more

3  time that they have to stay on their medication and also to

4  receive the therapies that they receive at the State Hospital,

5  the more stable they will be.

6  　　　　　THE COURT:  I appreciate that anecdotally, and I'm

7  only pressing because it's a very important point, not because

8  I'm trying to quibble with you at all.  I know it's a serious

9  argument.  But the deadlines for release were created grounding

10  in social science research suggesting that these are actually

11  the optimal time periods for some of these situations, or at

12  least if not optimal, better than significantly lengthier

13  times.  In other words, your premise is the longer they're in,

14  forced to take meds, the more stable they'll be when we let

15  them out.  But that premise isn't backed up by social science

16  research.

17  　　　　　MS. VETTO:  That's not exactly -- and if I said that,

18  that's not what I meant.  If you have an arbitrary timeline

19  when someone has to be released, then if they're released in

20  that arbitrary timeline, whether it's 90 days, whether it's six

21  months, or a year, and they're not ready to go, recidivism is

22  very likely.  It happens all the time now that people come back

23  restored, able -- or able with meds before three years, before

24  one year.  But that assessment is made.  And here that

25  assessment is removed.  They're just coming back.  And that is

1  what I'm talking about.

2          THE COURT:  All right.  Thank you very much.

3          MS. VETTO:  Thank you very much.

4          On the flip side of the health department -- and I

5  kind of alluded to this -- there will be some individuals

6  released from the State Hospital who can, of course, be decided

7  need to return to the jail to protect the community.  And that

8  is entirely understandable.  But in the jail, as we discussed,

9  if these individuals continue to take the medication prescribed

10 by the hospital, great.  But if, as often happens, they stop

11 taking their medication, under the September 1st order, the

12 jails can no longer return them to the State Hospital for

13 further treatment, and that is a change.  That is a change.

14 Before the jails could put them back on the list for further

15 treatment.  Now they can't.  So our jails are facing increasing

16 Eighth and Fourteenth Amendment concerns, corresponding risk

17 liability issues, staff safety, and other adult-in-custody

18 safety concerns stemming from housing unmedicated psychotic and

19 schizophrenic individuals and corresponding jail capacity

20 management issues.

21          THE COURT:  Could I ask, the method you say

22 previously existed that is gone, was that method something

23 different than the jail saying someone has come out of OSH with

24 capacity restored, but we view them as still a danger, we want

25 them recommitted?  Was that a civil commitment process or

1    something else?

2              MS. VETTO:  No.  What will happen is that people will

3    come back and they're, like, never with meds.  So they'll come

4    back into the jail with their Measure 11, and that person will

5    take their medications.  But once they stop -- and they often

6    do stop -- they decompensate to the point where the jail

7    just -- you know, they can't keep that person there any longer.

8              THE COURT:  And then what happened a few years ago

9    with that person?

10             MS. VETTO:  So they would put them on a list and say

11   to the State Hospital, please go ahead and take them back.  And

12   there was like a release valve.

13             THE COURT:  On what capacity?  Not on aid and assist

14   because they'd been restored?

15             MS. VETTO:  Well, if they still had time on their

16   three years.  So they would be able to bring them back if they

17   hadn't reached that cap.

18             THE COURT:  Well, that's my question.  So someone had

19   to say, you're going back because now, even though you were a

20   few weeks ago able to aid and assist, now we think you're not,

21   but somebody had to make that finding and say, you can't aid

22   and assist, right?

23             MS. VETTO:  Yes.  And the courts do make that

24   finding.

25             THE COURT:  And was that finding -- once again you're

1    not able to aid and assist, not civil commitment but send them

2    back?

3           MS. VETTO:  It's our understanding, based on some

4    FAQs that OHA sent out on the 16th, that the jail no longer has

5    the ability to request that recourse from the courts.  If that

6    is not a part of your order, we would appreciate some, you

7    know, some discussion about that, because that would be a big

8    ask.  That would be a big win for us.

9           THE COURT:  You're suggesting that if someone has

10   competency restored and then gets back into the normal criminal

11   justice system heading to trial, and for whatever reason,

12   including not taking their meds, competency is lost and a judge

13   finds that competency has been lost, that you can't send that

14   person to OSH a second time?

15          MS. VETTO:  It is our understanding that the State

16   Hospital will not accept them.

17          THE COURT:  Okay.  Thank you.

18          MS. VETTO:  So the September 1st order directly

19   creates additional safety, security, and liability risks for

20   counties, and that is why we are here today.

21          So turning to the legal question, the Court asked us

22   to address whether a federal court has the ability to order

23   noncompliance with state law, and in this case Senate Bill 295,

24   codified in ORS Chapter 161, in order to comply with

25   constitutional requirements.  And we can all agree that the

1  answer is yes.  This Court has broad equitable powers to

2  address constitutional violations, including contravening state

3  law, but the body of federal case law cited in our brief from

4  the U.S. Supreme Court to the Ninth Circuit makes it clear that

5  this step can only be taken if the Court makes a specific

6  finding that such an action is the least intrusive option

7  available to it.  The September 1st order is silent as to

8  whether the ordered actions are the least intrusive

9  alternatives.  It does not contain the required findings

10  because the parties never asked the Court to make them, likely

11  because, as Mr. Carr will discuss, there are actually several

12  less intrusive alternatives available for the Court to

13  implement.

14          Whether the Court ultimately agrees with that or not,

15  though, federal law still requires that these findings be made.

16  And again, in our brief we cite numerous cases, starting with

17  the *Missouri v. Jenkins* case to the *Stone* case to the *Arizona*

18  *v. the Department of Corrections* case which followed this

19  precedent.

20          We also cite to the *Trueblood v. Washington State*

21  *DSHS* case because it deals with almost identical facts to the

22  present case.  In *Trueblood*, the plaintiff sued over delayed

23  competency evaluations, and while that case was pending, the

24  Washington state legislature stepped in and passed legislation

25  requiring that evaluations be done between the seven- and

1  21-day window.  And after the legislation was passed, the Court

2  looked at it and said that's not sufficient, and ordered a

3  seven-day evaluation.  And on appeal, the Ninth Circuit said

4  two things.  They said first that the district court didn't

5  identify that contravening the legislative fix was the least

6  intrusive alternative, and they further found that actually in

7  that case the least intrusive alternative would have been

8  given -- would have been to give the legislative fix time to

9  work.  And again, Mr. Carr will talk more about that in detail,

10  but I did want to mention it here.

11       So in response to this, the plaintiffs make two

12  different arguments.  And first they say, well, the counties

13  are disputing the Court's ability to contravene state law.  No,

14  we're not.  But what we're doing is, as amicus, informing the

15  Court that it needs to make these findings.  It just doesn't

16  appear the Court was informed of that requirement by the

17  parties in the earlier proceedings.

18       Then the plaintiffs argue that the Court doesn't

19  actually have to make findings because it relied on an expert's

20  report.  Again, yes, courts can rely on experts.  They do it

21  all the time.  But that doesn't negate the Court's need to make

22  its own findings that contravening state law is the least

23  intrusive alternative.

24       And it's also important to note that Dr. Pinals'

25  report never says that reducing statutory treatment times is

1    the least intrusive alternative.  In fact, her June 5th report

2    implies the opposite.  In that report she lists 14 things that

3    the State Hospital can do on their own right away to improve

4    admission times, like hiring more forensic evaluations,

5    expanding drug treatment for aid-and-assist patients, stopping

6    the 30-day hold, et cetera.  All of these things and more she

7    recommends that the State Hospital does.

8            And then much later in the report, she says, well,

9    here's six more things you can do, but they're going to require

10   a legislative fix, they're going to require some rule making,

11   or they're going to require Court intervention.  So not the

12   least intrusive alternatives.  And of these six things, she

13   includes reducing the treatment times and stopping civil

14   commitment admissions.

15           The parties apparently latched on to this

16   recommendation, even though it's not a primary recommendation

17   in her report, and it's also not identified as least intrusive.

18   But it was presented to this Court as if it was the only

19   feasible alternative.  And the record shows that it isn't.  But

20   even if this Court decides that it is, there needs to be a

21   specific finding.

22           So with that summary of the law, I'm going to turn

23   the rest of the argument -- the rest of my time over to

24   Mr. Carr.  He's going to talk about less intrusive

25   alternatives, many of which I know were listed in Dr. Pinals'

1    report but were not presented to this Court by the parties.

2          THE COURT:  Thank you very much.

3          MS. VETTO:  Thank you.

4          THE COURT:  Mr. Carr.

5          MR. CARR:  Thank you, Your Honor.

6          As the counties, we share the concern about seriously

7    mentally ill people being in our jails.  When the -- the

8    decision to criticize amicus not for being -- was bolstered by

9    the fact that I was not sure what side we should be on.

10         THE COURT:  Why don't you go ahead and be seated, if

11   that won't bother you too much.

12         MR. CARR:  It does a little, Your Honor, but I will

13   do that.  Thank you.

14         But the concern about the order is it's a blunt

15   instrument and it leaves no discretion to hold somebody in the

16   hospital past the deadlines that needs hospital care.  So the

17   Court asked the question about releasing people who still need

18   a hospital level of care.  As I read the order, the hospital is

19   compelled to release those individuals if they're beyond the

20   time limit stated in paragraph 3.  If that's not the Court's

21   intent, it would be terrific if the order were modified at

22   least to say that anybody who still needs a hospital level of

23   care does not have to be released.

24         THE COURT:  Fair point.  That wasn't quite my

25   question, though.  My question was why would one assume that

1    shortening the timetable for release will necessarily result in

2    people being released who need -- more people being released

3    who need a hospital level of care but being released anyway

4    compared to the current regime?

5        MR. CARR:  Well, as I read Dr. Pinals' report, she

6    said that most people get most of their treatment in the first

7    180 days, and the benefits after the first 180 days drop off

8    drastically.  But there are still people that need treatment at

9    180 days, and those people will be released under this Court's

10   order.

11       This document that I have on the projector was

12   Exhibit 2 to Derek Wehr's report, and it reports on the

13   releases that have been done so far under the Court's order.

14   As you can see, from September 1st to October 26 -- 56 days --

15   there are 154 patients released from the hospital.  The vast

16   majority of the patients were released under Senate Bill 295.

17   Only seven were released under this Court's order.  And as you

18   saw from the hospital's brief, most of those ended up in

19   private hospitals.

20       What we're seeing is an order that isn't necessary to

21   achieve the Court's goal but has significant, significant

22   detriments.  And one of the things I'd like to point out about

23   this chart here, if you look at the third box over,

24   "restoration outcomes," there's a blank in the third level.

25   Nobody has been released who has a violent felony.  And so what

1  we're seeing is the lower-level offenders are being released

2  first.  So there's some prioritization going on that we're not

3  aware of, having been privy to.  But if you look at Dr. Pinals'

4  report, she says that they've negotiated that, that they're

5  staggering the discharge of those who reach the end of the

6  restoration time periods, balancing the severity of the charges

7  with the burdens to the community system.

8         So what I would ask is is there a way to incorporate

9  that flexibility into the order so the hospital isn't forced to

10  discharge into the community someone who is significantly

11  dangerous.  I did the math on these numbers, and if you take

12  the 154 people released, and you divide it by 56 and multiply

13  it by 365 and then divide it by 12, you get 83 people a month,

14  which is what the -- what they're projecting.  If you take out

15  the seven, you get 80 a month.  So if this -- if this data

16  holds, we have a reduction of three people per month, but far

17  less risk to the community if we just follow what the

18  legislature adopted in Senate Bill 295.

19         The other thing we argued about was whether or not

20  they had exaggerated the number of -- the length of the

21  waitlist.  So this document shows the two charts that were

22  included in Dr. Pinals' second report.  And as you can see, the

23  chart on the left has a wait period, average days waiting of

24  19.8 days for --

25         THE COURT:  I'd ask you to slow down a little.

1    MR. CARR:  I'm sorry.

2    It was 16.2 in May.  The chart on the right, which is

3    the chart that the plaintiffs relied upon, and that had the

4    39.2 in July.  And the difference between the two charts is the

5    one on the left includes all the patients in the hospital in

6    those months.  So a patient who has been there for a year, who

7    waited 40 or 50 days or a hundred days because the hospital

8    wasn't accepting anybody by COVID -- because of COVID is

9    included in that right-hand chart.  The left-hand chart is the

10   more accurate one.  It includes only people waiting in the

11   jail.  So -- and that's the constitutional imperative.  So I'm

12   not saying that 20 days is acceptable.  We'd prefer that to be

13   zero.  But it's not 40 days.  Forty days is overinclusive.  And

14   that was explained in Mr. Wehr's declaration.

15   The other thing in Mr. Wehr's declaration that is

16   troubling is that there are 97 people at the hospital today --

17   or at the time he wrote his declaration who are still -- who

18   are on the restoration lists, who are waiting to be released.

19   Those 97 individuals necessarily include people accused of

20   Measure 11 crimes.  And since we haven't seen any yet, we

21   expect to see most of those later.  We don't know when.

22   So one of the things I'd ask is when the Court

23   assesses this, the effectiveness of this if the order continues

24   in place, is to push out the date of the assessment from

25   January 21st, because I'm afraid we're not going to have seen

1    the worst of the worse before then.

2            Now, turning to the less intrusive alternatives, Your

3    Honor, the -- one of the things we suggested, which apparently

4    has already been done, is eliminating the 30-day wait period

5    for people who are considered able.  As you can see from this

6    chart -- again, Exhibit 2 to Mr. Wehr's declaration -- 70

7    people were found able out of 154 released in the first 56

8    days.  That's working.  So the change that wasn't really part

9    of the order, but which apparently has been adopted based on

10   Dr. Pinals' recommendation, is making a big difference in the

11   population at the hospital, all of that without the risk of

12   putting seriously mentally ill people back in the community,

13   back into our jails at the worst case or back on the streets.

14           The other issue is this -- is people who don't -- no

15   longer need a hospital level of care.  We could reduce the time

16   at the hospital -- the Court could reduce the time at the

17   hospital for that kind of assessment so that more people can

18   get out more quickly who no longer need a hospital level of

19   care.  The worry is under the Court's order, those people who

20   need a hospital level of care are required to be released by

21   March 15th, regardless of their state, regardless of whether or

22   not they present a risk to themselves or others, regardless of

23   whether there's a place for them to go in the community.  The

24   State considered all of that when the legislature adopted

25   Senate Bill 295.  There are all sorts of protections in there

1   for the community and for the individuals.  The Court's order

2   doesn't incorporate any of those, and we are, as the people who

3   oversee them, very concerned about what happens when they come

4   back to our communities.

5          So I'd ask the Court, one, to eliminate paragraph 3

6   from the Court's order, and if the Court doesn't feel

7   comfortable with that, at least provide some protections in

8   there for individuals who should not be released.  As I read

9   the order, and I think as the State does, there is no

10  flexibility.  If someone meets their time limit, they have to

11  be out of the hospital by March 15th.  That could create --

12  that will create dangers in the community and is not the best

13  thing.

14         We've had one individual who went for a court

15  hearing, found to be not meeting the standard for civil

16  commitment, and who was released to the streets -- or to a

17  hotel, I suppose.  We have no idea where he is.  And he was

18  accused of a felony.  More coming.  And I'm worried about it as

19  the person who is responsible to our community for our jail and

20  for our healthcare system.

21         So I'd ask the Court to, as Ms. Vetto said, either

22  eliminate the order or modify it or at least allow us to send

23  people back who have decompensated.  Also, I'd ask for the

24  Court to consider extending the date for the assessment until

25  after all of the people subject to the September 1st order have

 1  been discharged from the hospital.

 2        Thank you.

 3        THE COURT:  Thank you very much, sir.

 4        Who is next among the intervenors?

 5        MR. GARZA:  I think I'll try the podium.

 6        Good afternoon, Your Honor.  Keith Garza,

 7  representing the judge amici.

 8        Our brief, as the Court does recall, really does try

 9  to cut at this issue at the doctrinal level that the Court

10  indicated it was primarily concerned with as an initial matter

11  for this round of briefing.  Our brief answered the questions

12  that the Court put before the parties and did so, you know, in

13  a way that we think did not really admit any response, and in

14  fact there was none, there was no response, no objections, no

15  brief filed taking issue with the analysis that the Court put

16  forward.  And we don't believe that the analysis that we have

17  goes to whether this is a good idea or whether there are

18  necessarily at least lesser intrusive means, but really kind of

19  cuts primarily based on the *Stone* decision as to the

20  preliminary inquiry of whether it is essential or necessary as

21  an initial matter for the Court to have to override otherwise

22  valid state law.  And we find a lot -- and I think a lot of the

23  other parties do as well in this court -- to be learned from

24  the *Stone* decision.

25        And, you know, even more telling than the lack of

1    objection to the judges' brief is that in their response to the

2    counties' amicus brief, plaintiffs, much like they did in

3    response to our efforts to have the injunction against state

4    court contempt actions dissolved, they came back and invited

5    the Court, essentially offering no objection if the Court wants

6    to essentially redraft the September 1 order to, quote, better

7    support the scope of its order, which I think is telling, in

8    that, you know, from the standpoint of an amicus here, now that

9    we have an intervenor with a pending motion, the decision on

10   which will provide an immediate -- you know, an appellate

11   avenue for interlocutory review, it is our role to kind of

12   offer the Court our ideas about what may be problems that we

13   perceive with the way that the Court went about drafting and

14   crafting -- or plaintiffs, more appropriately, because it was

15   their order that they wrote, the September 1st order.

16          So, first of all, the *Stone* decision talking about

17   kind of ratcheting up relief before you go to that step of

18   overriding state law, right, whether it's essential to do so.

19   And they talk there about the city in that instance being in

20   the kind of unusual position of coming back and saying, well,

21   actually contempt was something that should have been the

22   Court's first effort, as opposed to telling the sheriff to

23   override state law with respect to how long individuals need to

24   stay in jail.

25          And here, of course, that hasn't happened, and the

1    Court's point is well taken that for that kind of remedy to

2    take hold and effect, it's going to take some time.  But I

3    think you'll see in just about every one of these cases in

4    which injunctive relief is being considered by a court or

5    enforcement mechanisms, it's never an immediate -- an immediate

6    beneficial response.

7            THE COURT:  Can I ask a couple questions about

8    contempt?

9            MR. GARZA:  Sure.

10            THE COURT:  So typically the best use of contempt is

11    where the person can cure the contempt by relatively quick

12    action.  And here the problem with contempt, say, two years

13    ago, early on in this litigation was that there wasn't any

14    immediate path forward.  It wasn't sort of through pure

15    dereliction of duty that the delays were occurring.  It was

16    more complicated than that.

17            So if I had held the State in contempt, the next best

18    move would have been to meet with Disability Rights Oregon and

19    other interested parties, possibly with the aid of an

20    independent expert, and try to craft a solution that would as

21    rapidly as possible get them out of contempt and then move

22    forward from there.

23            So isn't that what happened here, just skipping the

24    contempt part that would have been designed to drive them to

25    the negotiating table?

1          MR. GARZA:  Well, I think what we put in our brief

2     was that we found that the Court's very patient and kind and

3     considered efforts to move the defendants towards compliance

4     were sufficient to justify the Court taking additional action.

5     And while at that point --

6          THE COURT:  I guess what I'm asking is let's say that

7     I'd run to the end of patience some time ago and found the

8     State in contempt and presumably imposed a monetary penalty.

9     What would have happened after that that would have been

10    beneficial to this case?

11         MR. GARZA:  Well, it's hard to know, but one thing

12    that one would expect was perhaps the defendants would go to

13    the legislature and ask for, I mean, additional resources so

14    that they could meet the capacity that they, according to

15    plaintiff, should have expected.

16         THE COURT:  Which is, of course, as you know, exactly

17    what happened here.

18         MR. GARZA:  Right.  We're not taking issue with the

19    fact that the Court didn't do that before.  We're saying we

20    have a -- we're on the cusp of a full legislative session

21    convening in several weeks, changes in leadership.  This is an

22    appropriate time to do that.  We're not saying that the Court

23    should have done it before, we're just saying that --

24         THE COURT:  Just so I'm clear, what you're suggesting

25    by way of the right course forward is to rescind the order, and

1  then you're suggesting I ought to at least consider holding the

2  State in contempt?

3        MR. GARZA:  If you go back to the August 16th order,

4  with the exception of the injunction against state court

5  contempt proceedings, which implements a number -- most, right,

6  of Dr. Pinals' recommendations, and is permitting the State to

7  make some progress towards compliance, a threat of contempt,

8  and then at that point, you know, from the standpoint of, you

9  know, further review of the Court's actions by the Ninth

10  Circuit, it seems to satisfy the kinds of considerations that

11  the *Stone* court said it was looking for and that were absent

12  there.

13        THE COURT:  Again, I'm just trying to nail down what

14  your suggestion is.  So what you're arguing is that the best

15  course forward is to erase the current order, of course keep

16  erased the ban on state court contempt, but implement the

17  August order and then see where it goes?

18        MR. GARZA:  That's what we asked for in the brief.

19  That's precisely what we requested.

20        THE COURT:  All right.

21        MR. GARZA:  And to get back to the -- kind of the

22  elemental considerations, you know, we took issue with the

23  Court's determination that it was the defendants' attempt to

24  comply with state law, both with respect to inputs to the State

25  Hospital or to OHA's jurisdiction, and outputs -- outputs from

1    hospital level of care situations as the causal factors, you

2    know, that created the constitutional violations, and we

3    challenged the Court in that, respectfully, and really saw that

4    as kind of going back to accepting an argument that it is an

5    inability of a defendant -- a defendant's inability to comply

6    with the Constitution that seems to be kind of promoted to the

7    level of a defense when that's not been accepted before.

8              THE COURT:  I'm not sure I understand that point.

9              MR. GARZA:  Sure.  So, in other words, the Court had

10   indicated that it was -- by having to send people into the

11   hospital and keep them there for a particular length of time,

12   those statutes were -- it was following those statutes that was

13   causing the constitutional violations, as opposed to lack of

14   resources, inability to comply.  It's like in the prison

15   overcrowding situation.  The inputs to that system are

16   generated by juries finding defendants guilty, states enacting

17   criminal laws, judges sentencing people.  That's what puts

18   people into the system.  What keeps them in the system is the

19   State's decision with respect to how long the sentences should

20   be.  And when it becomes the case that there is overcrowding or

21   Eighth Amendment violations, it doesn't seem from our view of

22   the authorities that it's been an accepted defense to say,

23   well, it's not the defendant's ability or inability to comply

24   that's causing the violations, it's the fact that the State has

25   these otherwise legitimate statutes that they've enacted.  And

1    so, in other words, before you can go and say that these are

2    the problems that need to be fixed, these otherwise legitimate

3    statutes, they need to be overriden.  We think that the record

4    hasn't been made to establish the basis for doing that yet.

5          THE COURT:  I think I understand the argument.  It is

6    an interesting point when you think about dual sovereignty.

7    Which should be more offensive to the State of Oregon, an order

8    that contravenes OSH time periods or an order that requires the

9    state legislature to fund significant increases in facilities?

10    Do you have an opinion about that?

11          MR. GARZA:  Could you rephrase that for me?

12          THE COURT:  You're suggesting there are sort of two

13    ways to go.  One is to take account of the fact that delays

14    getting from jail to OSH is driven at least in part by the fact

15    that there's not a second or third OSH built up and ready to

16    go, and the other is that it's affected by how long they're at

17    OSH.  If I shortened that time period, more people could come

18    in in the front door.

19          So the first solution, which has -- which has been

20    the subject of some -- in the vast body of cases involving

21    judges imposing on the state what the Constitution demands,

22    there are cases like your first example; that is, where a

23    federal court orders a state to, you know, spend a lot of money

24    doing something it hasn't spent a lot of money on yet.  And

25    that's part of your suggestion, right?  That what I've missed

1    is the idea that one of the inputs resulting or causing the

2    constitutional violation is, for example, lack of facilities.

3    And it seems like if that's -- if you're right about that

4    argument, that it flows necessarily that one of the solutions I

5    should be imposing, if you're right about that, is to order the

6    State to build more facilities, right?

7            MR. GARZA:  Well, I think what you put in your

8    August 16th order was -- really indicated that the State needs

9    to comply with the Constitution and leave it to the State to

10   decide the mechanism by which it does so.  It may be that

11   that's the mechanism that is really the only one that is

12   effectively available, but it makes the State responsible for

13   solving the problem that, as you had noted earlier, it created.

14   And I think you took that as a quote from the *Stone* decision

15   itself.  I mean --

16           THE COURT:  Thank you very much.

17           MR. GARZA:  It's important that -- I mean, the judges

18   here, obviously they didn't create, they don't maintain the

19   mental health system.  Their role is simply to interpret and

20   apply the law, and in doing so to seek to ensure that the

21   constitutional and statutory rights of all of those that come

22   before it are vindicated and as well the public's interest and

23   victims' interests, and in doing so that they act in fidelity

24   in advancing the policies that Oregon's other governmental

25   branches have enacted.  And as this litigation has developed,

1    it is perhaps that element that is causing some of the deepest

2    concerns that not only does the September 1 order override

3    state law, but in doing so, and really at the suggestion of

4    both the plaintiffs and the Court's neutral expert, there are

5    at least two fundamental and long-held state policy decisions

6    that seem to have given way to competing policy considerations

7    that the plaintiffs seem to prefer.  In other words, plaintiffs

8    are not only seeking to -- seems that they're not only seeking

9    to compel compliance with the Mink injunction but also the

10   imposition of certain policy preferences in that process.  So

11   in Mink, the Ninth Circuit in 2003, one of the things that the

12   Court said was that the seven-day admit period was something

13   that comported with federalism concerns because it was

14   consistent with -- Excuse me, I should have brought my water --

15   a legislative choice that was evidenced by a statute that was

16   then in effect in 1999, which said in Oregon get the

17   aid-and-assist defendant to the State Hospital within seven

18   days.  That went away in 2001, but nonetheless, that was a

19   policy choice that was evident in the statutes at that time.

20           And so one of the things that you had then, as you do

21   now, from 1999 to today, is the legislature's deliberate policy

22   decision that the maximum amount of time it's willing to devote

23   to restoration is three years or the maximum sentence of the

24   offenses that are involved.  And that policy choice, even if

25   the plaintiffs think that that time limit is too long, even if

1   the empirical evidence is such that it may in fact be too long,

2   it's not something that plaintiffs have been able to argue is

3   unconstitutional.  It's not something Dr. Pinals has been able

4   to say represents such an outlier among other states' decisions

5   with respect to how much time and resources to commit to the

6   restoration process.  We're somewhere in the middle, maybe

7   toward the higher end, but not on the outlier.  And even then,

8   that policy decision really touches upon some of the most

9   fundamental considerations that a state can have, which is

10  effecting the enforcement of its penal laws and the protection

11  of its citizens from harm, even if it chooses to go about that

12  in ways that others might find less than efficient.  And this

13  Court's September 1st order, the plaintiffs' drafted order,

14  overrides that decades-old policy.

15          THE COURT:  You keep using that phrase.  Let me make

16  my point, and then I'll hear from you.

17          I don't think that's probably your best foot forward

18  because, you know, I didn't just loan somebody my pen and let

19  them sign whatever they wanted.  So it's not plaintiffs' order,

20  it's this Court's order.  If you have problems with it, if you

21  think it's unwise, then you can go ahead and make that argument

22  directly to me without hinting that I sort of unthinkingly

23  adopted somebody else's approach here.  This is my order.  I

24  signed it.  I'm fully 100 percent responsible for it.  You

25  don't need to give me the out of blaming plaintiff for it.

1       MR. GARZA:  I apologize for that, Your Honor.  I

2  didn't mean it that way.

3       You know, the concern we had in kind of going forward

4  and growing is that there was in Dr. Pinals' third report some,

5  I think, longitudinal evidence that over the last ten years

6  there have been something like 214 or just over 200 individuals

7  who have been in the restoration process for longer than a

8  year, and that of that, that kind of winnowing down, ultimately

9  there were only 46 individuals during that time frame who were

10  ultimately convicted.  And Dr. Pinals was very frank in stating

11  that, you know, quote, from one point of view these

12  prosecutions may represent the achievement of important

13  government interests in the pursuit of justice, and at the

14  other end, from other perspectives, the yield is very low, and

15  that under the Court's September 1 order, it seems like it's

16  that low yield kind of policy perspective that has been kind of

17  put forward as the law at least temporarily in Oregon.

18       And there's -- and so that is a concern that not only

19  is state law being overriden, but it seems to be being

20  overriden in a way that is -- represents different policy

21  choices that somebody might think an appropriately functioning

22  mental health system should have.

23       THE COURT:  Thank you very much.

24       MR. GARZA:  Thank you.

25       THE COURT:  Who is next?

1    MR. NEIMAN:  Go ahead.

2    MR. WILLIAMS:  I think it's appropriate for my

3  position to go last.

4    MR. NEIMAN:  Okay.  I'm Eric Neiman, Your Honor,

5  appearing on behalf of the health systems who are intervenors,

6  Legacy, PeaceHealth, and Providence Health & Services - Oregon.

7  We're also plaintiffs in the consolidated case of Legacy v.

8  Allen.

9    I want to address the comment that you made about

10  Section 2.b. of your September 1 order, which as the Court

11  pointed out, essentially incorporates the status quo.  I think

12  the term the Court used was "status quo ante."

13    THE COURT:  Fancy lawyer talk for the way it's always

14  been.

15    MR. NEIMAN:  Yeah, except it hasn't always been that

16  way.  It's only been that way since about the end of 2019, when

17  the Oregon State Hospital decided that they were no longer

18  going to take civil commitment patients unless an exceptionally

19  high bar was met, the so-called expedited admission criteria.

20    And consistently since then the State has taken the

21  position that it had to do that because of this Court's Mink

22  order.  And the Court will recall that that was the position

23  the State took in the Bowman case, that they could not admit

24  guilty-except-for-insanity patients because of the Mink order.

25    THE COURT:  Just to be clear, you're referring to the

1  original Mink injunction at that point, right?

2           MR. NEIMAN:  Yes.

3           THE COURT:  Thank you.

4           MR. NEIMAN:  Judge Hernandez addressed that argument

5  head on by saying it was false, that there was nothing in the

6  Mink order that entitled the State to prioritize aid-and-assist

7  patients over guilty-except-for-insanity patients.  That same

8  argument applies to Section 2.b. of this Court's order, because

9  what the State is doing is depriving an entire population of

10  individuals who have had their liberty taken away,

11  de-prioritizing them in favor of forensic patients, aid and

12  assist, and guilty except for insanity.  And we don't think,

13  looking at the record before you leading up to August 16, and

14  then September 1, from the transcripts of those hearings, that

15  the interests of civilly committed patients were ever presented

16  to you in Dr. Pinals' two reports that you had at the time, in

17  argument of counsel, or in the briefing.  And that is a

18  remarkable omission because, in our view, this Court should not

19  take the leap to overriding state law without considering

20  collateral effects on other members of the population.

21           And I cannot explain why that perspective was not

22  presented to the Court, but it was not, and it still has not

23  been.  So I'm here today to speak on behalf of individuals who

24  have been civilly committed by Oregon courts, because there

25  isn't anyone else to do that.  Metropolitan Public Defenders

1    and Disability Rights Oregon, the plaintiffs, have

2    understandably -- and I respect my friends across the aisle

3    hugely -- focused their efforts on people in jail, and the

4    State has on multiple occasions disclaimed responsibility for

5    people who are civilly committed.  But somebody has to talk to

6    you about that perspective and the collateral effects of the

7    order you entered.  And the -- that effect is two-fold.  And I

8    think the Court alluded to this in your opening comments.  One

9    is that people who are civilly committed -- and it's a high bar

10   to get civilly committed.  These are people who are very ill,

11   cannot access the State Hospital at all, absent extraordinary

12   circumstances in which they hurt somebody or destroy property,

13   they injure somebody.  And we can look at the data and the

14   record before the Court and see that under ten people have been

15   admitted to the State Hospital this year because of civil

16   commitment.

17          And the second point --

18          THE COURT:  Do you know what the denominator is

19   there?

20          MR. NEIMAN:  Well, the denominator at the State

21   Hospital is kind of a moving target.

22          THE COURT:  No, the denominator of people who are

23   civilly committed.

24          MR. NEIMAN:  Yes.  It's about 500 a year.  So if we

25   take 10 or 12 a year, we know a very small proportion of

1  civilly committed individuals have been able to access the

2  long-term care they need at the State Hospital this year.  I

3  don't think you're going to hear any dispute that a long-term

4  care setting is what's necessary for people who are -- have

5  seriously persistent mental illness and are civilly committed.

6          THE COURT:  And is that uniquely OSH, or is OSH just

7  a very important part of a cluster of ways that can be handled?

8          MR. NEIMAN:  Well, individuals who need long-term

9  treatment need to be in a secure residential setting of some

10  kind.  The State Hospital represents most of that capacity by a

11  long shot.  There are a limited number of secure residential

12  treatment beds around the state, but I'm going to say 90 to

13  95 percent of the long-term treatment capacity is with the

14  State Hospital.

15          THE COURT:  Thank you.

16          MR. NEIMAN:  And a lot of these individuals need to

17  be there.  The State won't admit them.  And the Court has, by

18  adopting paragraph 2.b., the Court has in a way given the State

19  a safe harbor or permission to not meet the constitutional

20  rights of that population of people.

21          We have cited extensively in our papers a line of

22  federal cases talking about the massive curtailment of liberty

23  and how somebody who is civilly committed has the right to

24  resort to treatment to get their liberty back.  A percentage,

25  significant percentage of people who are civilly committed need

1    to access long-term treatment to get their liberty back.

2              THE COURT:  And you view the constitutional issue as

3    fundamentally the same as for aid and assist and GEI?

4              MR. NEIMAN:  We do.

5              The second way that Section 2.b. is negatively

6    impacting civilly committed patients is by loading more people

7    into the system outside of the State Hospital, so it becomes

8    more difficult to get care.  And I know we're edging into the

9    issue there that you're going to be addressing next year, which

10   is is this a good idea, but to get to the first issue, what

11   you've called the doctrinal bar, you have to conclude, we

12   think, that by entering the order you did, you're not violating

13   the constitutional rights to treatment in this case and the

14   liberty of another population of patients won't be affected.

15             THE COURT:  So your core argument, that's really a

16   part of least restrictive method, right?  A lot of the line of

17   cases under that rubric suggests that I should look at

18   collateral impacts, and those collateral impacts sometimes are

19   merely harmful -- I don't mean that like that's not bad, but

20   you're here suggesting not only are they harmful but it also

21   violates constitutional rights of what at least to this order

22   is a collateral group, right?

23             MR. NEIMAN:  That's right.  We're trading one set of

24   constitutional violations for another, and that cannot be an

25   acceptable result in our view.

1          If you have 500 people who are civilly committed a

2    year, up to 180 days -- and we don't know what the total is

3    because that's not data we're able to get from the State, but

4    you're talking about hundreds of people who are spending

5    thousands of days of treatment and an inability to access the

6    care they need.

7          Now, taking Section 2.b. out of the order will allow

8    state court processes, will give the Oregon State Hospital

9    flexibility to admit civilly committed patients, will give --

10         THE COURT:  Based on dangerousness?  If you have

11   three streams headed to OSH -- GEI, AA, and civil commitment --

12   and those three streams exceed capacity, then what are you

13   suggesting OSH do to decide who gets admitted if there is no

14   Section 2.b.?  The dangerousness or something else?

15         MR. NEIMAN:  It could be acuity, how ill is somebody.

16         THE COURT:  Acuity is a concept larger than

17   dangerousness.  So do you mean dangerousness or do you just

18   mean acuity?

19         MR. NEIMAN:  I mean it could be -- how the exact

20   rating algorithm, admission algorithm, or admission criteria

21   would look, I don't have an answer for you today.

22         THE COURT:  You just mean they should have the

23   flexibility to allow at least some civil commitments in?

24         MR. NEIMAN:  Correct.  And 2.b. takes away that

25   flexibility, that judgment.

1          THE COURT:  But unless that number is 100 percent of

2    the people whose constitutional rights you think are being

3    violated, then you only very partially solve the problem you

4    raise, right?

5          MR. NEIMAN:  Solving the problem partially is very

6    important.

7          THE COURT:  Well, it depends how partially.  If you

8    solve it by 5 percent, then you've gained very little ground

9    and you've left 95 percent of the people in your view in the

10   condition of a constitutional violation with no recourse.

11   Right?

12         MR. NEIMAN:  This is exactly the issue that Judge

13   Hernandez faced in his comparison of robbing Peter to pay Paul.

14   Shutting people out of the State Hospital altogether and out of

15   long-term treatment who are entitled to be there is not an

16   answer to the State Hospital overcrowding problem.

17         We think that 2.b. and -- Am I running out of time

18   here?

19         THE COURT:  No, because I'm in charge of the time.

20   So --

21         MR. NEIMAN:  We think that 2.b., Section 2.b. and 3

22   should come out of your order.  And the reason is that

23   Dr. Pinals had a package of recommendations --

24         THE COURT:  That part I've followed perfectly well.

25   I'm not giving that argument short shrift, but you've made it,

1    I've read it, I know what you're saying here.  I'm more curious

2    about this last point, then.

3                MR. NEIMAN:  Let's talk about it.

4                THE COURT:  Do you agree that of these three streams,

5    that if you were to measure dangerousness -- which I'm going to

6    use instead of acuity even though it might be something else --

7    that the smallest stream therefore running into OSH would be

8    civil commitments, that in general they're going to -- they're

9    going to pass a dangerousness bar less often than, say, felony

10   AA commitments?

11               MR. NEIMAN:  If that's the admission criteria the

12   Court wants to use, yes.

13               THE COURT:  That's not the one I want to use.  I'm

14   just guessing what it might become.

15               MR. NEIMAN:  I think I agree with that.

16               THE COURT:  The other thing I'm raising as a concern

17   is your suggestion is that it runs the chance of being a very

18   partial solution.  What you object to is the idea that the door

19   is absolutely shut and you can't even get in.  But your answer

20   is to open the door for perhaps a very small percentage of your

21   affected population.

22               MR. NEIMAN:  Or a percentage.  I don't want to go to

23   very small.  A percentage.  Because where are they to get the

24   treatment otherwise?  And that's why I think --

25               THE COURT:  I appreciate the problem you raise.  I'm

| | |
|---|---|
| 1 | trying to explore your solution.  Your solution is to open the |
| 2 | door to people who have been civilly committed who then compete |
| 3 | with AA and GEI under some sort of algorithm or rubric and then |
| 4 | some of them get in.  That's your proposed solution? |
| 5 | MR. NEIMAN:  Right. |
| 6 | THE COURT:  All right.  Thank you.  Thank you very |
| 7 | much. |
| 8 | MR. NEIMAN:  I'm done? |
| 9 | THE COURT:  Yes, sir. |
| 10 | MR. NEIMAN:  Thank you for your time, Your Honor. |
| 11 | THE COURT:  Thank you for your argument.  I |
| 12 | appreciate it. |
| 13 | Mr. Williams. |
| 14 | MR. WILLIAMS:  Thank you, Your Honor. |
| 15 | On behalf of the amicus district attorneys, we've |
| 16 | taken a different approach, which is why I wanted to go last, |
| 17 | because we chose not to challenge the doctrinal questions.  We |
| 18 | have been from the outset of our involvement engaged in |
| 19 | conversations with counsel for the plaintiffs and the |
| 20 | defendants, and then the intervenors and other amicus from |
| 21 | literally from day one of sort of practically speaking how does |
| 22 | this look, knowing that you ask us to wait until January, in |
| 23 | effect, to raise the more precise factual questions of how this |
| 24 | was working and whether or not the, as you termed it, the |
| 25 | potential parade of horribles pans out or not.  And so I don't |

 1  know that it's appropriate for us at this juncture to weigh in

 2  on the argument.

 3          THE COURT:  If you want to save your fire for

 4  January, that's fine with me.

 5          MR. WILLIAMS:  Well, I have another alternative.

 6          THE COURT:  Go ahead.

 7          MR. WILLIAMS:  Which is what I've been promoting from

 8  the outset, which was we had a Zoom in late September with some

 9  proposals for amendments and modifications on behalf of the

10  district attorneys that are very practical but very important

11  because, for instance, right now what's not included is the

12  Ballot Measure 11.  It doesn't include the attempt crimes in

13  the categories.  And that seems a mistake to do that, and we

14  simply propose a modification of the Court's order to include

15  all of those crimes.

16          And also we'd like to have there be an individualized

17  exception modification so that district attorneys can bring

18  these issues to the Court for particular individuals based upon

19  their underlying pending crimes, the seriousness of their

20  criminal histories.  Category C isn't even part of this

21  discussion under the State's criminal history categories.  It

22  needs to be because these are important crimes based upon

23  dangerousness, and a person's criminal history should play some

24  part of this.

25          The notification that's currently in place isn't good

1    enough, to be quite frank about it.  Just relying upon the

2    e-court system doesn't work for the district attorneys,

3    particularly in the larger counties.  I've asked this question

4    including last week during the Zoom with Mr. Allen, Patrick

5    Allen, and the answer I got was, well, it's complicated.  We

6    can't really figure that out.  That's not our responsibility.

7         There's a simple solution of the Oregon District

8    Attorneys Association being provided with a direct notification

9    so that they can play a part in notifying the district

10   attorney's office so we know who is on the list to be

11   discharged.

12        Also important is providing a list of individuals

13   identified as eligible for discharge now and 60 days' notice,

14   which from a public safety standpoint and from notification to

15   the victims of these crimes is rather an important point,

16   especially when you tie into the discussion that's been going

17   on, which is, I'm sorry, but the system is broken.  The mental

18   health system in Oregon is broken.  If that wasn't true, Judge

19   Panner's work of twenty -- what? -- two years ago would have

20   been accomplished.  But here we are, and for good reasons,

21   bringing the charges, if you will, on behalf of the plaintiffs.

22   It's just something that I think the reality is, you know, as

23   pointed out, as counsel for the counties and the judges and the

24   hospital associations, compelling arguments about not all the

25   stakeholders were at the table prior to your order of

1    September 1st.

2              So the way we viewed this is, okay, other people are

3    going to challenge the doctrinal question.  We want to

4    challenge the reality of what district attorneys are looking at

5    in terms of public safety and victims' rights.  And so the ask

6    at the time in late September was we reach out to the Court and

7    ask, because I was made aware by counsel for plaintiffs that

8    Magistrate Beckerman has been involved in this case with

9    settlement conferences over time, and it seems like to me, just

10   from a practical solution, respecting whatever your decisions

11   are based on the doctrinal questions, this is an opportune time

12   in my view for everyone around these tables this afternoon to

13   come up with practical solutions that ultimately may lead to

14   the State of Oregon fixing a broken system, because folks

15   represented by counsel in this room today have identified the

16   issues over time, and the more recent clarifications of what

17   that looks like, and so why not use the time to work with in a

18   settlement conference or conferences to identify what could be

19   done?  How do we work with the Court to make realistic advances

20   that -- who knows, with the upcoming legislative session, we've

21   got a governor-elect who obviously, not just based upon

22   political advertisements on TV, but there's obviously an

23   awareness that something needs to be done to work with the

24   legislature to bring about, to fix this for the issues that

25   this Court has identified through the work that's been done by

1    Dr. Pinals and others.  What an opportune time for the State of
2    Oregon to actually do something to fix the problem.
3         And so as of last Thursday and the announcements of
4    Mr. Allen, and Mr. Allen submitting their resignations, there's
5    going to be new leadership at the Oregon Health Authority and
6    the Oregon State Hospital, so where all this lands is yet to be
7    seen, but the reality is, as I view this, you know, we can go
8    on for years litigating what the issues are.  We can do that.
9    But we can also come up with solutions through settlement
10   conferences to assist this Court in helping to right the ship,
11   if you will, of how to make this work.
12        So that's our position, that's our argument.  I can't
13   think of a better time for us to engage in those endeavors,
14   given what I've just laid out in terms of going forward.  I'm
15   not interested in the blame game.  Those efforts are
16   meaningless to me.  And I think with identifiable amendments,
17   modifications that my clients have identified and submitted to
18   counsel as of late September, my recollection is, and I could
19   be corrected today, but I sought the insights of every attorney
20   in the room on whether or not they would be interested in those
21   settlement conferences, and my recollection is the answer was
22   yes.  So that's our ask.
23        THE COURT:  Thank you very much, sir.
24        For the parties for the litigation, I gave you some
25   time to respond.  You don't have to, but you can take whatever

1    time you think is appropriate to respond.

2         Who will go first?

3         MS. COOPER:  Your Honor, if it pleases the Court,

4    plaintiffs can respond to the intervenors, I can respond to the

5    county counsel, and then my colleagues can respond to the

6    prosecutors and the hospitals.

7         THE COURT:  Thank you very much.

8         MS. COOPER:  Good afternoon.  My name is Emily

9    Cooper.  I represent Disability Rights Oregon on behalf of

10   plaintiffs DRO.

11        So I want to respond to the arguments raised by

12   county counsel earlier.  I think, if I understand this Court's

13   orders, today was to be a factual question about whether or not

14   there were any other least restrictive options for this Court

15   to consider before issuing its modification, and that the

16   larger question of whether or not this Court has the authority

17   to modify its own injunctions was going to wait until January

18   to see if some of the issues had played out.

19        And what I wanted to point out is the evidence that

20   has been provided by county counsel is largely -- and by the

21   hospitals are largely anecdotal, inadmissible, or as county

22   counsel themselves argued, some of the anecdotal information

23   happened prior to the September 1st order.  So the issue of

24   recidivism is not new.  The issue of people entering the

25   criminal justice system repeatedly in a year for behaviors

1    related to their mental health is not new and hasn't changed

2    since September 1st, 2022.

3            What we do have is undisputed facts from the bench

4    trial that Judge Panner had in 2002.  And those undisputed

5    facts are that jails are not designed to treat, they're

6    designed to punish.  And as a result, people with mental

7    illness are harmed sometimes irreparably.  For example, one of

8    the findings of fact was specifically on the suicide risk in

9    jail.  Washington County, one of the intervening counties in

10   this case, has had three people die in its jail in 2022 alone,

11   and that was all prior to September 1st.  One of those

12   individuals was named Mr. Bryce Bybee.  That individual was on

13   waiting for aid and assist and had waited more than seven days.

14           So you look at those facts.  That is what is

15   motivating plaintiffs to ask this Court for relief, because

16   even though the parties through the past three years of

17   multiple contempt motions, two separate appeals to the Ninth

18   Circuit, we weren't seeing the needle shift.  That's why a year

19   ago the parties agreed to sit down with Dr. Pinals, a neutral

20   expert, to do a compliance plan, a neutral path forward of how

21   we were going to fix this problem.  And so unlike it being just

22   something we plucked from the sky, we worked with a national

23   expert to issue a series of recommendations, and despite those

24   efforts with the State and with the State's clients to rectify

25   the problem, the waitlists were still not going down at a pace

1  we were comfortable with.

2          And the county counsel I think misunderstands some of

3  the data elements.  Mr. Carr mentioned Table 1, showing the

4  average waiting time compared to how long someone waited.

5  That's because Table 1 is a snapshot of who was currently on

6  the waitlist.  That was a snapshot.  The average amount of time

7  is 15 days.  That is different from looking back once someone

8  is admitted to the State Hospital and seeing how long they

9  waited.  In July of 2022, it was approaching 40 days that

10 people were waiting.  And, again, Mr. Bybee and others like him

11 were dying.  That's why plaintiffs asked this Court for more

12 relief.

13         And that risk to people waiting in jail is not new.

14 I have in front of me Docket 118, which interestingly is a

15 declaration of the Washington County Sheriff Pat Garrett.  And

16 if you go back and look at this docket, he talks about in 2019,

17 the risks of harm people have waiting in jail.  This is not

18 new.  So to set this dichotomy up as if Disability Rights

19 Oregon, who is in charge of protecting and promoting the rights

20 of all Oregonians with disabilities is somehow being arbitrary

21 and capricious or working in cahoots with the State is flatly

22 wrong.  We are trying to mitigate the harm to our clients in

23 the state by getting people to treatment and so they're not at

24 risk of dying.  That's why we're here in front of this Court.

25         THE COURT:  Is it accurate to say that your focus and

1  the universe of your concerns for your clients does not really

2  include in any meaningful way the interests of people civilly

3  committed?

4         MS. COOPER:  That is wrong.  And I can give you

5  probably more time than you would want me to spend today, but I

6  will point to a few things.  First of all, Disability Rights

7  Oregon has had standing based on Oregon Advocacy Center v. Mink

8  to represent the interests of all people with disabilities in

9  the state of Oregon.  We don't have a financial interest in

10  where they get care, and we don't have any relationship or dog

11  in the fight, as they might say, of where they get care.  I

12  think the difference here is what we're talking about with

13  civil commitment patients and the hospital intervention is

14  should that treatment happen at a private hospital or should it

15  happen at the State Hospital.  That to me is a different

16  calculus than someone waiting in jail where there is no

17  treatment and the liberty interests related to that, which was

18  articulated back in the '70s, which is the duration of

19  someone's confinement has to bear some reasonable relationship

20  to why they're being confined.

21         THE COURT:  The representation in this case is sort

22  of forensically driven, but the mission of your organization

23  could at least include clients that are civilly committed or

24  not?

25         MS. COOPER:  Not only could but it does.  Right now

1    Disability Rights Oregon has the county contract for Multnomah

2    County to represent individuals being held on civil

3    commitments.

4             THE COURT:  Thank you very much.

5             MS. COOPER:  The other argument that county counsel

6    raised was that Dr. Pinals didn't issue in her report a legal

7    conclusion about restoration wait times being the least

8    restrictive alternative.  Dr. Pinals is a clinician and is not

9    a judge, so it's not her place to issue a finding or a

10   conclusion of law.

11            THE COURT:  I don't need to hear more oral argument

12   on findings.  I think it's a fair point.  I think it's easy to

13   understand why those weren't the heavy focus of parties who had

14   come to agreement, but having it raised in an important way,

15   then I am going to make those findings if I view them as

16   appropriate once I've considered all the arguments today.

17            MS. COOPER:  I understand.

18            And I think again you referenced this, Your Honor, at

19   the beginning of the hearing about this process and how long

20   Dr. Pinals for nearly a year has been studying the Oregon

21   system, and all of her reports and all of the studies that she

22   has cited to.  The one thing I wanted to point out is that not

23   a single intervenor or amicus until Mr. Williams suggested

24   potential settlement has offered any compliance solutions to

25   allow the constitutional violations that are happening today to

1    be mitigated any quicker.  If anything, they contradict

2    themselves by on one hand raising federalism concerns and then

3    asking the Court to force the defendant State Hospital and

4    Oregon Health Authority to operate their services in a way that

5    contradict even what defendants want to do themselves, and

6    perhaps not conspicuously, only involve state resources.  And

7    this bears no reasonable relationship to the principles of

8    federalism.  The parties actually standing before this Court

9    and more directly affected by your September order do not claim

10   that this Court's order is out of scope or excessive.  And

11   that's why we ask this Court to deny any appeals from a

12   nonparty, because they don't embrace or advance the interests

13   of Oregonians with disabilities or the constitutional

14   violations we seek to end.  And for this reason, we want to go

15   back to the record and look at what Dr. Pinals said and her

16   projections from her June report that without this Court

17   implementing the restoration wait times by December of next

18   year, there will be over 250 individuals waiting in jail for

19   restoration services.  It's that data, those projections that

20   we sought this Court's relief to say let's instead of waiting

21   for hundreds to wait in a year from now, reach compliance by

22   February of 2023.

23           THE COURT:  Thank you very much.

24           Who is next?

25           MR. STENSON:  Your Honor, I'm just going to briefly

1    respond to the hospital's argument they made.

2          THE COURT:  Go ahead.

3          MR. STENSON:  So just to briefly correct the record,

4    it's been repeatedly stated that Dr. Pinals didn't do anything

5    or examine the question of civil commitment at all, but there's

6    actually frequent reference to civil commitment patients in her

7    reports.  In her June report, on page 15, she reports meeting

8    with directors of the community care organizations, and they

9    extensively discuss the exact issue that the hospitals raise,

10   which is that -- the difficulty in finding civil commitment

11   beds and the challenges created by the excessive -- or by the

12   number of people in aid-and-assist condition who are using the

13   beds at the hospital.  So it's not correct to say that she

14   didn't raise that issue.

15          It's also not correct to say that the plaintiffs

16   didn't raise that issue, because in the very motion that led to

17   this September order, which is Docket 252, on page 5 and 6, we

18   say that we're concerned about people with mental illness

19   continuing to lack community behavioral resources, including

20   those --

21          THE COURT:  Would you slow down a little when you're

22   reading.

23          MR. STENSON:  Thank you very much, Your Honor.

24          -- including those ordered for civil commitment

25   languishing in hospitals.

1          So we've actually taken that into consideration in
2    our role.  As Ms. Cooper said, it is part of Disability Rights
3    Oregon's role to advocate for all people in the system.
4    However, I don't think that it is appropriate to draw a
5    comparison between GEI detainees and aid-and-assist detainees
6    who are languishing in jail versus those who are in a community
7    hospital, especially one with behavioral placements like Legacy
8    that are designed to take people with behavioral health needs.
9          THE COURT:  You agree that all three involve
10   deprivation of liberty interests, but you just think the scope
11   of the deprivation is significantly different?
12         MR. STENSON:  I would not necessarily agree with
13   that, Your Honor, because there are people who can be
14   appropriately treated in community hospitals, and in fact
15   that's part of the reason that Legacy -- excuse me, that the
16   behavioral health hospitals exist.  Providence, according to
17   its own complaint in the joint matter, says I believe they have
18   90 behavioral health beds.
19         I think it would be an open question and it would be
20   a factually intensive question whether a person with a
21   particular mental illness, whether their needs were being met
22   in a community hospital or not.  And that might depend on the
23   acuity of their condition, that might depend on the resources
24   that are available at that hospital, but you can't -- the
25   intervenors are essentially asking the judge -- the Court to

take judicial notice of the fact that someone's rights are automatically being violated by being in a community hospital, and that's wildly different from being in a jail cell.

To go back to the original fact findings in this case from 2002, some of the core findings were that jails exposed people to an excessive risk of death, especially by suicide, that they had no mental health treatment capacity at all or limited treatment capacity at all, that they used isolation and segregation and other punitive measures to address mental illness rather than to actually treat it or to have regimens that took their needs into account.

Now, there's been very little affirmative evidence put forward, and I don't think that the hospitals would like to say that the treatment that they offer in their community hospitals, in their dedicated behavioral health beds is equivalent to being inside a concrete jail cell.  If that is their position, I suppose they could make that representation, but the level of deprivation that was documented at trial in 2002 for the average mental health detainees in a jail cell does not compare to any of the evidence that's been put forward so far in terms of the degree of deprivation that one would experience in a community hospital surrounded by medical staff. And, in fact, there's been little if any admissible evidence put forward by any of these intervenors and amici that would properly address these questions.  The --

1    THE COURT:  Do you agree that Section 2.b. presents

2    zero opportunity for someone civilly committed to make it into

3    OSH?

4        MR. STENSON:  No, I do not.  In fact, it's belied by

5    the declarations that were offered by the hospitals.  They

6    specifically reference someone who left OSH, went back to a

7    jail, spent two weeks at a community hospital, and then was

8    returned to OSH, using that expedited process after being

9    civilly committed.  So I don't agree that their evidence is

10   admissible, but it clearly shows that at least one person made

11   it from a hospital to -- from a community hospital to the State

12   Hospital in two weeks.

13       THE COURT:  Focusing less on the degree of

14   deprivation for civil committees, do you agree that there are

15   people who are civilly committed who because of the high bar

16   set forth in Section 2.b. might actually be more dangerous to

17   the community than some people admitted to OSH through AA or

18   GEI?

19       MR. STENSON:  I don't believe there's any evidence on

20   the record before the Court that would respond to that.

21       THE COURT:  We just don't know that based on actual

22   evidence?

23       MR. STENSON:  We have -- the parties have put

24   forward -- under this Court's guidance, we've put forward now I

25   think it's three reports through Dr. Pinals, where an expert

1   has been looking at this and taking this into account in her
2   recommendations.  That's been part of this process from the
3   beginning.  And saying -- supposing that there might be
4   somebody out there who is really dangerous, you know, that's
5   not what courts are here for.  We're here to test the truth.
6   Suppositions and hypotheses are not the basis for overturning
7   an order.

8           THE COURT:  All right.  Thank you very much, sir.

9           Mr. Merrithew, are you also speaking today?

10          MR. MERRITHEW:  Yes.  I was asked to respond to
11  Mr. Williams' and Mr. Garza's arguments.

12          My response to both of those is largely the same, and
13  that is that both have suggested that stakeholders in the
14  behavioral health system were left out of the Court's decision.
15  And I suppose that's true in the abstract, but this is not a
16  legislative body.  We are here to enforce an injunction.  There
17  were two litigants in 2002 who led to the injunction that Judge
18  Panner ordered, and we --

19          THE COURT:  Is there a point -- you do agree that the
20  case law fleshing out what it means to impose the least
21  restrictive means for enforcing the injunction suggests that
22  collateral consequences is one thing I should look at, right?

23          MR. MERRITHEW:  Certainly, Your Honor.

24          THE COURT:  And "collateral" by definition means
25  people who aren't litigants.

1    MR. MERRITHEW:  That's right, Your Honor.

2    THE COURT:  So to say, hey, there's collateral

3 consequences you didn't think about is a fair argument?

4    MR. MERRITHEW:  It's a fair argument in the abstract

5 but ignores the record evidence.  That is precisely what

6 Dr. Pinals has spent the last year doing.  She didn't just talk

7 to the plaintiffs and defendants.  She looked at the system as

8 a whole in order to come up with recommendations that this

9 Court can make.

10    THE COURT:  So moving then to Mr. Williams' point,

11 you don't pose any real objection to finding a way to create

12 more input by some of the intervenors or amici here in the

13 future, right?

14    MR. MERRITHEW:  It depends on what that looks like

15 frankly, Your Honor.  If it means that we are consistently --

16    THE COURT:  That's all the answer I need, because it

17 depends what it looks like means there is a path forward, it's

18 just not carte blanche.  You don't want to say that they become

19 intervenors or parties if they're not otherwise qualified to do

20 so, right?

21    MR. MERRITHEW:  That's right, Your Honor.

22    THE COURT:  Thank you.

23    Ms. Potter?

24    MS. POTTER:  Thank you, Your Honor.  Pretty briefly.

25    As you know, this was not our motion.  I just wanted

1   to note, as has been discussed, the subject of how the State

2   Hospital can best meet its obligations has been the subject of

3   litigation for some years now, and the request was made by the

4   plaintiffs in the past for this Court to enter an order that

5   would override state law, and at that time we have always been

6   able to come back to this Court and say, hang on, we have ideas

7   for things that we can do within the system, within the

8   structure that has been created, and my clients have really

9   moved heaven and earth with an awful lot of things coming at

10   them to keep moving forward.

11            THE COURT:  Up to and including a new facility,

12   right?

13            MS. POTTER:  Up to and including opening up portions

14   of the second facility, yes, Your Honor.

15            We requested and the legislature gave us $1.3 billion

16   for this biennium.  90 percent of that will have been spent by

17   the end of this calendar year.  OHA is continuing to move

18   heaven and earth.  We are not opposed -- we did not oppose the

19   motion this time because we have run out of the ability to tell

20   you we have a plan for coming back into compliance under the

21   system as it is now.  We don't have a reason to tell you that

22   we can do this without something like this Court's

23   September 1st order.  And so that's just a point that I wanted

24   to make.  I think Your Honor knows better than anyone this has

25   not been a -- historically been a situation in which there has

1    been collusion.  There's been quite a bit of back and forth on

2    this.  We did agree to come together with a neutral expert, and

3    she's been very helpful in identifying options.  And we don't

4    have a reason to object to the recommendations that she's made.

5    And that was the standard that was set out in our agreement.

6          I would like to note the statement by Ms. Vetto that

7    a court cannot recommit if a person loses the ability to aid

8    and assist.  I don't believe that is the position that the

9    hospital has ever taken.  A person cannot yo-yo back.  A court

10   cannot say, oh, I'm actually just going to send you back, get

11   going.  Based on this Court's order, if a person goes back to

12   jail and proceeds in their presentation of their criminal case

13   and loses the ability to aid and assist, I don't believe the

14   hospital has ever taken the position that a new order cannot be

15   entered.

16          THE COURT:  Including in an FAQ?  Including one of

17   the frequently asked questions online?

18          MS. POTTER:  That's correct.  That's correct.

19          THE COURT:  Thank you.

20          MS. POTTER:  The other thing I would note is

21   objective criteria would be helpful.  There have been all sorts

22   of conversations about dangerousness and sentencing grids and

23   things that might be put into place rather than this Court's

24   order, and for any -- if this Court were to alter its order in

25   any way, something that is objective, such that the hospital

1    knows whether it is in compliance with that order would be

2    important for the hospital.

3          THE COURT:  You don't want me to just order you to do

4    the right thing?

5          MS. POTTER:  As long as you're willing to accept that

6    we did the right thing.

7          THE COURT:  Thank you.

8          Let me see what I can do today.  I'll issue a written

9    opinion later.  But I appreciate the serious arguments that

10   have been made, and I take them seriously.  I recognize that

11   it's difficult for lawyers to, you know, look a judge in the

12   face and say, we think you're wrong or unwise, but I've taken

13   this very seriously and it's been helpful.  So I appreciate the

14   input here.

15         There are a couple things I can do right away.  One

16   is to make clear on the record what Ms. Potter has just said,

17   that nothing in my order prohibits the State, particularly

18   through the findings of a state trial judge, from dealing with

19   someone who had competency restored as one example, goes back

20   to the criminal justice system, and subsequently loses

21   competency.  We know competency is lost because a hearing was

22   held and someone found that person no longer competent.  That

23   person is to be treated just like they were treated the first

24   time they weren't found competent.  And that's how that goes,

25   and nothing in the order prevents that.

1          What is prevented is some sort of quickie solution,

2    where somebody just says, well, just go back, and nobody

3    clarifies whether that's like an informal civil commitment or

4    an actual finding of noncompetency or something else.  But if

5    someone is found not competent, then they're not competent, and

6    it doesn't matter if it's their second time or their first

7    time.

8          I'm also grateful particularly to Ms. Vetto for

9    arguments about a lack of findings of least restrictive

10   alternative, and that wasn't adequately done by me the first

11   time around.  I will do so.  I do believe the context here

12   reflects it in the sense that it was months -- actually years

13   of effort to try many other things without adequate success

14   before the parties, with the help of a renowned expert, worked

15   through that for months to come up with a solution that we

16   thought would allow the State the only way we could think of to

17   allow the State to come into compliance, and as Ms. Potter has

18   suggested, a lot of money and a lot of effort preceded that

19   order.  So I'll make those findings in the near term.

20         Dr. Pinals has consulted with a lot of different

21   people, but not all -- not with all of you here.  And there is

22   input that would be useful to receive from all of you going

23   forward.  I'm going to start informally.  My esteemed colleague

24   Judge Beckerman is here, and I'm going to call upon her.  She's

25   willing to help fold your input into the coming status hearing

1    as best possible.  I don't know the right way to do that yet,

2    but it will start out just informally, and it may become more

3    formal.  And I'm starting with Judge Beckerman rather than

4    Dr. Pinals just as a better place to start for some of the

5    arguments that are more -- more textual analysis of the legal

6    arguments you've made about the adequacy of the order, which is

7    more within Judge Beckerman's expertise than Dr. Pinals', but

8    in no way am I suggesting that Dr. Pinals wouldn't be included

9    in all of these conversations also, but I want to make sure we

10   take a hard look at the source of arguments about text that are

11   raison d'etre lawyers everywhere.  So we'll stick with that for

12   now.

13          And then I'll make a decision as soon as I can about

14   the actual motion and respond to it in writing, but for now you

15   should assume that just moving forward, but with the

16   clarification I've offered today on implementation of aid and

17   assist, and with the idea that Judge Beckerman will try to fold

18   more of your input for refining the order so that it moves

19   forward in a more streamlined way.

20          Thank you all.  We'll be in recess.

21          THE COURTROOM DEPUTY:  All rise.  Court is in recess.

22          (Proceedings concluded at 3:15 p.m.)

23

24

25

1

2                              --o0o--

3

4          I certify, by signing below, that the foregoing is a

5     correct transcript of the record of proceedings in the

6     above-entitled cause.  A transcript without an original

7     signature or conformed signature is not certified.

8

9
      /s/Bonita J. Shumway              December 6, 2022
10    _____           _____
      BONITA J. SHUMWAY, CSR, RMR, CRR   DATE
11    Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. CARR: [4]**  20/5 20/12 21/5 23/1
**MR. GARZA: [14]**  26/5 28/9 29/1 29/11
29/18 30/3 30/18 30/21 31/9 32/11 33/7
33/17 36/1 36/24
**MR. MERRITHEW: [6]**  60/10 60/23
61/1 61/4 61/14 61/21
**MR. NEIMAN: [24]**  37/1 37/4 37/15
38/2 38/4 39/20 39/24 40/8 40/16 41/4
41/23 42/15 42/19 42/24 43/5 43/12
43/21 44/3 44/11 44/15 44/22 45/5 45/8
45/10
**MR. STENSON: [7]**  55/25 56/3 56/23
57/12 59/4 59/19 59/23
**MR. WILLIAMS: [4]**  37/2 45/14 46/5
46/7
**MS. COOPER: [6]**  50/3 50/8 53/4 53/25
54/5 54/17
**MS. POTTER: [5]**  61/24 62/13 63/18
63/20 64/5
**MS. VETTO: [19]**  9/6 9/13 9/16 11/13
11/19 12/2 12/15 12/18 12/25 13/17 14/3
15/2 15/10 15/15 15/23 16/3 16/15 16/18
20/3
**THE COURT: [88]**
**THE COURTROOM DEPUTY: [2]**  4/4
66/21

**$**

**$1.3 [1]**  62/15

**'**

**'70s [1]**  53/18

**-**

**--o0o [1]**  67/2

**/**

**/s/Bonita [1]**  67/9

**1**

**1 million [1]**  10/15
**10 [1]**  39/25
**100 [1]**  2/17
**100 percent [3]**  6/16 35/24 43/1
**1000 [1]**  3/12
**11 [3]**  15/4 23/20 46/12
**118 [1]**  52/14
**12 [2]**  22/13 39/25
**14 [1]**  19/2
**14500 [1]**  22/24
**15 [3]**  9/10 52/7 56/7
**154 [3]**  21/15 22/12 24/7
**155 [1]**  2/21
**15th [2]**  24/21 25/11
**16 [1]**  38/13
**16.2 [1]**  23/2
**161 [1]**  16/24
**16th [3]**  16/4 30/3 33/8
**180 [4]**  21/7 21/7 21/9 42/2
**19.8 [1]**  22/24
**1999 [2]**  34/16 34/21
**1:35 [1]**  4/2
**1st [18]**  10/2 10/4 10/10 10/13 10/19
10/22 14/11 16/18 17/7 21/14 25/25

27/15 35/13 48/1 50/23 51/2 51/11 62/23

**2**

**2.b [14]**  8/2 8/14 37/10 38/8 40/18 41/5
42/7 42/14 42/24 43/17 43/21 43/21 59/1
59/16
**20 [1]**  23/12
**200 [2]**  2/5 36/6
**2001 [1]**  34/18
**2002 [4]**  51/4 58/5 58/19 60/17
**2003 [1]**  34/11
**2019 [2]**  37/16 52/16
**2022 [6]**  1/16 4/2 51/2 51/10 52/9 67/9
**2023 [1]**  55/22
**21 [2]**  1/16 4/2
**21-day [1]**  18/1
**214 [1]**  36/6
**21st [1]**  23/25
**250 [1]**  55/18
**252 [1]**  56/17
**26 [1]**  21/14
**295 [4]**  16/23 21/16 22/18 24/25

**3**

**30-day [2]**  19/6 24/4
**301 [1]**  3/12
**326-8188 [1]**  3/13
**340 [1]**  2/21
**360 [1]**  3/5
**365 [1]**  22/13
**39.2 [1]**  23/4
**3:02-cv-00339-MO [1]**  1/4
**3:02-cv-339-MO [1]**  4/5
**3:15 [1]**  66/22
**3:21-cv-01637-MO [1]**  1/9

**4**

**40 [3]**  23/7 23/13 52/9
**400 [1]**  3/5
**415 [1]**  2/9
**46 [1]**  36/9

**5**

**5 percent [1]**  43/8
**50 [1]**  23/7
**500 [2]**  39/24 42/1
**503 [1]**  3/13
**511 [1]**  2/5
**56 [3]**  21/14 22/12 24/7
**5th [1]**  19/1

**6**

**60 [1]**  47/13
**610 [1]**  2/9
**68106 [1]**  3/8
**6:22-cv-01460-MO [1]**  1/14

**7**

**70 [1]**  24/6

**8**

**80 [1]**  22/15
**8188 [1]**  3/13
**83 [1]**  22/13
**888 [1]**  2/12

**9**

**90 [3]**  13/20 40/12 57/18
**90 percent [1]**  62/16
**900 [1]**  2/12
**9268 [1]**  3/8
**95 percent [2]**  40/13 43/9
**97 [2]**  23/16 23/19
**97124 [2]**  2/22 2/25
**97201 [1]**  2/18
**97204 [2]**  2/13 3/12
**97205 [2]**  2/6 2/9
**97702 [1]**  3/5

**A**

**AA [4]**  42/11 44/10 45/3 59/17
**ability [10]**  5/4 11/6 11/9 16/5 16/22
18/13 31/23 62/19 63/7 63/13
**able [12]**  13/23 13/23 15/16 15/20 16/1
24/5 24/7 35/2 35/3 40/1 42/3 62/6
**about [51]**  6/17 6/19 7/19 8/4 8/23
11/21 14/1 16/7 18/9 19/24 20/6 20/14
20/17 21/22 22/19 25/3 25/18 27/12
27/13 27/16 27/19 28/3 28/7 32/6 32/10
33/3 33/5 35/11 37/9 37/16 39/6 39/24
40/22 42/4 44/2 44/3 47/1 47/24 48/24
50/13 52/16 53/24 54/7 54/19 56/18 61/3
63/22 65/9 66/6 66/10 66/13
**above [1]**  67/6
**above-entitled [1]**  67/6
**absent [2]**  30/11 39/11
**absolutely [2]**  10/23 44/19
**abstract [2]**  60/15 61/4
**accept [2]**  16/16 64/5
**acceptable [2]**  23/12 41/25
**accepted [2]**  31/7 31/22
**accepting [2]**  23/8 31/4
**access [4]**  39/11 40/1 41/1 42/5
**accomplished [1]**  47/20
**according [2]**  29/14 57/16
**account [3]**  32/13 58/11 60/1
**accurate [2]**  23/10 52/25
**accused [2]**  23/19 25/18
**achieve [1]**  21/21
**achievement [1]**  36/12
**acquired [1]**  6/14
**across [1]**  39/2
**act [1]**  33/23
**action [3]**  17/6 28/12 29/4
**actions [3]**  17/8 27/4 30/9
**actual [3]**  59/21 65/4 66/14
**actually [15]**  8/18 11/20 13/10 17/11
18/6 18/19 27/21 49/2 55/8 56/6 57/1
58/10 59/16 63/10 65/12
**acuity [5]**  42/15 42/16 42/18 44/6 57/23
**add [1]**  12/1
**additional [4]**  10/19 16/19 29/4 29/13
**address [6]**  10/5 16/22 17/2 37/9 58/9
58/25
**addressed [1]**  38/4
**addressing [2]**  9/21 41/9
**adequacy [1]**  66/6
**adequate [1]**  65/13
**adequately [1]**  65/10
**admissible [2]**  58/23 59/10
**admission [5]**  19/4 37/19 42/20 42/20

## A

**admission...** [1] 44/11
**admissions** [1] 19/14
**admit** [5] 26/13 34/12 37/23 40/17 42/9
**admitted** [4] 39/15 42/13 52/8 59/17
**adopted** [5] 7/17 22/18 24/9 24/24 35/23
**adopting** [1] 40/18
**adult** [1] 14/17
**advance** [1] 55/12
**advances** [1] 48/19
**advancing** [1] 33/24
**advertisements** [1] 48/22
**affected** [5] 10/9 32/16 41/14 44/21 55/9
**affirmative** [1] 58/12
**afraid** [1] 23/25
**after** [5] 18/1 21/7 25/25 29/9 59/8
**afternoon** [4] 4/4 26/6 48/12 50/8
**again** [12] 6/10 6/16 9/17 11/6 15/25 17/16 18/9 18/20 24/6 30/13 52/10 54/18
**against** [4] 8/14 8/15 27/3 30/4
**ago** [8] 4/19 7/15 15/8 15/20 28/13 29/7 47/19 51/19
**agree** [11] 8/17 16/25 44/4 44/15 57/9 57/12 59/1 59/9 59/14 60/19 63/2
**agreed** [1] 51/19
**agreement** [2] 54/14 63/5
**agrees** [2] 5/24 17/14
**ahead** [6] 15/11 20/10 35/21 37/1 46/6 56/2
**aid** [21] 4/21 10/18 11/4 11/5 11/7 15/13 15/20 15/21 16/1 19/5 28/19 34/17 38/6 38/11 41/3 51/13 56/12 57/5 63/7 63/13 66/16
**aisle** [1] 39/2
**al** [6] 1/3 1/6 1/8 1/11 1/13 4/6
**Alder** [1] 2/9
**algorithm** [3] 42/20 42/20 45/3
**all** [41] 4/7 13/8 13/22 14/2 16/25 18/21 19/6 23/5 24/11 24/24 24/25 25/25 27/16 30/20 33/21 39/11 45/6 46/15 47/24 49/6 51/11 52/20 53/6 53/8 54/16 54/21 54/21 56/5 57/3 57/9 58/7 58/8 60/8 61/16 63/21 65/21 65/21 65/22 66/9 66/20 66/21
**ALLEN** [6] 1/16 37/8 47/4 47/5 49/4 49/4
**allow** [7] 10/12 25/22 42/7 42/23 54/25 65/16 65/17
**allowed** [1] 11/16
**allowing** [1] 4/20
**alluded** [2] 14/5 39/8
**almost** [1] 17/21
**alone** [2] 7/13 51/10
**already** [3] 10/24 12/1 24/4
**also** [19] 6/24 7/18 8/23 12/4 13/3 17/20 18/24 19/17 25/23 34/9 37/7 41/20 46/16 47/12 49/9 56/15 60/9 65/8 66/9
**alter** [1] 63/24
**alternative** [9] 9/24 18/6 18/7 18/23 19/1 19/19 46/5 54/8 65/10
**alternatives** [7] 10/1 10/3 17/9 17/12

**19/12 19/25 24/2**
**although** [1] 12/19
**altogether** [1] 43/14
**always** [3] 37/13 37/15 62/5
**am** [6] 4/14 9/17 11/19 43/17 54/15 66/8
**Amendment** [2] 14/16 31/21
**amendments** [2] 46/9 49/16
**amici** [3] 3/1 3/7 26/7 58/24 61/12
**amicus** [13] 2/20 2/23 9/8 9/10 9/18 10/12 18/14 20/8 27/2 27/8 45/15 45/20 54/23
**among** [2] 26/4 35/4
**amount** [2] 34/22 52/6
**analogous** [1] 11/25
**analysis** [3] 26/15 26/16 66/5
**anecdotal** [2] 50/21 50/22
**anecdotally** [2] 12/25 13/6
**announcements** [1] 49/3
**another** [3] 41/14 41/24 46/5
**answer** [8] 5/25 17/1 42/21 43/16 44/19 47/5 49/21 61/16
**answered** [1] 26/11
**ante** [3] 8/19 8/20 37/12
**any** [24] 5/17 6/11 7/2 7/21 11/6 15/7 23/20 25/2 26/13 28/13 40/3 50/14 53/2 53/10 54/24 55/1 55/11 58/20 58/23 58/24 59/19 61/11 63/24 63/25
**anybody** [3] 7/12 20/22 23/8
**anyone** [3] 7/11 38/25 62/24
**anything** [4] 7/8 8/1 55/1 56/4
**anyway** [1] 21/3
**apologize** [1] 36/1
**apparently** [3] 19/15 24/3 24/9
**appeal** [1] 18/3
**appeals** [2] 51/17 55/11
**appear** [3] 6/12 10/12 18/16
**APPEARANCES** [1] 2/2
**appearing** [1] 37/5
**appellate** [1] 27/10
**applicable** [1] 9/22
**applies** [1] 38/8
**apply** [1] 33/20
**appreciate** [6] 13/6 16/6 44/25 45/12 64/9 64/13
**approach** [2] 35/23 45/16
**approaching** [1] 52/9
**appropriate** [6] 29/22 37/2 46/1 50/1 54/16 57/4
**appropriately** [3] 27/14 36/21 57/14
**approximately** [1] 10/14
**arbitrary** [3] 13/18 13/20 52/20
**are** [94]
**aren't** [2] 7/16 60/25
**argue** [2] 18/18 35/2
**argued** [2] 22/19 50/22
**arguing** [1] 30/14
**argument** [24] 1/20 4/5 7/25 8/10 9/20 13/9 19/23 31/4 32/5 33/4 35/21 38/4 38/8 38/17 41/15 43/25 45/11 46/2 49/12 54/5 54/11 56/1 61/3 61/4
**arguments** [15] 4/9 6/4 6/8 6/24 8/3 18/12 47/24 50/11 54/16 60/11 64/9 65/9 66/5 66/6 66/10
**Arizona** [1] 17/17
**around** [3] 40/12 48/12 65/11

**articulated** [1] 53/18
**as** [75]
**ask** [18] 7/11 10/2 14/21 16/8 22/8 22/25 23/22 25/5 25/21 25/23 28/7 29/13 45/22 48/5 48/7 49/22 51/15 55/11
**asked** [9] 11/1 16/21 17/10 20/17 30/18 47/3 52/11 60/10 63/17
**asking** [3] 29/6 55/3 57/25
**assesses** [1] 23/23
**assessment** [6] 8/24 13/24 13/25 23/24 24/17 25/24
**assist** [21] 4/21 10/18 11/4 11/5 11/7 15/13 15/20 15/22 16/1 19/5 34/17 38/6 38/12 41/3 49/10 51/13 56/12 57/5 63/8 63/13 66/17
**Association** [1] 47/8
**associations** [1] 47/24
**assume** [2] 20/25 66/15
**attempt** [2] 30/23 46/12
**attorney** [4] 3/2 3/3 3/4 49/19
**attorney's** [1] 47/10
**attorneys** [6] 45/15 46/10 46/17 47/2 47/8 48/4
**August** [4] 30/3 30/17 33/8 38/13
**August 16** [1] 38/13
**August 16th** [2] 30/3 33/8
**authorities** [1] 31/22
**authority** [6] 5/13 5/17 10/5 49/5 50/16 55/4
**automatically** [1] 58/2
**available** [5] 9/25 17/7 17/12 33/12 57/24
**Ave** [1] 3/12
**avenue** [4] 2/5 2/12 2/21 27/11
**average** [4] 22/23 52/4 52/6 58/19
**aware** [2] 22/3 48/7
**awareness** [1] 48/23
**away** [5] 19/3 34/18 38/10 42/24 64/15
**awful** [1] 62/9

## B

**back** [40] 4/11 7/18 11/10 12/7 13/22 12/25 14/14 15/3 15/4 15/11 15/16 15/19 16/2 16/10 24/12 24/13 24/13 25/4 25/23 27/4 27/20 30/3 30/21 31/4 40/24 41/1 52/7 52/10 53/18 55/15 58/4 59/6 62/6 62/20 63/1 63/9 63/10 63/11 64/19 65/2
**backed** [1] 13/15
**bad** [1] 41/19
**balancing** [1] 22/6
**Ballot** [1] 46/12
**ban** [1] 30/16
**bar** [10] 8/2 8/4 8/7 8/17 8/18 37/19 39/9 41/11 44/9 59/15
**based** [13] 11/14 12/22 16/3 24/9 26/19 42/10 46/18 46/22 48/11 48/21 53/7 59/21 63/11
**basis** [2] 32/4 60/6
**be** [78]
**bear** [1] 53/19
**bears** [1] 57/14
**because** [45] 4/19 5/9 8/10 8/11 8/13 10/9 10/13 13/7 15/14 15/19 16/7 17/10 17/11 17/21 18/19 23/7 23/8 23/25 27/14 34/13 35/18 37/21 37/24 38/8

**B**

**because...** [20]  38/18 38/24 39/15 42/3 43/19 44/23 45/17 46/11 46/22 48/7 48/14 51/15 52/5 55/12 56/16 57/13 59/15 61/16 62/19 64/21
**Beckerman** [4]  48/8 65/24 66/3 66/17
**Beckerman's** [1]  66/7
**become** [1]  44/14 61/18 66/2
**becomes** [2]  31/20 41/7
**beds** [6]  11/6 40/12 56/11 56/13 57/18 58/15
**been** [62]  5/21 7/3 9/2 15/14 16/13 18/7 18/8 21/13 21/25 22/3 23/6 24/4 24/9 26/1 27/21 28/18 28/24 29/9 31/7 31/22 32/4 32/19 35/2 35/3 36/6 36/7 36/16 37/14 37/15 37/16 38/23 38/24 39/14 40/1 45/2 45/18 46/7 47/16 47/20 48/8 48/25 50/20 54/20 56/4 58/12 58/20 58/23 60/1 60/2 62/1 62/2 62/5 62/8 62/16 62/25 62/25 63/1 63/1 63/3 63/21 64/10 64/13
**before** [20]  1/22 7/21 10/5 13/23 13/23 14/14 24/1 26/12 27/17 29/19 29/23 31/7 32/1 33/22 38/13 39/14 50/15 55/8 59/20 65/14
**begin** [1]  9/21
**beginning** [2]  54/19 60/3
**behalf** [7]  9/18 37/5 38/23 45/15 46/9 47/21 50/9
**behavioral** [8]  12/3 56/19 57/7 57/8 57/16 57/18 58/15 60/14
**behaviors** [1]  50/25
**being** [28]  4/7 11/1 11/2 11/15 20/7 20/8 21/2 21/2 21/3 22/1 27/19 28/4 36/19 36/19 43/2 44/17 47/8 51/21 52/20 53/20 54/2 54/7 57/21 58/2 58/2 58/3 58/16 59/8
**belied** [1]  59/4
**believe** [7]  9/7 26/16 57/17 59/19 63/8 63/13 65/11
**below** [1]  67/4
**bench** [2]  4/17 51/3
**Bend** [1]  3/5
**beneficial** [2]  28/6 29/10
**benefits** [1]  21/7
**best** [10]  3/4 3/4 6/3 25/12 28/10 28/17 30/14 35/17 62/2 66/1
**better** [9]  4/20 7/3 7/14 7/15 13/12 27/6 49/13 62/24 66/4
**between** [3]  17/25 23/4 57/5
**beyond** [1]  20/19
**biennium** [1]  62/16
**big** [3]  16/7 16/8 24/10
**Bill** [4]  16/23 21/16 22/18 24/25
**billion** [1]  62/15
**Billy** [1]  3/4
**Bisgaard** [1]  2/12
**bit** [3]  4/11 11/21 63/1
**blame** [1]  49/15
**blaming** [1]  35/25
**blanche** [1]  61/18
**blank** [1]  21/24
**blue** [1]  8/18
**blunt** [1]  20/14
**BOBBY** [1]  1/6

**bodies** [1]  10/12
**body** [4]  6/14 17/3 32/20 60/16
**bolstered** [1]  20/8
**Bond** [1]  3/5
**Bonita** [3]  3/11 67/9 67/10
**both** [5]  8/21 30/24 34/4 60/12 60/13
**bother** [1]  20/11
**BOWMAN** [1]  1/8 37/23
**box** [3]  2/24 3/8 21/23
**branches** [1]  33/25
**brief** [11]  10/7 17/3 17/16 21/18 26/8 26/11 26/15 27/1 27/2 29/1 30/18
**briefed** [2]  7/3 8/21
**briefing** [2]  26/11 38/17
**briefly** [4]  10/6 55/25 56/3 61/24
**bring** [3]  15/16 46/17 48/24
**bringing** [1]  47/21
**Brisbois** [1]  2/12
**broad** [1]  17/1
**broken** [3]  47/17 47/18 48/14
**brought** [1]  34/14
**Bryce** [1]  51/12
**build** [1]  33/6
**built** [2]  8/23 32/15
**bump** [1]  8/14
**burdens** [1]  6/7 22/7
**Bybee** [1]  51/12 52/10

**C**

**cahoots** [1]  52/21
**calculus** [1]  53/16
**calendar** [1]  62/17
**call** [2]  5/13 65/24
**called** [2]  37/19 41/11
**came** [1]  27/4
**can** [38]  7/6 11/21 14/6 14/12 16/25 17/5 18/20 19/3 19/9 21/14 22/22 24/5 24/17 28/7 28/11 32/1 35/9 35/21 39/13 40/7 46/17 47/9 49/7 49/8 49/9 49/25 50/4 50/4 50/5 53/4 57/13 61/9 62/2 62/7 62/22 64/8 64/15 66/13
**can't** [9]  6/18 14/15 15/7 15/21 16/13 44/19 47/6 49/12 57/24
**cannot** [8]  11/5 38/21 39/11 41/24 63/7 63/9 63/10 63/14
**cap** [1]  15/17
**capacity** [9]  14/19 14/24 15/13 29/14 40/10 40/13 42/12 58/7 58/8
**capricious** [1]  52/21
**care** [20]  4/22 11/3 11/8 11/18 13/2 20/16 20/18 20/23 21/3 24/15 24/19 24/20 31/1 40/2 40/4 41/8 42/6 53/10 53/11 56/8
**cared** [1]  8/5
**carefully** [1]  6/14
**Carr** [9]  2/20 9/19 9/25 10/11 17/11 18/9 19/24 20/4 52/3
**carry** [1]  10/17
**carte** [1]  61/18
**case** [25]  1/4 1/9 1/14 4/5 16/23 17/3 17/17 17/17 17/18 17/17 17/22 17/23 18/7 24/13 29/10 31/20 37/7 37/23 41/13 48/8 51/10 53/21 58/4 60/20 63/12
**cases** [7]  12/16 17/16 28/3 32/20 32/22 40/22 41/17

**categories** [2]  46/13 46/21
**Category** [1]  46/20
**causal** [1]  31/1
**cause** [1]  67/6
**causing** [3]  31/13 31/24 33/1 34/1
**cell** [3]  58/3 58/16 58/19
**CENTER** [3]  1/3 4/6 53/7
**certain** [2]  9/3 34/10
**Certainly** [1]  60/23
**certified** [1]  67/7
**certify** [1]  67/4
**cetera** [1]  19/6
**challenge** [8]  5/15 5/16 5/18 7/11 8/1 45/17 48/3 48/4
**challenged** [1]  31/3
**challenges** [2]  5/13 56/11
**chance** [1]  44/17
**change** [3]  14/13 14/13 24/8
**changed** [1]  51/1
**changes** [1]  29/21
**changing** [1]  8/23
**Chapter** [1]  16/24
**charge** [2]  43/19 52/19
**charges** [2]  22/6 47/21
**chart** [7]  21/23 22/23 23/2 23/3 23/9 23/9 24/6
**charts** [2]  22/21 23/4
**choice** [3]  34/15 34/19 34/24
**choices** [1]  36/21
**chooses** [1]  35/11
**chose** [1]  45/17
**chosen** [1]  6/6
**Circuit** [6]  5/22 17/4 18/3 30/10 34/1 51/18
**circumstances** [1]  39/12
**cite** [2]  17/16 17/20
**cited** [3]  17/3 40/21 54/22
**citizens** [1]  35/11
**city** [1]  27/19
**civil** [18]  8/3 14/25 16/1 19/13 25/15 37/18 39/15 42/11 42/23 44/8 53/13 54/2 56/5 56/6 56/10 56/24 59/14 65/3
**civilly** [22]  8/6 8/13 8/15 38/15 38/24 39/5 39/9 39/10 39/23 40/1 40/5 40/23 40/25 41/6 42/1 42/9 45/2 53/2 53/23 52/2 59/9 59/15
**CLACKAMAS** [1]  3/2
**claim** [1]  55/9
**clarification** [1]  66/16
**clarifications** [1]  48/16
**clarifies** [1]  65/3
**clear** [4]  17/4 29/24 37/25 64/16
**clearly** [1]  59/10
**clients** [6]  49/17 51/24 52/22 53/1 53/23 62/8
**clinician** [1]  54/8
**close** [1]  10/1
**closer** [1]  9/12
**cluster** [1]  40/7
**codification** [1]  8/19
**codified** [1]  16/24
**collateral** [8]  38/20 39/6 41/18 41/18 41/22 60/22 60/24 61/2
**colleague** [1]  65/23
**colleagues** [2]  4/17 50/5

**C**

**collectively [1]** 10/15
**collusion [1]** 63/1
**come [20]** 8/18 12/5 12/6 12/7 13/22 14/23 15/3 15/3 25/3 32/17 33/21 43/22 48/13 49/9 54/14 61/8 61/8 62/6 63/2 65/15 65/17
**comes [2]** 7/6 7/7
**comfortable [2]** 25/7 52/1
**coming [7]** 11/21 13/25 25/18 27/20 62/9 62/20 65/25
**comment [2]** 10/6 37/9
**comments [2]** 4/8 39/8
**commit [1]** 35/5
**commitment [13]** 14/25 16/1 19/14 25/16 37/18 39/16 42/11 53/13 56/5 56/6 56/10 56/24 65/3
**commitments [5]** 8/3 42/23 44/8 44/10 54/3
**committed [24]** 8/5 8/7 8/8 8/13 8/16 38/15 38/24 39/5 39/9 39/10 39/23 40/1 40/5 40/23 40/25 41/6 42/1 42/9 45/2 53/3 53/23 59/2 59/9 59/15
**committees [1]** 52/14
**communities [1]** 25/4
**community [24]** 10/23 11/1 11/8 12/7 14/7 22/7 22/10 22/17 24/12 24/23 25/1 25/12 25/19 56/8 56/19 57/6 57/14 57/22 58/2 58/14 58/22 59/7 59/11 59/17
**compare [1]** 58/20
**compared [2]** 21/4 52/4
**comparison [2]** 43/13 57/5
**compel [1]** 34/9
**compelled [1]** 20/19
**compelling [1]** 47/24
**compete [1]** 45/2
**competency [7]** 16/10 16/12 16/13 17/23 64/19 64/21 64/21
**competent [4]** 64/22 64/24 65/5 65/5
**competing [1]** 34/6
**complaint [1]** 57/17
**compliance [9]** 29/3 30/7 34/9 51/20 54/24 55/21 62/20 64/1 65/17
**complicated [3]** 4/23 28/16 47/5
**comply [6]** 16/24 30/24 31/5 31/14 31/23 33/9
**comported [1]** 34/13
**concept [1]** 42/16
**concern [5]** 20/6 20/14 36/3 36/18 44/16
**concerned [4]** 8/22 25/3 26/10 56/18
**concerns [7]** 6/17 14/16 14/18 34/2 34/13 53/1 55/2
**conclude [1]** 41/11
**concluded [1]** 66/22
**conclusion [3]** 5/5 54/7 54/10
**concrete [1]** 58/16
**condition [3]** 43/10 56/12 57/23
**conference [1]** 48/18
**conferences [4]** 48/9 48/18 49/10 49/21
**confined [1]** 53/20
**confinement [1]** 53/19
**conformed [1]** 67/7
**consequences [2]** 60/22 61/3
**consider [3]** 25/24 30/1 50/15

**consideration [1]** 57/1
**considerations [4]** 30/10 30/22 34/6 35/9
**considered [5]** 24/5 24/24 28/4 29/3 54/16
**considering [1]** 38/19
**consistent [1]** 34/14
**consistently [2]** 37/20 61/15
**consolidated [1]** 37/7
**conspicuously [1]** 55/6
**Constitution [5]** 4/20 4/24 31/6 32/21 33/9
**constitutional [19]** 5/7 5/13 7/8 16/25 17/2 23/11 31/2 31/13 33/2 33/21 40/19 41/2 41/13 41/21 41/24 43/2 43/10 54/25 55/13
**consulted [1]** 65/20
**contain [1]** 17/9
**contemplated [1]** 6/8
**contempt [15]** 27/4 27/21 28/8 28/10 28/11 28/12 28/17 28/21 28/24 29/8 30/2 30/5 30/7 30/16 51/17
**context [1]** 65/11
**continue [1]** 14/9
**continues [1]** 23/23
**continuing [2]** 56/19 62/17
**contract [1]** 54/1
**contradict [2]** 55/1 55/5
**contravene [1]** 18/13
**contravenes [1]** 32/8
**contravening [4]** 9/23 17/2 18/5 18/22
**control [1]** 11/6
**convening [1]** 29/21
**conversations [3]** 45/19 63/22 66/9
**convicted [1]** 36/10
**Cooper [3]** 2/4 50/9 57/2
**core [2]** 41/15 58/5
**correct [7]** 42/24 56/3 56/13 56/15 63/18 63/18 67/5
**corrected [1]** 49/19
**Corrections [1]** 17/18
**corresponding [2]** 14/16 14/19
**could [22]** 4/13 6/5 6/25 9/13 11/11 14/14 14/21 24/15 24/16 25/11 29/14 32/11 32/17 37/23 42/15 42/19 48/18 49/18 53/23 53/25 58/17 65/16
**counsel [15]** 2/21 2/24 9/18 38/17 45/19 47/23 48/7 48/15 49/18 50/5 50/12 50/20 50/22 52/2 54/5
**counties [10]** 9/18 10/8 10/9 10/16 16/20 18/12 20/6 47/3 47/23 51/9
**counties' [1]** 27/2
**country [1]** 4/13
**county [28]** 2/20 2/21 2/23 2/24 3/1 3/2 3/3 9/7 9/8 9/8 9/18 9/19 10/11 10/14 10/16 10/25 11/9 12/10 50/12 50/20 50/21 51/9 52/2 52/15 54/1 54/2 54/5
**couple [2]** 28/7 64/15
**course [10]** 5/1 6/20 6/24 7/9 14/6 27/25 29/16 29/25 30/15 30/15
**court [95]**
**Court's [32]** 9/21 10/10 18/13 18/21 20/20 21/9 21/13 21/17 21/21 24/19 25/1 25/6 27/22 28/1 29/2 30/9 30/23 34/4 35/13 35/20 36/15 37/21 38/8 46/14

50/12 55/10 55/20 59/24 60/14 62/22 63/11 63/23
**Courthouse [1]** 3/11
**courts [5]** 15/23 16/5 18/20 38/24 60/5
**COVID [2]** 23/8 23/8
**craft [1]** 28/20
**crafting [1]** 27/14
**create [5]** 8/24 25/11 25/12 33/18 61/11
**created [5]** 13/9 31/2 33/13 56/11 62/8
**creates [1]** 16/19
**crimes [6]** 23/20 46/12 46/15 46/19 46/22 47/15
**criminal [8]** 16/10 31/17 46/20 46/21 46/23 50/25 63/12 64/20
**criteria [4]** 37/19 42/20 44/11 63/21
**criticize [1]** 20/8
**CRR [2]** 3/11 67/10
**CSR [2]** 3/11 67/10
**cure [1]** 28/11
**curious [1]** 44/1
**current [2]** 21/4 30/15
**currently [2]** 46/25 52/5
**curtailment [1]** 40/22
**cusp [1]** 29/20
**custody [1]** 14/17
**cut [1]** 26/9
**cuts [1]** 26/19
**cv [4]** 1/4 1/9 1/14 4/5

**D**

**d'etre [1]** 66/11
**danger [1]** 14/24
**dangerous [5]** 8/5 8/8 22/11 59/16 60/4
**dangerousness [8]** 42/10 42/14 42/17 42/17 44/5 44/9 46/23 63/22
**dangers [1]** 25/12
**data [7]** 6/19 7/19 22/15 39/13 42/3 52/3 55/19
**date [3]** 23/24 25/24 67/10
**day [8]** 7/6 7/7 18/1 18/3 19/6 24/4 34/12 45/21
**days [19]** 13/20 21/7 21/7 21/9 21/14 22/23 22/24 23/7 23/7 23/12 23/13 23/13 24/8 34/18 42/2 42/5 51/13 52/7 52/9
**days' [1]** 47/13
**de [1]** 38/11
**de-prioritizing [1]** 38/11
**deadlines [2]** 13/9 20/16
**deal [1]** 4/17
**dealing [1]** 64/18
**deals [1]** 17/21
**death [1]** 58/6
**decades [1]** 35/14
**decades-old [1]** 35/14
**December [2]** 55/17 67/9
**decide [2]** 33/10 42/13
**decided [2]** 14/6 37/17
**decides [1]** 19/20
**decision [12]** 6/11 20/8 26/19 26/24 27/9 27/16 31/19 33/14 34/22 35/8 60/14 66/13
**decisions [3]** 34/5 35/4 48/10
**declaration [5]** 23/14 23/15 23/17 24/6 52/15
**declarations [1]** 59/5

**D**

**decompensate [2]** 12/9 15/6
**decompensated [1]** 25/23
**decompensating [1]** 12/22
**dedicated [1]** 58/15
**deepest [1]** 34/1
**defendant [4]** 1/17 31/5 34/17 55/3
**defendant's [2]** 31/5 31/23
**defendants [9]** 1/7 1/12 2/16 29/3 29/12 31/16 45/20 55/5 61/7
**defendants' [1]** 30/23
**Defenders [1]** 38/25
**defense [2]** 31/7 31/22
**definition [1]** 60/24
**degree [4]** 6/12 6/13 58/21 59/13
**delayed [1]** 17/22
**delays [2]** 28/15 32/13
**deliberate [1]** 34/21
**DELORES [1]** 1/11
**demands [2]** 4/24 32/21
**denominator [3]** 39/18 39/20 39/22
**deny [1]** 55/11
**department [6]** 2/16 10/22 12/2 12/11 14/4 17/18
**departments [4]** 10/14 10/16 11/1 11/4
**departure [1]** 10/21
**depend [2]** 57/22 57/23
**depends [3]** 43/7 61/14 61/17
**deprivation [5]** 57/10 57/11 58/18 58/21 59/14
**depriving [1]** 38/9
**Derek [1]** 21/12
**dereliction [1]** 28/15
**designed [4]** 28/24 51/5 51/6 57/8
**desperate [1]** 7/16
**despite [1]** 51/23
**destroy [1]** 39/12
**detail [1]** 18/9
**detainees [3]** 57/5 57/5 58/19
**determination [1]** 30/23
**detriments [1]** 21/22
**developed [1]** 33/25
**devote [1]** 34/22
**dichotomy [1]** 52/18
**did [9]** 18/10 22/11 26/12 26/13 27/2 41/12 62/18 63/2 64/6
**didn't [12]** 8/18 18/4 29/19 33/18 35/18 36/2 54/6 56/4 56/14 56/16 61/3 61/6
**die [1]** 51/10
**difference [3]** 23/4 24/10 53/12
**different [10]** 5/10 14/23 18/12 36/20 45/16 52/7 53/15 57/11 58/3 65/20
**difficult [2]** 41/8 64/11
**difficulty [1]** 56/10
**direct [3]** 5/13 11/6 47/8
**directed [1]** 10/11
**directly [5]** 5/7 10/13 16/18 35/22 55/9
**director [1]** 12/3
**directors [1]** 56/8
**disabilities [3]** 52/20 53/8 55/13
**Disability [8]** 2/5 28/18 39/1 50/9 52/18 53/6 54/1 57/2
**discharge [3]** 22/5 22/10 47/13
**discharged [2]** 26/1 47/11
**disclaimed [1]** 39/4

**discretion [1]** 20/15
**discuss [3]** 9/25 17/11 56/9
**discussed [2]** 14/8 62/1
**discussion [3]** 16/7 46/21 47/16
**dispute [1]** 40/3
**disputing [1]** 18/13
**dissolved [1]** 27/4
**district [15]** 1/1 1/2 1/23 3/1 3/2 3/3 3/11 18/4 45/15 46/10 46/17 47/2 47/7 47/9 48/4
**divide [2]** 22/12 22/13
**dividing [1]** 9/20
**Division [1]** 2/17
**divisions [1]** 10/17
**do [46]** 6/20 6/25 11/5 12/22 15/6 15/23 18/20 19/3 19/9 20/13 26/23 27/18 29/19 29/22 32/10 34/20 37/21 38/25 39/18 41/4 42/13 42/17 42/17 44/4 46/13 48/19 49/2 49/8 51/3 51/20 55/5 55/9 56/4 59/1 59/4 59/14 60/19 61/19 62/7 62/22 64/3 64/8 64/15 65/11 65/11 66/1
**docket [3]** 52/14 52/16 56/17
**doctrinal [6]** 9/22 26/9 41/11 45/17 48/3 48/11
**document [2]** 21/11 22/21
**documented [1]** 58/18
**does [15]** 6/12 7/4 17/9 19/7 20/12 20/23 25/9 26/8 26/8 33/10 34/2 45/21 53/1 53/25 58/20
**doesn't [9]** 18/15 18/18 18/21 25/2 25/6 31/21 46/12 47/2 65/6
**dog [1]** 53/10
**doing [8]** 18/14 32/4 32/24 33/20 33/23 34/3 38/9 61/6
**don't [39]** 5/17 6/16 7/1 8/7 9/5 12/8 12/9 20/10 23/21 24/14 26/16 33/18 35/17 35/25 38/12 40/3 41/19 42/2 42/21 44/22 45/25 49/25 53/9 53/10 54/11 55/12 57/4 58/13 59/9 59/19 59/21 61/11 61/18 62/21 63/3 63/8 63/13 64/3 66/1
**done [10]** 6/3 17/25 21/13 24/4 29/23 45/8 48/19 48/23 48/25 65/10
**door [6]** 7/18 7/18 32/18 44/18 44/20 45/2
**down [6]** 22/25 30/13 36/8 51/19 51/25 56/21
**Dr [1]** 18/24
**Dr. [25]** 5/2 19/25 21/5 22/3 22/22 24/10 30/6 35/3 36/4 36/10 38/16 43/23 49/1 51/19 54/6 54/8 54/20 55/15 56/4 59/25 61/6 65/20 66/4 66/7 66/8
**Dr. Pinals [16]** 5/2 35/3 36/10 43/23 49/1 51/19 54/6 54/8 54/20 55/15 56/4 59/25 61/6 65/20 66/4 66/8
**Dr. Pinals' [9]** 19/25 21/5 22/3 22/22 24/10 30/6 36/4 38/16 66/7
**drafted [1]** 35/13
**drafting [1]** 27/13
**drastically [2]** 6/6 21/8
**draw [1]** 57/4
**drive [1]** 28/24
**driven [2]** 32/14 53/22
**DRO [1]** 50/10
**drop [1]** 21/7
**drug [1]** 19/5

**DSHS [1]** 17/21
**dual [1]** 32/6
**duration [1]** 53/18
**during [2]** 36/9 47/4
**duty [1]** 28/15
**dying [2]** 52/11 52/24

**E**

**e-court [1]** 47/2
**each [1]** 10/13
**earlier [6]** 11/15 11/16 12/24 18/17 33/13 50/12
**early [2]** 11/3 28/13
**earth [2]** 62/9 62/18
**easy [1]** 54/12
**edging [1]** 41/8
**effect [4]** 28/2 34/16 39/7 45/23
**effecting [1]** 35/10
**effectively [1]** 33/12
**effectiveness [1]** 23/23
**effects [2]** 38/20 39/6
**efficient [1]** 35/12
**effort [3]** 27/22 65/13 65/18
**efforts [5]** 27/3 29/3 39/3 49/15 51/24
**Eighth [2]** 14/16 31/21
**either [3]** 12/7 12/10 25/21
**elect [1]** 48/21
**element [1]** 34/1
**elemental [1]** 30/22
**elements [1]** 52/3
**eligible [1]** 47/13
**eliminate [2]** 25/5 25/22
**eliminating [1]** 24/4
**else [5]** 15/1 38/25 42/14 44/6 65/4
**else's [1]** 35/23
**elsewhere [1]** 4/16
**embrace [1]** 55/12
**Emily [2]** 2/4 50/8
**empirical [1]** 35/1
**enacted [2]** 31/25 33/25
**enacting [1]** 31/16
**encompassed [1]** 7/25
**end [8]** 8/13 22/5 29/7 35/7 36/14 37/16 55/14 62/17
**endeavors [1]** 49/13
**ended [1]** 21/18
**enforce [2]** 4/25 60/16
**enforcement [2]** 28/5 35/10
**enforcing [1]** 60/21
**engage [1]** 49/13
**engaged [2]** 5/2 45/18
**enough [3]** 7/10 8/14 47/1
**ensure [1]** 33/20
**enter [1]** 62/4
**entered [2]** 39/7 63/15
**entering [2]** 41/12 50/24
**entire [1]** 38/9
**entirely [1]** 14/8
**entitled [3]** 38/6 43/15 67/6
**equitable [1]** 17/1
**equivalent [1]** 58/16
**erase [1]** 30/15
**erased [1]** 30/16
**Eric [2]** 2/11 37/4
**especially [3]** 47/16 57/7 58/6

**E**

**essential [2]** 26/20 27/18
**essentially [4]** 27/5 27/6 37/11 57/25
**establish [1]** 32/4
**esteemed [1]** 65/23
**et [7]** 1/3 1/6 1/8 1/11 1/13 4/6 19/6
**et cetera [1]** 19/6
**evades [1]** 7/8
**evaluation [1]** 18/3
**evaluations [3]** 17/23 17/25 19/4
**even [18]** 7/1 7/9 8/6 10/8 12/5 15/19
  19/16 19/20 26/25 34/24 34/25 35/7
  35/11 44/6 44/19 46/20 51/16 55/5
**event [1]** 7/21
**ever [3]** 38/15 63/9 63/14
**every [2]** 28/3 49/19
**everyone [2]** 5/24 48/12
**everywhere [1]** 66/11
**evidence [14]** 5/1 6/14 6/19 7/19 35/1
  36/5 50/19 58/12 58/20 58/23 59/9 59/9
  59/22 61/5
**evidenced [1]** 34/15
**evident [1]** 34/19
**evidentiary [1]** 5/5
**exact [2]** 42/19 56/9
**exactly [3]** 13/17 29/16 43/12
**exaggerated [1]** 22/20
**examine [1]** 56/5
**example [6]** 7/2 7/10 32/22 33/2 51/7
  64/19
**exceed [1]** 42/12
**except [4]** 37/15 37/24 38/7 38/12
**exception [2]** 30/4 46/17
**exceptionally [1]** 37/18
**excessive [3]** 55/10 56/11 58/6
**excuse [2]** 34/14 57/15
**Exhibit [2]** 21/12 24/6
**Exhibit 2 [2]** 21/12 24/6
**exist [1]** 57/16
**existed [1]** 14/22
**expanding [1]** 19/5
**expect [2]** 23/21 29/12
**expected [1]** 29/15
**expediencies [1]** 7/17
**expedited [2]** 37/19 59/8
**experience [2]** 12/23 58/22
**experienced [1]** 12/16
**expert [7]** 28/20 34/4 51/20 51/23 59/25
  63/2 65/14
**expert's [1]** 18/19
**expertise [1]** 66/7
**experts [1]** 18/20
**explain [1]** 38/21
**explained [1]** 23/14
**explore [1]** 45/1
**exposed [1]** 58/5
**extending [1]** 25/24
**extensively [2]** 40/21 56/9
**extraordinary [1]** 39/11

**F**

**face [2]** 5/11 64/12
**faced [2]** 6/13 43/13
**facilities [4]** 7/5 32/9 33/2 33/6
**facility [2]** 62/11 62/14

**facing [1]** 14/15
**fact [16]** 5/20 8/19 19/1 20/9 26/14
  29/19 31/24 32/13 32/14 35/1 51/8 57/14
  58/1 58/4 58/23 59/4
**factors [1]** 31/1
**facts [5]** 6/2 17/21 51/3 51/5 51/14
**factual [2]** 45/23 50/13
**factually [2]** 7/20 57/20
**failures [1]** 6/7
**fair [4]** 20/24 54/12 61/3 61/4
**false [1]** 38/5
**Fancy [1]** 37/13
**FAQ [1]** 63/16
**FAQs [1]** 16/4
**far [3]** 21/13 22/16 58/21
**favor [1]** 38/11
**feared [1]** 6/21
**feasible [1]** 11/19
**February [1]** 55/22
**federal [6]** 4/13 16/22 17/3 17/15 32/23
  40/22
**federalism [3]** 34/13 55/2 55/8
**feel [1]** 25/6
**felony [3]** 21/25 25/18 44/9
**fervently [1]** 7/7
**few [3]** 15/8 15/20 53/6
**fidelity [1]** 33/23
**field [1]** 7/5 7/12 7/13
**Fifth [1]** 2/12
**fight [1]** 53/11
**figure [1]** 47/6
**filed [1]** 26/15
**financial [1]** 53/9
**find [4]** 4/13 10/2 26/22 35/12
**finding [11]** 5/10 15/21 15/24 15/25
  17/6 19/21 31/16 54/9 56/10 61/11 65/4
**findings [15]** 9/23 12/4 17/9 17/15
  18/15 18/19 18/22 51/8 54/12 54/15 58/4
  58/5 64/18 65/9 65/19
**finds [1]** 16/13
**fine [2]** 9/15 46/4
**fire [1]** 46/3
**first [20]** 2/21 4/25 9/5 9/11 18/4 18/12
  21/6 21/7 22/2 24/7 27/16 27/22 32/19
  32/22 41/10 50/2 53/6 64/23 65/6 65/10
**fix [6]** 18/5 18/8 19/10 48/24 49/2 51/21
**fixed [1]** 32/2
**fixing [1]** 48/14
**flatly [1]** 52/21
**fleshing [1]** 60/20
**flexibility [5]** 22/9 25/10 42/9 42/23
  42/25
**flexible [1]** 9/3
**flip [1]** 14/4
**flows [1]** 33/4
**focus [2]** 52/25 54/13
**focused [1]** 39/3
**focuses [1]** 5/19
**Focusing [1]** 59/13
**fold [3]** 39/7 65/25 66/17
**folks [1]** 48/14
**follow [1]** 22/17
**followed [2]** 17/18 43/24
**following [1]** 31/12
**fond [1]** 5/21

**foot [1]** 35/17
**force [1]** 55/3
**forced [2]** 13/14 22/9
**foregoing [1]** 67/4
**forensic [2]** 19/4 38/11
**forensically [1]** 53/22
**formal [1]** 66/3
**forth [2]** 59/16 63/1
**Forty [1]** 23/13
**forward [20]** 26/16 28/14 28/22 29/25
  30/15 35/17 36/3 36/17 49/14 51/20
  58/13 58/20 58/24 59/24 59/24 61/17
  62/10 65/23 66/15 66/19
**found [10]** 4/19 4/21 18/6 24/7 25/15
  29/2 29/7 64/22 64/24 65/5
**Fourteenth [1]** 14/16
**frame [1]** 36/9
**frank [2]** 36/10 47/1
**frankly [1]** 61/15
**frequency [1]** 12/19
**frequent [1]** 56/6
**frequently [2]** 4/18 63/17
**friends [2]** 4/16 39/2
**front [6]** 5/15 6/8 7/17 32/18 52/14
  52/24
**full [1]** 29/20
**fully [1]** 35/24
**functioning [1]** 36/21
**fund [1]** 32/9
**fundamental [2]** 34/5 35/9
**fundamentally [1]** 41/3
**further [4]** 14/13 14/14 18/6 30/9
**future [2]** 6/17 61/13

**G**

**gained [1]** 43/8
**game [1]** 49/15
**Garrett [1]** 52/15
**Garza [3]** 3/7 3/7 26/6
**Garza's [1]** 60/11
**gave [2]** 49/24 62/15
**GEI [5]** 41/3 42/11 45/3 57/5 59/18
**general [3]** 5/24 7/21 44/8
**generated [1]** 31/16
**get [23]** 5/4 5/16 7/17 8/15 21/6 22/13
  22/15 24/18 28/21 30/21 34/16 39/10
  40/24 41/1 41/8 41/10 42/3 44/19 44/23
  45/4 53/10 53/11 63/10
**get-go [1]** 5/16
**gets [2]** 16/10 42/13
**getting [7]** 4/22 7/10 8/8 11/25 12/21
  32/14 52/23
**give [5]** 18/8 35/25 42/8 42/9 53/4
**given [5]** 9/2 18/8 34/6 40/18 49/14
**giving [1]** 43/25
**go [28]** 5/16 9/3 9/11 12/23 13/21 15/11
  20/10 24/23 27/17 29/12 30/3 32/1 32/13
  32/16 35/11 35/21 37/1 37/3 44/22 45/16
  46/6 49/7 50/2 52/16 55/14 56/2 58/4
  65/2
**goal [1]** 21/21
**goes [6]** 9/5 26/17 30/17 63/11 64/19
  64/24
**going [34]** 8/12 9/21 15/19 19/9 19/10
  19/11 19/22 19/24 22/2 23/25 28/2 31/4

**G**

**going... [22]** 36/3 37/18 40/3 40/12 41/9 44/5 44/8 44/9 47/16 48/3 49/5 49/14 50/17 51/21 51/25 54/15 55/25 63/10 63/11 65/22 65/23 65/24
**gone [1]** 14/22
**good [8]** 7/9 11/19 26/6 26/17 41/10 46/25 47/20 50/8
**got [4]** 4/12 4/25 47/5 48/21
**governing [1]** 10/11
**government [2]** 4/15 36/13
**governmental [1]** 33/24
**governor [1]** 48/21
**governor-elect [1]** 48/21
**grateful [1]** 65/8
**great [2]** 12/9 14/10
**grids [1]** 63/22
**ground [2]** 6/3 43/8
**grounded [4]** 6/14 6/18 6/18 7/19
**grounding [1]** 13/9
**group [1]** 41/22
**Grove [1]** 3/8
**growing [1]** 36/4
**guess [3]** 8/17 11/23 29/6
**guessing [1]** 44/14
**guidance [1]** 59/24
**guilty [4]** 31/16 37/24 38/7 38/12

**H**

**had [27]** 4/9 6/8 12/17 15/15 15/18 15/21 22/20 23/3 25/14 28/17 31/9 31/13 34/20 36/3 37/21 38/10 38/16 43/23 46/8 50/18 51/4 51/10 51/13 53/7 54/13 58/7 64/19
**hadn't [1]** 15/17
**hand [6]** 6/5 6/6 6/15 23/9 23/9 55/2
**handled [1]** 40/7
**hang [1]** 62/6
**happen [4]** 7/24 15/2 53/14 53/15
**happened [7]** 11/24 15/8 27/25 28/23 29/9 29/17 50/23
**happening [1]** 54/25
**happens [4]** 12/5 13/22 14/10 25/3
**harbor [1]** 40/19
**hard [4]** 4/15 11/23 29/11 66/10
**harm [3]** 35/11 52/17 52/22
**harmed [1]** 51/7
**harmful [2]** 41/19 41/20
**harms [1]** 6/7
**has [51]** 7/3 13/19 14/23 16/4 16/9 16/13 16/22 17/1 21/21 21/25 21/25 22/23 23/6 24/4 24/9 31/24 32/19 32/19 33/25 35/3 36/16 37/20 38/22 39/4 39/5 40/17 40/18 40/23 48/8 48/25 50/16 50/20 51/10 53/7 53/19 54/1 54/20 54/22 54/24 60/1 61/6 62/1 62/2 62/8 62/24 62/25 63/9 63/14 64/16 65/17 65/20
**hasn't [6]** 11/24 27/25 32/4 32/24 37/15 51/1
**have [93]**
**haven't [2]** 4/9 23/20
**having [3]** 22/3 31/10 54/14
**he [4]** 23/17 25/17 25/17 52/16
**He's [1]** 19/24
**head [1]** 38/5

**headed [1]** 42/11
**heading [1]** 16/11
**health [28]** 1/13 2/11 7/5 7/12 7/13 10/16 10/22 10/25 11/4 12/2 12/3 12/10 14/4 33/19 36/22 37/5 37/6 47/18 49/5 51/1 55/4 57/8 57/16 57/18 58/7 58/15 58/19 60/14
**healthcare [1]** 25/20
**hear [4]** 4/8 35/16 40/3 54/11
**hearing [5]** 5/12 10/1 25/15 54/19 64/21 65/25
**hearings [1]** 38/14
**heaven [2]** 62/9 62/18
**heavy [1]** 54/13
**held [4]** 28/17 34/5 54/2 64/22
**help [2]** 65/14 65/25
**helpful [3]** 63/3 63/21 64/13
**helping [1]** 49/10
**her [11]** 19/1 19/17 54/6 54/9 54/21 55/15 55/16 56/6 56/7 60/1 65/24
**here [37]** 4/4 4/7 4/9 4/12 4/19 4/25 5/15 5/24 6/9 9/18 10/8 13/24 16/20 18/10 21/23 27/8 27/25 28/12 28/23 29/17 33/18 35/23 38/23 41/20 43/18 44/1 47/20 52/24 53/12 60/5 60/5 60/16 61/12 64/14 65/11 65/21 65/24
**here's [1]** 19/9
**Hernandez [2]** 38/4 43/13
**hey [1]** 61/2
**high [7]** 8/2 8/4 8/7 8/17 37/19 39/9 59/15
**higher [1]** 35/7
**Hillsboro [1]** 2/22
**him [1]** 52/10
**hinting [1]** 35/22
**hire [1]** 7/5
**hired [1]** 4/24
**hiring [3]** 7/10 7/12 19/4
**his [2]** 23/17 43/13
**historically [1]** 62/25
**histories [1]** 46/20
**history [2]** 46/21 46/23
**hold [3]** 19/6 20/15 28/2
**holding [1]** 30/1
**holds [1]** 22/16
**Honor [23]** 9/6 9/16 11/19 20/5 20/12 24/3 26/6 36/1 37/4 45/10 45/14 50/3 54/18 55/25 56/23 57/21 60/23 61/1 61/15 61/21 61/24 62/14 62/24
**HONORABLE [1]** 1/22
**hope [2]** 7/6 7/7
**horribles [1]** 45/25
**Horst [1]** 2/8
**hospital [70]**
**hospital's [2]** 21/18 56/1
**hospitalization [1]** 13/1
**hospitals [11]** 8/2 21/19 50/6 50/21 56/9 56/25 57/14 57/16 58/13 58/15 59/5
**hotel [1]** 25/17
**housing [1]** 14/18
**how [24]** 4/12 4/25 5/3 6/17 7/19 10/13 27/23 31/19 32/16 35/5 40/23 42/15 42/19 43/7 45/21 45/23 48/19 49/11 51/20 52/4 52/8 54/19 62/1 64/24
**However [1]** 57/4

**hugely [1]** 39/3
**hundred [2]** 6/12 23/7
**hundreds [2]** 42/4 55/21
**hurrying [1]** 7/18
**hurt [1]** 39/12
**hydraulic [1]** 8/22
**hypotheses [1]** 60/6

**I**

**I'd [8]** 9/1 21/22 22/25 23/22 25/5 25/21 25/23 29/7
**I'll [7]** 4/12 5/12 26/5 35/16 64/8 65/19 66/13
**I'm [46]** 4/24 5/14 5/23 6/10 6/11 6/13 6/19 8/4 8/6 9/6 9/17 9/18 9/21 11/23 13/6 13/8 14/1 19/22 23/1 23/11 23/25 25/18 29/6 29/24 30/13 31/8 35/24 37/4 38/23 40/12 43/19 43/25 44/1 44/5 44/13 44/16 44/25 45/8 47/17 49/14 55/25 63/10 65/8 65/23 66/3
**I've [16]** 5/21 8/1 12/2 12/3 12/4 12/16 12/17 32/25 43/24 44/1 46/7 47/3 49/14 54/16 64/12 66/16
**idea [6]** 25/17 26/17 33/1 41/10 44/18 66/17
**ideas [2]** 27/12 62/6
**identical [1]** 17/21
**identifiable [1]** 49/16
**identified [5]** 19/17 47/13 48/15 48/25 49/17
**identify [2]** 18/5 48/18
**identifying [1]** 63/3
**ignores [1]** 61/5
**ill [4]** 20/7 24/12 39/10 42/15
**illness [5]** 40/5 51/7 56/18 57/21 58/10
**immediate [4]** 27/10 28/5 28/5 28/14
**immediate path [1]** 28/14
**impact [1]** 6/22
**impacting [2]** 5/3 41/6
**impacts [3]** 10/13 41/18 41/18
**imperative [1]** 23/11
**implement [2]** 17/13 30/16
**implementation [1]** 66/16
**implementations [1]** 10/18
**implementing [1]** 55/17
**implements [2]** 30/5
**implies [1]** 19/2
**important [13]** 6/25 13/7 18/24 33/17 36/12 40/7 43/6 46/10 46/22 47/12 47/15 54/14 64/2
**importantly [1]** 10/25
**impose [1]** 60/20
**imposed [1]** 29/8
**imposing [2]** 32/21 33/5
**imposition [1]** 34/10
**impression [1]** 7/22
**improve [1]** 19/3
**inability [6]** 8/15 31/5 31/5 31/14 31/23 42/5
**inadmissible [1]** 50/21
**include [25]** 23/19 46/12 46/14 53/2 53/23
**included [4]** 22/22 23/9 46/11 66/8
**includes [3]** 19/13 23/5 23/10
**including [9]** 16/12 17/2 47/4 56/19

**I**

**including... [5]** 56/24 62/11 62/13 63/16
63/16
**incorporate [2]** 22/8 25/2
**incorporates [1]** 37/11
**increase [1]** 10/23
**increases [1]** 32/9
**increasing [1]** 14/15
**independent [1]** 28/20
**indicated [3]** 26/10 31/10 33/8
**indirectly [1]** 10/9
**individual [2]** 25/14 51/12
**individualized [2]** 8/24 46/16
**individuals [24]** 11/2 11/7 11/10 13/2
14/5 14/9 14/19 20/19 23/19 25/1 25/8
27/23 36/6 36/9 38/10 38/23 40/1 40/8
40/16 46/18 47/12 51/12 54/2 55/18
**informal [1]** 65/3
**informally [2]** 65/23 66/2
**information [3]** 11/20 11/24 50/22
**informed [1]** 18/16
**informing [1]** 18/14
**initial [2]** 26/10 26/21
**injunction [7]** 27/3 30/4 34/9 38/1 60/16
60/17 60/21
**injunctions [1]** 50/17
**injunctive [1]** 28/4
**injure [1]** 39/13
**input [5]** 61/12 64/14 65/22 65/25 66/18
**inputs [3]** 30/24 31/15 33/1
**inquiry [1]** 26/20
**insanity [3]** 37/24 38/7 38/12
**inside [1]** 58/16
**insights [1]** 49/19
**instance [2]** 27/19 46/11
**instead [3]** 7/18 44/6 55/20
**instrument [1]** 20/15
**intensive [1]** 57/20
**intent [1]** 20/21
**interest [2]** 33/22 53/9
**interested [4]** 6/11 28/19 49/15 49/20
**interesting [1]** 32/6
**interestingly [1]** 52/14
**interests [8]** 33/23 36/13 38/15 53/2
53/8 53/17 55/12 57/10
**interlocutory [1]** 27/11
**interpret [1]** 33/19
**intervening [1]** 51/9
**intervenor [2]** 27/9 54/23
**intervenors [12]** 4/9 8/21 9/4 9/9 26/4
37/5 45/20 50/4 57/25 58/24 61/12 61/19
**intervenors' [1]** 5/9
**intervention [2]** 19/11 53/13
**intrusive [15]** 6/5 9/24 10/3 17/6 17/8
17/12 18/6 18/7 18/23 19/1 19/12 19/17
19/24 24/2 26/18
**invited [2]** 9/8 27/4
**involuntarily [2]** 11/5 12/11
**involve [2]** 55/6 57/9
**involved [2]** 34/24 48/8
**involvement [1]** 45/18
**involving [1]** 32/20
**irreparably [1]** 51/7
**is [234]**
**is that [1]** 44/17

**isn't [10]** 5/15 7/25 13/15 19/19 21/20
22/9 28/23 38/25 46/20 46/25
**isolation [1]** 58/8
**issue [20]** 5/13 5/17 24/14 26/9 26/15
29/18 30/22 41/2 41/9 41/10 43/12 50/23
50/24 51/23 54/6 54/9 56/9 56/14 56/16
64/8
**issued [1]** 5/8
**issues [9]** 4/18 5/9 14/17 14/20 46/18
48/16 48/24 49/8 50/18
**issuing [1]** 50/15
**it [129]**
**it's [60]** 4/22 5/9 5/15 5/16 5/18 5/21 7/3
7/7 7/19 8/4 11/23 13/7 13/8 13/20 13/20
16/3 18/24 19/16 19/17 20/14 23/13
27/18 28/2 28/5 29/11 31/14 31/22 31/23
31/24 32/16 33/17 34/22 35/2 35/3 35/19
35/20 35/21 36/15 37/2 37/13 37/16 39/9
39/24 46/1 47/5 47/22 54/9 54/12 54/12
55/19 56/4 56/13 56/15 59/4 59/25 61/4
61/17 64/11 64/13 65/6
**its [12]** 5/11 10/4 18/22 27/7 35/10
35/11 50/15 50/17 51/10 57/17 62/2
63/24
**itself [2]** 6/2 33/15

**J**

**Jacksonville [1]** 7/9
**jail [28]** 10/17 12/4 12/8 12/11 14/7 14/8
14/19 14/23 15/4 15/6 16/4 23/11 25/19
27/24 32/14 39/3 51/9 51/10 52/13 52/17
53/16 55/18 57/6 58/3 58/16 58/19 59/7
63/12
**jails [10]** 4/21 5/4 11/20 14/12 14/14
14/15 20/7 24/13 51/5 58/5
**Jane [3]** 2/23 9/6 9/17
**January [4]** 23/25 45/22 46/4 50/17
**January 21st [1]** 23/25
**JAROD [1]** 1/8
**Jenkins [1]** 17/17
**Jesse [1]** 2/8
**joint [1]** 57/17
**judge [19]** 1/23 4/13 4/19 12/20 16/12
26/7 38/4 43/12 47/18 51/4 54/9 57/25
60/17 64/11 64/18 65/24 66/3 66/7 66/17
**judges [5]** 3/7 31/17 32/21 33/17 47/23
**judges' [1]** 27/1
**judgment [1]** 42/25
**judicial [1]** 58/1
**July [2]** 23/4 52/9
**juncture [1]** 46/1
**June [3]** 19/1 55/16 56/7
**June 5th [1]** 19/1
**juries [1]** 31/16
**jurisdiction [1]** 30/25
**just [49]** 4/11 5/17 6/2 6/10 8/12 8/14
9/2 9/4 11/11 11/23 13/25 15/7 18/15
22/17 28/3 28/23 29/23 29/24 30/13
35/18 36/6 37/25 40/6 42/17 42/22 44/14
47/1 47/22 48/9 48/21 49/14 51/21 55/25
56/3 57/10 59/21 61/6 61/18 61/25 62/23
63/10 64/3 64/16 64/23 65/2 65/22 66/2
66/4 66/15
**justice [5]** 2/16 16/11 36/13 50/25 64/20
**justify [1]** 29/4

**K**

**keep [6]** 7/20 15/7 30/15 31/11 35/15
62/10
**keeps [1]** 31/18
**Keith [3]** 3/7 3/7 26/6
**kind [18]** 6/8 14/5 24/17 26/18 27/11
27/17 27/20 28/1 29/2 30/21 31/4 31/6
36/3 36/8 36/16 36/16 39/21 40/10
**kinds [1]** 30/10
**know [35]** 9/5 13/8 15/7 16/7 19/25
23/21 26/12 26/25 27/8 27/10 29/11
29/16 30/8 30/9 30/22 31/2 32/23 35/18
36/3 36/11 39/18 39/25 41/8 42/2 44/1
46/1 47/10 47/22 49/7 59/21 60/4 61/25
64/11 64/21 66/1
**knowing [1]** 45/22
**knows [3]** 48/20 62/24 64/1
**Krieger [1]** 3/4

**L**

**lack [5]** 26/25 31/13 33/2 56/19 65/9
**laid [1]** 49/14
**lands [1]** 49/6
**languish [1]** 4/21
**languishing [2]** 56/25 57/6
**large [3]** 6/12 6/13 10/23
**largely [3]** 50/20 50/21 60/12
**larger [3]** 42/16 47/3 50/16
**largest [1]** 10/14
**last [8]** 5/12 36/5 37/3 44/2 45/16 47/4
49/3 61/6
**latched [1]** 19/15
**late [3]** 46/8 48/6 49/18
**later [3]** 19/8 23/21 64/9
**law [24]** 3/7 5/20 9/22 9/24 10/21 16/23
17/3 17/3 17/15 18/13 18/22 19/22 26/22
27/18 27/23 30/24 33/20 34/3 36/17
36/19 38/19 54/10 60/20 62/5
**laws [2]** 31/17 35/10
**lawyer [1]** 37/13
**lawyers [2]** 64/11 66/11
**lead [1]** 48/13
**leadership [2]** 29/21 49/5
**leading [1]** 38/13
**leap [1]** 38/19
**learned [1]** 26/23
**least [35]** 5/19 5/25 6/20 6/22 8/5 9/24
10/3 10/4 11/16 13/12 17/6 17/8 18/5
18/7 18/22 19/1 19/12 19/17 20/22 25/7
25/22 26/18 30/1 32/14 34/5 36/17 41/16
41/21 42/23 50/14 53/23 54/7 59/10
60/20 65/9
**leave [1]** 33/9
**leaves [1]** 20/15
**leaving [2]** 8/4 8/6
**led [3]** 5/5 56/16 60/17
**left [5]** 5/11 22/23 23/5 23/9 43/9 59/6
60/14
**left-hand [1]** 23/9
**LEGACY [5]** 1/13 37/6 37/7 57/7 57/15
**legal [5]** 2/24 10/5 16/21 54/6 66/5
**legally [1]** 7/20
**legislation [2]** 17/24 18/1
**legislative [7]** 18/5 18/8 19/10 29/20
34/15 48/20 60/16

**L**

**legislature [7]** 17/24 22/18 24/24 29/13 32/9 48/24 62/15
**legislature's [1]** 34/21
**legitimate [2]** 31/25 32/2
**length [2]** 22/20 31/11
**lengthier [1]** 13/12
**lengthy [1]** 5/5
**less [8]** 6/4 17/12 19/24 22/17 24/2 35/12 44/9 59/13
**lesser [1]** 26/18
**let [5]** 7/12 13/14 35/15 35/18 64/8
**let's [3]** 29/6 44/3 55/20
**level [17]** 4/18 11/3 11/8 11/18 13/1 20/18 20/22 21/3 21/24 22/1 24/15 24/18 24/20 26/9 31/1 31/7 58/18
**Levi [1]** 2/8
**Lewis [1]** 2/12
**liability [3]** 10/20 14/17 16/19
**liberty [7]** 38/10 40/22 40/24 41/1 41/14 53/17 57/10
**lies [1]** 11/7
**like [25]** 7/8 10/6 15/3 15/12 19/4 21/22 27/3 31/14 32/22 33/3 36/6 36/15 41/19 46/16 48/9 48/17 52/10 57/7 58/13 61/14 61/17 62/22 63/6 64/23 65/3
**likely [2]** 13/22 17/10
**limit [3]** 20/20 25/10 34/25
**limited [3]** 10/24 40/11 58/8
**line [2]** 40/21 41/16
**list [4]** 14/14 15/10 47/10 47/12
**listed [1]** 19/25
**lists [2]** 19/2 23/18
**literally [2]** 4/24 45/21
**litigants [2]** 60/17 60/25
**litigating [1]** 49/8
**litigation [5]** 8/21 28/13 33/25 49/24 62/3
**little [11]** 4/11 4/23 6/20 9/12 11/21 20/12 22/25 43/8 56/21 58/12 58/23
**live [1]** 10/15
**LLP [3]** 2/8 2/12 3/4
**loading [1]** 41/6
**loan [1]** 35/18
**local [3]** 10/17 10/24 11/4
**long [21]** 4/21 7/1 7/19 8/13 27/23 31/19 32/16 34/5 34/25 35/1 40/2 40/3 40/8 40/11 40/13 41/1 43/15 52/4 52/8 54/19 64/5
**long-held [1]** 34/5
**long-term [6]** 40/2 40/3 40/8 40/13 41/1 43/15
**longer [9]** 13/13 14/12 15/7 16/4 24/15 24/18 36/7 37/17 64/22
**longitudinal [1]** 36/5
**look [13]** 5/2 21/23 22/3 39/13 41/17 42/21 45/22 51/14 52/16 55/15 60/22 64/11 66/10
**looked [2]** 18/2 61/7
**looking [6]** 6/2 30/11 38/13 48/4 52/7 60/1
**looks [3]** 48/17 61/14 61/17
**loses [3]** 63/7 63/13 64/20
**lost [3]** 16/12 16/13 64/21
**lot [10]** 26/22 26/22 32/23 32/24 40/16
41/16 62/9 65/18 65/18 65/20
**low [2]** 36/14 36/16
**lower [1]** 22/1
**lower-level [1]** 22/1

**M**

**made [14]** 8/3 10/7 13/24 17/15 32/4 37/9 43/25 48/7 56/1 59/10 62/3 63/4 64/10 66/6
**Magistrate [1]** 48/8
**maintain [1]** 33/18
**majority [1]** 21/16
**make [23]** 6/4 9/23 15/21 15/23 17/10 18/11 18/15 18/19 18/21 30/7 35/15 35/21 48/19 49/11 54/15 58/17 59/2 61/9 62/24 64/16 65/19 66/9 66/13
**makes [4]** 8/22 17/4 17/5 33/12
**making [3]** 6/10 19/10 24/10
**management [1]** 14/20
**managers [1]** 12/3
**mandated [1]** 7/16
**many [5]** 8/15 12/8 12/16 19/25 65/13
**March [2]** 24/21 25/11
**March 15th [2]** 24/21 25/11
**MARION [8]** 2/23 2/24 3/3 9/7 9/8 9/17 9/19 10/8
**Market [1]** 2/17
**massive [1]** 40/22
**math [1]** 22/11
**matter [4]** 26/10 26/21 57/17 65/6
**MATTEUCCI [1]** 1/11
**maximum [3]** 11/16 34/22 34/23
**may [8]** 11/3 23/2 27/12 33/10 35/1 36/12 48/13 66/2
**maybe [1]** 35/6
**me [21]** 5/5 5/15 5/23 6/4 6/9 8/22 32/11 34/14 35/15 35/22 35/25 46/4 48/9 49/16 52/14 53/5 53/15 57/15 64/3 64/8 65/16
**mean [10]** 6/16 29/13 33/15 33/17 36/2 41/19 42/17 42/18 42/19 42/22
**meaningful [1]** 53/2
**meaningless [1]** 49/16
**means [11]** 5/19 6/1 6/5 6/6 6/22 26/18 60/20 60/21 60/24 61/5 61/17
**meant [1]** 13/18
**measure [4]** 15/4 23/20 44/5 46/12
**measures [1]** 58/9
**mechanism [2]** 33/10 33/11
**mechanisms [2]** 8/23 28/5
**medical [1]** 58/22
**medicate [1]** 11/5 12/11
**medication [5]** 12/9 12/21 13/3 14/9 14/11
**medications [1]** 15/5
**medium [1]** 7/2
**meds [4]** 13/14 13/23 15/3 16/12
**meet [5]** 8/7 28/18 29/14 40/19 62/2
**meeting [2]** 25/15 56/7
**meets [1]** 25/10
**members [1]** 38/20
**mental [13]** 7/5 7/13 33/19 36/22 40/5 47/17 51/1 51/6 56/18 57/21 58/7 58/9 58/19
**mentally [2]** 20/7 24/12
**mention [1]** 18/10

**mentioned [1]** 52/3
**merely [1]** 41/19
**Merrithew [3]** 2/8 2/8 60/9
**met [2]** 37/19 57/21
**method [4]** 6/22 14/21 14/22 41/16
**Metropolitan [1]** 38/25
**MICHAEL [1]** 1/22
**microphone [1]** 9/12
**middle [2]** 7/9 35/6
**might [11]** 5/12 35/12 36/21 44/6 44/14 53/11 57/22 57/23 59/16 60/3 63/23
**million [1]** 10/15
**mind [1]** 5/14
**MINK [9]** 1/6 4/6 34/9 34/11 37/21 37/24 38/1 38/6 53/7
**minutes [1]** 9/10
**missed [1]** 32/25
**mission [1]** 53/22
**Missouri [1]** 17/17
**mistake [1]** 46/13
**misunderstands [1]** 52/2
**mitigate [1]** 52/22
**mitigated [1]** 55/1
**mixed [1]** 5/20
**MO [4]** 1/4 1/9 1/14 4/5
**modification [3]** 46/14 46/17 50/15
**modifications [2]** 46/9 49/17
**modified [1]** 20/21
**modify [2]** 25/22 50/17
**moment [2]** 7/14 11/12
**monetary [1]** 29/8
**money [3]** 32/23 32/24 65/18
**month [2]** 22/13 22/15 22/16
**months [4]** 13/21 23/6 65/12 65/15
**more [51]** 4/14 4/23 6/7 7/1 7/1 7/4 7/5 7/17 8/8 8/11 8/24 10/25 13/1 13/1 13/1 13/2 13/5 13/14 18/9 19/4 19/6 19/9 21/2 23/10 24/17 24/18 25/18 26/25 27/14 28/16 32/7 32/17 33/6 41/6 41/8 44/1 45/23 48/16 51/13 52/11 53/5 54/11 55/9 59/16 61/12 66/2 66/5 66/5 66/7 66/18 66/19
**MOSMAN [1]** 1/22
**most [8]** 4/16 21/6 21/6 21/18 23/21 30/5 35/8 40/10
**motion [5]** 27/9 56/16 61/25 62/19 66/14
**motions [2]** 5/8 51/17
**motivating [1]** 51/15
**move [4]** 28/18 28/21 29/3 62/17
**moved [1]** 62/9
**moves [1]** 66/18
**moving [4]** 39/21 61/10 62/10 66/15
**Mr [7]** 2/4 2/8 2/11 2/20 3/4 3/7 9/9
**Mr. [21]** 9/25 10/11 17/11 18/9 19/24 20/4 23/14 23/15 24/6 45/13 47/4 49/4 49/4 51/12 52/3 52/10 54/23 60/9 60/11 60/11 61/10
**Mr. Allen [3]** 47/4 49/4 49/4
**Mr. Bryce [1]** 51/12
**Mr. Bybee [1]** 52/10
**Mr. Carr [7]** 9/25 10/11 17/11 18/9 19/24 20/4 52/3
**Mr. Garza's [1]** 60/11
**Mr. Merrithew [1]** 60/9

## M

**Mr. Wehr's [3]** 23/14 23/15 24/6
**Mr. Williams [3]** 45/13 54/23
**Mr. Williams' [2]** 60/11 61/10
**Ms [3]** 2/4 2/16 2/23
**Ms. [7]** 25/21 57/2 61/23 63/6 64/16 65/8 65/17
**Ms. Cooper [2]** 57/2
**Ms. Potter [3]** 61/23 64/16 65/17
**Ms. Vetto [3]** 25/21 63/6 65/8
**much [19]** 4/24 11/24 14/2 14/3 19/8 20/2 20/11 26/3 27/2 33/16 35/5 36/23 45/7 49/23 50/7 54/4 55/23 56/23 60/8
**multiple [3]** 8/3 39/4 51/17
**multiply [1]** 22/12
**Multnomah [1]** 54/1
**my [26]** 4/16 5/13 6/10 7/21 8/9 9/1 15/18 19/23 20/24 20/25 34/14 35/16 35/18 35/23 37/2 39/2 48/12 49/17 49/18 49/21 50/5 50/8 60/12 62/8 64/7 65/23

## N

**nail [1]** 30/13
**name [1]** 50/8
**named [1]** 51/12
**national [1]** 51/22
**near [1]** 65/19
**nearly [1]** 54/20
**necessarily [5]** 21/1 23/19 26/18 33/4 57/12
**necessary [4]** 8/25 21/20 26/20 40/4
**need [25]** 4/22 11/3 11/8 11/17 14/7 18/21 20/17 21/2 21/3 21/8 24/15 24/18 24/20 27/23 32/2 32/3 35/25 40/2 40/8 40/9 40/16 40/25 42/6 54/11 61/16
**needle [1]** 51/18
**needs [10]** 18/15 19/20 20/16 20/22 33/8 46/22 48/23 57/8 57/21 58/11
**negate [1]** 18/21
**negative [1]** 6/21
**negatively [1]** 41/5
**negotiated [1]** 22/4
**negotiating [1]** 28/25
**Neiman [2]** 2/11 37/4
**neutral [6]** 5/6 5/9 34/4 51/19 51/20 63/2
**never [5]** 5/21 15/3 17/10 18/25 28/5
**new [7]** 49/5 50/24 51/1 52/13 52/18 62/11 63/14
**next [7]** 7/21 26/4 28/17 36/25 41/9 55/17 55/24
**Ninth [6]** 5/22 17/4 18/3 30/9 34/1 51/17
**no [30]** 1/4 1/9 1/14 4/5 11/8 12/10 14/12 15/2 16/4 18/13 20/15 24/14 24/18 25/9 25/17 26/14 26/14 26/14 27/5 37/17 39/22 42/13 43/10 43/19 53/16 55/7 58/7 59/4 64/22 66/8
**nobody [2]** 21/25 65/2
**noncompetency [1]** 65/4
**noncompliance [1]** 16/23
**none [1]** 26/14
**nonetheless [1]** 34/18
**nonparty [1]** 55/12
**normal [1]** 16/10

**not [125]**
**note [4]** 18/24 62/1 63/6 63/20
**noted [1]** 33/13
**nothing [3]** 38/5 64/17 64/25
**notice [2]** 47/13 58/1
**notification [3]** 46/25 47/8 47/14
**notifying [1]** 47/9
**November [2]** 1/16 4/2
**now [22]** 6/11 7/9 7/13 11/1 13/22 14/15 15/19 15/20 24/2 27/8 34/21 42/7 46/11 47/13 53/25 55/21 58/12 59/24 62/3 62/21 66/12 66/14
**number [5]** 22/20 30/5 40/11 43/1 56/12
**numbers [1]** 22/11
**numerous [1]** 17/16

## O

**o0o [1]** 67/2
**Oak [1]** 3/8
**object [2]** 44/18 63/4
**objection [3]** 27/1 27/5 61/11
**objections [1]** 26/14
**objective [2]** 63/21 63/25
**obligations [1]** 62/2
**obviously [3]** 33/18 48/21 48/22
**occasions [1]** 39/4
**occurring [1]** 28/15
**October [1]** 21/14
**October 26 [1]** 21/14
**off [1]** 21/7
**offenders [1]** 22/1
**offenses [1]** 34/24
**offensive [1]** 32/7
**offer [2]** 27/12 58/14
**offered [3]** 54/24 59/5 66/16
**offering [1]** 27/5
**office [3]** 3/7 10/17 47/10
**Official [1]** 67/11
**often [3]** 14/10 15/5 44/9
**oh [1]** 63/10
**OHA [2]** 16/4 62/17
**OHA's [1]** 30/25
**okay [3]** 16/17 37/4 48/2
**old [1]** 35/14
**omission [1]** 38/18
**once [4]** 15/5 15/25 52/7 54/16
**one [40]** 6/5 6/15 6/20 7/25 8/4 13/24 20/25 21/22 23/5 23/10 23/22 24/3 25/5 25/14 28/3 29/11 29/12 32/13 33/1 33/4 33/11 34/11 34/20 36/11 39/8 41/23 44/13 45/21 51/7 51/9 51/11 54/2 55/2 57/7 58/21 59/10 60/22 63/16 64/15 64/19
**one set [1]** 41/23
**online [1]** 63/17
**only [19]** 7/6 10/9 13/7 17/5 19/18 21/7 23/10 33/11 34/2 34/8 34/8 36/9 36/18 37/16 41/20 43/3 53/25 55/6 65/16
**open [4]** 5/11 44/20 45/1 57/19
**opening [2]** 39/8 62/13
**operate [1]** 55/4
**opinion [2]** 32/10 64/9
**opportune [2]** 48/11 49/1
**opportunity [2]** 4/10 59/2
**oppose [1]** 62/18

**opposed [4]** 12/24 27/22 31/13 62/18
**opposite [1]** 19/2
**optimal [2]** 13/11 13/12
**option [1]** 17/6
**options [2]** 50/14 63/3
**oral [3]** 1/20 4/5 54/11
**order [89]**
**ordered [4]** 17/8 18/2 56/24 60/18
**orders [3]** 5/18 32/23 50/13
**OREGON [31]** 1/2 1/3 1/17 2/5 2/16 4/5 10/18 10/21 28/18 32/7 34/16 36/17 37/6 37/17 38/24 39/1 42/8 47/7 47/18 48/14 49/2 49/5 49/6 50/9 52/19 53/7 53/7 53/9 54/1 54/20 55/4
**Oregon's [2]** 33/24 57/3
**Oregonians [3]** 10/15 52/20 55/13
**organization [1]** 53/22
**organizations [1]** 56/8
**original [4]** 9/7 38/1 58/4 67/6
**ORS [1]** 16/24
**OSH [17]** 5/4 7/16 14/23 16/14 32/8 32/14 32/15 32/17 40/6 40/6 42/11 42/13 44/7 59/3 59/6 59/8 59/17
**other [30]** 6/4 6/6 6/18 6/25 9/9 11/25 13/13 14/17 22/19 23/15 24/14 26/23 28/19 31/9 32/1 32/16 33/24 34/7 35/4 36/14 36/14 38/20 44/16 45/20 48/2 50/14 54/5 58/9 63/20 65/13
**others [5]** 5/2 24/22 35/12 49/1 52/10
**otherwise [6]** 5/6 26/21 31/25 32/2 44/24 61/19
**ought [1]** 30/1
**our [41]** 5/12 9/20 10/11 10/14 10/15 10/16 10/16 11/20 12/2 12/3 12/4 14/15 16/3 16/15 17/3 17/16 20/7 24/13 25/4 25/19 25/19 25/20 26/8 26/11 27/3 27/11 27/12 29/1 31/21 38/18 40/21 41/25 45/18 47/6 49/12 49/12 49/22 52/22 57/2 61/25 63/5
**out [45]** 5/4 6/17 6/23 7/18 7/23 8/5 8/6 8/18 10/17 11/21 12/6 12/6 12/21 13/15 14/23 16/4 21/22 22/14 23/24 24/7 24/18 25/11 28/21 35/25 37/11 42/7 43/14 43/14 43/17 43/22 45/25 47/6 47/23 48/6 49/14 50/18 50/19 54/22 55/10 60/4 60/14 60/20 62/19 63/5 66/2
**outcomes [3]** 6/21 7/23 21/24
**outlier [2]** 35/4 35/7
**outputs [2]** 30/25 30/25
**outset [3]** 4/12 45/18 46/8
**outside [1]** 41/7
**over [9]** 17/22 19/23 21/23 36/5 36/6 38/7 48/9 48/16 55/18
**overall [1]** 7/22
**overcrowding [3]** 31/15 31/20 43/16
**overinclusive [1]** 23/13
**override [4]** 26/21 27/23 34/2 62/5
**overriden [1]** 32/3 36/19 36/20
**overrides [1]** 35/14
**overriding [2]** 27/18 38/19
**oversee [1]** 25/3
**overturning [1]** 60/6
**own [4]** 18/22 19/3 50/17 57/17

## P

P.O [2] 2/24 3/8
pace [1] 51/25
package [1] 43/23
page [2] 56/7 56/17
pan [1] 6/23
Panner [3] 4/19 51/4 60/18
Panner's [1] 47/19
pans [1] 45/25
papers [1] 40/21
parade [1] 45/25
paragraph [3] 20/20 25/5 40/18
part [15] 10/4 16/6 24/8 28/24 32/14
32/25 40/7 41/16 43/24 46/20 46/24 47/9
57/2 57/15 60/2
partial [1] 44/18
partially [3] 43/3 43/5 43/7
particular [3] 31/11 46/18 57/21
particularly [5] 4/9 4/16 47/3 64/17 65/8
parties [18] 6/3 8/17 8/20 17/10 18/17
19/15 20/1 26/12 26/23 28/19 49/24
51/16 51/19 54/13 55/8 59/23 61/19
65/14
pass [1] 44/9
passed [2] 17/24 18/1
past [3] 20/16 51/16 62/4
Pat [1] 52/15
path [3] 28/14 51/20 61/17
patience [1] 29/7
patient [2] 23/6 29/2
patients [16] 11/5 19/5 21/15 21/16
23/5 37/18 37/24 38/7 38/7 38/11 38/15
41/6 41/14 42/9 53/13 56/6
PATRICK [2] 1/16 47/4
Paul [1] 43/13
pause [1] 11/11
pay [1] 43/13
PeaceHealth [1] 37/6
pen [1] 35/18
penal [1] 35/10
penalty [1] 29/8
pending [3] 17/23 27/9 46/19
people [80]
per [1] 22/16
perceive [1] 27/13
percent [8] 6/13 6/16 35/24 40/13 43/1
43/8 43/9 62/16
percentage [6] 12/22 40/24 40/25 44/20
44/22 44/23
perfectly [1] 43/24
perhaps [6] 6/7 7/4 29/12 34/1 44/20
55/6
period [4] 22/23 24/4 32/17 34/12
periods [3] 13/11 22/6 32/8
permission [1] 40/19
permitting [1] 30/6
persistent [1] 40/5
person [13] 15/4 15/7 15/9 16/14 25/19
28/11 57/20 59/10 63/7 63/9 63/11 64/22
64/23
person's [1] 46/23
personal [1] 4/18
perspective [3] 36/16 38/21 39/6
perspectives [1] 36/14
Peter [1] 43/13

phrase [3] 5/21 5/22 35/15
Pinals [16] 5/2 35/3 36/10 43/23 49/1
51/19 54/6 54/8 54/20 55/15 56/4 59/25
61/6 65/20 66/4 66/8
Pinals' [10] 18/24 19/25 21/5 22/3 22/22
24/10 30/6 36/4 38/16 66/7
place [7] 4/25 23/24 24/23 46/25 54/9
63/23 66/4
placements [1] 57/7
plaintiff [4] 2/11 17/22 29/15 35/25
plaintiffs [27] 1/4 1/9 1/14 2/4 10/7
18/11 18/18 23/3 27/2 27/14 34/4 34/7
34/7 34/25 35/2 37/7 39/1 45/19 47/21
48/7 50/4 50/10 51/15 52/11 56/15 61/7
62/4
plaintiffs' [2] 35/13 35/19
plan [2] 51/20 62/20
play [4] 5/24 6/17 46/23 47/9
played [1] 50/18
plays [1] 7/23
please [1] 15/11
pleases [1] 50/3
plucked [1] 51/22
podium [2] 9/14 26/5
point [23] 11/3 13/7 15/6 20/24 21/22
28/1 29/5 30/8 31/8 32/6 35/16 36/11
38/1 39/17 44/2 47/15 50/19 53/6 54/12
54/22 60/19 61/10 62/23
pointed [2] 37/11 47/23
policies [1] 33/24
policy [10] 34/5 34/6 34/10 34/19 34/21
34/24 35/8 35/14 36/16 36/20
political [1] 48/22
population [6] 24/11 38/9 38/20 40/20
41/14 44/21
portions [1] 62/13
Portland [6] 1/17 2/6 2/9 2/13 2/18 3/12
pose [1] 61/11
position [9] 7/20 27/20 37/3 37/21
37/22 49/12 58/17 63/8 63/14
possibility [1] 5/12
possible [2] 28/21 66/1
possibly [1] 28/19
potential [3] 10/1 45/25 54/24
Potter [4] 2/16 61/23 64/16 65/17
powers [1] 17/1
practical [2] 46/10 48/10 48/13
practically [1] 45/21
preceded [1] 65/18
precedent [1] 17/19
precise [1] 45/23
precisely [2] 30/19 61/5
predicted [1] 6/21
prediction [1] 8/12
prefer [2] 23/12 34/7
preferences [1] 34/10
preliminary [2] 4/8 26/20
premise [3] 11/14 13/13 13/15
prerogatives [2] 4/14 4/16
prescribed [1] 14/9
present [2] 17/22 24/22
presentation [1] 63/12
presented [4] 19/18 20/1 38/15 38/22
presents [1] 59/1
pressing [1] 13/7

presumably [1] 29/8
pretty [2] 4/24 61/24
prevented [1] 65/1
prevents [1] 64/25
previously [2] 11/15 14/22
primarily [2] 26/10 26/19
primary [1] 19/16
principles [1] 55/7
prior [3] 47/25 50/23 51/11
prioritization [1] 22/2
prioritize [1] 38/6
prioritizing [1] 38/11
prison [1] 31/14
private [2] 21/19 53/14
privy [1] 22/3
probably [3] 4/13 35/17 53/5
problem [14] 5/3 6/1 7/2 7/4 8/16 28/12
33/13 43/3 43/5 43/16 44/25 49/2 51/21
51/25
problems [4] 4/15 27/12 32/2 35/20
proceedings [5] 1/21 18/17 30/5 66/22
67/5
proceeds [1] 63/12
process [8] 12/21 14/25 34/10 35/6
36/7 54/19 59/8 60/2
processes [1] 42/8
progress [1] 30/7
prohibits [1] 64/17
projecting [1] 22/14
projections [2] 55/16 55/19
projector [1] 21/11
promoted [1] 31/6
promoting [2] 46/7 52/19
properly [1] 58/25
property [1] 39/12
proportion [1] 39/25
proposals [1] 46/9
propose [1] 46/14
proposed [1] 45/4
prosecutions [1] 36/12
prosecutors [1] 50/6
protect [1] 14/7
protecting [1] 52/19
protection [1] 35/10
protections [2] 24/25 25/7
provide [3] 11/1 25/7 27/10
provided [2] 47/8 50/20
Providence [2] 37/6 57/16
providing [1] 47/12
psychotic [2] 13/2 14/18
public [3] 38/25 47/14 48/5
public's [1] 33/22
pull [1] 9/12
punish [1] 51/6
punitive [1] 58/9
pure [1] 28/14
purport [1] 7/1
purposes [1] 6/15
pursuit [1] 36/13
push [1] 23/24
put [14] 12/6 14/14 15/10 26/12 26/15
29/1 33/7 36/17 58/13 58/20 58/24 59/23
59/24 63/23
puts [1] 31/17
putting [1] 24/12

## Q

**qualified** [1] 61/19
**question** [17] 5/20 5/25 9/22 11/19 12/20 15/18 16/21 20/17 20/25 20/25 47/3 48/3 50/13 50/16 56/5 57/19 57/20 10/8
**questioning** [1] 10/8
**questions** [7] 26/11 28/7 45/17 45/23 48/11 58/25 63/17
**quibble** [1] 13/8
**quick** [1] 28/11
**quicker** [1] 55/1
**quickie** [1] 65/1
**quickly** [1] 24/18
**quite** [4] 8/20 20/24 47/1 63/1
**quo** [4] 8/19 8/20 37/11 37/12
**quote** [3] 27/6 33/14 36/11

## R

**raise** [7] 5/12 43/4 44/25 45/23 56/9 56/14 56/16
**raised** [4] 8/1 50/11 54/6 54/14
**raises** [1] 5/9
**raising** [2] 44/16 55/2
**raison** [1] 66/11
**rapidly** [1] 28/21
**ratcheting** [1] 27/17
**rather** [5] 5/18 47/15 58/10 63/23 66/3
**rating** [1] 42/20
**reach** [3] 22/5 48/6 55/21
**reached** [1] 15/17
**read** [4] 20/18 21/5 25/8 44/1
**reading** [1] 56/22
**ready** [2] 13/21 32/15
**real** [1] 61/11
**realistic** [1] 48/19
**reality** [3] 47/22 48/4 49/7
**really** [17] 5/21 6/23 7/24 24/8 26/8 26/13 26/18 31/3 33/8 33/11 34/3 35/8 41/15 47/6 53/1 60/4 62/8
**reason** [6] 16/11 43/22 55/14 57/15 62/21 63/4
**reasonable** [2] 53/19 55/7
**reasons** [1] 47/20
**recall** [2] 26/8 37/22
**receive** [3] 13/4 13/4 65/22
**received** [1] 5/1
**recent** [1] 48/16
**recess** [2] 66/20 66/21
**recidivism** [2] 13/21 50/24
**recognize** [1] 64/10
**recollection** [2] 49/18 49/21
**recommendation** [3] 19/16 19/16 24/10
**recommendations** [6] 30/6 43/23 51/23 60/2 61/8 63/4
**recommends** [1] 19/7
**recommit** [1] 19/7
**recommitted** [1] 14/25
**record** [13] 9/6 9/17 9/23 19/19 32/3 38/13 39/14 55/15 56/3 59/20 61/5 64/16 67/5
**recourse** [2] 16/5 43/10
**rectify** [1] 51/24
**redraft** [1] 27/6
**reduce** [2] 24/15 24/16
**reducing** [2] 18/25 19/13

**reduction** [1] 22/16
**reference** [2] 56/6 59/6
**referenced** [1] 54/18
**referring** [1] 37/25
**refining** [1] 66/18
**reflects** [1] 65/12
**Regarding** [1] 10/22
**regardless** [3] 24/21 24/21 24/22
**regime** [1] 21/4
**regimens** [1] 58/10
**regrettable** [1] 12/13
**related** [2] 51/1 53/17
**relationship** [3] 53/10 53/19 55/7
**relatively** [1] 28/11
**release** [5] 12/23 13/9 15/12 20/19 21/1
**released** [22] 8/12 11/2 11/15 13/19 13/19 14/6 20/23 21/2 21/2 21/3 21/9 21/15 21/16 21/17 21/25 22/1 22/12 23/18 24/7 24/20 25/8 25/16
**releases** [1] 21/13
**releasing** [2] 11/17 20/17
**reliability** [1] 6/15
**relied** [2] 18/19 23/3
**relief** [5] 27/17 28/4 51/15 52/12 55/20
**reluctant** [2] 4/14 5/23
**rely** [1] 18/20
**relying** [1] 47/1
**remains** [1] 12/20
**remarkable** [1] 38/18
**remedies** [1] 10/2
**remedy** [2] 9/24 28/1
**remind** [1] 4/12
**removed** [1] 13/25
**renowned** [1] 65/14
**repeatedly** [2] 50/25 56/4
**rephrase** [1] 32/11
**report** [15] 18/20 18/25 19/1 19/2 19/8 19/17 20/1 21/5 21/12 22/4 22/22 36/4 54/6 55/16 56/7
**REPORTER** [2] 3/11 67/11
**reports** [6] 21/12 38/16 54/21 56/7 56/7 59/25
**represent** [4] 36/12 50/9 53/8 54/2
**representation** [2] 53/21 58/17
**represented** [1] 48/15
**representing** [1] 26/7
**represents** [4] 8/19 35/4 36/20 40/10
**request** [3] 10/12 16/5 62/3
**requested** [2] 30/19 62/15
**require** [3] 19/9 19/10 19/11
**required** [2] 17/9 24/20
**requirement** [1] 18/16
**requirements** [2] 10/6 16/25
**requires** [5] 4/20 6/2 9/22 17/15 32/8
**requiring** [1] 17/25
**rescind** [1] 10/3 29/25
**research** [3] 7/19 13/10 13/16
**residential** [2] 40/9 40/11
**resignations** [1] 49/4
**resort** [1] 40/24
**resources** [7] 10/25 29/13 31/14 35/5 55/6 56/19 57/23
**respect** [5] 27/23 30/24 31/19 35/5 39/2
**respectfully** [1] 31/3
**respecting** [1] 48/10

**respective** [1] 10/11
**respond** [10] 49/25 50/1 50/4 50/4 50/5 50/11 56/1 59/20 60/10 66/14
**response** [8] 10/7 18/11 26/13 26/14 27/1 27/3 28/6 60/12
**responsibility** [3] 10/19 39/4 47/6
**responsible** [3] 25/19 33/12 35/24
**rest** [2] 19/23 19/23
**restoration** [13] 10/24 11/2 11/8 12/7 21/24 22/6 23/18 34/23 35/6 36/7 54/7 55/17 55/19
**restored** [5] 13/23 14/24 15/14 16/10 64/19
**restrictive** [8] 5/19 6/1 6/22 41/16 50/14 54/8 60/21 65/9
**result** [5] 10/23 11/17 21/1 41/25 51/6
**resulting** [3] 5/6 5/7 33/1
**results** [1] 6/6
**return** [2] 14/7 14/12
**returned** [1] 59/8
**reverse** [1] 5/22
**review** [2] 27/11 30/9
**right** [41] 6/11 6/19 7/13 11/24 14/2 15/22 19/3 23/2 23/9 27/18 29/18 29/25 30/5 30/20 32/25 33/3 33/5 33/6 38/1 40/23 41/16 41/22 41/23 43/4 43/11 45/5 45/6 46/11 49/10 53/25 60/8 60/22 61/1 61/13 61/20 61/21 62/12 64/4 64/6 64/15 66/1
**right-hand** [1] 23/9
**rights** [16] 2/5 23/18 33/21 39/1 40/20 41/13 41/21 43/2 48/5 50/9 52/18 52/19 53/6 54/1 57/2 58/1
**rise** [1] 66/21
**risk** [8] 14/16 22/17 24/11 24/22 51/8 52/13 52/24 58/6
**risks** [2] 16/19 52/17
**RMR** [2] 3/11 67/10
**robbing** [1] 43/13
**role** [4] 27/11 33/19 57/2 57/3
**room** [3] 3/12 48/15 49/20
**round** [1] 26/11
**rubric** [2] 41/17 45/3
**rule** [1] 19/10
**run** [3] 9/2 29/7 62/19
**running** [3] 7/10 43/17 44/7
**runs** [1] 44/17

## S

**S.W** [6] 2/5 2/9 2/12 2/17 3/5 3/12
**safe** [1] 40/19
**safety** [5] 14/17 14/18 16/19 47/14 48/5
**said** [15] 7/14 8/1 9/19 13/17 18/2 18/3 18/4 21/6 25/21 30/11 34/12 34/16 55/15 57/2 64/16
**Salem** [1] 2/25
**same** [4] 12/24 38/7 41/3 60/12
**satisfy** [1] 30/10
**save** [1] 46/3
**saw** [2] 21/18 31/3
**say** [31] 4/12 6/12 6/16 7/6 7/14 7/15 14/21 15/10 15/19 15/21 18/12 20/22 28/12 29/6 31/22 32/1 35/4 40/12 44/9 52/25 53/11 55/20 56/13 56/15 56/18 58/14 61/2 61/18 62/6 63/10 64/12

**S**

**saying [9]**  14/23 23/12 27/20 29/19
  29/22 29/23 38/5 44/1 60/3
**saying that [1]**  29/23
**says [6]**  5/16 18/25 19/8 22/4 57/17
  65/2
**schizophrenic [2]**  13/2 14/19
**science [2]**  13/10 13/15
**scope [3]**  27/7 55/10 57/10
**scour [1]**  4/13
**seated [1]**  20/10
**second [8]**  8/10 16/14 22/22 32/15
  39/17 41/5 62/14 65/6
**section [11]**  8/2 8/2 8/14 37/10 38/8
  41/5 42/7 42/14 43/21 59/1 59/16
**secure [2]**  40/9 40/11
**security [1]**  16/19
**see [12]**  6/21 7/23 9/3 21/14 22/22
  23/21 24/5 28/3 30/17 39/14 50/18 64/8
**seeing [4]**  21/20 22/1 51/18 52/8
**seek [2]**  33/20 55/14
**seeking [2]**  34/8 34/8
**seem [3]**  31/21 34/6 34/7
**seems [8]**  30/10 31/6 33/3 34/8 36/15
  36/19 46/13 48/9
**seen [3]**  23/20 23/25 49/7
**segregation [1]**  58/9
**Senate [4]**  16/23 21/16 22/18 24/25
**send [5]**  16/1 16/13 25/22 31/10 63/10
**SENIOR [1]**  1/23
**sense [2]**  65/12
**sent [1]**  16/4
**sentence [1]**  34/23
**sentences [1]**  31/19
**sentencing [2]**  31/17 63/22
**separate [1]**  51/17
**September [28]**  10/2 10/4 10/10 10/13
  10/19 10/22 14/11 16/18 17/7 21/14
  25/25 27/6 27/15 34/2 35/13 36/15 37/10
  38/14 46/8 48/1 48/6 49/18 50/23 51/2
  51/11 55/9 56/17 62/23
**September 1 [5]**  27/6 34/2 36/15 37/10
  38/14
**September 1st [18]**  10/2 10/4 10/10
  10/13 10/19 10/22 14/11 16/18 17/7
  21/14 25/25 27/15 35/13 48/1 50/23 51/2
  51/11 62/23
**series [1]**  51/23
**serious [2]**  13/8 64/9
**seriously [5]**  20/6 24/12 40/5 64/10
  64/13
**seriousness [1]**  46/19
**serve [1]**  10/14
**services [3]**  37/6 55/4 55/19
**session [2]**  29/20 48/20
**set [5]**  8/2 41/23 52/18 59/16 63/5
**setting [2]**  40/4 40/9
**settlement [5]**  48/9 48/18 49/9 49/21
  54/24
**seven [7]**  17/25 18/3 21/17 22/15 34/12
  34/17 51/13
**seven-day [2]**  18/3 34/12
**several [2]**  17/11 29/21
**severity [1]**  22/6
**share [1]**  20/6

**she [11]**  19/2 19/6 19/8 19/12 21/5 22/4
  54/21 56/7 56/13 61/6 61/7
**she's [3]**  63/3 63/4 65/24
**Sheila [1]**  2/16
**sheriff [2]**  27/22 52/15
**sheriff's [1]**  10/17
**shift [1]**  51/18
**shifts [1]**  10/19
**ship [1]**  49/10
**short [2]**  7/8 43/25
**shortened [2]**  8/11 32/17
**shortening [1]**  21/1
**shorter [2]**  7/2 7/15
**shot [1]**  40/11
**should [22]**  7/14 7/22 8/6 20/9 25/8
  27/21 29/15 29/23 31/19 32/7 33/5 34/14
  36/22 38/18 41/17 42/22 43/22 46/23
  53/14 53/14 60/22 66/15
**showing [1]**  52/3
**shows [3]**  19/19 22/21 59/10
**shrift [1]**  43/25
**Shumway [3]**  3/11 67/9 67/10
**shut [1]**  44/19
**Shutting [1]**  43/14
**side [2]**  14/4 20/9
**sign [1]**  35/19
**signature [2]**  67/7 67/7
**signed [1]**  35/24
**significant [7]**  6/7 7/11 10/20 21/21
  21/21 32/9 40/25
**significantly [4]**  7/1 13/12 22/10 57/11
**signing [1]**  67/4
**silent [1]**  17/7
**simple [1]**  47/7
**simply [4]**  5/10 7/16 33/19 46/14
**since [4]**  23/20 37/16 37/20 51/2
**single [1]**  54/23
**sir [4]**  26/3 45/9 49/23 60/8
**sit [1]**  51/19
**situation [4]**  11/25 12/14 31/15 62/25
**situations [2]**  13/11 31/1
**six [3]**  13/20 19/9 19/12
**skipping [1]**  28/23
**sky [1]**  51/22
**slow [2]**  22/25 56/21
**small [3]**  39/25 44/20 44/23
**smallest [1]**  44/7
**Smith [1]**  2/12
**snapshot [2]**  52/5 52/6
**so [95]**
**so-called [1]**  37/19
**social [2]**  13/10 13/15
**solid [1]**  6/19
**solution [13]**  7/3 7/7 7/15 28/20 32/19
  44/18 45/1 45/4 47/7 48/10 65/1
  65/15
**solutions [4]**  33/4 48/13 49/9 54/24
**solve [5]**  4/15 6/1 7/2 43/3 43/8
**solving [2]**  33/13 43/5
**some [38]**  4/8 4/19 7/23 8/20 11/3 11/25
  13/11 14/5 16/3 16/6 16/7 19/10 22/2
  25/7 28/2 29/7 30/7 32/20 34/1 35/8 36/4
  40/9 42/23 45/3 45/4 46/8 46/23 49/24
  50/18 50/22 52/2 53/19 58/5 59/17 61/12
  62/3 65/1 66/4

**somebody [12]**  15/21 20/15 35/18
  35/23 36/21 39/5 39/12 39/13 40/23
  42/15 60/4 65/2
**somehow [2]**  12/1 52/20
**someone [14]**  13/19 14/23 15/18 16/9
  22/10 25/10 52/4 52/7 53/16 59/2 59/6
  64/19 64/22 65/5
**someone's [2]**  53/19 58/1
**something [19]**  4/20 7/10 14/22 15/1
  27/21 32/24 34/12 35/22 35/3 36/6 42/14
  44/6 47/22 48/23 49/2 51/22 62/22 63/25
  65/4
**sometimes [2]**  41/18 51/7
**somewhat [1]**  5/10
**somewhere [1]**  35/6
**soon [1]**  66/13
**sooner [1]**  8/12
**sorry [2]**  23/1 47/17
**sort [12]**  4/11 5/15 5/16 5/19 5/23 28/14
  32/12 35/22 45/3 45/21 53/21 65/1
**sorts [2]**  24/25 63/21
**sought [2]**  49/19 55/20
**source [1]**  66/10
**sovereignty [1]**  32/6
**speak [1]**  38/23
**speaking [2]**  45/21 60/9
**specific [2]**  17/5 19/21
**specifically [3]**  10/16 51/8 59/6
**spend [2]**  32/23 53/5
**spending [1]**  42/4
**spent [4]**  32/24 59/7 61/6 62/16
**split [1]**  9/8
**SRTF [1]**  11/6
**stable [2]**  13/5 13/14
**staff [4]**  12/4 12/11 14/17 58/22
**staffing [1]**  10/24
**staggering [1]**  22/5
**stakeholders [2]**  47/25 60/13
**stand [1]**  7/22
**standard [3]**  5/24 25/15 63/5
**standing [2]**  53/7 55/8
**standpoint [3]**  27/8 30/8 47/14
**start [6]**  4/8 9/2 9/4 65/23 66/2 66/4
**starting [2]**  17/16 66/3
**state [94]**
**State's [3]**  31/19 46/21 51/24
**stated [2]**  20/20 56/4
**statement [1]**  63/6
**statements [1]**  10/7
**states [4]**  1/1 1/23 3/11 31/16
**states' [1]**  35/4
**stating [1]**  36/10
**status [5]**  8/19 8/20 37/11 37/12 65/25
**statute [5]**  5/6 5/11 11/15 11/17 34/15
**statutes [7]**  10/18 11/4 31/12 31/12
  31/25 32/3 34/19
**statutory [3]**  5/3 18/25 33/21
**stay [3]**  12/24 13/3 27/24
**stemming [1]**  14/18
**Stenson [1]**  2/4
**step [3]**  4/14 17/5 27/17
**stepped [1]**  17/24
**stick [1]**  66/11
**still [10]**  11/3 14/24 15/15 17/15 20/17
  20/22 21/8 23/17 38/22 51/25

**S**

**Stone [6]**  17/17 26/19 26/24 27/16 30/11 33/14
**stop [3]**  14/10 15/5 15/6
**stopping [2]**  19/5 19/13
**straining [1]**  10/24
**stream [1]**  44/7
**streamlined [1]**  66/19
**streams [3]**  42/11 42/12 44/4
**Street [3]**  2/9 2/17 3/5
**streets [2]**  24/13 25/16
**structure [1]**  62/8
**studies [1]**  54/21
**studying [1]**  54/20
**subject [5]**  5/8 25/25 32/20 62/1 62/2
**submitted [1]**  49/17
**submitting [1]**  49/4
**subsequently [1]**  64/20
**substantial [1]**  6/14
**success [1]**  65/13
**such [5]**  4/18 5/14 5/17 5/18 8/4 17/6 35/1 35/4 63/25
**sued [1]**  17/22
**sufficient [2]**  18/2 29/4
**suggested [4]**  24/3 54/21 60/13 65/18
**suggesting [8]**  13/10 16/9 29/24 30/1 32/12 41/20 42/13 66/8
**suggestion [4]**  30/14 32/25 34/3 44/17
**suggests [2]**  41/17 60/21
**suicide [2]**  51/8 58/6
**Suite [5]**  2/5 2/9 2/12 2/21 3/5
**summary [1]**  19/22
**support [1]**  27/7
**suppose [3]**  25/17 58/17 60/15
**supposing [1]**  60/3
**Suppositions [1]**  60/6
**Supreme [1]**  17/4
**sure [5]**  20/9 28/9 31/8 31/9 66/9
**surrounded [1]**  58/22
**system [25]**  1/13 5/3 8/22 8/24 16/11 22/7 25/20 31/15 31/18 31/18 33/19 36/22 41/7 47/2 47/17 47/18 48/14 50/25 54/21 57/3 60/14 61/7 62/7 62/21 64/20
**systems [2]**  2/11 37/5

**T**

**table [4]**  28/25 47/25 52/3 52/5
**tables [1]**  48/12
**take [20]**  5/2 11/9 12/8 13/14 14/9 15/5 15/11 22/11 22/14 28/2 28/2 32/13 37/18 38/19 39/25 49/25 57/8 58/1 64/10 66/10
**taken [11]**  17/5 28/1 37/20 38/10 45/16 57/1 63/9 63/14 64/12
**takes [1]**  42/24
**taking [8]**  12/21 14/11 16/12 26/15 29/4 29/18 42/7 60/1
**talk [8]**  11/21 18/9 19/24 27/19 37/13 39/5 44/3 61/6
**talked [3]**  12/2 12/3 12/4
**talking [5]**  14/1 27/16 40/22 42/4 53/12
**talks [1]**  52/16
**target [1]**  39/21
**tell [2]**  62/19 62/21
**telling [3]**  26/25 27/7 27/22
**temporarily [1]**  36/17

**ten [2]**  36/5 39/14
**tentative [2]**  6/10 9/1
**Tenth [1]**  2/5
**term [11]**  7/1 7/2 7/9 37/12 40/2 40/3 40/8 40/13 41/1 43/15 65/19
**termed [1]**  45/24
**terms [4]**  7/16 48/5 49/14 58/21
**terrific [1]**  20/21
**test [3]**  5/18 6/2 60/5
**text [1]**  66/10
**textual [1]**  66/5
**textually [2]**  5/6 5/9
**than [25]**  4/14 4/20 4/23 6/7 7/4 8/8 11/15 11/16 13/12 14/23 26/25 28/16 35/12 36/7 42/16 44/9 51/13 53/5 53/16 58/10 59/17 62/24 63/23 66/3 66/7
**Thank [32]**  4/7 9/16 14/2 14/3 16/17 20/2 20/3 20/5 20/13 26/2 26/3 33/16 36/23 36/24 38/3 40/15 45/6 45/6 45/10 45/11 45/14 49/23 50/7 54/4 55/23 56/23 60/8 61/22 61/24 63/19 64/7 66/20
**that [490]**
**that's [61]**  4/25 5/23 6/8 7/14 7/18 8/1 8/25 9/15 10/10 11/19 13/17 13/18 15/18 18/2 20/20 23/11 24/8 30/18 30/19 31/7 31/17 31/24 32/25 33/3 33/11 35/17 41/15 41/19 41/23 42/3 44/11 44/13 44/24 45/4 46/4 46/4 46/25 47/6 47/16 48/25 49/12 49/12 49/22 51/18 52/5 52/11 52/24 55/11 57/15 58/3 58/20 60/2 60/4 60/15 61/1 61/16 61/21 62/23 63/18 63/18 64/24 65/3
**their [39]**  6/3 6/4 9/9 10/7 12/4 12/8 13/3 14/11 15/4 15/5 15/15 16/12 19/3 21/6 24/21 25/10 27/1 27/15 33/19 38/10 39/3 40/24 41/1 46/19 46/19 49/4 51/1 55/4 57/21 57/23 58/11 58/14 58/15 58/17 59/9 63/12 63/12 65/6 65/6
**them [28]**  7/18 10/20 12/12 12/23 13/15 14/12 14/14 14/24 14/25 15/10 15/11 15/16 16/1 16/16 17/10 24/23 25/3 28/21 28/24 31/11 31/18 35/19 38/11 40/17 45/4 54/15 62/10 64/10
**themselves [4]**  24/22 50/22 55/2 55/5
**then [39]**  4/8 6/20 8/10 8/14 9/9 9/25 12/21 13/19 15/8 16/10 18/18 19/8 22/13 24/1 28/21 30/1 30/8 30/17 34/16 34/20 35/7 35/16 35/21 37/20 38/14 42/12 43/3 43/8 44/2 45/2 45/3 45/20 50/5 54/15 55/2 59/7 61/10 65/5 66/13
**therapies [1]**  13/4
**there [59]**  6/4 6/24 7/11 7/25 8/23 11/11 12/10 14/5 15/7 15/12 17/11 19/20 21/8 21/15 22/8 23/6 23/16 24/25 24/25 25/8 25/9 26/14 26/14 26/17 27/19 28/13 28/22 30/12 31/11 31/20 32/12 32/22 34/4 36/4 36/6 36/9 38/5 38/24 39/19 40/11 40/17 41/9 42/13 43/15 46/16 50/14 53/16 55/18 57/13 59/14 60/3 60/4 60/16 60/19 61/17 62/25 63/21 64/15 65/21
**there's [16]**  8/3 11/8 21/24 22/2 24/23 32/15 36/18 47/7 48/22 49/4 56/5 58/12 58/23 59/19 61/2 63/1
**therefore [1]**  44/7

**these [27]**  4/15 4/18 5/7 11/9 13/10 13/11 14/9 17/15 18/15 19/6 19/12 22/11 28/3 31/25 32/1 32/2 36/11 39/10 40/16 44/4 46/18 46/22 47/15 48/12 58/24 58/25 66/9
**they [71]**
**they'd [1]**  15/14
**they'll [2]**  13/14 15/3
**they're [23]**  8/12 11/2 12/6 13/13 13/19 13/21 13/25 15/3 19/9 19/10 19/11 20/19 22/4 22/14 32/16 34/8 44/8 44/8 51/5 52/23 53/20 61/19 65/5
**they've [2]**  22/4 31/25
**thing [12]**  6/20 7/21 22/19 23/15 25/13 29/11 44/16 54/22 60/22 63/20 64/4 64/6
**things [17]**  6/25 18/4 19/2 19/6 19/9 19/12 21/22 23/22 24/3 34/11 34/20 53/6 62/7 62/9 63/23 64/15 65/13
**think [55]**  5/14 6/3 9/2 9/9 12/22 12/25 12/25 15/20 25/6 26/13 26/22 27/7 28/3 29/1 32/3 32/5 32/6 33/7 33/14 34/25 35/17 35/21 36/5 36/17 37/2 37/17 38/12 39/8 40/3 41/12 43/2 43/17 43/21 44/15 44/24 47/22 49/13 49/16 50/1 50/12 52/2 53/12 54/12 54/12 54/18 57/4 57/10 57/19 58/13 59/25 61/3 62/24 64/12 65/16
**third [5]**  3/12 21/23 21/24 32/15 36/4
**this [112]**
**Thomas [2]**  2/4 2/20
**those [35]**  4/14 9/1 9/3 9/25 20/19 21/9 21/18 22/5 23/6 23/19 23/21 24/19 25/2 31/12 31/12 33/21 38/14 41/18 42/12 46/15 49/13 49/15 49/20 51/4 51/11 51/14 51/23 54/13 54/15 55/19 56/20 56/24 57/6 60/12 65/19
**though [8]**  10/6 10/25 15/19 17/15 19/16 20/25 44/6 51/16
**thought [2]**  9/1 65/16
**thoughts [1]**  9/1
**thousands [1]**  42/5
**threat [1]**  30/7
**three [11]**  13/23 15/16 22/16 34/23 42/11 42/12 44/4 51/10 51/16 57/9 59/25
**through [12]**  6/1 7/17 12/10 12/11 28/14 48/25 49/9 51/16 59/17 59/25 64/18 65/15
**Thursday [1]**  49/3
**tie [1]**  47/16
**time [52]**  4/19 4/22 8/20 9/9 9/20 13/3 13/11 13/22 15/15 16/14 18/8 18/21 19/23 20/20 22/6 23/17 24/15 24/16 25/10 28/2 29/7 29/22 31/1 32/8 32/17 34/19 34/22 34/25 35/5 36/9 38/16 43/17 43/19 45/10 48/6 48/9 48/11 48/16 48/17 49/1 49/13 49/25 50/1 52/6 53/6 62/5 62/19 64/24 65/6 65/7 65/11
**timeline [2]**  13/18 13/20
**times [7]**  12/8 13/13 18/25 19/4 19/13 54/7 55/17
**timetable [1]**  21/1
**timetables [2]**  8/11 9/3
**today [18]**  4/7 5/15 5/23 6/9 16/20 23/16 34/21 38/23 42/21 48/15 49/19 50/13 53/5 54/16 54/25 60/9 64/8 66/16

## T

**together [1]** 63/2
**too [3]** 20/11 34/25 35/1
**took [4]** 30/22 33/14 37/23 58/11
**total [1]** 42/2
**touches [1]** 35/8
**toward [1]** 35/7
**towards [2]** 29/3 30/7
**trading [1]** 41/23
**trail [1]** 5/5
**transcript [3]** 1/21 67/5 67/6
**transcripts [1]** 38/14
**treat [2]** 51/5 58/10
**treated [1]** 57/14 64/23 64/23
**treatment [22]** 14/13 14/15 18/25 19/5
19/13 21/6 21/8 40/9 40/10 40/13 40/24
41/1 41/13 42/5 43/15 44/24 52/23 53/14
53/17 58/7 58/8 58/14
**trial [6]** 2/17 4/17 16/11 51/4 58/18
64/18
**troubling [1]** 23/16
**true [6]** 6/25 7/3 8/22 10/10 47/18 60/15
**Trueblood [2]** 17/20 17/22
**truth [1]** 60/5
**try [6]** 6/4 26/5 26/8 28/20 65/13 66/17
**trying [5]** 7/21 13/8 30/13 45/1 52/22
**turn [1]** 19/22
**turning [2]** 16/21 24/2
**TV [1]** 48/22
**twenty [1]** 47/19
**two [16]** 10/14 10/15 18/4 18/11 22/21
23/4 28/12 32/12 34/5 38/16 39/7 47/19
51/17 59/7 59/12 60/17
**two-fold [1]** 39/7
**typically [1]** 28/10

## U

**U.S [1]** 17/4
**ultimately [4]** 17/14 36/8 36/10 48/13
**unable [1]** 4/21
**unconstitutional [2]** 5/11 35/3
**under [17]** 5/18 8/8 9/7 11/4 14/11 21/9
21/13 21/16 21/17 24/19 36/15 39/14
41/17 45/3 46/21 59/24 62/20
**underlying [1]** 46/19
**understand [6]** 12/13 31/8 32/5 50/12
54/13 54/17
**understandable [1]** 14/8
**understandably [1]** 39/2
**understanding [2]** 16/3 16/15
**undisputed [2]** 51/3 51/4
**unfolds [1]** 4/23
**Unfortunately [2]** 10/10
**uniquely [1]** 40/6
**UNITED [3]** 1/1 1/23 3/11
**universe [1]** 53/1
**unless [2]** 37/18 43/1
**unlike [1]** 51/21
**unmedicated [1]** 14/18
**unthinkingly [1]** 35/22
**until [5]** 7/22 25/24 45/22 50/17 54/23
**unusual [1]** 20/10
**unwise [2]** 35/21 64/12
**up [20]** 4/11 7/10 8/13 8/14 12/1 12/23
13/15 21/18 27/17 32/15 38/13 42/2

48/13 49/9 52/18 61/8 62/11 62/13 62/13
65/15
**upcoming [1]** 48/20
**upon [7]** 23/3 35/8 46/18 46/22 47/1
48/21 65/24
**us [9]** 4/12 10/12 16/8 16/21 25/22
45/22 46/1 49/13 62/15
**use [7]** 5/23 9/13 28/10 44/6 44/12
44/13 48/17
**used [4]** 5/25 6/5 37/12 58/8
**useful [2]** 7/20 65/22
**uses [1]** 5/22
**using [5]** 5/19 11/20 35/15 56/12 59/8

## V

**valid [1]** 26/22
**valve [1]** 15/12
**vast [2]** 21/15 32/20
**versus [3]** 6/16 6/17 57/6
**very [38]** 6/11 8/15 9/11 12/13 13/7
13/22 14/2 14/3 20/2 25/3 26/3 29/2
33/16 36/10 36/14 36/23 39/10 39/25
40/7 43/3 43/5 43/8 44/17 44/20 44/23
45/6 46/10 46/10 49/23 50/7 54/4 55/23
56/16 56/23 58/12 60/8 63/3 64/13
**vetted [1]** 6/15
**Vetto [6]** 2/23 9/7 9/17 25/21 63/6 65/8
**victims [1]** 47/15
**victims' [2]** 33/23 48/5
**view [10]** 14/24 31/21 36/11 38/18 41/2
41/25 43/9 48/12 49/7 54/15
**viewed [1]** 48/2
**views [1]** 6/10
**vindicated [1]** 33/22
**violated [2]** 43/3 58/2
**violates [1]** 41/21
**violating [1]** 41/12
**violation [3]** 7/8 33/2 43/10
**violations [9]** 5/7 17/2 31/2 31/13 31/21
31/24 41/24 54/25 55/14
**violent [1]** 21/25

## W

**wait [8]** 6/20 22/23 24/4 45/22 50/17
54/7 55/17 55/21
**waited [4]** 23/7 51/13 52/4 52/9
**waiting [11]** 22/23 23/10 23/18 51/13
52/4 52/10 52/13 52/17 53/16 55/18
55/20
**waitlist [2]** 22/21 52/6
**waitlists [1]** 51/25
**want [18]** 4/8 4/11 5/22 9/11 14/24
18/10 37/9 44/13 44/22 46/3 48/3 50/11
53/5 55/5 55/14 61/18 64/3 66/9
**wanted [6]** 35/19 45/16 50/19 54/22
61/25 62/23
**wants [1]** 27/5 44/12
**was [80]**
**WASHINGTON [10]** 2/20 2/21 3/1 9/8
9/19 10/8 17/20 17/24 51/9 52/15
**wasn't [7]** 20/24 23/8 24/8 28/13 28/14
47/18 65/10
**water [1]** 34/14
**way [23]** 12/10 22/8 26/13 27/13 29/25
34/6 36/2 36/20 37/13 37/16 37/16 40/18

41/5 48/2 53/2 54/14 55/4 61/11 63/25
65/16 66/1 66/8 66/19
**ways [3]** 32/13 35/12 40/7
**we [104]**
**we'd [2]** 23/12 46/16
**we'll [5]** 9/2 9/3 9/4 66/11 66/20
**we're [21]** 4/19 18/14 18/14 21/20 22/1
22/2 23/25 29/18 29/19 29/20 29/22
29/23 35/6 37/7 41/8 41/23 42/3 52/24
53/12 56/18 60/5
**we've [5]** 25/14 45/15 48/20 57/1 59/24
**week [1]** 47/4
**weeks [4]** 15/20 29/21 59/7 59/12
**Wehr's [4]** 21/12 23/14 23/15 24/6
**weigh [1]** 46/1
**well [23]** 7/12 9/2 9/11 15/15 15/18
18/12 19/8 21/5 26/23 27/20 28/1 29/1
29/11 31/23 33/7 33/22 39/20 40/8 43/7
43/24 46/5 47/5 65/2
**went [4]** 25/14 27/13 34/18 59/6
**were [34]** 10/2 10/11 13/9 15/19 19/25
20/1 20/21 21/16 21/17 22/21 24/7 28/15
29/4 30/11 31/12 36/9 36/9 37/17 38/15
44/5 47/25 50/14 51/21 51/25 52/1 52/10
52/11 57/21 58/5 59/5 60/14 60/17 63/24
64/23
**weren't [4]** 8/13 51/18 54/13 64/24
**what [73]**
**what's [2]** 40/4 46/11
**whatever [4]** 16/11 35/19 48/10 49/25
**when [17]** 5/22 9/23 11/7 12/5 13/14
13/19 20/7 23/21 23/22 24/24 25/3 31/7
31/20 32/6 37/16 47/16 56/21
**where [15]** 8/25 9/3 11/25 15/6 25/17
28/11 30/17 32/22 44/23 49/6 53/10
53/11 53/16 59/25 65/2
**whether [23]** 5/25 6/22 7/23 13/20
13/20 16/22 17/8 17/14 22/19 24/21
24/23 26/17 26/17 26/20 27/18 45/24
49/20 50/13 50/16 57/20 57/21 64/1 65/3
**which [38]** 5/18 8/22 9/5 9/22 10/20
17/18 19/25 22/14 23/2 24/3 24/9 27/7
27/10 28/4 29/16 30/5 32/7 32/19 32/19
33/10 34/16 35/9 37/10 39/12 41/9 44/5
45/16 46/7 46/8 47/14 47/17 52/14 53/7
53/18 56/10 56/17 62/25 66/6
**while [5]** 6/20 6/25 7/23 17/23 29/5
**who [72]**
**whole [2]** 10/4 61/8
**whose [1]** 43/2
**why [14]** 10/8 16/20 20/10 20/25 38/21
44/24 45/16 48/17 51/18 52/11 52/24
53/20 54/13 55/11
**wildly [1]** 58/3
**will [36]** 6/17 7/15 8/11 8/16 9/19 9/25
10/1 10/23 11/17 12/23 15/4 15/4 15/2
15/2 15/4 16/16 17/11 18/9 20/12 21/1
21/9 25/12 27/10 37/22 42/7 42/8 42/9
47/21 49/11 50/2 53/6 55/18 62/16 65/11
66/2 66/17
**Williams [3]** 3/4 45/13 54/23
**Williams' [2]** 60/11 61/10
**willing [3]** 34/22 64/5 65/25
**win [1]** 16/8
**window [1]** 18/1

**W**

**winnowing [1]**  36/8
**within [4]**  34/17 62/7 62/7 66/7
**without [9]**  4/22 12/5 24/11 35/22 38/19
55/16 62/22 65/13 67/6
**won't [3]**  20/11 40/17 41/14
**wondering [1]**  9/13
**words [4]**  13/13 31/9 32/1 34/7
**work [10]**  5/2 7/11 18/9 47/2 47/19
48/17 48/19 48/23 48/25 49/11
**worked [2]**  51/22 65/14
**workers [1]**  10/24
**working [4]**  4/15 24/8 45/24 52/21
**worried [1]**  25/18
**worry [1]**  24/19
**worse [1]**  24/1
**worst [3]**  7/23 24/1 24/13
**would [39]**  6/21 10/6 15/10 15/16 16/6
16/7 16/8 18/7 18/8 20/21 20/25 22/8
28/18 28/20 28/24 29/9 29/9 29/12 29/12
42/21 44/7 47/19 49/20 53/5 56/21 57/12
57/19 57/19 58/13 58/21 58/24 59/20
62/5 63/6 63/20 63/21 64/1 65/16 65/22
**wouldn't [1]**  66/8
**writing [1]**  66/14
**written [1]**  64/8
**wrong [3]**  52/22 53/4 64/12
**wrote [2]**  23/17 27/15

**Y**

**Yeah [1]**  37/15
**year [17]**  13/21 13/24 23/6 36/8 39/15
39/24 39/25 40/2 41/9 42/2 50/25 51/18
54/20 55/18 55/21 61/6 62/17
**years [11]**  13/23 15/8 15/16 28/12 34/23
36/5 47/19 49/8 51/16 62/3 65/12
**yes [14]**  9/15 11/13 12/15 12/18 15/23
17/1 18/20 38/2 39/24 44/12 45/9 49/22
60/10 62/14
**yet [9]**  6/18 6/19 8/1 11/24 23/20 32/4
32/24 49/6 66/1
**yield [2]**  36/14 36/16
**yo [2]**  63/9 63/9
**yo-yo [1]**  63/9
**you [160]**
**you'd [1]**  9/12
**you'll [1]**  28/3
**you're [20]**  15/19 15/20 15/25 16/9
29/24 30/1 30/14 32/12 33/3 33/5 37/25
40/3 41/9 41/12 41/20 42/4 44/1 56/21
64/5 64/12
**you've [6]**  9/2 41/11 43/8 43/9 43/25
66/6
**your [57]**  9/6 9/7 9/16 11/14 11/19
12/20 12/21 13/13 16/6 20/5 20/12 24/2
26/6 30/14 32/22 32/25 33/7 35/17 36/1
37/4 37/10 39/8 41/15 43/9 43/22 44/17
44/19 44/20 45/1 45/1 45/4 45/10 45/10
45/11 45/14 46/3 47/25 48/10 50/3 52/25
53/1 53/1 53/22 54/18 55/9 55/25 56/23
57/13 60/23 61/1 61/15 61/21 61/24
62/14 62/24 65/26 66/18

**Z**

**zero [2]**  23/13 59/2

**Zoom [2]**  46/8 47/4