```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF OREGON

 3   OREGON ADVOCACY CENTER,      )
     et al.,                      )
 4                                )
              Plaintiffs,         )   Case No. 3:02-cv-00339-MO
 5                                )
         v.                       )
 6                                )
     BOBBY MINK, et al.,          )
 7                                )
              Defendants.         )
 8   _____ )
     JAROD BOWMAN, et al.,        )
 9                                )
              Plaintiffs,         )   Case No. 3:21-cv-01637-MO
10                                )
         v.                       )
11                                )
     DELORES MATTEUCCI, et al.,   )
12                                )
              Defendants.         )
13   _____ )
     LEGACY HEALTH SYSTEM, et al., )
14                                )
              Plaintiffs,         )   Case No. 6:22-cv-01460-MO
15                                )
         v.                       )
16                                )   April 25, 2023
     PATRICK ALLEN,               )
17                                )   Portland, Oregon
              Defendant.          )
18   _____ )

19

20                       Oral Argument

21                 TRANSCRIPT OF PROCEEDINGS

22          BEFORE THE HONORABLE MICHAEL W. MOSMAN

23          UNITED STATES DISTRICT COURT SENIOR JUDGE

24

25
```

```
 1

 2                              APPEARANCES

 3   FOR PLAINTIFF
     DISABILITY RIGHTS
 4   OREGON:                    Mr. Thomas Stenson
                                Disability Rights Oregon
 5                              511 S.W. Tenth Avenue, Suite 200
                                Portland, OR 97205
 6

 7   FOR PLAINTIFF
     METROPOLITAN PUBLIC
 8   DEFENDERS:                 Mr. Jesse A. Merrithew
                                Levi Merrithew Horst LLP
 9                              610 S.W. Alder Street, Suite 415
                                Portland, OR 97205
10

11   FOR INTERVENORS/
     PLAINTIFFS HEALTH
12   SYSTEMS:                   Mr. Eric J. Neiman
                                Lewis Brisbois Bisgaard & Smith LLP
13                              888 S.W. Fifth Avenue, Suite 900
                                Portland, OR 97204
14

15                             Mr. Alex Van Rysselberghe
                                Stoel Rives LLP
16                              760 S.W. Ninth Avenue, Suite 3000
                                Portland, OR 97205
17

18
     FOR THE DEFENDANTS:        Ms. Carla Scott
19                              Oregon Department of Justice
                                Trial Division
20                              100 S.W. Market Street
                                Portland, OR 97201
21
                                Mr. Craig M. Johnson
22                              Oregon Department of Justice
                                1162 Court Street, NE
23                              Salem, OR 97301

24

25
```

```
1    ALSO PRESENT:            Dr. Debra Pinals (by telephone)

2

3    COURT REPORTER:          Bonita J. Shumway, CSR, RMR, CRR
                              United States District Courthouse
4                             1000 S.W. Third Ave., Room 301
                              Portland, OR  97204
5                             (503) 326-8188

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (P R O C E E D I N G S)

 2                 (April 25, 2023; 1:08 p.m.)

 3                    * * * * * * * * *

 4          THE COURTROOM DEPUTY:  We are here today for oral

 5   argument in Case No. 3:02-cv-339-MO, Oregon Advocacy Center, et

 6   al. versus Mink, et al., Member Case Nos. 3:21-cv-1637-MO, and

 7   6:22-cv-1460-MO.

 8          Counsel, please state your name for the record.

 9          MR. STENSON:  Your Honor, Tom Stenson, Disability

10   Rights Oregon.

11          MR. MERRITHEW:  Jesse Merrithew on behalf of

12   Metropolitan Public Defender.

13          MR. JOHNSON:  Craig Johnson with Department of

14   Justice for defendant.

15          MS. SCOTT:  Carla Scott with the Department of

16   Justice for defendants.

17          MR. VAN RYSSELBERGHE:  Alex Van Rysselberghe with

18   Stoel Rives for plaintiff health systems.

19          MR. NEIMAN:  Eric Neiman for plaintiff health

20   systems, Your Honor.

21          THE COURT:  Thank you.

22          Give me just a moment.  Give me just a minute here.

23   To quote George Washington, it seems I've gone not only gray

24   but blind in the service of my country.  So I need my reading

25   glasses.
```

1          (There is a pause in the proceedings.)

2          THE COURT:  I thought it might be helpful to give you

3    some tentative thoughts and then we can walk through your

4    arguments about those after I'm done.  And I'll break them out.

5    I won't follow chronologically through the claims by number but

6    in groups.

7          But first I want to discuss the motion to dismiss

8    what I'll call health systems' claims on behalf of health

9    systems.  And the first major issue with regard to that motion

10   has to do with standing.  The parties agree on the general

11   standard for standing.  It's the fairly traceable prong that's

12   the most important to me, and the argument is that it's not

13   fairly traceable because the hospitals, the health systems have

14   voluntarily entered into this arrangement.  And, of course,

15   it's almost always the case that if you voluntarily entered

16   into an arrangement like this, that you can't -- you don't have

17   a complaint for standing purposes.  Numerous cases so hold.

18         So the real question is maybe a framing question to

19   think about voluntariness here or is it voluntary.  I don't

20   know, for example -- I'm told without real debate that it's

21   voluntary to enter into this arrangement, but I don't know if

22   that's got what I'll call the Hotel California problem, where

23   you can get in but you can't get out.  If that's the case, then

24   I would acknowledge that if you voluntarily entered into a

25   business relationship that you are obligated to stay in for X

1    years, and during those years things dramatically change so it

2    wasn't the deal you got into in the first place, you might have

3    standing in a case like that.  But it looks like these are

4    two-year arrangements, and the complaint is that this has been

5    bad since 2017, so it looks like that's been reupped

6    voluntarily during the pendency of the time in which the

7    complaint says things are bad, and it looks like a standing

8    problem because of voluntariness.  So standing is one question.

9          If there is standing, then I'll look at the claims

10   individually under 12(b)(6), and the first is the substantive

11   due process claim.  That's claim 2.  And there the standard is

12   whether the governmental action relates -- related to the use

13   of the plaintiff's property lacks any substantial relation to

14   the public health, safety, or general welfare.

15         And it appears to me that the governmental action is

16   the use of health systems' hospital beds for long-term care for

17   civilly committed patients.  So it can't merely be that this

18   governmental action has to be imperfect, it has to lack any

19   substantial relation to public health.  And I have trouble with

20   that as a description of what's happening here.  It appears to

21   have some substantial relation to public health.  But, again,

22   tentative only are those thoughts.

23         There's also a procedural due process component to

24   claim 2, but that has not been backed up by any argument, and

25   so it appears to be waived.

1          There's a Fifth Amendment takings claim.  That's

2    claim 3.  It looks a lot like the substantive due process claim

3    in some ways.  The argument is a physical taking, a physical

4    taking of the beds, as I understand it, and so I don't know --

5    I don't know what will happen with the voluntariness issue, but

6    it comes up again in this setting.

7          So I suppose if there's no voluntariness for standing

8    purposes, I might be persuaded that there's no voluntariness

9    here, but it looks like you can't get the physical taking

10   because of the voluntariness issue.

11         This case hasn't been pled or argued as a regulatory

12   taking, so I'm only treating it under the physical taking

13   analysis.  And the Oregon Constitution taking, the claim 4,

14   will stand or fall pretty much on the federal analysis.

15         So those are health care systems' claims on behalf of

16   health systems.

17         Now I want to look at the health systems' claims on

18   behalf of patients.  Here again, issue number one is standing,

19   if health systems has to show injury in fact to health systems

20   in order to bring a claim on behalf of a third party.  But if

21   we get past that, then I have to look at whether there's a

22   close relationship to the third party, which is -- turns out to

23   be, as it's litigated across cases, a sort of a correlation of

24   interests as opposed to divergence of interests.  And that's

25   tough here because quite a few of the arguments made in other

1   settings by health systems are that these patients are a

2   headache, that they cost them a lot of money, that they result

3   in the attrition of staff, that they destroy property, and that

4   they don't want to do this.  And that starts not to sound like

5   a correspondence of interests such that they could bring a

6   claim on behalf of a third party.

7         And then finally, when I look at the prong as to

8   whether the third parties -- here the patients -- are hindered

9   by their mental illness in advancing their claims on their own,

10  well, that's again a mix.  Obviously the answer is yes, yes for

11  the reasons that maybe any indigent patient or other -- even

12  any patient might be hindered in bringing a claim on its own

13  because of illness.  But almost by definition, some of these

14  folks -- Well, let's put it this way.  In a criminal case,

15  they're disentitled, disenfranchised from making decisions on

16  their own.  So I don't know how they could bring a lawsuit.

17  But I say a mix because, on the other hand, there's this lack

18  of coalition of interests, and I have right in front of me an

19  organization whose mission is dedicated to bringing claims on

20  behalf of people like this.  So why wouldn't I pick DRO rather

21  than health systems to advance these claims?  So that's the

22  standing issue.

23        If I turn to 12(b)(6) and get past all that, then the

24  substantive due process claim is again a question of adequate

25  and effective treatment.  And that, as a pleading matter, in my

1  view, may survive, given that that's what we're litigating

2  generally.

3          There's again no argument on the procedural due

4  process claim.  The Oregon statutory claims 5 and 6, in

5  particular, seem to me to devote the decision entirely to OHA,

6  whose decision shall be final, which is read in many settings

7  where that sort of language is used as nonreviewable.  So

8  that's a concern.

9          Claim 7 has a problem, in that it has to be -- is

10  grounded in denying patients treatment or limiting them because

11  of some disability, and that doesn't appear to be the

12  foundation for the treatment decisions made here, since the

13  entire set is identical in that way and a subset is being sent

14  to health systems.

15          There is this motion for clarification on

16  intervention, but let's start then, since it runs through all

17  the claims, the claims themselves and both pieces of the motion

18  to dismiss, let's start with standing, again with counsel for

19  health systems.

20          Can I just put the first question to you, just --

21          MR. VAN RYSSELBERGHE:  Yes.

22          THE COURT:  Why isn't this relationship voluntary?

23          MR. VAN RYSSELBERGHE:  So the relationship, the

24  voluntariness of the relationship, you can look at it in, I

25  think, two ways.  And Your Honor has brought up the way of

1    looking at it across a timeline.  I think it is not voluntary

2    if you look at it across even from '17, 2017 until now.  There

3    have been changes and just the worsening of Oregon's behavioral

4    health crisis over that time.  So it absolutely is one of those

5    cases -- and I think we allege this in the complaint

6    sufficiently -- that even the changes of -- in the Oregon State

7    Hospital admissions and the decreasing resources outside the

8    Oregon State Hospital for long-term treatment options has been

9    changing over that period of time, such that the agreement that

10   was made in '17 has to be reconsidered at this point, and that

11   there's no voluntariness now there.

12           THE COURT:  If you really reach the point where you

13   really hated this arrangement -- which you're apparently close

14   to doing -- could you leave the arrangement?  Could you cease

15   being designated as a facility that would receive these folks?

16           MR. VAN RYSSELBERGHE:  So I think it's important to

17   distinguish the kinds of treatment we're talking about here.

18   There's the long-term treatment, which is what we cannot

19   provide, and then there's the acute stabilizing treatment that

20   we do and want to continue providing.

21           Now, I suppose that if signing up for the former kind

22   of treatment, which is materially different, automatically

23   signed us up to provide the latter, which we simply cannot

24   provide, then in that case we could withdraw from the

25   arrangement entirely.  But that's to conflate these two kinds

1    of treatment that our allegations in the complaint distinguish.

2          THE COURT:  Well, before I move further down that

3    path, I want to be clear then.  You are in some sort of

4    arrangement that initially, in your view, involved receiving

5    from the State Hospital patients you did want to treat?

6          MR. VAN RYSSELBERGHE:  Correct.

7          THE COURT:  And you did -- This is a question now.

8    You did enter voluntarily into a sort of a contract

9    relationship to receive those patients, right?

10          MR. VAN RYSSELBERGHE:  So I would dispute that it's a

11    contractual relationship.

12          THE COURT:  You did enter into some sort of

13    arrangement that was voluntary.  That is, you didn't have to do

14    it as a business?

15          MR. VAN RYSSELBERGHE:  We voluntarily sought

16    certification to provide, importantly, acute care or the

17    five-day hold kind of treatment.

18          THE COURT:  Let's just stick with acute care.  And so

19    you voluntarily entered into an arrangement to provide acute

20    care, and not every health system in the state of Oregon did

21    that, correct?

22          MR. VAN RYSSELBERGHE:  It's my understanding, yes.

23          THE COURT:  And you could tomorrow quit providing

24    acute care if you decided it didn't fit your mission anymore,

25    you didn't want to do it?

1    MR. VAN RYSSELBERGHE:  I believe that is correct.

2    THE COURT:  So, as I understand it, you want to make

3    distinction -- and I'll hear you out on that -- between the

4    kind of care you said you agreed to provide and the kind of

5    care you're being asked to provide now.  But in terms of the

6    arrangement for acute care, it's voluntary, right?

7    MR. VAN RYSSELBERGHE:  The arrangement for

8    specifically acute care and the five-day hold is voluntary.

9    THE COURT:  And if that acute care arrangement has

10   morphed into something you dislike for a variety of reasons --

11   one, that you say you cannot do it; and two, because you don't

12   have the beds to even do it, or any other reason -- if it

13   morphs into something other than what you wanted to do when you

14   started down this path, then you could also just say, well,

15   then this isn't working for us anymore; we quit?

16   MR. VAN RYSSELBERGHE:  So to the extent that the

17   nature of acute care --

18   THE COURT:  I want to hear you out on this, I really

19   do.  But first I want a yes-no answer if that's possible.  If

20   it's not, then just tell me.  But could you quit?

21   MR. VAN RYSSELBERGHE:  Yes.

22   THE COURT:  Go ahead and finish your answer.

23   MR. VAN RYSSELBERGHE:  Okay.  So I think to say that

24   acute care has morphed into something different, that's not

25   what we allege in the complaint.  We're distinguishing acute

1    care as one particular kind of treatment as opposed to

2    long-term care.  And so this is not a question of whether acute

3    care has morphed, it's that we've signed up to provide acute

4    care and stabilizing care, and now as a result of us signing up

5    for that kind of care, we are being forced to provide the

6    latter type of care -- long-term treatment -- which we have not

7    voluntarily agreed to provide.

8              And I think you can see this in the certificates that

9    health systems have provided in our motion for judicial notice.

10   If you look at the checkmarks that we have checked in that --

11   in the various forms, there's distinguishing, you know --

12   there's acute care options that you can check, there are

13   five-day hold options you can check.  Those are the boxes we

14   checked.  Now, there's also secure residential treatment care,

15   which is long-term care, we continue that, but the Class 1 and

16   2 variety, none of the health systems checked that box.  And so

17   there is absolutely a situation that we have alleged in our

18   complaint that's consistent with those forms in which we have

19   been signed up to provide one type of care and now we are being

20   required, and sort of OHA is outsourcing to us this latter type

21   of care that was never part of our voluntary arrangement.  And

22   that's why we have not voluntarily -- we've not voluntarily

23   taken on this interim level.

24             THE COURT:  Why haven't you told OHA that you refuse?

25             MR. VAN RYSSELBERGHE:  We have.  And the reason that

1    nothing has happened is because there's nowhere for these

2    patients to go after the point where we cannot medically do

3    anything for them further, and Oregon law prohibits us from

4    discharging patients in this situation unless they have a place

5    to go, provided that they are still in need of medical

6    treatment, which these classifications are.

7              THE COURT:  Thank you.

8              MR. VAN RYSSELBERGHE:  Thank you.

9              So unless Your Honor has further questions --

10             THE COURT:  That's your core argument on

11    voluntariness, right?

12             MR. VAN RYSSELBERGHE:  That's correct.

13             THE COURT:  Thank you.  I'll probably come back to

14    you.

15             MR. VAN RYSSELBERGHE:  Thank you.

16             THE COURT:  Your response, Ms. Scott?

17             MS. SCOTT:  So plaintiffs allege that OHA is forcing

18    or requiring them to treat civilly committed patients on a

19    long-term basis, but they don't cite any law that shows they

20    are, in fact, required or forced to treat civilly committed

21    patients on a long-term basis.  The Oregon Administrative Rules

22    provide to the contrary, that county mental health providers

23    have delegated authority to assign civilly committed patients

24    to appropriate facilities, that the receiving facility must

25    have space and consent to the placement.  That is in OAR

1    309-033-0420.

2          We don't see anything in the complaint in which

3    private hospitals are forced to treat these patients.  There

4    are no allegations that the hospitals have asked OHA for

5    additional funding or that OHA has declined any request for

6    additional funding to treat these patients.

7          So I think counsel said it pretty simply just now.

8    They could quit.  So that, I think, means they have voluntarily

9    assumed care for these patients on a long-term basis.  So I

10   think that is a fatal problem for their standing.

11         THE COURT:  He says they told the hospital that they,

12   in essence, refused to receive these patients and nothing

13   changes.  Why is that?

14         MS. SCOTT:  I haven't seen that allegation in the

15   amended complaint.

16         THE COURT:  What about the allegation that is in the

17   complaint, that they can't turn away people who show up on an

18   emergency basis?

19         MS. SCOTT:  I heard counsel say they cannot turn away

20   patients if they need medical treatment.  I didn't hear him

21   cite the statute.  I would be prepared to look at that and

22   answer that.  But the OAR does require their consent to admit a

23   civilly committed patient.  And so that is a separate

24   consensual status, in addition to the certifications that they

25   applied for and obtained.

 1          THE COURT:  And the certification is an additional

 2    indicia of voluntariness, in your view?

 3          MS. SCOTT:  It is.

 4          THE COURT:  And that occurs every two years?

 5          MS. SCOTT:  I believe so.  I'm not an expert on that,

 6    but I think the applications are in the record and the

 7    certifications.

 8          THE COURT:  All right.  Thank you very much.

 9          Do you wish to reply?

10          MR. VAN RYSSELBERGHE:  I would.  Thank you.

11          THE COURT:  Why don't you read your note from

12    Mr. Johnson.

13          MR. VAN RYSSELBERGHE:  If necessary.

14          THE COURT:  (To Mr. Johnson) You're welcome to sit up

15    here if you like.  Did you not iron your shirt today?

16          MR. VAN RYSSELBERGHE:  All right.  So I have a couple

17    of points I'd like to respond to here.

18          So first of all, I'd just like to revise my earlier

19    note about how we can't quit and whether we can or can't.  So I

20    should point out that we do have emergency departments, and by

21    nature of having an emergency department, that's not the same

22    thing as an acute care inpatient facility.  And so to the

23    extent we have emergency departments, we absolutely cannot

24    quit.  And since some of our patients come in through that

25    doorway, we cannot stop providing services to those patients.

1          THE COURT:  When you say some of your patients come

2    in through that doorway, you mean just generally from the

3    community or do you mean some of these patients on whom you're

4    seeking to litigate?

5          MR. VAN RYSSELBERGHE:  So -- both.

6          THE COURT:  Do you receive patients from OHA through

7    ER?

8          MR. VAN RYSSELBERGHE:  Yes.

9          THE COURT:  Civilly committed patients?

10         MR. VAN RYSSELBERGHE:  So they will not generally be

11   civilly committed at the point of entry, but they will become

12   civilly committed in our care.

13         THE COURT:  But otherwise the sort of patients that

14   we've been talking about who release to your care, they don't

15   arrive through the ER, do they?

16         MR. VAN RYSSELBERGHE:  Some of them arrive through

17   the ER, and others arrive into Unity Hospital, for instance,

18   which has an emergency department and otherwise.

19         THE COURT:  But the requirement that you admit

20   someone to the ER, that's separate from the voluntariness issue

21   we're discussing today, isn't it?

22         MR. VAN RYSSELBERGHE:  It's not, because we have to

23   treat and evaluate every patient who walks through our door,

24   regardless of their ability to pay.

25         THE COURT:  Again, you've suggested that we be a

1    little bit more precise about that.  Not every patient who

2    walks through your door.  Every patient who walks through your

3    ER, right?

4              MR. VAN RYSSELBERGHE:  We have to treat -- we have to

5    evaluate and treat, if needed, every patient who walks through

6    our ER doors or the doors to our acute facilities, acute care

7    facilities.  That's under EMTALA.  It's a federal statutory and

8    regulatory regime that requires us to treat everyone and

9    evaluate everyone regardless of their ability to pay.  And

10   so -- and that makes us kind of like the *Doe v. Shibinette*

11   case, where New Hampshire law requires hospitals in that state

12   to accept everyone who comes through the door, which is the

13   basis of the Supreme Court, district court, and First Circuit's

14   rejection of this argument that nothing is forcing those

15   hospitals to provide treatment.

16             So I think it might help to just walk through here

17   the track of a patient.  But before I do that, I just wanted to

18   just address the points counsel made.  So it is in the

19   complaint that we pleaded with OHA.  It's in paragraph 46,

20   where we've said that we have tried to address these issues

21   with OHA for years and there's been no results.

22             And regarding the statutes that require us to

23   continue to house patients who no longer are medically

24   benefiting from our acute care and stabilizing services, that

25   would be ORS 441.053 and 054, in addition to an OHA regulation

```
 1   OAR 333-505-0055.  Those laws require --
 2              THE COURT:  I'll pause you there.  I'm concerned
 3   you're starting to shove your private note up onto the screen.
 4   I'd like you not to do that.
 5              MR. VAN RYSSELBERGHE:  I apologize, Your Honor.
 6              THE COURT:  So what do those say?
 7              MR. VAN RYSSELBERGHE:  What does what?
 8              THE COURT:  What do those regulations and statutes
 9   say?
10              MR. VAN RYSSELBERGHE:  So those regulations say that
11   when a patient is receiving behavioral health treatment from
12   our hospitals, we cannot discharge them unless it was in
13   accordance with a created discharge policy and plan that
14   considers the individual needs of our patients.  And so if our
15   doctors have determined that our patients need further
16   treatment, but that treatment cannot be provided in our
17   hospitals but there's nowhere for those patients to go outside
18   of our hospitals, those patients get stuck in sort of this
19   limbo where they can't go elsewhere, they can't be discharged
20   to the sidewalk, and so -- but we can't really do anything
21   medically.  We can't provide them the long-term treatment that
22   they need medically.  And so that's the kinds of patients that
23   we're talking about here.
24              THE COURT:  So on voluntariness, let's assume it goes
25   like this, that OHA sends you a patient and it's really not for
```

1    acute care or it long outlasts acute care into the sort of

2    long-term care that you say you're not equipped to provide.  So

3    you call up OHA and you say, "We don't think we should have

4    this patient.  You shouldn't have sent this patient here in the

5    first place," and OHA says -- I know it's not what's happening,

6    so that's why it's a hypothetical.

7            OHA says, "You're right, that patient shouldn't be

8    there."  And then by operation of these other principles and

9    laws, you realize you can't discharge the patient.

10           Is that laid at the feet of OHA making your continued

11    care for that patient involuntary or is that separate from OHA

12    because it is statutes on the books drafted by the legislature?

13           MR. VAN RYSSELBERGHE:  So please correct me if I'm

14    misunderstanding your question.  We do allege that the buck

15    ultimately stops with OHA to ensure that long-term treatment is

16    provided to these civilly --

17           THE COURT:  I can phrase it more simply, I guess.  If

18    OHA says, "We don't need you to keep these patients anymore,"

19    but you keep them anyway because of what you've just described,

20    that you decide that they still need care and there's no place

21    else for them to go, does that make OHA's and your problem

22    involuntary by you, or does OHA's decision to go ahead and let

23    you bow out make it something else?

24           MR. VAN RYSSELBERGHE:  So, again, I apologize --

25           THE COURT:  What I'm asking is if it's Oregon

1    legislative enactments that make you keep this patient --

2          MR. VAN RYSSELBERGHE:  Yes.

3          THE COURT:  -- and not your arrangement with OHA.  I

4    recognize it's all the State of Oregon, so that's my question.

5    Are you in the same position, it doesn't matter whether OHA is

6    making you keep them or state legislative enactments are making

7    you keep them?  Is it all the same to you?

8          MR. VAN RYSSELBERGHE:  It's the state legislative

9    enactments that are making us keep these patients.  It's also

10   OHA's regulations.  It's both of those.  If OHA were to

11   decide -- I don't think that they are truly taking the position

12   that we should be discharging patients who are in need of care

13   to the sidewalk despite their needs, despite the fact that

14   they're still a danger to themselves and others and unable to

15   care for the basic needs.  Even if they were to take that

16   position and say just discharge them, we would still be

17   obligated to follow Oregon statute, which OHA can't override.

18   We would have to also follow EMTALA.  So there's several

19   provisions at play here, including but not limited to OHA's

20   regulations and directives.

21         THE COURT:  One of them you mentioned was federal

22   law, right?

23         MR. VAN RYSSELBERGHE:  Correct.

24         THE COURT:  That, of course, can't be laid at the

25   feet of the State, right?

```
 1            MR. VAN RYSSELBERGHE:  Repeat, please.
 2            THE COURT:  That, of course, cannot be laid at the
 3    feet of the State in any way, right?
 4            MR. VAN RYSSELBERGHE:  I think not literally, no, but
 5    effectively --
 6            THE COURT:  Well, literally it can't be laid at their
 7    feet in any way, because it's a metaphor, that's true.
 8            MR. VAN RYSSELBERGHE:  It can't be directly -- so
 9    that is an operation of federal law, but that is, you know,
10    when you're talking about voluntariness, we're talking about
11    the overall framework, which includes state law, federal law,
12    and regulatory provisions.  And so the -- just the fact that
13    it's a federal law does not somehow absolve OHA of its
14    statutory obligation to civilly committed patients.
15            THE COURT:  Well, I'm just looking at whether you're
16    suffering a harm that you could cease suffering by your own
17    actions.  That's the standing question.  So I'm not looking at
18    a big framework.  I'm just looking at do you have a way out
19    where you could quit suffering this harm.  So if you have a way
20    out and you keep suffering the harm, then you don't have
21    standing to complain.  And you're saying -- you've essentially
22    told me today you don't have a way out.
23            MR. VAN RYSSELBERGHE:  We're saying we don't have a
24    way out.  Again, going back to the fact that we have to accept
25    patients through our emergency department, and that is not
```

1   something that is subject to our certification as a voluntary

2   participation in providing involuntary treatment.

3           THE COURT:  Well, I guess it just strikes me even

4   from your complaint that the path to your client health systems

5   isn't typically through the ER.  Am I wrong about that?

6           MR. VAN RYSSELBERGHE:  It happens.  I don't have the

7   numbers or the proportions about how many come through ER

8   versus into acute inpatient facilities directly, but it's a

9   mix, and we're talking about both avenues here.

10          THE COURT:  And I guess I thought you were saying a

11  minute ago that it really doesn't matter which it is, that one

12  way or another, you cannot discharge these patients.

13          MR. VAN RYSSELBERGHE:  So our position is that it

14  doesn't matter to the extent that you find the voluntariness

15  component of the acute care provision, if that, you think, is

16  voluntary, we can avoid that.  That doesn't change the fact

17  that the emergency room situation is what it is, and that's not

18  voluntary.

19          THE COURT:  All right.

20          MR. VAN RYSSELBERGHE:  Now, we -- with the acute

21  care, we contend that that's still not voluntary because we

22  have a right to provide the kind of treatment that we go into

23  business to provide, which in our case is acute care and

24  stabilizing treatment.

25          THE COURT:  You have a right to provide acute care to

1    these patients?

2            MR. VAN RYSSELBERGHE:  What I mean by that is to say

3    that in the same way that, you know, a doctor specializes in a

4    certain kind of care, you don't fault the doctor for not

5    providing every type of care in the universe, and we can go --

6    we provide one type of care that doesn't require us to provide

7    every type of care, every type of behavioral health care that

8    exists.

9            THE COURT:  I understand that.

10           MR. NEIMAN:  Judge Mosman, I'm here to talk about the

11   merits after the standing issue is addressed, but I can speak

12   to the pathways that the patients follow.

13           THE COURT:  Go ahead.

14           MR. NEIMAN:  So first of all, these -- sorry.

15           THE COURT:  You can be seated.  That's fine.

16           MR. NEIMAN:  First of all, these patients do not come

17   to the hospitals we represent through OHA, nor are they

18   generally discharged from Oregon State Hospital to our

19   hospitals.  These are people who are in the community who

20   decompensate psychiatrically, brought usually by law

21   enforcement, sometimes by family, sometimes by public officials

22   to our hospital emergency departments.  And there are about

23   7,000 of them, more than 7,000 every year.

24           Once they reach the emergency department, EMTALA

25   takes over, and the hospital emergency departments have to

1   evaluate the patients by what's called a medical screening exam

2   for any kind of condition, including a psychiatric condition,

3   which is specifically covered by federal law.  If that patient

4   is psychiatrically unstable and dangerous to self or others as

5   part of that definition, that patient cannot be discharged

6   without violating federal law.  And that happens, as I said,

7   across the state more than 7,000 times a year.

8         At that point, what the State is not recognizing is

9   when a notice of mental illness, initiating a bed of a civil

10  commitment proceeding is placed, that patient is no longer just

11  a hospital patient.  That patient is within the State's mental

12  health system.  It's the responsibility of the State.  And the

13  core of our complaint is that at that point in time when those

14  7,000 people who are detained pursuant to the civil commitment

15  laws are kept in the hospital involuntarily every year, at that

16  point they cannot be released, and it's the State's

17  responsibility to move forward with civil commitment

18  proceedings to determine whether they meet the statutory

19  standards.

20        THE COURT:  And the core of your complaint is that

21  that doesn't happen and you keep them?

22        MR. NEIMAN:  Correct.

23        THE COURT:  If I understand you correctly so far, the

24  ER is really -- predates, at least if it predates civil

25  commitment, it predates the complaint that you have with the

1  State here?

2        MR. NEIMAN:  In the emergency department, for the

3  patients who meet detention criteria, a notice of mental

4  illness is placed.

5        THE COURT:  You told me that.  What I'm asking is

6  doesn't all of that predate typically by at least a few hours,

7  if not a few days, civil commitment?

8        MR. NEIMAN:  Yes.

9        THE COURT:  And it's upon civil commitment that you

10  have the complaint in front of me that says the State should be

11  taking over here and they're not.  They're making you keep

12  these patients, right?

13        MR. NEIMAN:  Well, no.  Because for many of those

14  patients, our hospitals welcome the opportunity to --

15        THE COURT:  Sure.  But at some point that's the

16  population from which you get the patients that form the

17  gravamen of this complaint, right?

18        MR. NEIMAN:  Right.  At some point --

19        THE COURT:  My only question was then the ER doorway

20  that we've described really predates any relationship that you

21  have, arrangement, certification, or voluntariness with OHA,

22  right?

23        MR. NEIMAN:  Except for the fact that we're licensed

24  as hospitals.  As soon as somebody is detained by way of a

25  notice of mental illness, there's a set of administrative

1    rules.

2              THE COURT:  All sorts of people arrive at your ER,

3    and some of them later are going to become the patients who

4    form the subject of this complaint and some won't, right?

5              MR. NEIMAN:  Correct.

6              THE COURT:  And for those first few days, we don't

7    know what's going to happen yet until they become civilly

8    committed, right?

9              MR. NEIMAN:  That's right.

10             THE COURT:  So until they become civilly committed,

11   your complaint -- this complaint -- doesn't really apply yet,

12   right?

13             MR. NEIMAN:  Right.  Our complaint is directed to the

14   smaller group of people who are civilly committed after a

15   hearing and who have reached the point where they're no longer

16   benefiting from being in the hospital.

17             THE COURT:  That's very helpful.  Thank you.

18             But I guess the follow-up question I have is then the

19   voluntariness or not of people who show up at your ER is a

20   different subject than the subject matter of this complaint,

21   because it applies to a whole set of people who may or may not

22   end up in this complaint, right?

23             MR. NEIMAN:  There's a complicated answer to that

24   simple question having to do with possible alternative places

25   for people to go besides emergency departments, but the answer

1    to what you're asking is, the period of time before the civil

2    commitment order is entered is not part of our complaint.  It's

3    part of the flow of events that leads to our complaint.

4            THE COURT:  Sure.  All right.  Thank you very much.

5            MR. NEIMAN:  And then I wonder if the Court has any

6    questions about -- any more questions about the hospital's

7    ability to discharge people legally once they've reached the

8    point where the hospital can't provide any more care to them

9    that's going to benefit them, because that's what our case is

10   about.

11           THE COURT:  So I've heard your colleague's

12   explanation.  Do you wish to amplify it?

13           MR. NEIMAN:  Not unless the Court has any questions.

14   I thought he did a great job.

15           THE COURT:  Thank you.  No, I don't.

16           Ms. Scott.

17           MS. SCOTT:  I don't have anything further unless the

18   Court has specific questions.

19           THE COURT:  So I do.  On voluntariness, then, at the

20   risk of oversimplifying it, there are three, at least, time

21   periods to think about voluntariness, because what I'm asking,

22   what I'm really asking isn't so much a question of whether

23   medical care can or cannot be provided but whether the harm

24   that's alleged in this complaint can be evaded through some

25   voluntary action.  And so there's multiple spots in time in

1    which the harm theoretically could be evaded.  One is not to

2    enter into any certification relationship with OHA, because

3    that's voluntarily entered into, right?

4            MS. SCOTT:  Correct.

5            THE COURT:  And that's the core of your briefed

6    argument is that since that relationship is one that health

7    systems entered into voluntarily, they could just not do that

8    and therefore not suffer the harm.  Right?

9            MS. SCOTT:  That's right.

10           THE COURT:  And the argument you've heard is that

11   well, that's not quite true that we could cease to be in that

12   sort of relationship but still be obligated to receive patients

13   and treat them.  I guess so far my impression is that not

14   entering into this certification relationship with OHA might

15   not change the picture much as to who shows up at the hospital

16   for treatment.  Do you agree?

17           MS. SCOTT:  I do agree.  I believe federal law is

18   what requires the private hospitals to screen in an ER setting

19   and evaluate and stabilize the patient before transferring

20   them.  It does not require a private hospital to admit a

21   civilly committed or someone who may be civilly committed on a

22   long-term basis.

23           THE COURT:  All right.  The second point is the one

24   counsel just mentioned, and that is that at some point along

25   the way of the total number of thousands of people who show up

1  at the ER, some number of them are going to be civilly

2  committed.  Right?

3          MS. SCOTT:  Yes.

4          THE COURT:  And then your client does step into the

5  picture in some way.  Correct?

6          MS. SCOTT:  OHA, once they're civilly committed,

7  OHA -- OHA is responsible for them once they are civilly

8  committed, correct.

9          THE COURT:  And here we come closer to the timetable

10  you've briefed, and that is your idea is that if they're

11  civilly committed, starting with the need for acute care, you

12  are only going to send them -- or place them, rather, for

13  treatment with a facility that has entered into this

14  certification relationship with OHA.  Is that correct?

15          MS. SCOTT:  I think that's right.  The way the

16  placement decision happens is that OHA has delegated its

17  placement authority to the county mental healthcare providers.

18  They then make a placement decision, and sometimes it is with a

19  private hospital, but the private hospital still has to consent

20  under the Oregon Administrative Rules to such a placement.

21          THE COURT:  Another way to think about it is if this

22  all happened, someone showed up at the ER and then they got

23  civilly committed, and it so happens that the hospital whose ER

24  they showed up to isn't in this certification relationship,

25  then it would be either impossible or at least unlikely that

1    they'd be placed for treatment there.   Is that right?

2         MS. SCOTT:   It would be the hospital's choice at that

3    point what to do with the patient.   There's no state law

4    forcing them to admit or not admit them at that stage.

5         THE COURT:   Only federal law?

6         MS. SCOTT:   Yes.   And federal law only requires the

7    ER treatment.   It does not require long-term admission.

8         THE COURT:   And then the last stage of the timetable

9    is that they've been placed for treatment for whatever reason,

10   and the hospital's ability to provide any further acute

11   treatment has come to the end.   The hospital feels that they

12   are not in a position to provide long-term care or treatment of

13   any kind for this category of patient.   And here they argue

14   that a variety of laws require them, if there's no other

15   alternative, to continue to house such patients.   In other

16   words, they argue that it's involuntarily now their

17   responsibility to keep these patients.

18        MS. SCOTT:   The laws that I heard counsel cite all

19   involve emergent situations, emergency medical issues,

20   emergencies, not a long-term care issue.   So I don't think

21   anything -- if a patient is not experiencing an emergency, then

22   there's nothing preventing a private hospital from choosing to

23   not continue the relationship.

24        THE COURT:   Discharging -- so you contend that these

25   patients that are the subject of this complaint at the back

1  end, when the hospital says, our acute phase of treatment is

2  over, we didn't sign up for anything else, nor are we capable

3  of giving it, you're contending the hospitals are completely

4  free, at least under state law, to discharge these patients out

5  into the community?

6        MS. SCOTT:  That's right.  It's my understanding that

7  as professional treatment centers, they don't want to do that

8  because it's not the right thing to do.  And the State doesn't

9  want them to do that necessarily either, but there's no legal

10 requirement preventing them from alleviating the concerns that

11 they have vis-a-vis their own financial situation with having

12 these patients in their beds.

13       THE COURT:  So your voluntariness argument, not to

14 put too fine a point on it, is that they could avoid the harm

15 of continued care of these patients by doing the one thing no

16 one wants them to do?

17       MS. SCOTT:  It's a tough situation to be in, but that

18 is correct.

19       THE COURT:  All right.  Thank you very much.

20       MR. NEIMAN:  Judge Mosman, that argument reflects a

21 misinterpretation of the detailed Oregon Administrative Rules

22 that apply to the civil commitment process.  Only a director of

23 a community mental health program can place an individual who

24 has been civilly committed in a certified hospital, and it is

25 incorrect to say that a hospital which has somebody admitted

1    there who is sick and unstable and under an order of civil

2    commitment can choose to discharge that person because it feels

3    like it.  That violates the federal conditions of participation

4    for Medicare-participating hospitals.  And I'm surprised to

5    hear that from Oregon Health Authority, which takes custody --

6                THE COURT:  To be more precise about it, she was

7    careful to say that no state law requires it.

8                MR. NEIMAN:  Well, the provisions of ORS Chapter 426,

9    and specifically ORS 426.060 and ORS 426.150, require the

10   Oregon Health Authority to take custody of somebody who has

11   been civilly committed, and deliver that person to a place for

12   treatment.  The idea that after that delivery and while the

13   person is still civilly committed, still meets commitment

14   criteria, it's very surprising to hear from Oregon Health

15   Authority that they would endorse discharge from a hospital of

16   somebody who is under an order of civil commitment.

17               THE COURT:  Fair enough.  But what you've recited

18   tells me that Oregon Health Authority can never walk away from

19   its commitment to civilly committed patients, but it doesn't

20   tell me that you have a legal obligation to either accept or

21   continue to care for these patients.

22               MR. NEIMAN:  Well --

23               THE COURT:  Do you?

24               MR. NEIMAN:  Yes.

25               THE COURT:  Other than federal law?

1          MR. NEIMAN:  Yes.  The hospital, community hospital

2    which has a patient who is -- meets civil commitment criteria

3    and is unstable and is unsafe to leave, which is what meeting

4    civil criteria means, cannot simply discharge that person.

5          THE COURT:  Ever?

6          MR. NEIMAN:  Well, until they're stable or there's a

7    place to transfer them.

8          THE COURT:  So not stable, never.  That's your

9    position?

10          MR. NEIMAN:  Correct.

11          THE COURT:  That's what law requires?

12          MR. NEIMAN:  That's right.  As long as the individual

13    meets civil commitment criteria, a hospital which has that

14    individual as a patient can't discharge that person.

15          Now, there is a procedure for somebody to not be

16    civilly committed anymore, but that's not the group of people

17    we're talking about here.

18          THE COURT:  And just so I'm clear, your position is

19    that if this whole arrangement became no longer viable for your

20    client and they chose simply to end this certification

21    relationship with OHA, that wouldn't change much?

22          MR. NEIMAN:  It would not.

23          THE COURT:  Because if they came in through the ER

24    and were in an acute phase and you cared for them through the

25    acute phase, there are other laws separate from the

1    certification arrangement that would require their continued

2    care unless they either were stabilized or there was some

3    community placement that was viable?

4            MR. NEIMAN:  The certifications allow the hospital to

5    provide certain services to people who are civilly committed

6    over a short period of time.  They -- there's nothing that

7    anyone has cited to you, nor does anything exist in the Oregon

8    Administrative Rules or anywhere else that says that the

9    certifications that our clients have accepted obligate them or

10   relate in any way to long-term care.

11           THE COURT:  No, that's not my question.  My question

12   is if you ended the certification relationship -- because

13   that's what your opponent's brief has suggested is a viable

14   option for you.  If you don't like how this is going, then you

15   can just voluntarily withdraw from this business relationship.

16   If you did that, would you then be in a position to no longer

17   be suffering the harm you've alleged in your complaint?

18           MR. NEIMAN:  Basically no.

19           THE COURT:  Why not?

20           MR. NEIMAN:  Because the patients would still be

21   hospital patients and they would still be part of the state

22   mental health system.

23           THE COURT:  So what does the certification

24   relationship accomplish if it doesn't distinguish between

25   hospitals who have entered into it and those that don't?

1    MR. NEIMAN:  It allows certain regulated services to

2    be provided, such as acute stabilization, which is one of the

3    certifications that our clients have, which --

4    THE COURT:  So if someone showed up at a hospital

5    that didn't enter into this relationship and that patient

6    needed acute stabilization services but the hospital to which

7    this person arrived hadn't entered into this certification

8    relationship, what would happen to that patient?

9    MR. NEIMAN:  Well, that happens all the time.

10    THE COURT:  What would happen?

11    MR. NEIMAN:  I can tell you generally what happens is

12    the patient is held in the hospital emergency department of

13    uncertified hospitals, and then eventually transferred to a

14    hospital that can provide the level of service that the initial

15    hospital could not.

16    THE COURT:  Before you move on, why doesn't that then

17    tell me if you retreated from this certification relationship

18    that you would no longer have to receive these patients and you

19    could send them to a hospital who wished to do so?

20    MR. NEIMAN:  Could I ask the Court to repeat that

21    question?

22    THE COURT:  You just told me that what happens, what

23    distinguishes hospitals who have entered into this

24    certification relationship from those who don't, is that if

25    someone shows up at the ER of the hospital who hasn't entered

1  into this certification relationship, that typically that

2  patient, short or long term, eventually get transferred to a

3  hospital who has.  So why wouldn't that happen to your clients

4  if they retreated, ceased being in this relationship?  Why

5  wouldn't they then be at liberty, upon receiving patients like

6  this, to send them to a different hospital?

7       MR. NEIMAN:  They wish to be certified to provide

8  acute care services.

9       THE COURT:  Of course they wish that, but if they

10  decided that wish was costing them too much money and they got

11  out, wouldn't they then be able to send patients to a different

12  hospital?

13      MR. NEIMAN:  No, because there isn't any capacity.

14  And that's what our case is about.

15      THE COURT:  You just told me a minute ago that what

16  typically happens is that if a hospital isn't certified, the

17  patient that we've just been talking about gets sent to a

18  hospital that is certified.  So isn't that what happens?

19      MR. NEIMAN:  For the hospitals that are not

20  certified, yes.

21      THE COURT:  They send them to a hospital that is?

22      MR. NEIMAN:  Or the patient gets better enough in

23  that hospital to not need to be transferred.

24      THE COURT:  Fair enough.  So if that's what happens,

25  then why isn't it the case that if you bowed out, said we don't

1    want to be certified anymore, you wouldn't have to maintain

2    these patients over any significant period of time?  You could

3    send them to a hospital that was certified.

4             MR. NEIMAN:  Because what our clients want to do and

5    what they signed up to do is acute care.  And for that --

6             THE COURT:  I don't mean to minimize that answer,

7    because I'm grateful that you have clients like this who want

8    to do this, and there's a desperate need for it.  And I'm not

9    convinced that the answer that might be -- that might be

10   required by standing doctrine is anything but a terrible

11   answer.  Nevertheless, haven't you just told me that you could

12   avoid this harm by just getting out of this game entirely and

13   punting it to somebody else?  I know you have told me your

14   clients don't want to do that -- God bless them for that -- but

15   couldn't they get out of this game entirely and punt the

16   problem to somebody else and avoid the harm you're suffering as

17   alleged in the complaint?

18            MR. NEIMAN:  I don't think they could, Your Honor,

19   because --

20            THE COURT:  Why not?

21            MR. NEIMAN:  There isn't anywhere else to send the

22   patients.

23            THE COURT:  The struggle I have with that answer is

24   when you answered my other question a minute ago, you said,

25   "I'm going to tell you what actually happens," and you told me

```
 1   if the hospital is not certified, they ship their patients to
 2   somebody else.
 3              MR. NEIMAN:  Those aren't our hospitals.
 4              THE COURT:  I know that.  We wouldn't be here if they
 5   were.  Thank you for your answer.
 6              Let's move on to the substance of health systems'
 7   claims on behalf of health systems.  The first is a substantive
 8   due process claim.  I don't think I need to hear more argument
 9   on that one.
10              And it is correct, isn't it, that -- that's claim 2.
11   And it is correct, isn't it, that the procedural due process
12   element of claim 2 you've essentially walked away from, right?
13              MR. NEIMAN:  We haven't briefed it.
14              THE COURT:  All right.  Fair enough.
15              So the Fifth Amendment takings claim requires me to
16   find that there's a physical taking of your beds by this
17   regulatory -- by this state action.
18              You'd agree, wouldn't you, that that issue stands or
19   falls on the same voluntariness question?  If you win on
20   voluntariness on standing, then you win it on Fifth Amendment
21   taking.  And if you lose it, if I find that you're -- that you
22   could voluntarily get out of this harm, then you lose the Fifth
23   Amendment takings claim as well.  Right?  I'm not asking about
24   the merits.  I'm just asking doesn't the Fifth Amendment
25   takings claim stand or fall on voluntariness?
```

1          MR. NEIMAN:  So the Court is talking about the
2    voluntary participation doctrine, I think.
3          THE COURT:  I am.
4          MR. NEIMAN:  We're actually talking about both a
5    physical and a regulatory taking.
6          THE COURT:  I guess I missed the regulatory taking
7    claim.
8          MR. NEIMAN:  That has to do with the Oregon
9    Administrative --
10          THE COURT:  I know what it has to do with.  I just
11    didn't see it in your complaint.  Where is it?
12          MR. NEIMAN:  It has to do --
13          THE COURT:  Let's start with this.  I love labels.
14    Is there a claim anywhere in this complaint that says
15    "regulatory taking"?
16          MR. NEIMAN:  No.
17          THE COURT:  All right.  Is there any other paragraph
18    in which you claim regulatory taking?
19          MR. NEIMAN:  The claim is by operation of the civil
20    commitment system through a set of complex regulations that
21    Oregon Health Authority is commandeering community hospital
22    beds.
23          THE COURT:  Right.  They're taking your beds, which
24    you've said is a property takings claim, right?
25          MR. NEIMAN:  Right.  The line between -- in the cases

1    between a physical taking and a regulatory taking is not always

2    clear.

3              THE COURT:  Again, I'm aware of that.  I'm only

4    asking what you've pled.

5              MR. NEIMAN:  Well, we tried to allege, I think, both

6    a regulatory and a physical taking under the Fifth Amendment.

7              THE COURT:  Did you brief a regulatory taking in

8    response to the motion to dismiss?  Did you cite any regulatory

9    takings cases?

10             MR. NEIMAN:  I believe we did, Your Honor.

11             THE COURT:  All right.  Thank you.  I'll turn to your

12    opponent then on these substantive issues.

13             Anything you wish to add?

14             MS. SCOTT:  Yes, Your Honor.

15             With respect to whether they briefed a regulatory

16    taking, we point out in our brief that they did not address the

17    three-factor test for a regulatory taking.  They didn't

18    identify any distinct investment-backed expectations, let alone

19    describe to any degree the economic impact of the alleged state

20    conduct or the extent to which the conduct has interfered with

21    any distinct investment-backed expectations.

22             I would also add that with respect to whether the

23    takings claim rises and falls on the voluntariness issue, I

24    think it also falls on the relief they're seeking.  They're not

25    seeking just compensation.  They haven't asked the State for

1    additional money.  They're seeking a widespread injunction

2    stopping the taking from happening in the first place, which

3    would -- takings law does generally not allow the injunction.

4    The remedy is compensation.  And so I think that's another

5    reason why the taking claim fails.

6            THE COURT:  Thank you very much.

7            MR. NEIMAN:  We have found the place in our brief

8    where we spoke to the regulatory takings cases, Your Honor.

9    It's on pages 33 and 34.

10           THE COURT:  And you walk through the three-part test?

11           MR. NEIMAN:  No.

12           THE COURT:  *Penn Central*?

13           MR. NEIMAN:  No.

14           THE COURT:  Thank you.

15           Let's talk about standing to bring the claim on

16   behalf of third parties.  One issue is the same standing issue

17   we've already discussed, but there's a second issue, the sort

18   of close relation to a third party that's been developed in

19   case law as a correspondence of interest.

20           What's your argument on that?

21           MR. VAN RYSSELBERGHE:  So, Your Honor, our argument

22   for the close relationship, so a close relationship as

23   discussed in the *Singleton v. Wulff* opinion from 1976, explains

24   that there's two aspects of that relationship.  One is whether

25   the right of the third party is inextricably bound up with the

1    activity the litigant wishes to pursue.  And I don't think

2    there's any dispute that that prong of the close relationship

3    test is met here.

4          Now, then there's a second prong of that test under

5    *Singleton*, which discusses whether the -- whether the

6    litigant -- here hospitals -- is as good as or nearly as good

7    as an advocate for the rights of the third party.  And here

8    that is met -- so there's multiple ways to meet that prong, and

9    this is getting to the -- sort of what it means to be in an

10   alignment of interests here, a correspondence of interests.

11         So for one, the relationship between a health care

12   provider and a patient is such a relationship that is

13   confidential and fiduciary in nature, that under the case law

14   that has been deemed sufficient for a close relationship in

15   numerous cases involving doctors asserting claims of patients,

16   in addition to other entities like universities or vendors

17   asserting claims on behalf of students and customers.  Now,

18   that's one way you can have a sufficient close relationship.

19   Another way is where you can -- even if there's not a

20   preexisting literal relationship between human beings, if you

21   have a situation where government conduct is equally or

22   simultaneously affecting two groups in mostly the same way,

23   then there's an alignment of interest there.

24         So, for instance, in the *Singleton v. Wulff* case, for

25   example, you had a Medicaid provision that removed Medicaid

1    funding for abortion services.  That affected doctors because

2    they wouldn't get paid for those services and it affected

3    patients as well simultaneously because those patients were

4    foreclosed off from receiving certain care.  And because those

5    alignments were -- those interests were aligned, there was a

6    close relationship.

7         Here it's a similar situation because OHA is failing

8    to ensure that patients in our hospitals get the long-term

9    treatment they need, and we can't provide any further acute

10   stabilizing care for them, but they can't move on until they

11   are -- have that long-term care provided for them.  And as a

12   result of their -- of our inability to discharge them, that's

13   where our property deprivation comes into play.  So the only

14   way to cure that property deprivation is for our patients to

15   have long-term treatment available to them either in the Oregon

16   State Hospital system or elsewhere, including in long-term

17   secure residential treatment facilities across Oregon.

18        So because the only way that our patients can

19   receive, you know, the only way that everybody can win is that

20   for our patients to receive the care to which they're

21   constitutionally entitled, and when that happens, then our

22   property deprivation will cease.  So in that way, because all

23   of this comes from the same conduct by OHA, our interests are

24   aligned in the same way that doctors and patients are aligned

25   in, for instance, *Singleton v. Wulff* and other case law.

```
1              THE COURT:  Your briefing, though, has described a
2    divergence, right?  I mean, your briefing describes the
3    patients as a financial and other burden on your clients.
4              MR. VAN RYSSELBERGHE:  So I would disagree that that
5    creates a divergence of interest here, because what matters is
6    not the fact that there's an ongoing property deprivation while
7    these patients are in our care and not able to receive or
8    benefit from our services.  What matters is the relief we are
9    seeking, which is for the outcome of this lawsuit will result
10   in either both patients and hospitals gaining or not.  There's
11   not a situation where there's a conflict insofar as hospitals
12   can gain where civilly committed patients do not gain or they
13   lose.
14             THE COURT:  What if as a result of this lawsuit the
15   State says, dealing with the lawsuit by health systems is a
16   headache we don't need, so we will find another place for these
17   patients and we won't burden health systems with these patients
18   any longer, with that other place chosen by OHA isn't as good
19   as the hospitals.  And your clients, I assume, would walk away
20   at this point, right?
21             MR. VAN RYSSELBERGHE:  If OHA were to take that sort
22   of remarkable position --
23             THE COURT:  It's not remarkable at all.  They have
24   multiple options.  You're the best option in their view right
25   now, so they don't like a lawsuit, so they pick a not as good
```

1    an option just to get you off their back.  It happens every day

2    in litigation.  Your clients would be satisfied, right?  All

3    your clients' interests would be satisfied.

4              MR. VAN RYSSELBERGHE:  In that situation --

5              THE COURT:  It's really just a matter of saying your

6    clients' interests in this litigation are entirely satisfied if

7    these patients go away.

8              MR. VAN RYSSELBERGHE:  Under the current regulatory

9    and statutory framework, I just don't think that it's possible,

10   because even if OHA was -- I think --

11             THE COURT:  Something other than your clients has to

12   be possible because that's why you brought this lawsuit.

13             MR. VAN RYSSELBERGHE:  The way out of this situation

14   is for there to be more services that are constitutionally

15   appropriate for our patients, and until that happens --

16             THE COURT:  Believe me, I'm aware that that halcyon

17   day is the way out, but it's not going to happen tomorrow.  And

18   so let's say the State says, well, we're not there yet nor will

19   we ever be there in the lifetime of care of some of these

20   patients, so we've got to do something else.  It's just

21   straightforward, right?  It's a hard question but a simple one.

22   Your clients' lawsuit has to be satisfied if somebody else

23   takes cares of these patients.

24             MR. VAN RYSSELBERGHE:  That would -- our position is

25   that in order for somebody else to take care of these patients,

1    it has to be constitutionally adequate, and until that happens,

2    our interests are aligned.  It's not enough to just say that

3    these issues can be fixed tomorrow.  We don't -- we're not

4    contending that they can be.  What is important is that their

5    rights are not being met, and it's not enough to simply say

6    funding is short or space is short.  And so, by law, we cannot

7    simply allow for patients in our custody who we have medical

8    and legal duties to provide medical treatments and to do no

9    harm, we cannot simply allow for those patients to be sent

10   outside of our hospital if that would hurt them or would be bad

11   for them or against their medical interests.

12            THE COURT:  What place, if any, does DRO play in this

13   analysis?

14            MR. VAN RYSSELBERGHE:  So DRO certainly has the

15   authority to, under the PAIMI Act, to advocate for specific

16   groups that they choose to represent.  But because in this

17   litigation, in the Mink-Bowman case and here in the -- in our

18   lawsuit, they have chosen to represent aid-and-assist patients

19   and expressly seek for those patients, aid-and-assist patients,

20   to be prioritized over civilly committed patients.  That

21   precludes them from having -- from being proper advocates of

22   civilly committed patients here.

23            THE COURT:  Thank you very much.

24            MR. VAN RYSSELBERGHE:  Thank you.

25            THE COURT:  Go ahead.

```
1          MS. SCOTT:  Just a couple of responses.

2          The four cases that plaintiff's counsel cites for the

3   close relationship are doctor-patient relationships.

4   Plaintiffs -- hospitals are not in a doctor-patient

5   relationship with the patients whose rights they're asserting.

6          The case that we believe is on all fours with this

7   situation is Siskiyou Hospital v. California Department of

8   Health Care Services.  It's almost an identical fact pattern.

9   And the Court there found there was not a close relationship

10  because they were two steps removed from the patient, between

11  the patient, the doctor, and the hospital.  The case is fully

12  briefed in our motion to dismiss and reply and also in DRO's

13  amicus brief.

14          THE COURT:  What about the idea that in this

15  litigation if health systems win, the patients sort of in pari

16  passu win to the same degree?

17          MS. SCOTT:  I heard counsel saying that if the health

18  systems win, there's no current place for the patients to go.

19  So I don't see how they could win.  We're not hearing from the

20  civilly committed patients about where they want to be right

21  now.  There is, as Your Honor knows, a capacity challenge

22  throughout the state's behavioral system because there isn't a

23  voice for where these patients could go right now, and the

24  private hospitals, from their complaint and their brief, want

25  an injunction prohibiting OHA from placing them in the private
```

1    hospitals.  Their interests are not aligned at this juncture.

2              THE COURT:  Thank you very much.

3              MR. VAN RYSSELBERGHE:  Reply, Your Honor?

4              THE COURT:  Go ahead.  Thank you.

5              MR. VAN RYSSELBERGHE:  I want to clarify we are not

6    seeking an injunction here for patients not to be placed with

7    us.  That's exactly the opposite of what we're looking for.

8    And this is actually a good way to discuss the *Siskiyou*

9    *Hospital* case, because in that case --

10             THE COURT:  What are you seeking?

11             MR. VAN RYSSELBERGHE:  We're seeking an injunction

12   for OHA to cease the -- its unconstitutional practices, which

13   includes requiring OHA to provide services, these long-term

14   service options in the community so that our patients can get

15   that treatment that they cannot get at our hospitals.

16             THE COURT:  You want me to enjoin whom to do what?

17   Imagine that I'm signing a one-page document that tells

18   somebody to do something.  What does it tell them to do?

19             MR. VAN RYSSELBERGHE:  Well, so that gets into relief

20   questions that, you know, I think we're still at the early

21   stages of litigation, but in essence, we're seeking an

22   injunction for OHA to create these resources where they're

23   not -- they do not now exist.  And so now I understand that

24   that can't happen overnight, and we don't contend it can, but

25   it still needs to happen.  And that's the basis --

1          THE COURT:  If I enjoined OHA with all deliberate

2   speed to build out new facilities, what relief would you be

3   seeking in the interim for your clients?

4          MR. VAN RYSSELBERGHE:  You know, I think there would

5   be a lot of specifics to hash out that I'm not prepared to

6   commit to at this point, but we would have, you know,

7   discussions about -- we could litigate the specifics about sort

8   of what to do.

9          THE COURT:  You act like this is a future question,

10  but it's a very important question for my analysis here today.

11  Are you seeking in the interim -- well, would you be taking the

12  position in the interim that you'd keep receiving these

13  patients until new facilities were built out, or would you be

14  asking that they be sent somewhere else?

15          MR. VAN RYSSELBERGHE:  I believe we would keep taking

16  these patients, Your Honor.  We're not asking for them to be

17  sent elsewhere.

18          THE COURT:  Thank you.

19          Go ahead.

20          MR. STENSON:  Good afternoon, Your Honor.  I don't

21  think I have too much to add.

22          I do think that Your Honor has hit the nail on the

23  head in terms of the obvious conflict.  We are currently

24  dealing with the realities of a system with limited resources,

25  and it's very likely in that system of limited resources that

1    any possible settlement between the Oregon Health Authority and

2    the hospital corporations, should this be allowed to proceed,

3    would balance in some way the speed of getting patients out of

4    the hospitals versus the quality of the places they've actually

5    been moving into.  You know, if the -- I'm not saying this is

6    something OHA would necessarily do, but if OHA said, we want to

7    get rid of this immediately, we'll move people into homeless

8    shelters, they could do that really fast, but the quality of

9    services wouldn't be great.  And between, you know, very poor,

10   nontherapeutic settings like homeless shelters and, you know,

11   really excellent residential, you know, services, either that

12   the clients would want and would benefit from, there's a whole

13   spectrum of possible outcomes.  So if the hospital's vested

14   interest is getting patients out quickly, you know, in whatever

15   format, that's their individual interest and that doesn't align

16   with the interest of patients.

17            So I'm concerned that if they're permitted to stand

18   in the shoes of the patients, that that's a scenario that we'll

19   be entertaining in the future, that there will be some outcome,

20   some alternative placement which will balance strongly in favor

21   of getting people out quickly versus getting them to the

22   placement they need to be.  That's the nature of a conflict of

23   interest, Your Honor.

24            In terms of the third-party standing questions, the

25   hospital corporations have indicated that there's some sort of

1    per se relationship because somebody has a doctor-patient

2    relationship, as in *Singleton*.  But that's clearly not enough

3    standing on its own just to be a doctor and a patient or just

4    to be a healthcare corporation who is providing -- who is

5    paying the people who are providing services to a patient,

6    because doctors get sued by their patients all the time.

7    Providence or Legacy get sued by patients all the time.  So

8    clearly their interests are not always aligned.  And, in fact,

9    in the Supreme Court jurisprudence on this, the Supreme Court

10   has focused on the actual interests of the parties relative to

11   the case at bar, not simply to the proximity of the

12   relationship.

13          In *Newdow*, the Supreme Court said a father couldn't

14   have third-party standing to represent his daughter, and

15   there's no relationship in the law that's more privileged than

16   the relationship between a parent and a child.  So clearly when

17   we're talking about third-party standing, we're talking not

18   just about is there a vendor-vendee relationship, is there a

19   doctor-patient relationship, is there an attorney-client

20   relationship, another relationship that the U.S. Supreme Court

21   has rejected for per se third-party standing.  Clearly it's

22   whether the actual interests are aligned.  And it really

23   radiates out from the briefing how much the relationship

24   between the healthcare corporations' interests are not aligned

25   with that of their patients.

1          So I think it's certainly part of the analysis to say

2    what's the nature of that relationship, but there is certainly

3    no per se close relationship simply because one is a healthcare

4    provider or a healthcare corporation and the third party is a

5    patient.

6          And in terms of what's being sought, I'm a bit

7    perplexed at this notion that no one before this Court has ever

8    asked for OHA to expand the realm of its offerings so that

9    patients don't have to live in restrictive settings, because

10   that's all that DRO and MPD have been doing for the last four

11   years is to ask this Court for relief that would expand the

12   availability of those resources.

13         THE COURT:  Do you agree with the argument that

14   you're in a difficult position vis-a-vis civilly committed

15   patients by virtue of the relief you're seeking for

16   aid-and-assist?

17         MR. STENSON:  I do not agree with that, Your Honor.

18   That is common to a wide variety of -- any time you have more

19   than one client, there are individual challenges, you know.  So

20   we have challenges where, you know, if some patient has been in

21   for 40 days, another patient has been in for 12 days, both of

22   those patients want to get out.  And so we have to set some

23   timeline that says we're going to prioritize people who have

24   been in longer.  We have to have some concept and some

25   prioritization.  The fact that there's some prioritization

1    doesn't create an actual conflict of interest.  And, in fact,

2    any attorney who tries to represent a group of patients will

3    have challenges around exactly the mechanism of how, you know,

4    access to whatever the monetary or injunctive relief is, how

5    that's prioritized among the individuals in that group.  So

6    that's not unique to DRO or to MPD or to any other

7    representative organization, and we have pressed for the

8    development of those resources, and if those resources are

9    developed, they will be available to people in civil

10   commitment, they'll be available to people who are on

11   aid-and-assist commitments, they'll be accessible to people who

12   are on GEI.

13            THE COURT:  Thank you very much.

14            I want to turn to the motion for clarification on

15   intervention.  A lot of it centers on things we've already

16   discussed, but there's also a timeliness question.  So do you

17   wish to be heard further on the absence of meeting the

18   timeliness prong?

19            MR. STENSON:  Your Honor, I would just say that, you

20   know, the issue at stake in terms of the prioritization, as has

21   been roundly attested to throughout the briefing, that's a

22   phenomenon that's been ongoing since 2019, and so it's unclear

23   why this should be considered a timely intervention to seek to

24   finally address this issue four years into the process.  And I

25   would say, you know, the multiple cases that were cited show

1    that there's a strong disposition in the Ninth Circuit not to

2    allow this kind of waiting until some sort of settlement has

3    been struck, you know, staying out of that process, staying out

4    of the work of trying to engage in settlement, and then

5    complaining when somebody does, you know, resolve their

6    dispute.  So I think in this case there was a clear opportunity

7    to intervene at any point in the last four years.

8              THE COURT:  Thank you.

9              Do you wish to be heard on timeliness?

10             MR. NEIMAN:  It is remarkable that -- now we're

11   talking about the Mink case?

12             THE COURT:  Correct.

13             MR. NEIMAN:  That case has been going on for 22

14   years, and the first time that anybody brought the impact of an

15   interconnected mental health system to the Court's attention

16   was in September of last year, in terms of representation and

17   giving a voice to civilly committed individuals.  It wasn't

18   until September of last year that this Court entered its order,

19   and there was no effort to include -- by the parties to the

20   case to bring the State's community hospitals to the table.  So

21   as soon as the order that the Court entered was issued, we were

22   in court intervening within a month.  That, we think, speaks to

23   prompt action once there was something to act on.

24             THE COURT:  Thank you.

25             Do you wish to reply?

1    MR. STENSON:  I mean, the notion that it was

2    incumbent on either OHA or DRO or MPD to send an invitation to

3    the hospitals to participate is just absurd and without

4    foundation.  It's clear in the Ninth Circuit case law that it

5    is incumbent on the party to vindicate their own interest, to

6    show up and to be vigilant in pursuing it, not to wait until an

7    order is entered and then oppose it.  That's thoroughly

8    briefed.  So the idea that there's some privilege to wait until

9    an order is entered, and only then act, is rebutted by

10   voluminous case law on this exact point.

11         THE COURT:  Thank you all very much.  I'll get you my

12   answer as soon as possible.

13         We'll be in recess.

14         THE COURTROOM DEPUTY:  All rise.  Court is in recess.

15         (Proceedings concluded at 2:28 p.m.)

1

2                              --o0o--

3

4          I certify, by signing below, that the foregoing is a

5    correct transcript of the record of proceedings in the

6    above-entitled cause.  A transcript without an original

7    signature or conformed signature is not certified.

8

9

10   /s/Bonita J. Shumway                April 28, 2023
     _____           _____
11   BONITA J. SHUMWAY, CSR, RMR, CRR   DATE
     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. JOHNSON: [1]  4/13
MR. MERRITHEW: [1]  4/11
MR. NEIMAN: [55]  4/19 24/10 24/14
24/16 25/22 26/2 26/8 26/13 26/18 26/23
27/5 27/9 27/13 27/23 28/5 28/13 32/20
33/8 33/22 33/24 34/1 34/6 34/10 34/12
34/22 35/4 35/18 35/20 36/1 36/9 36/11
36/20 37/7 37/13 37/19 37/22 38/4 38/18
38/21 39/3 39/13 40/1 40/4 40/8 40/12
40/16 40/19 40/25 41/5 41/10 42/7 42/11
42/13 55/10 55/13
MR. STENSON: [5]  4/9 50/20 53/17
54/19 56/1
MR. VAN RYSSELBERGHE: [57]  4/17
9/21 9/23 10/16 11/6 11/10 11/15 11/22
12/1 12/7 12/16 12/21 12/23 13/25 14/8
14/12 14/15 16/10 16/13 16/16 17/5 17/8
17/10 17/16 17/22 18/4 19/5 19/7 19/10
20/13 20/24 21/2 21/8 21/23 22/1 22/4
22/8 22/23 23/6 23/13 23/20 24/2 42/21
45/4 45/21 46/4 46/8 46/13 46/24 47/14
47/24 49/3 49/5 49/11 49/19 50/4 50/15
MS. SCOTT: [21]  4/15 14/17 15/14
15/19 16/3 16/5 28/17 29/4 29/9 29/17
30/3 30/6 30/15 31/2 31/6 31/18 32/6
32/17 41/14 48/1 48/17
THE COURT: [136]
THE COURTROOM DEPUTY: [2]  4/4
56/14

'
'17 [2]  10/2 10/10

-
--oOo [1]  57/2

/
/s/Bonita [1]  57/9

0
0055 [1]  19/1
0420 [1]  15/1
054 [1]  18/25

1
100 [1]  2/20
1000 [1]  3/4
1162 [1]  2/22
12 [3]  6/10 8/23 53/21
1976 [1]  42/23
1:08 [1]  4/2

2
200 [1]  2/5
2017 [2]  6/5 10/2
2019 [1]  54/22
2023 [3]  1/16 4/2 57/9
22 [1]  55/13
25 [2]  1/16 4/2
28 [1]  57/9
2:28 [1]  56/15

3
3000 [1]  2/16

301 [1]  3/4
309-033-0420 [1]  15/1
326-8188 [1]  3/5
33 [1]  42/9
333-505-0055 [1]  19/1
34 [1]  42/9
3:02-cv-00339-MO [1]  1/4
3:02-cv-339-MO [1]  4/5
3:21-cv-01637-MO [1]  1/9
3:21-cv-1637-MO [1]  4/6

4
40 [1]  53/21
415 [1]  2/9
426 [1]  33/8
426.060 [1]  33/9
426.150 [1]  33/9
441.053 [1]  18/25
46 [1]  18/19

5
503 [1]  3/5
511 [1]  2/5

6
610 [1]  2/9
6:22-cv-01460-MO [1]  1/14
6:22-cv-1460-MO [1]  4/7

7
7,000 [4]  24/23 24/23 25/7 25/14
760 [1]  2/16

8
8188 [1]  3/5
888 [1]  2/13

9
900 [1]  2/13
97201 [1]  2/20
97204 [2]  2/13 3/4
97205 [3]  2/5 2/9 2/16
97301 [1]  2/23

A
ability [4]  17/24 18/9 28/7 31/10
able [2]  37/11 45/7
abortion [1]  44/1
about [35]  5/4 5/19 10/17 15/16 16/19
17/14 18/1 19/23 22/10 22/10 23/5 23/7
23/9 24/10 24/22 28/6 28/6 28/10 28/21
30/21 33/6 34/17 37/14 37/17 39/23 40/1
40/4 42/15 48/14 48/20 50/7 50/7 52/17
52/18 55/11
above [1]  57/6
above-entitled [1]  57/6
absence [1]  54/17
absolutely [3]  10/4 13/17 16/23
absolve [1]  22/13
absurd [1]  56/3
accept [3]  18/12 22/24 33/20
accepted [1]  35/9
access [1]  54/4
accessible [1]  54/11
accomplish [1]  35/24
accordance [1]  19/13

acknowledge [1]  5/24
across [5]  7/23 10/1 10/2 25/7 44/17
act [4]  47/15 50/9 55/23 56/9
action [6]  6/12 6/15 6/18 28/25 39/17
55/23
actions [1]  22/17
activity [1]  43/1
actual [3]  52/10 52/22 54/1
actually [4]  38/25 40/4 49/8 51/4
acute [35]  10/19 11/16 11/18 11/19
11/24 12/6 12/8 12/9 12/17 12/24 12/25
13/2 13/3 13/12 16/22 18/6 18/6 18/24
20/1 20/1 23/8 23/15 23/20 23/23 23/25
30/11 31/10 32/1 34/24 34/25 36/2 36/6
37/8 38/5 44/9
add [3]  41/13 41/22 50/21
addition [3]  15/24 18/25 43/16
additional [4]  15/5 15/6 16/1 42/1
address [4]  18/18 18/20 41/16 54/24
addressed [1]  24/11
adequate [2]  8/24 47/1
administrative [6]  14/21 26/25 30/20
32/21 35/8 40/9
admission [1]  31/7
admissions [1]  10/7
admit [5]  15/22 17/19 29/20 31/4 31/4
admitted [1]  32/25
advance [1]  8/21
advancing [1]  8/9
ADVOCACY [2]  1/3 4/5
advocate [2]  43/7 47/15
advocates [1]  47/21
affected [2]  44/1 44/2
affecting [1]  43/22
after [5]  5/4 14/2 24/11 27/14 33/12
afternoon [1]  50/20
again [11]  6/21 7/6 7/18 8/10 8/24 9/3
9/18 17/25 20/24 22/24 41/3
against [1]  47/11
ago [3]  23/11 37/15 38/24
agree [6]  5/10 29/16 29/17 39/18 53/13
53/17
agreed [2]  12/4 13/7
agreement [1]  10/9
ahead [6]  12/22 20/22 24/13 47/25 49/4
50/19
aid [4]  47/18 47/19 53/16 54/11
al [7]  1/3 1/6 1/8 1/11 1/13 4/6 4/6
Alder [1]  2/9
Alex [2]  2/15 4/17
align [1]  51/15
aligned [8]  44/5 44/24 44/24 47/2 49/1
52/8 52/22 52/24
alignment [2]  43/10 43/23
alignments [1]  44/5
all [31]  8/23 9/16 16/8 16/16 16/18 21/4
21/7 23/19 24/14 24/16 26/6 27/2 28/4
29/23 30/22 31/18 32/19 36/9 39/14
40/17 41/11 44/22 45/23 46/2 48/6 50/1
52/6 52/7 53/10 56/11 56/14
allegation [2]  15/14 15/16
allegations [2]  11/1 15/4
allege [5]  10/5 12/25 14/17 20/14 41/5
alleged [5]  13/17 28/24 35/17 38/17
41/19

**A**

**ALLEN [1]** 1/16
**alleviating [1]** 32/10
**allow [5]** 35/4 42/3 47/7 47/9 55/2
**allowed [1]** 51/2
**allows [1]** 36/1
**almost [3]** 5/15 8/13 48/8
**alone [1]** 41/18
**along [1]** 29/24
**already [2]** 42/17 54/15
**also [10]** 3/1 6/23 12/14 13/14 21/9 21/18 41/22 41/24 48/12 54/16
**alternative [3]** 27/24 31/15 51/20
**always [3]** 5/15 41/1 52/8
**am [2]** 23/5 40/3
**amended [1]** 15/15
**Amendment [6]** 7/1 39/15 39/20 39/23 39/24 41/6
**amicus [1]** 48/13
**among [1]** 54/5
**amplify [1]** 28/12
**analysis [5]** 7/13 7/14 47/13 50/1 53/1
**another [7]** 23/12 30/21 42/4 43/19 45/16 52/20 53/21
**answer [12]** 8/10 12/19 12/22 15/22 27/23 27/25 38/6 38/9 38/11 38/23 39/5 56/12
**answered [1]** 38/24
**any [36]** 6/13 6/18 6/24 8/11 8/12 12/12 14/19 15/5 22/3 22/7 25/2 26/20 28/5 28/6 28/8 28/13 29/2 31/10 31/13 35/10 37/13 38/2 40/17 41/8 41/18 41/19 41/21 43/2 44/9 45/18 47/12 51/1 53/18 54/2 54/6 55/7
**anybody [1]** 55/14
**anymore [5]** 11/24 12/15 20/18 34/16 38/1
**anyone [1]** 35/7
**anything [9]** 14/3 15/2 19/20 28/17 31/21 32/2 35/7 38/10 41/13
**anyway [1]** 20/19
**anywhere [3]** 35/8 38/21 40/14
**apologize [2]** 19/5 20/24
**apparently [1]** 10/13
**appear [1]** 9/11
**APPEARANCES [1]** 2/2
**appears [3]** 6/15 6/20 6/25
**applications [1]** 16/6
**applied [1]** 15/25
**applies [1]** 27/21
**apply [2]** 27/11 32/22
**appropriate [2]** 14/24 46/15
**April [3]** 1/16 4/2 57/9
**are [69]**
**aren't [1]** 39/3
**argue [2]** 31/13 31/16
**argued [1]** 7/11
**argument [16]** 1/20 4/5 5/12 6/24 7/3 9/3 14/10 18/14 29/6 29/10 32/13 32/20 39/8 42/20 42/21 53/13
**arguments [2]** 5/4 7/25
**around [1]** 54/3
**arrangement [17]** 5/14 5/16 5/21 10/13 10/14 10/25 11/4 11/13 11/19 12/6 12/7 12/9 13/21 21/3 26/21 34/19 35/1

**arrangements [1]** 6/4
**arrive [4]** 17/15 17/16 17/17 27/2
**arrived [1]** 36/7
**as [50]** 6/20 7/4 7/11 7/23 7/24 8/7 8/25 9/7 10/15 11/14 12/2 13/1 13/1 13/4 16/22 23/1 25/4 25/6 26/24 26/24 26/24 29/15 32/7 34/12 34/12 34/14 36/2 38/16 39/23 42/19 42/22 43/6 43/6 43/6 43/7 44/3 44/11 45/3 45/11 45/14 45/18 45/19 45/25 48/21 52/2 54/20 55/21 55/21 56/12 56/12
**ask [2]** 36/20 53/11
**asked [4]** 12/5 15/4 41/25 53/8
**asking [10]** 20/25 26/5 28/1 28/21 28/22 39/23 39/24 41/4 50/14 50/16
**aspects [1]** 42/24
**asserting [3]** 43/15 43/17 48/5
**assign [1]** 14/23
**assist [4]** 47/18 47/19 53/16 54/11
**assume [2]** 19/24 45/19
**assumed [1]** 15/9
**attention [1]** 55/15
**attested [1]** 54/21
**attorney [2]** 52/19 54/2
**attorney-client [1]** 52/19
**attrition [1]** 8/3
**authority [9]** 14/23 30/17 33/5 33/10 33/15 33/18 40/21 47/15 51/1
**automatically [1]** 10/22
**availability [1]** 53/12
**available [3]** 44/15 54/9 54/10
**Ave [1]** 3/4
**Avenue [3]** 2/5 2/13 2/16
**avenues [1]** 23/9
**avoid [4]** 23/16 32/14 38/12 38/16
**aware [2]** 41/3 46/16
**away [6]** 15/17 15/19 33/18 39/12 45/19 46/7

**B**

**back [4]** 14/13 22/24 31/25 46/1
**backed [3]** 6/24 41/18 41/21
**bad [3]** 6/5 6/7 47/10
**balance [2]** 51/3 51/20
**bar [1]** 52/11
**basic [1]** 21/15
**Basically [1]** 35/18
**basis [7]** 14/19 14/21 15/9 15/18 18/13 29/22 49/25
**be [91]**
**became [1]** 34/19
**because [45]** 5/13 6/8 7/10 7/25 8/13 8/17 9/10 12/11 14/1 17/22 20/12 20/19 22/7 23/21 26/13 27/21 28/9 28/21 29/2 32/8 33/2 34/23 35/12 35/20 37/13 38/4 38/7 38/19 44/1 44/3 44/4 44/7 44/18 44/22 45/5 46/10 46/12 47/16 48/10 48/22 49/9 52/1 52/6 53/3 53/9
**become [4]** 17/11 27/3 27/7 27/10
**bed [2]** 25/9
**beds [7]** 6/16 7/4 12/12 32/12 39/16 40/22 40/23
**been [24]** 6/4 6/5 6/24 7/11 10/3 10/8 13/19 17/14 18/21 31/9 32/24 33/11 37/17 42/18 43/14 51/5 53/10 53/20

**53/21 53/24 54/21 54/22 55/3 55/13
**before [7]** 1/22 11/2 18/17 28/1 29/19 36/16 53/7
**behalf [10]** 4/11 5/8 7/15 7/18 7/20 8/6 8/20 39/7 42/16 43/17
**behavioral [4]** 10/3 19/11 24/7 48/22
**being [10]** 9/13 10/15 12/5 13/5 13/19 27/16 37/4 47/5 47/21 53/6
**beings [1]** 43/20
**believe [7]** 12/1 16/5 29/17 41/10 46/16 48/6 50/15
**below [1]** 57/4
**benefit [3]** 28/9 45/8 51/12
**benefiting [2]** 18/24 27/16
**besides [1]** 27/25
**best [1]** 45/24
**better [1]** 37/22
**between [11]** 12/3 35/24 40/25 41/1 43/11 43/20 48/10 51/1 51/9 52/16 52/24
**big [1]** 22/18
**Bisgaard [1]** 2/12
**bit [2]** 18/1 53/6
**bless [1]** 38/14
**blind [1]** 4/24
**BOBBY [1]** 1/6
**Bonita [3]** 3/3 57/9 57/10
**books [1]** 20/12
**both [8]** 9/17 17/5 21/10 23/9 40/4 41/5 45/10 53/21
**bound [1]** 42/25
**bow [1]** 20/23
**bowed [1]** 37/25
**BOWMAN [2]** 1/8 47/17
**box [1]** 13/16
**boxes [1]** 13/13
**break [1]** 5/4
**brief [6]** 35/13 41/7 41/16 42/7 48/13 48/24
**briefed [6]** 29/5 30/10 39/13 41/15 48/12 56/8
**briefing [4]** 45/1 45/2 52/23 54/21
**bring [5]** 7/20 8/5 8/16 42/15 55/20
**bringing [2]** 8/12 8/19
**Brisbois [1]** 2/12
**brought [4]** 9/25 24/20 46/12 55/14
**buck [1]** 20/14
**build [1]** 50/2
**built [1]** 50/13
**burden [2]** 45/3 45/17
**business [4]** 5/25 11/14 23/23 35/15

**C**

**California [2]** 5/22 48/7
**call [3]** 5/8 5/22 20/3
**called [1]** 25/1
**came [1]** 34/23
**can [30]** 5/3 5/23 9/20 9/24 13/8 13/12 13/13 16/19 20/17 23/16 24/5 24/11 24/15 28/23 28/24 32/23 33/2 33/18 35/15 36/11 36/14 43/18 43/19 44/18 44/19 45/12 47/3 47/4 49/14 49/24
**can't [21]** 5/16 5/23 6/17 7/9 15/17 16/19 16/19 19/19 19/19 19/19 19/20 19/21 20/9 21/17 21/24 22/6 22/8 28/8 34/14 44/9 44/10 49/24

**C**

**cannot [18]** 10/18 10/23 12/11 14/2 15/19 16/23 16/25 19/12 19/16 22/2 23/12 25/5 25/16 28/23 34/4 47/6 47/9 49/15
**capable [1]** 32/2
**capacity [2]** 37/13 48/21
**care [67]**
**cared [1]** 34/24
**careful [1]** 33/7
**cares [1]** 46/23
**Carla [2]** 2/18 4/15
**case [32]** 1/4 1/9 1/14 4/5 4/6 5/15 5/23 6/3 7/11 8/14 10/24 18/11 23/23 28/9 37/14 37/25 42/19 43/13 43/24 44/25 47/17 48/6 48/11 49/9 49/9 52/11 55/6 55/11 55/13 55/20 56/4 56/10
**cases [9]** 5/17 7/23 10/5 40/25 41/9 42/8 43/15 48/2 54/25
**category [1]** 31/13
**cause [1]** 57/6
**cease [5]** 10/14 22/16 29/11 44/22 49/12
**ceased [1]** 37/4
**CENTER [2]** 1/3 4/5
**centers [2]** 32/7 54/15
**Central [1]** 42/12
**certain [4]** 24/4 35/5 36/1 44/4
**certainly [3]** 47/14 53/1 53/2
**certificates [1]** 13/8
**certification [16]** 11/16 16/1 23/1 26/21 29/2 29/14 30/14 30/24 34/20 35/1 35/12 35/23 36/7 36/17 36/24 37/1
**certifications [5]** 15/24 16/7 35/4 35/9 36/3
**certified [9]** 32/24 37/7 37/16 37/18 37/20 38/1 38/3 39/1 57/7
**certify [1]** 57/4
**challenge [1]** 48/21
**challenges [3]** 53/19 53/20 54/3
**change [4]** 6/1 23/16 29/15 34/21
**changes [3]** 10/3 10/6 15/13
**changing [1]** 10/9
**Chapter [1]** 33/8
**check [2]** 13/12 13/13
**checked [3]** 13/10 13/14 13/16
**checkmarks [1]** 13/10
**child [1]** 52/16
**choice [1]** 31/2
**choose [2]** 33/2 47/16
**choosing [1]** 31/22
**chose [1]** 34/20
**chosen [2]** 45/18 47/18
**chronologically [1]** 5/5
**Circuit [2]** 55/1 56/4
**Circuit's [1]** 18/13
**cite [4]** 14/19 15/21 31/18 41/8
**cited [2]** 35/7 54/25
**cites [1]** 48/2
**civil [15]** 25/9 25/14 25/17 25/24 26/7 26/9 28/1 32/22 33/1 33/16 34/2 34/4 34/13 40/19 54/9
**civilly [32]** 6/17 14/18 14/20 14/23 15/23 17/9 17/11 17/12 20/16 22/14 27/7 27/10 27/14 29/21 29/21 30/1 30/6 30/7

30/11 30/23 32/24 33/11 33/13 33/19 34/16 35/5 45/12 47/20 47/22 48/20 53/14 55/17
**claim [27]** 6/11 6/11 6/24 7/1 7/2 7/2 7/13 7/20 8/6 8/12 8/24 9/4 9/9 39/8 39/10 39/12 39/15 39/23 39/25 40/7 40/14 40/18 40/19 40/24 41/23 42/5 42/15
**claims [14]** 5/5 5/8 6/9 7/15 7/17 8/9 8/19 8/21 9/4 9/17 9/17 39/7 43/15 43/17
**clarification [2]** 9/15 54/14
**clarify [1]** 49/5
**Class [1]** 13/15
**classifications [1]** 14/6
**clear [5]** 11/3 34/18 41/2 55/6 56/4
**clearly [4]** 52/2 52/8 52/16 52/21
**client [5]** 23/4 30/4 34/20 52/19 53/19
**clients [12]** 35/9 36/3 37/3 38/4 38/7 38/14 45/3 45/19 46/2 46/11 50/3 51/12
**clients' [3]** 46/3 46/6 46/22
**close [12]** 7/22 10/13 42/18 42/22 42/22 43/2 43/14 43/18 44/6 48/3 48/9 53/3
**closer [1]** 30/9
**coalition [1]** 8/18
**colleague's [1]** 28/11
**come [7]** 14/13 16/24 17/1 23/7 24/16 30/9 31/11
**comes [4]** 7/6 18/12 44/13 44/23
**commandeering [1]** 40/21
**commit [1]** 50/6
**commitment [16]** 25/10 25/14 25/17 25/25 26/7 26/9 28/2 32/22 33/2 33/13 33/16 33/19 34/2 34/13 40/20 54/10
**commitments [1]** 54/11
**committed [31]** 6/17 14/18 14/20 14/23 15/23 17/9 17/11 17/12 22/14 27/8 27/10 27/14 29/21 29/21 30/2 30/6 30/8 30/11 30/23 32/24 33/11 33/13 33/19 34/16 35/5 45/12 47/20 47/22 48/20 53/14 55/17
**common [1]** 53/18
**community [9]** 17/3 24/19 32/5 32/23 34/1 35/3 40/21 49/14 55/20
**compensation [2]** 41/25 42/4
**complain [1]** 22/21
**complaining [1]** 55/5
**complaint [32]** 5/17 6/4 6/7 10/5 11/1 12/25 13/18 15/2 15/15 15/17 18/19 23/4 25/13 25/20 25/25 26/10 26/17 27/4 27/11 27/11 27/13 27/20 27/22 28/2 28/3 28/24 31/25 35/17 38/17 40/11 40/14 48/24
**completely [1]** 32/3
**complex [1]** 40/20
**complicated [1]** 27/23
**component [2]** 6/23 23/15
**concept [1]** 53/24
**concern [1]** 9/8
**concerned [2]** 19/2 51/17
**concerns [1]** 32/10
**concluded [1]** 56/15
**condition [2]** 25/2 25/2
**conditions [1]** 33/3
**conduct [4]** 41/20 41/20 43/21 44/23
**confidential [1]** 43/13

**conflate [1]** 10/25
**conflict [4]** 45/11 50/23 51/22 54/1
**conformed [1]** 57/7
**consensual [1]** 15/24
**consent [3]** 14/25 15/22 30/19
**considered [1]** 54/23
**considers [1]** 19/14
**consistent [1]** 13/18
**Constitution [1]** 7/13
**constitutionally [3]** 44/21 46/14 47/1
**contend [3]** 23/21 31/24 49/24
**contending [2]** 32/3 47/4
**continue [6]** 10/20 13/15 18/23 31/15 31/23 33/21
**continued [3]** 20/10 32/15 35/1
**contract [1]** 11/8
**contractual [1]** 11/11
**contrary [1]** 14/22
**convinced [1]** 38/9
**core [4]** 14/10 25/13 25/20 29/5
**corporation [2]** 52/4 53/4
**corporations [2]** 51/2 51/25
**corporations' [1]** 52/24
**correct [18]** 11/6 11/21 12/1 14/12 20/13 21/23 25/22 27/5 29/4 30/5 30/8 30/14 32/18 34/10 39/10 39/11 55/12 57/5
**correctly [1]** 25/23
**correlation [1]** 7/23
**correspondence [3]** 8/5 42/19 43/10
**cost [1]** 8/2
**costing [1]** 37/10
**could [26]** 8/5 8/16 10/14 10/14 10/24 11/23 12/14 12/20 15/8 22/16 22/19 29/1 29/7 29/11 32/14 36/15 36/19 36/20 38/2 38/11 38/18 39/22 48/19 48/23 50/7 51/8
**couldn't [2]** 38/15 52/13
**counsel [9]** 4/8 9/18 15/7 15/19 18/18 29/24 31/18 48/2 48/17
**country [1]** 4/24
**county [2]** 14/22 30/17
**couple [2]** 16/16 48/1
**course [4]** 5/14 21/24 22/2 37/9
**court [23]** 1/1 1/23 2/22 3/3 18/13 18/13 28/5 28/13 28/18 36/20 40/1 48/9 52/9 52/9 52/13 52/20 53/7 53/11 55/18 55/21 55/22 56/14 57/11
**Court's [1]** 55/15
**Courthouse [1]** 3/3
**covered [1]** 25/3
**Craig [2]** 2/21 4/13
**create [2]** 49/22 54/1
**created [1]** 19/13
**creates [1]** 45/5
**criminal [1]** 8/14
**crisis [1]** 10/4
**criteria [5]** 26/3 33/14 34/2 34/4 34/13
**CRR [2]** 3/3 57/10
**CSR [2]** 3/3 57/10
**cure [1]** 44/14
**current [2]** 46/8 48/18
**currently [1]** 50/23
**custody [3]** 33/5 33/10 47/7
**customers [1]** 43/17
**cv [6]** 1/4 1/9 1/14 4/5 4/6 4/7

**D**

**danger** [1] 21/14
**dangerous** [1] 25/4
**DATE** [1] 57/10
**daughter** [1] 52/14
**day** [5] 11/17 12/8 13/13 46/1 46/17
**days** [4] 26/7 27/6 53/21 53/21
**deal** [1] 6/2
**dealing** [2] 45/15 50/24
**debate** [1] 5/20
**Debra** [1] 3/1
**decide** [2] 20/20 21/11
**decided** [2] 11/24 37/10
**decision** [5] 9/5 9/6 20/22 30/16 30/18
**decisions** [2] 8/15 9/12
**declined** [1] 15/5
**decompensate** [1] 24/20
**decreasing** [1] 10/7
**dedicated** [1] 8/19
**deemed** [1] 43/14
**defendant** [2] 1/17 4/14
**defendants** [4] 1/7 1/12 2/18 4/16
**Defender** [1] 4/12
**DEFENDERS** [1] 2/8
**definition** [2] 8/13 25/5
**degree** [2] 41/19 48/16
**delegated** [2] 14/23 30/16
**deliberate** [1] 50/1
**deliver** [1] 33/11
**delivery** [1] 33/12
**DELORES** [1] 1/11
**denying** [1] 9/10
**department** [11] 2/19 2/22 4/13 4/15
16/21 17/18 22/25 24/24 26/2 36/12 48/7
**departments** [5] 16/20 16/23 24/22
24/25 27/25
**deprivation** [4] 44/13 44/14 44/22 45/6
**describe** [1] 41/19
**described** [3] 20/19 26/20 45/1
**describes** [1] 45/2
**description** [1] 6/20
**designated** [1] 10/15
**desperate** [1] 38/8
**despite** [2] 21/13 21/13
**destroy** [1] 8/3
**detailed** [1] 32/21
**detained** [2] 25/14 26/24
**detention** [1] 26/3
**determine** [1] 25/18
**determined** [1] 19/15
**developed** [2] 42/18 54/9
**development** [1] 54/8
**devote** [1] 9/5
**did** [12] 11/5 11/7 11/8 11/12 11/20
16/15 28/14 35/16 41/7 41/8 41/10 41/16
**didn't** [8] 11/13 11/24 11/25 15/20 32/2
36/5 40/11 41/17
**different** [5] 10/2 12/24 27/20 37/6
37/11
**difficult** [1] 53/14
**directed** [1] 27/13
**directer** [1] 32/22
**directives** [1] 21/20
**directly** [2] 22/8 23/8
**disability** [4] 2/3 2/4 4/9 9/11

**disagree** [1] 45/4
**discharge** [12] 19/12 19/13 20/9 21/16
23/12 28/7 32/4 33/2 33/15 34/4 34/14
44/12
**discharged** [1] 44/12
**discharging** [3] 14/4 21/12 31/24
**discuss** [2] 5/7 49/8
**discussed** [3] 42/17 42/23 54/16
**discusses** [1] 43/5
**discussing** [1] 17/21
**discussions** [1] 50/7
**disenfranchised** [1] 8/15
**disentitled** [1] 8/15
**dislike** [1] 12/10
**dismiss** [4] 5/7 9/18 41/8 48/12
**disposition** [1] 55/1
**dispute** [3] 11/10 43/2 55/6
**distinct** [2] 41/18 41/21
**distinction** [1] 12/3
**distinguish** [3] 10/17 11/1 35/24
**distinguishes** [1] 36/23
**distinguishing** [2] 12/25 13/11
**district** [5] 1/1 1/2 1/23 3/3 18/13
**divergence** [3] 7/24 45/2 45/5
**Division** [1] 2/19
**do** [59]
**doctor** [8] 24/3 24/4 48/3 48/4 48/11
52/1 52/3 52/19
**doctor-patient** [4] 48/3 48/4 52/1 52/19
**doctors** [5] 19/15 43/15 44/1 44/24 52/6
**doctrine** [2] 38/10 40/2
**document** [1] 49/17
**Doe** [1] 18/10
**does** [14] 15/22 19/7 20/21 20/22 22/13
29/20 30/4 31/7 35/7 35/23 42/3 47/12
49/18 55/5
**doesn't** [16] 9/11 21/5 23/11 23/14
23/16 24/6 25/21 26/6 27/11 32/8 33/19
35/24 36/16 39/24 51/15 54/1
**doing** [3] 10/14 32/15 53/10
**don't** [42] 5/16 5/19 5/21 7/4 7/5 8/4
8/16 12/11 14/19 15/2 16/11 17/14 20/3
20/18 21/11 22/20 22/22 22/23 23/6 24/4
27/6 28/15 28/17 31/20 32/7 35/14 35/25
36/24 37/25 38/6 38/14 38/18 39/8 43/1
45/16 45/25 46/9 47/3 48/19 49/24 50/20
53/9
**done** [1] 5/4
**door** [3] 17/23 18/2 18/12
**doors** [2] 18/6 18/6
**doorway** [3] 16/25 17/2 26/19
**down** [2] 11/2 12/14
**Dr** [1] 3/1
**drafted** [1] 20/12
**dramatically** [1] 6/1
**DRO** [6] 8/20 47/12 47/14 53/10 54/6
56/2
**DRO's** [1] 48/12
**due** [7] 6/11 6/23 7/2 8/24 9/3 39/8
39/11
**during** [2] 6/1 6/6
**duties** [1] 47/8

**E**

**earlier** [1] 16/18

**early** [1] 49/20
**economic** [1] 41/19
**effective** [1] 8/25
**effectively** [1] 22/5
**effort** [1] 55/19
**either** [8] 30/25 32/9 33/20 35/2 44/15
45/10 51/11 56/2
**element** [1] 39/12
**else** [12] 20/21 20/23 32/2 35/8 38/13
38/16 38/21 39/2 46/20 46/22 46/25
50/14
**elsewhere** [3] 19/19 44/16 50/17
**emergencies** [1] 31/20
**emergency** [15] 15/18 16/20 16/21
16/23 17/18 22/25 23/17 24/22 24/24
24/25 26/2 27/25 31/19 31/21 36/12
**emergent** [1] 31/19
**EMTALA** [3] 18/7 21/18 24/24
**enactments** [3] 21/1 21/6 21/9
**end** [4] 27/22 31/11 32/1 34/20
**ended** [1] 35/12
**endorse** [1] 33/15
**enforcement** [1] 24/21
**engage** [1] 55/4
**enjoin** [1] 49/16
**enjoined** [1] 50/1
**enough** [7] 33/17 37/22 37/24 39/14
47/2 47/5 52/2
**ensure** [2] 20/15 44/8
**enter** [5] 5/21 11/8 11/12 29/2 36/5
**entered** [16] 5/14 5/15 5/24 11/19 28/2
29/3 29/7 30/13 35/25 36/7 36/23 36/25
55/18 55/21 56/7 56/9
**entering** [1] 29/14
**entertaining** [1] 51/19
**entire** [1] 9/13
**entirely** [5] 9/5 10/25 38/12 38/15 46/6
**entities** [1] 43/16
**entitled** [2] 44/21 57/6
**entry** [1] 17/11
**equally** [1] 43/21
**equipped** [1] 20/2
**ER** [19] 17/7 17/15 17/17 17/20 18/3
18/6 23/5 23/7 25/24 26/19 27/2 27/19
29/18 30/1 30/22 30/23 31/7 34/23 36/25
**Eric** [2] 2/12 4/19
**essence** [2] 15/12 49/21
**essentially** [2] 22/21 39/12
**et** [7] 1/3 1/6 1/8 1/11 1/13 4/5 4/6
**evaded** [2] 28/24 29/1
**evaluate** [5] 17/23 18/5 18/9 25/1 29/19
23/3 43/19 46/10
**even** [8] 8/11 10/2 10/6 12/12 21/15
23/3 43/19 46/10
**events** [1] 28/3
**eventually** [2] 36/13 37/2
**ever** [3] 34/5 46/19 53/7
**every** [12] 11/20 16/4 17/23 18/1 18/2
18/5 24/5 24/7 24/7 24/23 25/15 46/1
**everybody** [1] 44/19
**everyone** [3] 18/8 18/9 18/12
**exact** [1] 56/10
**exactly** [2] 49/7 54/3
**exam** [1] 25/1
**example** [2] 5/20 43/25
**excellent** [1] 51/11

**E**

**Except [1]**  26/23
**exist [2]**  35/7 49/23
**exists [1]**  24/8
**expand [2]**  53/8 53/11
**expectations [2]**  41/18 41/21
**experiencing [1]**  31/21
**expert [1]**  16/5
**explains [1]**  42/23
**explanation [1]**  28/12
**expressly [1]**  47/19
**extent [4]**  12/16 16/23 23/14 41/20

**F**

**facilities [7]**  14/24 18/6 18/7 23/8 44/17 50/2 50/13
**facility [4]**  10/15 14/24 16/22 30/13
**fact [12]**  7/19 14/20 21/13 22/12 22/24 23/16 26/23 45/6 48/8 52/8 53/25 54/1
**factor [1]**  41/17
**failing [1]**  44/7
**fails [1]**  42/5
**Fair [3]**  33/17 37/24 39/14
**fairly [2]**  5/11 5/13
**fall [2]**  7/14 39/25
**falls [3]**  39/19 41/23 41/24
**family [1]**  24/21
**far [2]**  25/23 29/13
**fast [1]**  51/8
**fatal [1]**  15/10
**father [1]**  52/13
**fault [1]**  24/4
**favor [1]**  51/20
**federal [13]**  7/14 18/7 21/21 22/9 22/11 22/13 25/3 25/6 29/17 31/5 31/6 33/3 33/25
**feels [2]**  31/11 33/2
**feet [4]**  20/10 21/25 22/3 22/7
**few [4]**  7/25 26/6 26/7 27/6
**fiduciary [1]**  43/13
**Fifth [7]**  2/13 7/1 39/15 39/20 39/22 39/24 41/6
**final [1]**  9/6
**finally [2]**  8/7 54/24
**financial [2]**  32/11 45/3
**find [4]**  23/14 39/16 39/21 45/16
**fine [2]**  24/15 32/14
**finish [1]**  12/22
**first [15]**  5/7 5/9 6/2 6/10 9/20 12/19 16/18 18/13 20/5 24/14 24/16 27/6 39/7 42/2 55/14
**fit [1]**  11/24
**five [3]**  11/17 12/8 13/13
**five-day [3]**  11/17 12/8 13/13
**fixed [1]**  47/3
**flow [1]**  28/3
**focused [1]**  52/10
**folks [2]**  8/14 10/15
**follow [5]**  5/5 21/17 21/18 24/12 27/18
**follow-up [1]**  27/18
**forced [3]**  13/5 14/20 15/3
**forcing [3]**  14/17 18/14 31/4
**foreclosed [1]**  44/4
**foregoing [1]**  57/4
**form [2]**  26/16 27/4

**format [1]**  51/15
**former [1]**  10/21
**forms [2]**  13/11 13/18
**forward [1]**  25/17
**found [2]**  42/7 48/9
**foundation [2]**  9/12 56/4
**four [4]**  48/2 53/10 54/24 55/7
**fours [1]**  48/6
**framework [3]**  22/11 22/18 46/9
**framing [1]**  5/18
**free [1]**  32/4
**front [2]**  8/18 26/10
**fully [1]**  48/11
**funding [4]**  15/5 15/6 44/1 47/6
**further [8]**  11/2 14/3 14/9 19/15 28/17 31/10 44/9 54/17
**future [2]**  50/9 51/19

**G**

**gain [2]**  45/12 45/12
**gaining [1]**  45/10
**game [2]**  38/12 38/15
**GEI [1]**  54/12
**general [2]**  5/10 6/14
**generally [6]**  9/2 17/2 17/10 24/18 36/11 42/3
**George [1]**  4/23
**get [20]**  5/23 5/23 7/9 7/21 8/23 19/18 26/16 37/2 38/15 39/22 44/2 44/8 46/1 49/14 49/15 51/7 52/6 52/7 52/22 56/11
**gets [3]**  37/17 37/22 49/19
**getting [6]**  38/12 43/9 51/3 51/14 51/21 51/21
**give [3]**  4/22 4/22 5/2
**given [1]**  9/1
**giving [2]**  32/3 55/17
**glasses [1]**  4/25
**go [17]**  12/22 14/2 14/5 19/17 19/19 20/21 20/22 23/22 24/5 24/13 27/25 46/7 47/25 48/18 48/23 49/4 50/19
**God [1]**  38/14
**goes [1]**  19/24
**going [11]**  22/24 27/3 27/7 28/9 30/1 30/12 35/14 38/25 46/17 53/23 55/13
**gone [1]**  4/23
**good [6]**  43/6 43/6 45/18 45/25 49/8 50/20
**got [5]**  5/22 6/2 30/22 37/10 46/20
**government [1]**  43/21
**governmental [3]**  6/12 6/15 6/18
**grateful [1]**  38/7
**gravamen [1]**  26/17
**gray [1]**  4/23
**great [2]**  28/14 51/9
**grounded [1]**  9/10
**group [4]**  27/14 34/16 54/2 54/5
**groups [3]**  5/6 43/22 47/16
**guess [6]**  20/17 23/3 23/10 27/18 29/13 40/6

**H**

**had [1]**  43/25
**hadn't [1]**  36/7
**halcyon [1]**  46/16
**Hampshire [1]**  18/11

**hand [1]**  8/17
**happen [9]**  7/5 25/21 27/7 36/8 36/10 37/3 46/7 49/24 49/25
**happened [2]**  14/1 30/22
**happening [3]**  6/20 20/5 42/2
**happens [15]**  23/6 25/6 30/16 30/23 36/9 36/11 36/22 37/16 37/18 37/24 38/25 44/21 46/1 46/15 47/1
**hard [1]**  46/21
**harm [12]**  22/16 22/19 22/20 28/23 29/1 29/8 32/14 35/17 38/12 38/16 39/22 47/9
**has [53]**  5/10 6/4 6/18 6/18 6/24 7/19 9/9 9/9 9/25 10/8 10/10 12/9 12/24 13/3 14/1 14/9 15/5 17/18 28/5 28/13 28/18 30/13 30/16 30/19 31/11 32/24 32/25 33/10 34/2 34/13 35/7 35/13 37/3 40/8 40/10 40/12 41/20 43/14 45/1 46/11 46/22 47/17 47/14 50/22 52/1 52/10 52/21 53/7 53/20 53/21 54/20 55/2 55/13
**hash [1]**  50/5
**hasn't [2]**  7/11 36/25
**hated [1]**  10/13
**have [82]**
**haven't [5]**  13/24 15/14 38/11 39/14 41/25
**having [4]**  16/21 27/24 32/11 47/21
**he [2]**  15/11 28/14
**head [1]**  50/23
**headache [2]**  8/2 45/16
**health [47]**  1/13 2/11 4/18 4/19 5/8 5/8 5/13 6/14 6/16 6/19 6/22 7/15 7/16 7/17 7/19 7/19 8/1 8/21 9/14 9/19 10/4 11/20 13/9 13/16 14/22 19/11 23/4 24/7 25/12 29/6 32/23 33/5 33/10 33/14 33/18 35/22 39/6 39/7 40/21 43/11 45/15 45/17 48/8 48/15 48/17 51/1 55/15
**healthcare [5]**  30/17 52/4 52/24 53/3 53/4
**hear [6]**  12/3 12/18 15/20 33/5 33/14 39/8
**heard [7]**  15/19 28/11 29/10 31/18 48/17 54/17 55/9
**hearing [2]**  27/15 48/19
**held [1]**  36/12
**help [1]**  18/16
**helpful [2]**  5/2 27/17
**here [34]**  4/4 4/22 5/19 6/20 7/9 7/18 7/25 8/8 9/12 10/17 16/15 16/17 18/16 19/23 20/4 21/19 23/9 24/10 26/1 26/11 30/9 31/13 34/17 39/4 43/3 43/6 43/7 43/10 44/7 45/5 47/17 47/22 49/6 50/10
**him [1]**  15/20
**hindered [2]**  8/8 8/12
**his [1]**  52/14
**hit [1]**  50/22
**hold [4]**  5/17 11/17 12/8 13/13
**homeless [2]**  51/7 51/10
**Honor [18]**  4/9 4/20 9/25 14/9 19/5 38/18 41/10 41/14 42/8 42/21 48/21 49/3 50/16 50/20 50/22 51/23 53/17 54/19
**HONORABLE [1]**  1/22
**Horst [1]**  2/8
**hospital [53]**  6/16 10/7 10/8 11/5 15/11 17/17 24/18 24/22 24/25 25/11 25/15 27/16 28/8 29/15 29/20 30/19 30/19

**H**

**hospital... [36]** 30/23 31/11 31/22 32/1 32/24 32/25 33/15 34/1 34/1 34/13 35/4 35/21 36/4 36/6 36/12 36/14 36/15 36/19 36/25 37/3 37/6 37/12 37/16 37/18 37/21 37/23 38/3 39/1 40/21 44/16 47/10 48/7 48/11 49/9 51/2 51/25
**hospital's [4]** 28/6 31/2 31/10 51/13
**hospitals [32]** 5/13 15/3 15/4 18/11 18/15 19/12 19/17 19/18 24/17 24/19 26/14 26/24 29/18 32/3 33/4 35/25 36/13 36/23 37/19 39/3 43/6 44/8 45/10 45/11 45/19 48/4 48/24 49/1 49/15 51/4 55/20 56/3
**Hotel [1]** 5/22
**hours [1]** 26/6
**house [2]** 18/23 31/15
**how [8]** 8/16 16/19 23/7 35/14 48/19 52/23 54/3 54/4
**human [1]** 43/20
**hurt [1]** 47/10
**hypothetical [1]** 20/6

**I**

**I'd [3]** 16/17 16/18 19/4
**I'll [9]** 5/4 5/8 5/22 6/9 12/3 14/13 19/2 41/11 56/11
**I'm [29]** 5/4 5/20 7/12 16/5 19/2 20/13 20/25 22/15 22/17 22/18 24/10 26/5 28/21 28/22 33/4 34/18 38/7 38/8 38/25 39/23 39/24 41/3 41/3 46/16 49/17 50/5 51/5 51/17 53/6
**I've [2]** 4/23 28/11
**idea [4]** 30/10 33/12 48/14 56/8
**identical [2]** 9/13 48/8
**identify [1]** 41/18
**illness [5]** 8/9 8/13 25/9 26/4 26/25
**Imagine [1]** 49/17
**immediately [1]** 51/7
**impact [2]** 41/19 55/14
**imperfect [1]** 6/18
**important [4]** 5/12 10/16 47/4 50/10
**importantly [1]** 11/16
**impossible [1]** 30/25
**impression [1]** 29/13
**inability [1]** 44/12
**include [1]** 55/19
**includes [2]** 22/11 49/13
**including [3]** 21/19 25/2 44/16
**incorrect [1]** 32/25
**incumbent [2]** 56/2 56/5
**indicated [1]** 51/25
**indicia [1]** 16/2
**indigent [1]** 8/11
**individual [6]** 19/14 32/23 34/12 34/14 51/15 53/19
**individually [1]** 6/10
**individuals [2]** 54/5 55/17
**inextricably [1]** 42/25
**initial [1]** 36/14
**initially [1]** 11/4
**initiating [1]** 25/9
**injunction [6]** 42/1 42/3 48/25 49/6 49/11 49/22
**injunctive [1]** 54/4

**injury [1]** 7/19
**inpatient [2]** 16/22 23/8
**insofar [1]** 45/11
**instance [3]** 17/17 43/24 44/25
**interconnected [1]** 55/15
**interest [9]** 42/19 43/23 45/5 51/14 51/15 51/16 51/23 54/1 56/5
**interests [17]** 7/24 7/24 8/5 8/18 43/10 43/10 44/5 44/23 46/3 46/6 47/2 47/11 49/1 52/8 52/10 52/22 52/24
**interfered [1]** 41/20
**interim [4]** 13/23 50/3 50/11 50/12
**intervene [1]** 55/7
**intervening [1]** 55/22
**INTERVENORS [1]** 2/11
**intervention [3]** 9/16 54/15 54/23
**investment [2]** 41/18 41/21
**investment-backed [2]** 41/18 41/21
**invitation [1]** 56/2
**involuntarily [2]** 25/15 31/16
**involuntary [3]** 20/11 20/22 23/2
**involve [1]** 31/19
**involved [1]** 11/4
**involving [1]** 43/15
**iron [1]** 16/15
**is [197]**
**is identical [1]** 9/13
**isn't [15]** 9/22 12/15 17/21 23/5 28/22 30/24 37/13 37/16 37/18 37/25 38/21 39/10 39/11 45/18 48/22
**issue [15]** 5/9 7/5 7/10 7/18 8/22 17/20 24/11 31/20 39/18 41/23 42/16 42/16 42/17 54/20 54/24
**issued [1]** 55/21
**issues [14]** 18/20 31/19 41/12 47/3
**it [107]**
**it's [51]** 5/11 5/12 5/15 5/20 7/23 10/16 11/10 11/22 12/6 12/20 13/3 17/22 18/7 18/19 19/25 20/5 20/6 20/25 21/4 21/8 21/9 21/10 22/7 22/13 23/8 25/12 25/16 26/9 28/2 31/16 32/6 32/8 32/17 33/14 42/9 44/7 45/23 46/5 46/9 46/17 46/20 46/21 47/2 47/5 48/8 50/10 50/25 52/21 53/1 54/22 56/4
**its [8]** 8/12 22/13 30/16 33/19 49/12 52/3 53/8 55/18

**J**

**JAROD [1]** 1/8
**Jesse [2]** 2/8 4/11
**job [1]** 28/14
**Johnson [4]** 2/21 4/13 16/12 16/14
**JUDGE [3]** 1/23 24/10 32/20
**judicial [1]** 13/9
**juncture [1]** 49/1
**jurisprudence [1]** 52/9
**just [44]** 4/22 4/22 9/20 9/20 10/3 11/18 12/14 12/20 15/7 16/18 17/2 18/16 18/17 18/18 20/19 21/16 22/12 22/15 22/18 23/3 25/10 29/7 29/24 34/18 35/15 36/22 37/15 37/17 38/11 38/12 39/24 40/10 41/25 46/1 46/5 46/9 46/20 47/2 48/1 52/3 52/3 52/18 54/19 56/3
**Justice [4]** 2/19 2/22 4/14 4/16

**K**

**keep [12]** 20/18 20/19 21/1 21/6 21/7 21/9 22/20 25/21 26/11 31/17 50/12 50/15
**kept [1]** 25/15
**kind [12]** 10/21 11/17 12/4 12/4 13/1 13/5 18/10 23/22 24/4 25/2 31/13 55/2
**kinds [3]** 10/17 10/25 19/22
**know [29]** 5/20 5/21 7/4 7/5 8/16 13/11 20/5 22/9 24/3 27/7 38/13 39/4 40/10 44/19 49/20 50/4 50/6 51/5 51/9 51/10 51/11 51/14 53/19 53/20 54/3 54/20 54/25 55/3 55/5
**knows [1]** 48/21

**L**

**labels [1]** 40/13
**lack [2]** 6/18 8/17
**lacks [1]** 6/13
**laid [4]** 20/10 21/24 22/2 22/6
**language [1]** 9/7
**last [5]** 31/8 53/10 55/7 55/16 55/18
**later [1]** 27/3
**latter [3]** 10/23 13/6 13/20
**law [27]** 14/3 14/19 18/11 21/22 22/9 22/11 22/11 22/13 24/20 25/3 25/6 29/17 31/3 31/5 31/6 32/4 33/7 33/25 34/11 42/3 42/19 43/13 44/25 47/6 52/15 56/4 56/10
**laws [6]** 19/1 20/9 25/15 31/14 31/18 34/25
**lawsuit [8]** 8/16 45/9 45/14 45/15 45/25 46/12 46/22 47/18
**leads [1]** 28/3
**least [5]** 25/24 26/6 28/20 30/25 32/4
**leave [2]** 10/14 34/3
**LEGACY [2]** 1/13 52/7
**legal [3]** 32/9 33/20 47/8
**legally [1]** 28/7
**legislative [3]** 21/1 21/6 21/8
**legislature [1]** 20/12
**let [2]** 20/22 41/18
**let's [9]** 8/14 9/16 9/18 11/18 19/24 39/6 40/13 42/15 46/18
**level [2]** 13/23 36/14
**Levi [1]** 2/8
**Lewis [1]** 2/12
**liberty [1]** 37/5
**licensed [1]** 26/23
**lifetime [1]** 46/19
**like [23]** 5/16 6/3 6/3 6/5 6/7 7/2 7/9 8/4 8/20 16/15 16/17 16/18 18/10 19/4 19/25 33/3 35/14 37/5 38/7 43/16 45/25 50/9 51/10
**likely [1]** 50/25
**limbo [1]** 19/19
**limited [3]** 21/19 50/24 50/25
**limiting [1]** 9/10
**line [1]** 40/25
**literal [1]** 43/20
**literally [2]** 22/4 22/6
**litigant [2]** 43/1 43/6
**litigate [2]** 17/4 50/7
**litigated [1]** 7/23
**litigating [1]** 9/1

**L**

**litigation [5]**  46/2 46/6 47/17 48/15
49/21
**little [1]**  18/1
**live [1]**  53/9
**LLP [3]**  2/8 2/12 2/15
**long [25]**  6/16 10/8 10/18 13/2 13/6
13/15 14/19 14/21 15/9 19/21 20/1 20/2
20/15 29/22 31/7 31/12 31/20 34/12
35/10 37/2 44/8 44/11 44/15 44/16 49/13
**long-term [22]**  6/16 10/8 10/18 13/2
13/6 13/15 14/19 14/21 15/9 19/21 20/2
20/15 29/22 31/7 31/12 31/20 35/10 44/8
44/11 44/15 44/16 49/13
**longer [8]**  18/23 25/10 27/15 34/19
35/16 36/18 45/18 53/24
**look [8]**  6/9 7/17 7/21 8/7 9/24 10/2
13/10 15/21
**looking [5]**  10/1 22/15 22/17 22/18 49/7
**looks [5]**  6/3 6/5 6/7 7/2 7/9
**lose [3]**  39/21 39/22 45/13
**lot [4]**  7/2 8/2 50/5 54/15
**love [1]**  40/13

**M**

**made [4]**  7/25 9/12 10/10 18/18
**maintain [1]**  38/1
**major [1]**  5/9
**make [5]**  12/2 20/21 20/23 21/1 30/18
**makes [1]**  18/10
**making [6]**  8/15 20/10 21/6 21/6 21/9
26/11
**many [3]**  9/6 23/7 26/13
**Market [1]**  2/20
**materially [1]**  10/22
**matter [8]**  8/25 21/5 23/11 23/14 27/20
46/5
**matters [2]**  45/5 45/8
**MATTEUCCI [1]**  1/11
**may [4]**  9/1 27/21 27/21 29/21
**maybe [2]**  5/18 8/11
**me [23]**  4/22 4/22 5/12 6/15 8/18 9/5
12/20 20/13 22/22 23/3 26/5 26/10 33/18
33/20 36/17 36/22 37/15 38/11 38/13
38/25 39/15 46/16 49/16
**mean [6]**  17/2 17/3 24/2 38/6 45/2 56/1
**means [3]**  15/8 34/4 43/9
**mechanism [1]**  54/3
**Medicaid [2]**  43/25 43/25
**medical [8]**  14/5 15/20 25/1 28/23 31/19
47/7 47/8 47/11
**medically [1]**  14/2 18/23 19/21 19/22
**Medicare [1]**  33/4
**Medicare-participating [1]**  33/4
**meet [3]**  25/18 26/3 43/8
**meeting [2]**  34/3 54/17
**meets [3]**  33/13 34/2 34/13
**Member [1]**  4/6
**mental [10]**  8/9 14/22 25/9 25/11 26/3
26/25 30/17 32/23 35/22 55/15
**mentioned [2]**  21/21 29/24
**merely [1]**  6/17
**merits [2]**  24/11 39/24
**Merrithew [3]**  2/8 2/8 4/11
**met [3]**  43/3 43/8 47/5

**metaphor [1]**  22/7
**METROPOLITAN [2]**  2/7 4/12
**MICHAEL [1]**  1/22
**might [8]**  5/2 6/2 7/8 8/12 18/16 29/14
38/9 38/9
**minimize [1]**  38/6
**MINK [4]**  1/6 4/6 47/17 55/11
**Mink-Bowman [1]**  47/17
**minute [4]**  4/22 23/11 37/15 38/24
**missed [1]**  40/6
**mission [2]**  8/19 11/24
**misunderstanding [1]**  20/14
**mix [3]**  8/10 8/17 23/9
**MO [6]**  1/4 1/9 1/14 4/5 4/6 4/7
**moment [1]**  4/22
**monetary [1]**  54/4
**money [3]**  8/2 37/10 42/1
**month [1]**  55/22
**more [11]**  18/1 20/17 24/23 25/7 28/6
28/8 33/6 39/8 46/14 52/15 53/18
**morphed [3]**  12/10 12/24 13/3
**morphs [1]**  12/13
**MOSMAN [3]**  1/22 24/10 32/20
**most [1]**  5/12
**mostly [1]**  43/22
**motion [8]**  5/7 5/9 9/15 9/17 13/9 41/8
48/12 54/14
**move [6]**  11/2 25/17 36/16 39/6 44/10
51/7
**moving [1]**  51/5
**MPD [3]**  53/10 54/6 56/2
**Mr [6]**  2/4 2/8 2/12 2/15 2/21 16/14
**Mr. [1]**  16/12
**Mr. Johnson [1]**  16/12
**Ms [1]**  2/18
**Ms. [2]**  14/16 28/16
**Ms. Scott [1]**  14/16 28/16
**much [15]**  7/14 16/8 28/4 28/22 29/15
32/19 34/21 37/10 42/6 47/23 49/2 50/21
52/23 54/13 56/11
**multiple [4]**  28/25 43/8 45/24 54/25
**must [1]**  14/24
**my [14]**  4/24 4/24 8/25 11/22 16/18 21/4
26/19 29/13 32/6 35/11 35/11 38/24
50/10 56/11

**N**

**nail [1]**  50/22
**name [1]**  4/8
**nature [5]**  12/17 16/21 43/13 51/22 53/2
**NE [1]**  2/22
**nearly [1]**  43/6
**necessarily [2]**  32/9 51/6
**necessary [1]**  16/13
**need [15]**  4/24 14/5 15/20 19/15 19/22
20/18 20/20 21/12 30/11 37/23 38/8 39/8
44/9 45/16 51/22
**needed [2]**  18/5 36/6
**needs [4]**  19/14 21/13 21/15 49/25
**Neiman [2]**  12/23 4/19
**never [3]**  13/21 33/18 34/8
**Nevertheless [1]**  38/11
**new [3]**  18/11 50/2 50/13
**Newdow [1]**  52/13

**Ninth [3]**  2/16 55/1 56/4
**no [38]**  1/4 1/9 1/14 4/5 4/7 7/7 7/8 9/3
10/11 12/19 15/4 18/21 18/23 20/20 22/4
25/10 26/13 27/15 28/15 31/3 31/14 32/9
32/15 33/7 34/19 35/11 35/16 35/18
36/18 37/13 40/16 42/11 42/13 47/8
48/18 52/15 53/3 53/7 55/19
**none [1]**  13/16
**nonreviewable [1]**  9/7
**nontherapeutic [1]**  51/10
**Nos [1]**  4/6
**not [106]**
**note [3]**  16/11 16/19 19/3
**nothing [5]**  14/1 15/12 18/14 31/22 35/6
**notice [2]**  13/9 25/9 26/3 26/25
**notion [2]**  53/7 56/1
**now [21]**  7/17 10/2 10/11 10/21 11/7
12/5 13/4 13/14 13/19 15/7 23/20 31/16
34/15 43/4 43/17 45/25 48/21 48/23
49/23 49/23 55/10
**nowhere [1]**  14/1 19/17
**number [4]**  5/5 7/18 29/25 30/1
**numbers [1]**  23/7
**numerous [2]**  5/17 43/15

**O**

**o0o [1]**  57/2
**OAR [3]**  14/25 15/22 19/1
**obligate [1]**  35/9
**obligated [3]**  5/25 21/17 29/12
**obligation [2]**  22/14 33/20
**obtained [1]**  15/25
**obvious [1]**  50/23
**Obviously [1]**  8/10
**occurs [1]**  16/4
**off [2]**  44/4 46/1
**offerings [1]**  53/8
**Official [1]**  57/11
**officials [1]**  24/21
**OHA [47]**  9/5 13/20 13/24 14/17 15/4
15/5 17/6 18/19 18/21 18/25 19/25 20/3
20/5 20/7 20/10 20/11 20/15 20/18 21/3
21/5 21/10 21/17 22/13 24/17 26/21 29/2
29/14 30/6 30/7 30/7 30/14 30/16 34/21
44/7 44/23 45/18 45/21 46/10 48/25
49/12 49/13 49/22 50/1 51/6 51/6 53/8
56/2
**OHA's [4]**  20/21 20/22 21/10 21/19
**Okay [1]**  12/23
**once [5]**  24/24 28/7 30/6 30/7 55/23
**one [25]**  6/8 7/18 10/4 12/11 13/1 13/19
21/21 23/11 24/6 29/1 29/6 29/23 32/15
32/16 36/2 39/9 42/16 42/24 43/11 43/18
46/21 49/17 53/3 53/7 53/19
**one-page [1]**  49/17
**ongoing [2]**  45/6 54/22
**only [13]**  4/23 6/22 7/12 26/19 30/12
31/5 31/6 32/22 41/3 44/13 44/18 44/19
56/9
**operation [3]**  20/8 22/9 40/19
**opinion [1]**  42/23
**opponent [1]**  41/12
**opponent's [1]**  35/13
**opportunity [2]**  26/14 55/6
**oppose [1]**  56/7

**O**

**opposed [2]** 7/24 13/1
**opposite [1]** 49/7
**option [3]** 35/14 45/24 46/1
**options [5]** 10/8 13/12 13/13 45/24 49/14
**oral [2]** 1/20 4/4
**order [9]** 7/20 28/2 33/1 33/16 46/25 55/18 55/21 56/7 56/9
**OREGON [32]** 1/2 1/3 1/17 2/4 2/4 2/19 2/22 4/5 4/10 7/13 9/4 10/6 10/8 11/20 14/3 14/21 20/25 21/4 21/17 24/18 30/20 32/21 33/5 33/10 33/14 33/18 35/7 40/8 40/21 44/15 44/17 51/1
**Oregon's [1]** 10/3
**organization [2]** 8/19 54/7
**original [1]** 57/6
**ORS [4]** 18/25 33/8 33/9 33/9
**other [18]** 7/25 8/11 8/17 12/12 12/13 20/8 31/14 31/15 33/25 34/25 38/24 40/17 43/16 44/25 45/3 45/18 46/11 54/6
**others [3]** 17/17 21/14 25/4
**otherwise [2]** 17/13 17/18
**our [56]** 11/1 13/9 13/17 13/21 16/24 17/12 17/23 18/6 18/6 18/24 19/12 19/14 19/14 19/15 19/16 19/18 22/25 23/1 23/13 23/23 24/18 24/22 25/13 26/14 27/13 28/2 28/3 28/9 32/1 35/9 36/3 37/14 38/4 39/3 41/16 42/7 42/21 44/8 44/12 44/13 44/14 44/18 44/20 44/21 44/23 45/7 45/8 46/15 46/24 47/2 47/7 47/10 47/17 48/12 49/14 49/15
**out [30]** 5/4 5/23 7/22 12/3 12/18 16/20 20/23 22/18 22/20 22/22 22/24 32/4 37/11 37/25 38/12 38/15 39/22 41/16 46/13 46/17 50/2 50/5 50/13 51/3 51/14 51/21 52/23 53/22 55/3 55/3
**outcome [2]** 45/9 51/19
**outcomes [1]** 51/13
**outlasts [1]** 20/1
**outside [3]** 10/7 19/17 47/10
**outsourcing [1]** 13/20
**over [8]** 10/4 10/9 24/25 26/11 32/2 35/6 38/2 47/20
**overall [1]** 22/11
**overnight [1]** 49/24
**override [1]** 21/17
**oversimplifying [1]** 28/20
**own [7]** 8/9 8/12 8/16 22/16 32/11 52/3 56/5

**P**

**p.m [2]** 4/2 56/15
**page [1]** 49/17
**pages [1]** 42/9
**paid [1]** 44/2
**PAIMI [1]** 47/15
**paragraph [2]** 18/19 40/17
**parent [1]** 52/16
**pari [1]** 48/15
**part [7]** 13/21 25/5 28/2 28/3 35/21 42/10 53/1
**participate [1]** 56/3
**participating [1]** 33/4
**participation [3]** 23/2 33/3 40/2

**particular [2]** 9/5 13/1
**parties [5]** 5/10 8/8 42/16 52/10 55/19
**party [12]** 7/20 7/22 8/6 42/18 42/25 43/7 51/24 52/14 52/17 52/21 53/4 56/5
**passu [1]** 48/16
**past [2]** 7/21 8/23
**path [3]** 11/3 12/14 23/4
**pathways [1]** 24/12
**patient [45]** 8/11 8/12 15/23 17/23 18/1 18/2 18/5 18/17 19/11 19/25 20/4 20/4 20/7 20/9 20/11 21/1 25/3 25/5 25/10 25/11 25/11 29/19 31/3 31/13 31/21 34/2 34/14 34/6 35/6 36/12 37/2 37/17 37/22 43/12 48/3 48/4 48/10 48/11 52/1 52/3 52/5 52/19 53/5 53/20 53/21
**patients [108]**
**PATRICK [1]** 1/16
**pattern [1]** 48/8
**pause [2]** 5/1 19/2
**pay [2]** 17/24 18/9
**paying [1]** 52/5
**pendency [1]** 6/6
**Penn [1]** 42/12
**people [20]** 8/20 15/17 24/19 25/14 27/2 27/14 27/19 27/21 27/25 28/7 29/25 34/16 35/5 51/7 51/21 52/5 53/23 54/9 54/10 54/11
**per [2]** 52/1 52/21 53/3
**period [4]** 10/9 28/1 35/6 38/2
**periods [1]** 28/21
**permitted [1]** 51/17
**perplexed [1]** 53/7
**person [4]** 33/2 33/11 33/13 34/4 34/14 36/7
**persuaded [1]** 7/8
**phase [3]** 32/1 34/24 34/25
**phenomenon [1]** 54/22
**phrase [1]** 20/17
**physical [8]** 7/3 7/3 7/9 7/12 39/16 40/5 41/1 41/6
**pick [2]** 8/20 45/25
**picture [2]** 29/15 30/5
**pieces [1]** 9/17
**Pinals [1]** 3/1
**place [14]** 6/2 14/4 20/5 20/20 30/12 32/23 33/11 34/7 42/2 42/7 45/16 45/18 47/12 48/18
**placed [5]** 25/10 26/4 31/1 31/9 49/6
**placement [8]** 14/25 30/16 30/17 30/18 30/20 35/3 51/20 51/22
**places [2]** 27/24 51/4
**placing [1]** 48/25
**plaintiff [4]** 2/3 2/7 4/18 4/19
**plaintiff's [2]** 6/13 48/2
**plaintiffs [6]** 1/4 1/9 1/14 2/11 14/17 48/4
**plan [1]** 19/13
**play [3]** 21/19 44/13 47/12
**pleaded [1]** 18/19
**pleading [1]** 8/25
**please [3]** 4/8 20/13 22/1
**pled [2]** 7/11 41/4
**point [21]** 10/10 10/12 14/2 16/20 17/11 25/8 25/13 25/16 26/15 26/18 27/15 28/8 29/23 29/24 31/3 32/14 41/16 45/20 50/6

**55/7 56/10**
**points [2]** 16/17 18/18
**policy [1]** 19/13
**poor [1]** 51/9
**population [1]** 26/16
**Portland [7]** 1/17 2/5 2/9 2/13 2/16 2/20 3/4
**position [12]** 21/5 21/11 21/16 23/13 31/12 34/9 34/18 35/16 45/22 46/24 50/12 53/14
**possible [7]** 12/19 27/24 46/9 46/12 51/1 51/13 56/12
**practices [1]** 49/12
**precise [2]** 18/1 33/6
**precludes [1]** 47/21
**predate [1]** 26/6
**predates [4]** 25/24 25/24 25/25 26/20
**preexisting [1]** 43/20
**prepared [2]** 15/21 50/5
**PRESENT [1]** 3/1
**pressed [1]** 54/7
**pretty [2]** 7/14 15/7
**preventing [2]** 31/22 32/10
**principles [1]** 20/8
**prioritization [3]** 53/25 53/25 54/20
**prioritize [1]** 53/23
**prioritized [2]** 47/20 54/5
**private [9]** 15/3 19/3 29/18 29/20 30/19 30/19 31/22 48/24 48/25
**privilege [1]** 56/8
**privileged [1]** 52/15
**probably [1]** 14/13
**problem [6]** 5/22 6/8 9/9 15/10 20/21 38/16
**procedural [3]** 6/23 9/3 39/11
**procedure [1]** 34/15
**proceed [1]** 51/2
**proceeding [1]** 25/10
**proceedings [5]** 1/21 5/1 25/18 56/15 57/5
**process [10]** 6/11 6/23 7/2 8/24 9/4 32/22 39/8 39/11 54/24 55/3
**professional [1]** 32/7
**program [1]** 32/23
**prohibiting [1]** 48/25
**prohibits [1]** 14/3
**prompt [1]** 55/23
**prong [4]** 5/11 8/7 43/2 43/4 43/8 54/18
**proper [1]** 47/21
**property [7]** 6/13 8/3 40/24 44/13 44/14 44/22 45/6
**proportions [1]** 23/7
**provide [29]** 10/19 10/23 10/24 11/16 11/19 12/4 12/5 13/3 13/5 13/7 13/19 14/22 18/15 19/21 20/2 23/22 23/23 23/25 24/6 24/6 28/8 31/10 31/12 35/5 36/14 37/7 44/9 47/8 49/13
**provided [7]** 13/9 14/5 19/16 20/16 28/23 36/2 44/11
**Providence [1]** 52/7
**provider [2]** 43/12 53/4
**providers [2]** 14/22 30/17
**providing [7]** 10/20 11/23 16/25 23/2 24/5 52/4 52/5
**provision [2]** 23/15 43/25

**P**

provisions [3]  21/19 22/12 33/8
proximity [1]  52/11
psychiatric [1]  25/2
psychiatrically [2]  24/20 25/4
public [6]  2/7 4/12 6/14 6/19 6/21 24/21
punt [1]  38/15
punting [1]  38/13
purposes [2]  5/17 7/8
pursuant [1]  25/14
pursue [1]  43/1
pursuing [1]  56/6
put [3]  8/14 9/20 32/14

**Q**

quality [2]  51/4 51/8
question [23]  5/18 5/18 6/8 8/24 9/20
11/7 13/2 20/14 21/4 22/17 26/19 27/18
27/24 28/22 35/11 35/11 36/21 38/24
39/19 46/21 50/9 50/10 54/16
questions [7]  14/9 28/6 28/6 28/13
28/18 49/20 51/14
questions about [1]  28/6
quickly [2]  51/14 51/21
quit [7]  11/23 12/15 12/20 15/8 16/19
16/24 22/19
quite [2]  7/25 29/11
quote [1]  4/23

**R**

radiates [1]  52/23
rather [2]  8/20 30/12
reach [2]  10/12 24/24
reached [2]  27/15 28/7
read [2]  9/6 16/11
reading [1]  4/24
real [2]  5/18 5/20
realities [1]  50/24
realize [1]  20/9
really [14]  10/12 10/13 12/18 19/20
19/25 23/11 25/24 26/20 27/11 28/22
46/5 51/8 51/11 52/22
realm [1]  53/8
reason [4]  12/12 13/25 31/9 42/5
reasons [2]  8/11 12/10
rebutted [1]  56/9
receive [9]  10/15 11/9 15/12 17/6 29/12
36/18 44/19 44/20 45/7
receiving [6]  11/4 14/24 19/11 37/5
44/4 50/12
recess [2]  56/13 56/14
recited [1]  33/17
recognize [1]  21/4
recognizing [1]  25/8
reconsidered [1]  10/10
record [3]  4/8 16/6 57/5
reflects [1]  32/20
refuse [1]  13/24
refused [1]  15/12
regard [1]  5/9
regarding [1]  18/22
regardless [2]  17/24 18/9
regime [1]  18/8
regulated [1]  36/1
regulation [1]  18/25

regulations [5]  19/8 19/10 21/10 21/20
40/20
regulatory [16]  7/11 18/8 22/12 39/17
40/5 40/6 40/15 40/18 41/1 41/6 41/7
41/8 41/15 41/17 42/8 46/8
rejected [1]  52/21
rejection [1]  18/14
relate [1]  6/12
related [1]  6/12
relates [1]  6/12
relation [4]  6/13 6/19 6/21 42/18
relationship [50]  5/25 7/22 9/22 9/23
9/24 11/9 11/11 26/20 29/2 29/6 29/12
29/14 30/14 30/24 31/23 34/21 35/12
35/15 35/24 36/5 36/8 36/17 36/24 37/1
37/4 42/22 42/22 42/24 43/2 43/11 43/12
43/14 43/18 43/20 44/6 48/3 48/5 48/9
52/1 52/2 52/12 52/15 52/16 52/18 52/19
52/20 52/20 52/23 53/2 53/3
relationships [1]  48/3
relative [1]  52/10
release [1]  17/14
released [1]  25/16
relief [7]  41/24 45/8 49/19 50/2 53/11
53/15 54/4
remarkable [3]  45/22 45/23 55/10
remedy [1]  42/4
removed [2]  43/25 48/10
repeat [2]  22/1 36/20
reply [4]  16/9 48/12 49/3 55/25
REPORTER [2]  3/3 57/11
represent [5]  24/17 47/16 47/18 52/14
54/2
representation [1]  55/16
representative [1]  54/7
request [1]  15/5
require [9]  15/22 18/22 19/1 24/6 29/20
31/7 31/14 33/9 35/1
required [3]  13/20 14/20 38/10
requirement [2]  17/19 32/10
requires [7]  18/8 18/11 29/18 31/6 33/7
34/11 39/15
requiring [2]  14/18 49/13
residential [3]  13/14 44/17 51/11
resolve [1]  55/5
resources [7]  10/7 49/22 50/24 50/25
53/12 54/8 54/8
respect [2]  41/15 41/22
respond [1]  16/17
response [2]  14/16 41/8
responses [1]  48/1
responsibility [3]  25/12 25/17 31/17
responsible [1]  30/7
restrictive [1]  53/9
result [5]  8/2 13/4 44/12 45/9 45/14
results [1]  18/21
retreated [2]  36/17 37/4
reupped [1]  6/5
revise [1]  16/18
rid [1]  51/7
right [8]  8/18 11/9 12/6 14/11 16/8
16/16 18/3 20/7 21/22 21/25 22/3 23/19
23/22 23/25 26/12 26/17 26/18 26/22
27/4 27/8 27/9 27/12 27/13 27/22 28/4
29/3 29/8 29/9 29/23 30/2 30/15 31/1

32/6 32/8 32/19 34/12 39/12 39/14 39/23
40/17 40/23 40/24 40/25 41/11 42/25
45/2 45/20 45/24 46/2 46/21 48/20 48/23
rights [6]  2/3 2/4 4/10 43/7 47/5 48/5
rise [1]  56/14
rises [1]  41/23
risk [1]  28/20
Rives [2]  2/15 4/18
RMR [2]  3/3 57/10
room [2]  3/4 23/17
roundly [1]  54/21
rules [5]  14/21 27/1 30/20 32/21 35/8
runs [1]  9/16
Rysselberghe [2]  2/15 4/17

**S**

S.W [6]  2/5 2/9 2/13 2/16 2/20 3/4
safety [1]  6/14
said [9]  12/4 15/7 18/20 25/6 37/25
38/24 40/24 51/6 52/13
Salem [1]  2/23
same [10]  16/21 21/5 21/7 24/3 39/19
42/16 43/22 44/23 44/24 48/16
satisfied [4]  46/2 46/3 46/6 46/22
say [21]  8/17 12/11 12/14 12/23 15/19
17/1 19/6 19/9 19/10 20/2 20/3 21/16
24/2 32/25 33/7 46/18 47/2 47/5 53/1
54/19 54/25
saying [6]  22/21 22/23 23/10 46/5 48/17
51/5
says [12]  6/7 15/11 20/5 20/7 20/18
26/10 32/1 35/8 40/14 45/15 46/18 53/23
scenario [1]  51/18
Scott [4]  2/18 4/15 14/16 28/16
screen [2]  19/3 29/18
screening [1]  25/1
se [3]  52/1 52/21 53/3
seated [1]  24/15
second [3]  29/23 42/17 43/4
secure [2]  13/14 44/17
see [4]  13/8 15/2 40/11 48/19
seek [2]  47/19 54/23
seeking [12]  17/4 41/24 41/25 42/1 45/9
49/6 49/10 49/11 50/3 50/11 51/15
seem [1]  9/5
seems [1]  4/23
seen [1]  15/14
self [1]  25/4
send [8]  30/12 36/19 37/6 37/11 37/21
38/3 38/21 56/2
sends [1]  19/25
SENIOR [1]  1/23
sent [6]  9/13 20/4 37/17 47/9 50/14
50/17
separate [4]  15/23 17/20 20/11 34/25
September [2]  55/16 55/18
service [3]  4/24 36/14 49/14
services [15]  16/25 18/24 35/5 36/1
36/6 37/8 44/1 44/2 45/8 46/14 48/8
49/13 51/9 51/11 52/5
set [9]  9/13 26/25 27/21 40/20 53/22
setting [2]  7/6 29/18
settings [4]  8/1 9/6 51/10 53/9
settlement [3]  51/1 55/2 55/4
several [1]  21/18

**S**

**shall [1]** 9/6
**she [1]** 33/6
**shelters [2]** 51/8 51/10
**Shibinette [1]** 18/10
**ship [1]** 39/1
**shirt [1]** 16/15
**shoes [1]** 51/18
**short [4]** 35/6 37/2 47/6 47/6
**should [6]** 16/20 20/3 21/12 26/10 51/2 54/23
**shouldn't [2]** 20/4 20/7
**shove [1]** 19/3
**show [7]** 7/19 15/17 27/19 29/25 54/25 56/6
**showed [3]** 30/22 30/24 36/4
**shows [3]** 14/19 29/15 36/25
**Shumway [3]** 3/3 57/9 57/10
**sick [1]** 33/1
**sidewalk [2]** 19/20 21/13
**sign [1]** 32/2
**signature [2]** 57/7 57/7
**signed [4]** 10/23 13/3 13/19 38/5
**significant [1]** 38/2
**signing [4]** 10/21 13/4 49/17 57/4
**similar [1]** 44/7
**simple [2]** 27/24 46/21
**simply [10]** 10/23 15/7 20/17 34/4 34/20 47/5 47/7 47/9 57/2 57/11 53/3
**simultaneously [2]** 43/22 44/3
**since [6]** 6/5 9/12 9/16 16/24 29/6 54/22
**Singleton [5]** 42/23 43/5 43/24 44/25 52/2
**Siskiyou [2]** 48/7 49/8
**sit [1]** 16/14
**situation [11]** 13/17 14/4 23/17 32/11 32/17 43/21 44/7 45/11 46/4 46/13 48/7
**situations [1]** 31/19
**smaller [1]** 27/14
**Smith [1]** 2/12
**so [116]**
**some [32]** 5/3 6/21 7/3 8/13 9/11 11/3 11/12 16/24 17/1 17/3 17/16 26/15 26/18 27/3 27/4 28/24 29/24 30/1 30/5 35/2 46/19 51/3 51/19 51/20 51/25 53/20 53/22 53/24 53/24 53/25 55/2 56/8
**somebody [13]** 26/24 32/25 33/10 33/16 34/15 38/13 38/16 39/2 46/22 46/25 49/18 52/1 55/5
**somehow [1]** 22/13
**someone [5]** 17/20 29/21 30/22 36/4 36/25
**something [10]** 12/10 12/13 12/24 20/23 23/1 46/11 46/20 49/18 51/6 55/23
**sometimes [3]** 24/21 24/21 30/18
**somewhere [1]** 50/14
**soon [3]** 26/24 55/21 56/12
**sorry [1]** 24/14
**sort [17]** 7/23 9/7 11/3 11/8 11/12 13/20 17/13 19/18 20/1 29/12 42/17 43/9 45/21 48/15 50/7 51/25 55/2
**sorts [1]** 27/2
**sought [2]** 11/15 53/6
**sound [1]** 8/4
**space [2]** 14/25 47/6

**speak [1]** 24/11
**speaks [1]** 55/22
**specializes [1]** 24/3
**specific [2]** 28/18 47/15
**specifically [3]** 12/8 25/3 33/9
**specifics [2]** 50/5 50/7
**spectrum [1]** 51/13
**speed [2]** 50/2 51/3
**spoke [1]** 42/8
**spots [1]** 28/25
**stabilization [2]** 36/2 36/6
**stabilize [1]** 29/19
**stabilized [1]** 35/2
**stabilizing [5]** 10/19 13/4 18/24 23/24 44/10
**stable [2]** 34/6 34/8
**staff [1]** 8/3
**stage [2]** 31/4 31/8
**stages [1]** 49/21
**stake [1]** 54/20
**stand [3]** 7/14 39/25 51/17
**standard [2]** 5/11 6/11
**standards [1]** 25/19
**standing [24]** 5/10 5/11 5/17 6/3 6/7 6/8 6/9 7/7 7/18 8/22 9/18 15/10 22/17 22/21 24/11 38/10 39/20 42/15 42/16 51/24 52/3 52/14 52/17 52/21
**stands [1]** 39/18
**start [3]** 9/16 9/18 40/13
**started [1]** 12/14
**starting [2]** 19/3 30/11
**starts [1]** 8/4
**state [29]** 4/8 10/6 10/8 11/5 11/20 18/11 21/4 21/6 21/8 21/25 22/3 22/11 24/18 25/7 25/8 25/21 26/1 26/10 31/3 32/4 32/8 33/7 35/21 39/17 41/19 41/25 44/16 45/15 46/18
**state's [4]** 25/11 25/16 48/22 55/20
**STATES [3]** 1/1 1/23 3/3
**status [1]** 15/24
**statute [2]** 15/21 21/17
**statutes [3]** 18/22 19/8 20/12
**statutory [5]** 9/4 18/7 22/14 25/18 46/9
**stay [1]** 5/25
**staying [2]** 55/3 55/3
**Stenson [2]** 2/4 4/9
**step [1]** 30/4
**steps [1]** 48/10
**stick [1]** 11/18
**still [13]** 14/5 20/20 21/14 21/16 23/21 29/12 30/19 33/13 33/13 35/20 35/21 49/20 49/25
**Stoel [2]** 2/15 4/18
**stop [1]** 16/25
**stopping [1]** 42/2
**stops [1]** 20/15
**straightforward [1]** 46/21
**Street [3]** 2/9 2/20 2/22
**strikes [1]** 23/3
**strong [1]** 55/1
**strongly [1]** 51/20
**struck [1]** 55/3
**struggle [1]** 38/23
**stuck [1]** 19/18
**students [1]** 43/17

**subject [5]** 23/1 27/4 27/20 27/20 31/25
**subset [1]** 9/13
**substance [1]** 39/6
**substantial [3]** 6/13 6/19 6/21
**substantive [5]** 6/10 7/2 8/24 39/7 41/12
**such [6]** 8/5 10/9 30/20 31/15 36/2 43/12
**sued [2]** 52/6 52/7
**suffer [1]** 29/8
**suffering [6]** 22/16 22/16 22/19 22/20 35/17 38/16
**sufficient [2]** 43/14 43/18
**sufficiently [1]** 10/6
**suggested [2]** 17/25 35/13
**Suite [4]** 2/5 2/9 2/13 2/16
**suppose [2]** 7/7 10/21
**Supreme [5]** 18/13 52/9 52/9 52/13 52/20
**Sure [2]** 26/15 28/4
**surprised [1]** 33/4
**surprising [1]** 33/14
**survive [1]** 9/1
**system [10]** 1/13 11/20 25/12 35/22 40/20 44/16 48/22 50/4 50/25 55/15
**systems [21]** 2/12 4/18 4/20 5/9 5/13 7/16 7/19 7/19 8/1 8/21 9/14 9/19 13/9 13/16 23/4 29/7 39/7 45/15 45/17 48/15 48/18
**systems' [5]** 5/8 6/16 7/15 7/17 39/6

**T**

**table [1]** 55/20
**take [4]** 21/15 33/10 45/21 46/25
**taken [1]** 13/23
**takes [3]** 24/25 33/5 46/23
**taking [25]** 7/3 7/4 7/9 7/12 7/12 7/13 21/11 26/11 39/16 39/21 40/5 40/6 40/15 40/18 40/23 41/1 41/1 41/6 41/7 41/16 41/17 42/2 42/5 50/11 50/15
**takings [9]** 7/1 39/15 39/23 39/25 40/24 41/9 41/23 42/3 42/8
**talk [2]** 24/10 42/15
**talking [13]** 10/17 17/14 19/23 22/10 22/10 23/9 34/17 37/17 40/1 40/4 52/17 52/17 55/11
**telephone [1]** 3/1
**tell [6]** 12/20 33/20 36/11 36/17 38/25 49/18
**tells [2]** 33/18 49/17
**tentative [1]** 5/3 6/22
**Tenth [1]** 2/5
**term [23]** 6/16 10/8 10/18 13/2 13/6 13/15 14/19 14/21 15/9 19/21 20/2 20/15 29/22 31/7 31/12 31/20 35/10 37/2 44/8 44/11 44/15 44/16 49/13
**terms [6]** 12/5 50/23 51/24 53/6 54/20 55/16
**terrible [1]** 38/10
**test [4]** 41/17 42/10 43/3 43/4
**than [9]** 8/21 12/13 24/23 25/7 27/20 33/25 46/11 52/15 53/19
**Thank [24]** 4/21 14/7 14/8 14/13 14/15 16/8 16/10 27/17 28/4 28/15 32/19 39/5 41/11 42/6 42/14 47/23 47/24 49/2 49/4

(10) shall - Thank

**T**

**Thank...** [5]  50/18 54/13 55/8 55/24 56/11

**that** [385]

**that's** [68]

**their** [29]  8/9 8/9 8/9 8/16 15/10 15/22 17/24 18/9 21/13 22/6 31/16 32/11 32/12 35/1 39/1 44/12 45/24 46/1 47/4 47/11 48/24 48/24 49/1 51/15 52/6 52/8 52/25 55/5 56/5

**them** [51]  5/4 8/2 9/10 14/3 14/18 17/16 19/12 19/21 20/19 20/21 21/6 21/7 21/16 21/21 24/23 25/21 27/3 28/8 28/9 29/13 29/20 30/1 30/7 30/12 30/12 31/4 31/4 31/14 32/9 32/10 32/16 34/7 34/24 35/9 36/19 37/6 37/10 37/21 38/3 38/14 44/10 44/11 44/12 44/15 47/10 47/11 47/21 48/25 49/18 50/16 51/21

**themselves** [2]  9/17 21/14

**then** [41]  5/3 5/23 6/9 7/21 8/7 8/23 9/16 10/19 10/24 11/3 12/14 12/15 12/20 20/8 22/20 26/19 27/18 28/5 28/19 30/4 30/18 30/22 30/25 31/8 31/21 35/14 35/16 36/13 36/16 37/5 37/11 37/25 39/20 39/22 41/12 43/4 43/23 44/21 55/4 56/7 56/9

**theoretically** [1]  29/1

**there** [41]  5/1 6/9 6/11 9/15 10/2 10/11 13/12 13/17 15/3 19/2 20/8 24/22 28/20 31/1 33/1 34/15 34/25 35/2 37/13 38/21 40/14 40/17 43/23 44/5 46/14 46/18 46/19 48/9 48/9 48/21 48/22 50/4 51/19 52/18 52/18 52/19 53/2 53/19 55/6 55/19 55/23

**there's** [47]  6/23 7/1 7/7 7/8 7/21 8/17 9/3 10/11 10/18 10/19 13/11 13/12 13/14 14/1 18/21 19/17 20/20 21/18 26/25 27/23 28/25 31/3 31/14 31/22 32/9 34/6 35/6 38/8 39/16 42/17 42/24 43/2 43/4 43/8 43/19 43/23 45/6 45/10 45/11 48/18 51/12 51/25 52/15 53/25 54/16 55/1 56/8

**therefore** [1]  29/8

**these** [46]  6/3 8/1 8/13 8/21 10/15 10/25 14/1 14/6 15/3 15/6 15/9 15/12 17/3 18/20 20/8 20/16 20/18 21/9 23/12 24/1 24/14 24/16 24/19 26/12 31/17 31/24 32/4 32/12 32/15 33/21 36/18 38/2 41/12 45/7 45/16 45/17 46/7 46/19 46/23 46/25 47/3 48/23 49/13 49/22 50/12 50/16

**they** [88]

**they'd** [1]  31/1

**they'll** [2]  54/10 54/11

**they're** [16]  8/15 21/14 26/11 26/11 27/15 30/6 30/10 34/6 40/23 41/24 41/24 42/1 44/20 48/5 49/22 51/17

**they've** [3]  28/7 31/9 51/4

**thing** [3]  16/22 32/8 32/15

**things** [3]  6/1 6/7 54/15

**think** [36]  5/19 9/25 10/1 10/5 10/16 12/23 13/8 15/7 15/8 15/10 16/6 18/16 20/3 21/11 22/4 23/15 28/21 30/15 30/21 31/20 38/18 39/8 40/2 41/5 41/24 42/4 43/1 46/9 46/10 49/20 50/4 50/21 50/22 53/1 55/6 55/22

**third** [14]  3/4 4/7 20 7/22 8/6 8/8 42/16

42/18 42/25 43/7 51/24 52/14 52/17 52/21 53/4

**third-party** [4]  51/24 52/14 52/17 52/21

**this** [95]

**Thomas** [1]  2/4

**thoroughly** [1]  56/7

**those** [33]  5/4 6/1 6/22 7/15 10/4 11/9 13/13 13/18 16/25 18/14 19/1 19/6 19/8 19/10 19/17 19/18 21/10 25/13 26/13 27/6 35/25 36/24 39/3 44/2 44/3 44/4 44/5 47/9 47/19 53/12 53/22 54/8 54/8

**though** [1]  45/1

**thought** [3]  5/2 23/10 28/14

**thoughts** [2]  5/3 6/22

**thousands** [1]  29/25

**three** [3]  28/20 41/17 42/10

**three-factor** [1]  41/17

**three-part** [1]  42/10

**through** [23]  5/3 5/5 9/16 16/24 17/2 17/6 17/15 17/16 17/23 18/2 18/4 18/5 18/12 18/16 22/25 23/5 23/7 24/17 28/24 34/23 34/24 40/20 42/10

**throughout** [2]  48/22 54/21

**time** [14]  6/6 10/4 10/9 25/13 28/1 28/20 28/25 35/6 36/9 38/2 52/6 52/7 53/18 55/14

**timeline** [2]  10/1 53/23

**timeliness** [3]  54/16 54/18 55/9

**timely** [1]  54/23

**times** [1]  25/7

**timetable** [2]  30/9 31/8

**today** [5]  4/4 16/15 17/21 22/22 50/10

**told** [10]  5/20 13/24 15/11 22/22 26/5 36/22 37/15 38/11 38/13 38/25

**Tom** [1]  4/9

**tomorrow** [1]  11/23 46/17 47/3

**too** [3]  32/14 37/10 50/21

**total** [1]  29/25

**tough** [2]  7/25 32/17

**traceable** [2]  5/11 5/13

**track** [1]  18/17

**transcript** [3]  1/21 57/5 57/6

**transfer** [1]  34/7

**transferred** [3]  36/13 37/2 37/23

**transferring** [1]  29/19

**treat** [10]  11/5 14/18 14/20 15/3 15/6 17/23 18/4 18/5 18/8 29/13

**treating** [1]  7/12

**treatment** [38]  8/25 9/10 9/12 10/8 10/17 10/18 10/19 10/22 11/1 11/17 13/1 13/6 13/14 14/6 15/20 18/15 19/11 19/16 19/16 19/21 20/15 23/2 23/22 23/24 29/16 30/13 31/1 31/7 31/9 31/11 31/12 32/1 32/7 33/12 44/9 44/15 44/17 49/15

**treatments** [1]  47/8

**Trial** [1]  2/19

**tried** [2]  18/20 41/5

**tries** [1]  54/2

**trouble** [1]  6/19

**true** [2]  22/7 29/11

**truly** [1]  21/11

**trying** [1]  55/4

**turn** [5]  8/23 15/17 15/19 41/11 54/14

**turns** [1]  7/22

**two** [8]  6/4 9/25 10/25 12/11 16/4 42/24

43/22 48/10

**two-year** [1]  6/4

**type** [7]  13/6 13/19 13/20 24/5 24/6 24/7 24/7

**typically** [4]  23/5 26/6 37/1 37/16

**U**

**U.S** [1]  52/20

**ultimately** [1]  20/15

**unable** [1]  21/14

**uncertified** [1]  36/13

**unclear** [1]  54/22

**unconstitutional** [1]  49/12

**under** [12]  6/10 7/12 18/7 30/20 32/4 33/1 33/16 41/6 43/4 43/13 46/8 47/15

**understand** [5]  7/4 12/2 24/9 25/23 49/23

**understanding** [2]  11/22 32/6

**unique** [1]  54/6

**UNITED** [1]  1/1 1/23 3/3

**Unity** [1]  17/17

**universe** [1]  24/5

**universities** [1]  43/16

**unless** [6]  14/4 14/9 19/12 28/13 28/17 35/2

**unlikely** [1]  30/25

**unsafe** [1]  34/3

**unstable** [3]  24/5 33/1 34/3

**until** [12]  10/2 27/7 27/10 34/6 44/10 46/15 47/1 50/13 55/2 55/18 56/6 56/8

**up** [25]  6/24 7/6 9/25 10/21 10/23 13/3 13/4 13/19 15/17 16/14 19/3 20/3 27/18 27/19 27/22 29/15 29/25 30/22 30/24 32/2 36/4 36/25 38/5 42/25 56/6

**upon** [2]  26/9 37/5

**us** [11]  10/23 12/15 13/4 13/20 14/3 18/8 18/10 18/22 21/9 24/6 49/7

**use** [6]  6/12 6/16

**used** [1]  9/7

**usually** [1]  24/20

**V**

**Van** [2]  2/15 4/17

**variety** [4]  12/10 13/16 31/14 53/18

**various** [1]  13/11

**vendee** [1]  52/18

**vendor** [1]  52/18

**vendor-vendee** [1]  52/18

**vendors** [1]  43/16

**versus** [4]  4/6 23/8 51/4 51/21

**very** [13]  16/8 27/17 28/4 32/19 33/14 42/6 47/23 49/2 52/10 50/25 51/9 54/13 56/11

**vested** [1]  51/13

**viable** [3]  34/19 35/3 35/13

**view** [4]  9/1 11/4 16/2 45/24

**vigilant** [1]  56/6

**vindicate** [1]  56/5

**violates** [1]  33/3

**violating** [1]  25/6

**virtue** [1]  53/15

**vis** [4]  32/11 32/11 53/14 53/14

**voice** [2]  48/23 55/17

**voluminous** [1]  56/10

**voluntarily** [15]  5/14 5/15 5/24 6/6 11/8

**V**

**voluntarily... [10]** 11/15 11/19 13/7
13/22 13/22 15/8 29/3 29/7 35/15 39/22
**voluntariness [23]** 5/19 6/8 7/5 7/7 7/8
7/10 9/24 10/11 14/11 16/2 17/20 19/24
22/10 23/14 26/21 27/19 28/19 28/21
32/13 39/19 39/20 39/25 41/23
**voluntary [14]** 5/19 5/21 9/22 10/1
11/13 12/6 12/8 13/21 23/1 23/16 23/18
23/21 28/25 40/2

**W**

**wait [2]** 56/6 56/8
**waiting [1]** 55/2
**waived [1]** 6/25
**walk [5]** 5/3 18/16 33/18 42/10 45/19
**walked [1]** 39/12
**walks [4]** 17/23 18/2 18/2 18/5
**want [24]** 5/7 7/17 8/4 10/20 11/3 11/5
11/25 12/2 12/18 12/19 32/7 32/9 38/1
38/4 38/7 38/14 48/20 48/24 49/5 49/16
51/6 51/12 53/22 54/14
**wanted [2]** 12/13 18/17
**wants [1]** 32/16
**was [20]** 10/10 11/13 13/21 19/12 21/21
26/19 33/6 35/2 35/3 37/10 38/3 44/5
46/10 48/9 55/6 55/16 55/19 55/21 55/23
56/1
**Washington [1]** 4/23
**wasn't [2]** 6/2 55/17
**way [29]** 8/14 9/13 9/25 22/3 22/7 22/18
22/19 22/22 22/24 23/12 24/3 26/24
29/25 30/5 30/15 30/21 35/10 43/18
43/19 43/22 44/14 44/18 44/19 44/22
44/24 46/13 46/17 49/8 51/3
**ways [3]** 7/3 9/25 43/8
**we [92]**
**we'll [3]** 51/7 51/18 56/13
**we're [23]** 9/1 10/17 12/25 17/21 19/23
22/10 22/23 23/9 26/23 34/17 40/4 46/18
47/3 48/19 49/7 49/11 49/20 49/21 50/16
52/17 52/17 53/23 55/10
**we've [9]** 13/3 13/22 17/14 18/20 26/20
37/17 42/17 46/20 54/15
**welcome [2]** 16/14 26/14
**welfare [1]** 6/14
**well [19]** 8/10 8/14 11/2 12/14 22/6
22/15 23/3 26/13 29/11 33/8 33/22 34/6
36/9 39/23 41/5 44/3 46/18 49/19 50/11
**were [14]** 21/10 21/15 23/10 34/24 35/2
39/5 44/3 44/5 44/5 45/21 48/10 50/13
54/25 55/21
**what [56]** 5/8 5/22 7/5 9/1 10/18 12/13
12/25 15/16 19/6 19/7 19/7 19/8 20/19
20/25 23/17 24/2 25/8 26/5 28/1 28/9
28/21 28/22 29/18 31/3 33/17 34/3 34/11
35/13 35/23 36/8 36/10 36/11 36/22
36/22 37/14 37/15 37/18 37/24 38/4 38/5
38/25 40/10 41/4 43/9 45/5 45/8 45/14
47/4 47/12 48/14 49/7 49/10 49/16 49/18
50/2 50/8
**what's [7]** 6/20 20/5 25/1 27/7 42/20
53/2 53/6
**whatever [3]** 31/9 51/14 54/4
**when [12]** 8/7 12/13 17/1 19/11 22/10

25/9 25/13 32/1 38/24 44/21 52/16 55/5
**where [21]** 5/22 9/7 10/12 14/2 18/11
18/20 19/19 22/19 27/15 28/8 40/11 42/8
43/19 43/21 44/13 45/11 45/12 48/20
48/23 49/22 53/20
**whether [16]** 6/12 7/21 8/8 13/2 16/19
21/5 22/15 25/18 28/22 28/23 41/15
41/22 42/24 43/5 43/5 52/22
**which [38]** 6/6 7/22 9/6 10/13 10/18
10/22 10/23 13/6 13/15 13/18 14/6 15/2
17/18 18/12 21/17 22/11 23/11 23/23
25/3 26/16 29/1 32/25 33/5 34/2 34/3
34/13 36/2 36/3 36/6 40/18 40/23 41/20
42/2 43/5 44/20 45/9 49/12 51/20
**while [2]** 33/12 45/6
**who [42]** 15/17 17/14 17/23 18/1 18/2
18/5 18/12 18/23 21/12 24/19 24/19
25/14 26/3 27/3 27/14 27/19 27/21 27/21
29/15 29/21 29/25 32/23 33/1 33/10
33/16 34/2 35/5 35/25 36/19 36/23 36/24
36/25 37/3 38/7 47/7 52/4 52/4 52/5
52/23 54/2 54/10 54/11
**whole [3]** 27/21 34/19 51/12
**whom [2]** 17/3 49/16
**whose [4]** 8/19 9/6 30/23 48/5
**why [16]** 8/20 9/22 13/22 13/24 15/13
16/11 20/6 35/19 36/16 37/3 37/4 37/25
38/20 42/5 46/12 54/23
**wide [1]** 53/18
**widespread [1]** 42/1
**will [12]** 7/5 7/14 17/10 17/11 44/22
45/9 45/16 46/18 51/19 51/20 54/2 54/9
**win [7]** 39/19 39/20 44/19 48/15 48/16
48/18 48/19
**wish [9]** 16/9 28/12 37/7 37/9 37/10
41/13 54/17 55/9 55/25
**wished [1]** 36/19
**wishes [1]** 43/1
**withdraw [2]** 10/24 35/15
**within [2]** 25/11 55/22
**without [4]** 5/20 25/6 56/3 57/6
**won't [3]** 5/5 27/4 45/17
**wonder [1]** 28/5
**words [1]** 31/16
**work [1]** 55/4
**working [1]** 12/15
**worsening [1]** 10/3
**would [41]** 5/24 10/15 11/10 15/21
16/10 18/25 21/16 21/18 30/25 31/2
33/15 34/22 35/1 35/16 35/20 35/21 36/8
36/10 36/18 41/22 42/3 45/4 45/19 46/2
46/3 46/24 47/10 47/10 50/2 50/4 50/6
50/11 50/13 50/15 51/3 51/6 51/12 51/12
53/11 54/19 54/25
**wouldn't [10]** 8/20 34/21 37/3 37/5
37/11 38/1 39/4 39/18 44/2 51/9
**wrong [1]** 23/5
**Wulff [3]** 42/23 43/24 44/25

**Y**

**year [6]** 6/4 24/23 25/7 25/15 55/16
55/18
**years [8]** 6/1 6/1 16/4 18/21 53/11 54/24
55/7 55/14
**yes [15]** 8/10 8/10 9/21 11/22 12/19

12/21 17/8 21/2 26/8 30/3 31/6 33/24
34/1 37/20 41/14
**yes-no [1]** 12/19
**yet [3]** 27/7 27/11 46/18
**you [204]**
**you'd [2]** 39/18 50/12
**you're [17]** 10/13 12/5 16/14 17/3 19/3
20/2 20/7 22/15 22/21 28/1 32/3
38/16 39/21 45/24 53/14 53/15
**you've [10]** 17/25 20/19 22/21 29/10
30/10 33/17 35/17 39/12 40/24 41/4
**your [72]**