Emily Cooper OSB #182254
ecooper@droregon.org
Thomas Stenson OSB #152894
tstenson@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

Jesse Merrithew OSB #074564
jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES INC., and A.J. MADISON,<br><br>Plaintiffs,<br><br>vs.<br><br>JAMES SCHROEDER, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants,<br><br>and<br><br>JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON,<br><br>Plaintiffs, | Case No. 3:02-cv-00339-MO (Lead Case)<br>Case No. 3:21-cv-01637-MO (Member Case)<br><br><br>UNOPPOSED MOTION FOR CLARIFICATION OF ORDER |

MOTION FOR CLARIFICATION - 1
(Case No. 3:02-cv-00339-MO)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, JAMES SCHROEDER, Direction of the Oregon Health Authority, in his official capacity, and PATRICK ALLEN in his individual capacity,

Defendants,

Case No. 3:21-cv-01637-MO (Member Case)

**LR 7-1 Certification**

Undersigned counsel certifies that he conferred with counsel for all defendants in these matters and defendants do not oppose this motion. They will file separately outlining their precise position.

**Motion**

The parties ask this Court to enter an order, clarifying when the clock starts for purposes of calculating the time limits imposed by the Court's September remedial order, and whether a patient's refusal to participate in certain types of treatment or programs can pause that clock. In particular, the parties request that additional language be added to the end of paragraph 3, as follows: "For the purposes of calculating the time limitations set out in this paragraph, the time begins to run on the day the patient is transported to OSH. The time continues to run while the patient remains at OSH regardless of any other factors."

**Memorandum**

This clarification is necessary because, in a handful of cases around the state, circuit court judges have entered orders finding that, for various reasons, the clock on the time limitations was not running even though a patient was in the hospital. The circuit court judges entering these orders specifically found that this Court intended the order to be interpreted in the way they

MOTION FOR CLARIFICATION - 2
(Case No. 3:02-cv-00339-MO)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

interpret it. This interpretation is inconsistent with the parties' interpretation of the order, is inconsistent with the way the statutory end of jurisdiction time limitations have always been understood, and is inconsistent with the principles of Due Process underlying all competency restoration procedures in this country. For these reasons, the parties ask this Court to clarify its order.

In at least two recent cases, circuit court judges in two different counties have entered orders directly finding that the time limitations imposed by this Court did not apply in individual cases because either it deemed OSH's efforts insufficient to restore the individual within the time frame or because the defendant/patient refused to participate in certain treatment or programming.

First, in *State of Oregon v. Sergio Orozco-Gutierrez*, Marion County Case No. 22CR16317, the Marion County Circuit Court found: "1. OSH has failed to perform their statutorily mandated evaluation regarding defendants' ability to aid and assist and probability of restoration is deemed unable. 2. OSH has failed to administer any treatment designed for the purpose of enabling the defendant to gain or regain fitness to proceed. 3. The timeline articulated in the Mosman Order has not yet been triggered as this particular defendant has not been committed for restoration given the lack of treatment and/or services he has been provided." *See* Merrithew Decl., Exhibit 1.[1] As this order was entered after Mr. Orozco-Gutierrez was already discharged from OSH, OSH refused to re-admit him, therefore Mr. Orozco-Gutierrez remains in

---

[1] To the extent it matters, OSH did complete a forensic evaluation of Mr. Orozco-Gutierrez, but Mr. Orozco-Gutierrez refused to participate in that evaluation (as is his right), so the evaluator was forced to base their opinions on a record review without the benefit of a structured interview or psychological testing. This is a routine occurrence that forensic evaluators deal with all the time.

MOTION FOR CLARIFICATION - 3
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

the Marion County jail, and the Marion County Circuit Court is moving forward with contempt proceedings against OSH for failing to re-admit him. *See Sergio Orozco-Gutierrez v. Oregon State Hospital*, Marion County Case No. 23CN02531.

Recently, in *State of Oregon v. Lisa Akers*, the Washington County circuit court found that, because a *Sell* order was not entered until April 27, 2023, the preceding ten months that the defendant/patient spent confined in OSH did not count toward the one-year time limitation set by this Court. *See* Washington County Case No. 20CR34340; Merrithew Decl., Exhibit 2. The state court specifically ordered, not only that the Washington County Sheriff's Office was prohibited from transporting Ms. Akers in compliance with this Court's order, but also that OSH itself was prohibited from transporting Ms. Akers. *Id*. Ms. Akers remains in OSH and, pursuant to the circuit court order, may remain there for another twelve months.

Neither of these courts found or held that this Court lacked the authority to enter its remedial order or that the order itself did not apply per se. Rather, the courts specifically found that they could determine when the clock started to run for purposes of the order and prevent the discharge of patients based on their interpretation of those timelines. As a result, it is imperative that this Court clarify its order.

As this Court well knows, the purpose of the September 2022 order is to move the state toward compliance with the permanent injunction by speeding the pace at which people move through the hospital. These two circuit court orders directly undermine that purpose. Psychiatric patients retain the rights to refuse to engage in certain treatment or refuse to take prescribed medications. There are a myriad of reasons why patients might refuse treatment; sometimes, a patient will refuse a particular medication because they do not like the side effects of medications, but often the very fact of their forced commitment causes distrust with clinicians

MOTION FOR CLARIFICATION - 4
(Case No. 3:02-cv-00339-MO)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

and this trust can take time to build. Finally, many patients' mental illness in and of itself prevents them from having good insight into their illness and recognizing that they would benefit from the treatment. This conundrum is so common that psychiatrists have identified it as itself being a symptom of mental illness. It is called anosognosia.

Psychiatric hospitals, including OSH, operate under strict protocols as to when they can force a patient to accept treatment that the patient does not consent to. In general, hospitals can only force treatment on a patient when that treatment (usually medication) is necessary to protect the patient or others from physical harm. *See, e.g.,* OAR 309-114-0020(1)(e). In cases where a patient is detained in a hospital for restoration treatment, the United State Supreme Court has already determined when and how under the Due Process Clause a patient may be medicated for the sole purpose of competency restoration. *See Sell v. United States*, 539 U.S. 166 (2003). Moreover, every patient who is committed to the hospital for restoration has criminal charges pending against them and therefore has an absolute right under the Fifth Amendment to remain silent. That right does not evaporate simply because they are deemed incompetent. They may refuse to speak if they wish and cannot be compelled to speak to anyone.

All of these parameters are just the ordinary course of business for any psychiatric hospital caring for patients under restoration orders. OSH has been restoring patients for decades working within these parameters. That is not to say that they are powerless to effectively restore patients simply because they cannot force patients to accept treatment and many do not voluntarily accept it. Far from it. Competency restoration often involves nothing more complicated than having the patient in the therapeutic environment of a hospital. Compared to being in a jail or on the street, simply being in the hospital and within a therapeutic milieu can help enormously with psychologically stabilizing the patient. The staff at psychiatric hospitals

MOTION FOR CLARIFICATION - 5
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

are well trained in counseling psychiatric patients on the benefits of psychotropic medications, which sometimes takes time and persistence, but ultimately a patient who voluntarily takes medication is far more likely to stay on that medication after leaving the hospital, rather than simply stop, decompensate, and get sent back to the hospital.

The appropriate course of treatment to achieve competency restoration is a choice for the trained clinicians of psychiatric hospitals to make, working within the legal and ethical parameters of their professions. Allowing judges to second guess those decisions, and extend the duration of a patient's confinement whenever they deem the choices to be wrong, threatens to undermine the entire purpose of this Court's remedial order as well as established legal jurisprudence. It also raises the prospect of the type of indefinite detention the Supreme Court prohibited in *Jackson v. Indiana*, 406 U.S. 715 (1972). To prevent this from happening, this Court should clarify its September remedial order and ensure that everyone understands that the time limits in that order function in the same way that the end of jurisdiction timelines under state law always have—they begin to run as soon as the patient enters the hospital, and do not stop unless the patient leaves the hospital.

DATED this 2nd day of June, 2023.

LEVI MERRITHEW HORST PC

/s *Jesse Merrithew*
Jesse Merrithew OSB # 074564
jesse@lmhlegal.com
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092
*Counsel for Plaintiffs Metropolitan Public Defender, Jarrod Bowman, and Joshawn Douglas-Simpson*

MOTION FOR CLARIFICATION - 6
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

DISABILITY RIGHTS OREGON

/s *Emily Cooper*
Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org
511 SW 10th, Suite 200
Portland OR 97205
Telephone: (503) 243 2081
Facsimile: (503) 243 1738
*Counsel for Plaintiff Disability Rights Oregon*

MOTION FOR CLARIFICATION - 7
(Case No. 3:02-cv-00339-MO)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092