IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

---

**DISABILITY RIGHTS OREGON et al.,**

          Plaintiffs,

    v.

**PATRICK ALLEN et al.,**

          Defendants,

  and

**LEGACY EMANUEL HOSPITAL et al.,**

          Intervenors.

No. 3:02-cv-00339-MO (Lead Case)
No. 3:21-cv-01637-MO (Member Case)
No. 6:22-cv-01460-MO (Member Case)

**OPINION AND ORDER**

---

**JAROD BOWMAN et al.,**

          Plaintiffs,

    v.

**DOLORES MATTEUCCI et al.,**

          Defendants,

  and

**LEGACY EMANUEL HOSPITAL et al.,**

          Intervenors.

No. 3:21-cv-01637-MO (Member Case)

---

**LEGACY EMANUEL HOSPITAL et al.,**

          Plaintiffs,

    v.

**PATRICK ALLEN,**

          Defendant.

No. 6:22-cv-01460-MO (Member Case)

---

**MOSMAN, J.,**

This matter comes before me on Plaintiffs' Motion to Clarify Order on Intervention [ECF 331] in lead case *Oregon Advocacy Center et al. v. Mink et al.*, No. 3:02-cv-00339-MO ("*Mink*") and Defendants'[1] Motion to Dismiss [ECF 329] Health Systems' First Amended Complaint ("FAC") [ECF 327] in companion case *Legacy Health System et al. v. Allen*, No. 6:22-cv-01460-MO ("*Legacy*"). Plaintiffs, Defendants, and Health Systems provided briefing. On April 25, 2023, I held a hearing on the motions at which the Parties presented their arguments. At the hearing, I TOOK UNDER ADVISEMENT the motions. Now, for the reasons below, I GRANT both.

## BACKGROUND

Other opinions have chronicled the full background of this litigation. *See*, *e.g.*, Op. & Order [ECF 338]. As relevant here, it has been ongoing for more than two decades. In December 2021, Plaintiffs and Defendants came to an agreement. They moved to appoint Dr. Debra Pinals— a scholar and practitioner in the field of public mental health services and the criminal justice system—as a neutral expert. Stipulated Mot. to Appoint Neutral Expert [ECF 238]. I granted that motion. Order Consolidating Cases and Appointing a Neutral Expert [ECF 240]. Since then, Dr. Pinals has provided recommendations to address Oregon State Hospital's ("OSH") capacity issues and create a plan for both long- and short-term care for defendants determined to be either "guilty except for insanity" ("GEI") or unable to aid and assist ("A&A") in their own defense. The Parties have worked tirelessly with Dr. Pinals to meet with stakeholders, analyze data, and craft a set of changes, which I have ordered. *See* Am. Order to Implement Neutral Expert's Recommendations [ECF 387]. These changes are necessary to achieve compliance with a 2002 injunction that

---

[1] Although only OHA's director was sued in *Legacy*, I will use the plural "Defendants" to keep references consistent with the lead case. Similarly, Health Systems are *Legacy*'s plaintiffs, but I will refer to them as "Health Systems."

requires GEI and A&A patients to be treated in health care settings rather than languish in prisons, in violation of the due process clause of the Constitution's Fourteenth Amendment.

Over ten months after Plaintiffs and Defendants came to their agreement, Oregon's largest health systems sought to intervene in this matter. *See* Mot. to Intervene [ECF 281]. They simultaneously brought a separate action, *Legacy Health System et al. v. Allen*, No. 6:22-cv-01460-MO. Health Systems argued against implementing the neutral expert's recommendations. And they allege various constitutional violations committed by Oregon Health Authority ("OHA") against them and their civilly committed patients. Based on the information provided at the time, I granted Health Systems' motion to intervene. *See* Min. Order [ECF 299]. I also consolidated Health Systems' new lawsuit with the existing litigation.

Two months after that, Defendants moved to dismiss the Health Systems' FAC in the *Legacy* matter. Plaintiffs filed a similar motion in *Mink*, asking for clarification of my order granting Health Systems' status as intervenors, but effectively seeking to have them dismissed. After briefing, I held oral argument on both motions.

## LEGAL STANDARDS

### A. Standing

To have standing to bring a suit, a plaintiff must show (1) it has suffered an injury-in-fact (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *California Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1180 (9th Cir. 2018). Purely "self-inflicted injuries" and voluntary participation in conduct that causes injury fail the traceability requirement. *Skyline*

*Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 748 (9th Cir. 2020);

*Jackson v. California Dep't of Mental Health*, 399 F.3d 1069, 1074–75 (9th Cir. 2005).[2]

To have standing to bring claims on behalf of third parties, a litigant must meet three elements. First, it must have standing of its own. *See Shaw v. Hahn*, 56 F.3d 1128, 1130 n.3 (9th Cir. 1995). Second, the litigant must have a close relation to the third party. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Finally, there must be "some hindrance to the third party's ability to protect his or her own interests." *Id.* For the "close relation" prong, a litigant must "convince the court that it would be as effective a proponent" of the third party's rights as the third party itself would be. *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 (9th Cir. 1987). This means that evidence of a conflict of interest between the litigant and the third party precludes the litigant from asserting the third party's rights. *See id.* at 1082.

"Lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); Fed. R. Civ. P. 12(b)(1).

## B. Intervention

To move to intervene, "(1) the motion must be timely; (2) the applicant must claim a significantly protectable interest . . . (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." Fed. R. Civ. P. 24(a)(2); *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). Intervenors must demonstrate Article III standing if they "pursue relief that is different from that which is

---

[2] *See also Mendia v. Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014) (recognizing that voluntary choice without threat creates a self-inflicted injury insufficient to establish standing) *and Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1142 (9th Cir. 2005) (discussing and confirming this holding of *Jackson*).

sought by a party with standing." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017).

With regard to timeliness, intervention is disfavored when the original parties have already reached an agreement to settle. *See, e.g., Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1221 (9th Cir. 1995). Courts also look at 1) the stage of the proceedings, 2) prejudice to the parties, and 3) reasons and length of delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004). A party should act to intervene "as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *United States v. State of Or.*, 913 F.2d 576, 589 (9th Cir. 1990).

## DISCUSSION

### A. Motion to Dismiss

As noted above, Health Systems' FAC alleges claims both on their own behalf and on behalf of their civilly committed patients. The core contention of these claims is that Health Systems' hospitals are not "designed, equipped, staffed, or intended" to provide long-term mental health treatment for civilly committed individuals. FAC ¶ 6. But they argue that OHA's policies have required them to keep civilly committed patients in their facilities for lengthy stays.

This has led to a number of violations, according to Health Systems. Primarily, they claim that the state of Oregon through OHA has taken Health Systems' hospital beds by forcing them to treat civilly committed patients for extended periods of time. Health Systems contends this violates their substantive rights under the Fourteenth Amendment's due process clause and their rights against the physical taking of their property by the state under the Fifth Amendment and the Oregon Constitution. *See* FAC, Claims 2–4. And Health Systems also purport to bring

5 – OPINION AND ORDER

constitutional and state claims on behalf of their civilly committed patients under both federal and state law. *See* FAC, Claims 1, 5–7.

Defendants have responded to these claims by seeking dismissal. They contend that Health Systems do not have standing to bring their own claims, let alone those of their patients. Defendants' argument centers on the fact that Health Systems affirmatively applied to OHA for the right to be able to treat civilly committed patients. After applying, they were issued Certificates of Approval. Because they have voluntarily applied—and reapplied—for these Certificates of Approval from OHA, Defendants argue that Health Systems cannot complain that OHA is forcing anything on them. And although Health Systems complain that OHA's wrongful practices have been going on since 2017, the certificates must renewed every two years. OAR 309-033-0530(2)–(3). This means that Health Systems have actively reapplied for certification, despite knowing of OHA's practices.

At oral argument, counsel for Health Systems confirmed that were Health Systems to decide not to seek certification, they would no longer be required to keep civilly committed patients for long-term stays. *See* Tr. at 36–37. The reason they remain certified is because they desire to remain in the care of such patients, and because they dislike the alternatives. *Id.* at 37.

This voluntariness on the part of Health Systems is sufficient to defeat traceability for the purpose of Article III standing. As noted above, a complained-of injury must be fairly traceable to the challenged actions of the defendant. Here, Health Systems' alleged injury—being required to provide long-term care for civilly committed patients—is not traceable to OHA, because Health Systems could choose not to participate in the application process to treat such patients. Their voluntary participation in the very conduct that causes their alleged injury causes their claims to

fail the traceability requirement.  Health Systems therefore do not have standing to bring their claims, and they must be dismissed under Rule 12(b)(1).

Relatedly, Health Systems do not have standing to bring claims on behalf of their civilly committed patients.  The first step of the analysis to determine if there is third-party standing is for a litigant to have standing of its own.  Since the Health Systems do not have standing of their own, they cannot bring claims on behalf of others.

But even if that were not the case, Health Systems would fail the "close relation" portion of the analysis.  Health Systems claim in their briefing that they would like to treat more civilly committed patients.  They also say they have a close relationship with these patients because their staff treat these patients.  Yet Health Systems also complain about how much civilly committed patients are costing them and about the harms they inflict on their staff members.  These arguments are not aligned.  There may not be a full-fledged conflict between Health Systems' and civilly committed patients' interests, but they are incongruous enough that Health Systems would not be "as an effective proponent" of civilly committed patients' rights as the patients would be for themselves.  *See Hong Kong Supermarket*, 830 F.2d at 1081.

Furthermore, one of the Plaintiffs in the *Mink* matter is Disability Rights Oregon ("DRO"), which is the federally designated protection and advocacy system for Oregon under the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act.  *See* 42 U.S.C. 10805(a) (noting establishment to "protect and advocate the rights of individuals with mental illness").  If any party in this proceeding should be able to speak on behalf of civilly committed patients, DRO would likely be the one to do so.

As such, I find that Health Systems do not have standing to bring claims on their own behalf or on behalf of their patients.  I therefore grant Defendants' motion and dismiss Health

Systems' complaint. And because the issue of voluntary participation cannot be cured, I dismiss these claims with prejudice.

**B. Motion to Clarify**

Separately, Plaintiffs moved to clarify my order allowing Health Systems to intervene in the *Mink* matter. In essence, they ask me to reconsider my decision. Reconsideration is appropriate when a court is presented with newly discovered evidence. *See Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). Here, the evidence that Health Systems have voluntarily applied to treat civilly committed patients was not a part of the initial briefing regarding their Motion to Intervene. Having now considered that evidence, I reconsider my earlier ruling granting intervention.

Health Systems' request to intervene has two fatal flaws. First, since they are "pursu[ing] relief that is different from that which is sought" by any party with standing, they must have standing of their own to intervene. *Town of Chester*, 581 U.S. at 440. This they lack, as outlined above. Second, even if they were to have standing, their motion is not timely. Health Systems admit that many of the alleged harms—including OHA's policy of limiting OSH admissions to effectively exclude most civilly committed patients—have been ongoing for years. This suit has also been progressing quite publicly during that time, yet Health Systems failed to intervene until just last fall. There is no good excuse for this delay. Furthermore, Plaintiffs and Defendants reached their workable settlement to defer to a neutral expert over a year ago. Since the original parties have already reached a level of resolution, caselaw disfavors finding intervention at this stage of the proceedings timely. *See Empire Blue Cross & Blue Shield*, 62 F.3d at 1221.

In sum, upon reconsidering my earlier ruling due to new evidence, I find that Health Systems' motion for intervention should be denied. However, Health Systems do have a role to

play in this matter—as amici. They have and will "assist[] in a case of general public interest, supplement[] the efforts of counsel, and draw[] the court's attention to law that escaped consideration." *Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982). And there is no rule in this circuit that amici must be completely disinterested or neutral. *See Funbus Sys., Inc. v. State of Cal. Pub. Utilities Comm'n.*, 801 F.2d 1120, 1125 (9th Cir. 1986). As such, I construe Health Systems' Motion to Intervene as a Motion to Appear as *Amici Curiae*. So construed, I grant that motion.

## CONCLUSION

For the reasons stated above and on the record at oral argument, I GRANT Defendants' Motion to Dismiss [ECF 329] in the *Legacy* matter and DISMISS Health Systems' FAC [ECF 327] WITH PREJUDICE. I also GRANT Plaintiffs' Motion to Clarify [ECF 331] the Order on Health Systems' Intervention [ECF 299] in the *Mink* matter. Upon reconsideration, I CONSTRUE Health Systems' Motion to Intervene [ECF 281] as a Motion to Appear as *Amici Curiae*. So construed, I GRANT said Motion. Health Systems may appear as amici in the *Mink* matter.

IT IS SO ORDERED.

DATED this __25th__ day of May, 2023.

MICHAEL W. MOSMAN
Senior United States District Judge