JANE E. VETTO, OSB 914564
Marion County Legal Counsel
jvetto@co.marion.or.us
555 Court Street N.E.
P.O. Box 14500
Salem, OR 97309
Telephone No.: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorney for Marion County

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>                  *Plaintiffs*,<br><br>v.<br><br>DAVID BADEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital<br><br>                  *Defendants*. | 3:02-cv-00339-MO (Lead Case)<br><br>**MARION COUNTY'S REPLY TO THE PARTIES' RESPONSES IN OPPOSITION TO MOTION TO INTERVENE** |

      Plaintiffs Disability Rights Oregon and Metropolitan Public Defender ("Plaintiffs") and Defendants David Baden and Dolores Matteucci ("Defendants") both responded to Marion County's ("the County") Motion to Intervene. Plaintiffs make four arguments against the motion: (1) that the County is not entitled to mandatory intervention; (2) that the County lacks standing to assert its claims; (3) that this Court lacks subject matter jurisdiction over the County's claims; and (4) that the County should not be permitted to intervene on a permissive basis. Pls' Resp. in Opp'n to Marion County's Mot. to Intervene (Case No. 3:02-cv-00339, ECF

No. 408) ("Plaintiffs' Response"). Defendants echo Plaintiffs' arguments regarding timeliness of the County's motion. Defs' Resp. in Opp. to Marion County's Mot. to Intervene (Case No. 3:21-cv-01637, ECF No. 195). For the reasons that follow, the parties' arguments are legally meritless and the motion to intervene should be granted.

## I. Mandatory Intervention

### A. Marion County's Motion to Intervene was Timely

The parties both argue for several reasons that the County's motion for mandatory intervention should be denied because it is untimely. First, they maintain that the two-plus decade period since the suit was filed all weighs against intervention because the County "should have known that its interests were at risk" the whole time. Plaintiffs' Response at 5. However, this argument glosses over a crucial nuance in how the timeliness determination is made.

Delay is not measured from the time that a prospective intervenor "should have known" that its interests could potentially be implicated in the litigation at some point. Rather, "[d]elay is measured from the date the proposed intervenor should have been aware *that its interests would no longer be protected adequately by the parties*." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) (emphasis added). Here, even if the County had been aware for the entire 20-year period that one possible outcome of the litigation was an order against the state hospital that could impact its interests as a community restoration provider, there was no indication that the State was not adequately representing its interests in avoiding such an order. It was not until August of 2022 when the State indicated that it did not oppose entry of an order that shifted a significant portion of restoration work onto the counties that the County first reasonably became aware that its own participation would be necessary. At that point, the County promptly sought to participate in the matter.

Plaintiffs argue that, even if any delay does not extend back 20 years, the fact that the County participated as *amicus* is still an inadequate explanation for the delay from summer of 2022 to June of 2023 before filing its motion. Plaintiffs' Response at 6. In fact, citing *United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990), and *United States v. Washington*, 86 F.3d 1499 (9th Cir. 1996), Plaintiffs assert that participation as an *amicus* without moving to intervene is affirmative evidence that the party failed to act promptly. Plaintiffs' Response at 6. This significantly misstates the holdings of both cases.

In the *Oregon* case, the Makah tribe moved to intervene in a dispute between the state and other tribes over fishing rights after attempting for several years prior to participate unofficially in negotiations. 913 F.2d at 589. Regarding the third timeliness factor—the length of and reason for delay—the tribe offered the explanation that they simply did not know that their interests would be affected by the proceedings. *Id.* However, the Ninth Circuit held that the tribe's explanation was undercut by their prior attempt to participate in the negotiations, which reflected that the tribe "[was] at least aware that ocean fishing might be discussed in the negotiations." *Id.* That ruling has no direct applicability to this case. Unlike the Makah tribe, the County does not maintain that it was unaware that this case could potentially have an impact on its rights. Rather, the County is arguing that its participation as an *amicus* serves as *justification* for its delay in moving to intervene because it was already being treated as a functional party to the case. That issue was not raised in the *Oregon* case and was not decided by the Ninth Circuit.

The *Washington* case is similarly inapposite. *Washington* involved a related fishing dispute in which the prospective intervenor Inner Sound, a crab fishing association, filed a motion to intervene in September of 1991 that was denied, was granted *amicus* status, and then

Page **3** of **13** – MARION COUNTY'S REPLY TO THE PARTIES' RESPONSES IN OPPOSITION TO MOTION TO INTERVENE

filed a second motion to intervene in March of 1995. 86 F.3d at 1502. In assessing the timeliness of the second motion to intervene, Inner Sound argued that the length of its delay should be measured not from the time that it filed its second motion but rather from the time that it filed the first motion. *Id.* at 1505. The Ninth Circuit squarely rejected this argument, explaining that the motions were unrelated and that Inner Sound's remedy for the denial of the first motion was to appeal, which it did not do. *Id.* Accordingly, the length of Inner Sound's delay was properly measured as the time between when it learned that its rights were at issue to when it filed the second motion to intervene. *Id.* Again, that ruling has no direct applicability to this case. The County filed only a single motion to intervene and is not seeking to backdate the calculation of any delay to a prior event.

Instead, the primary issue is whether the County's participation as *amicus*—and not just any *amicus*, but one that served as a functional party to the case—is sufficient justification for any delay in filing its motion to intervene. As other courts have observed, the essence of the timeliness requirement is whether a potential intervenor has acted "reasonably diligently" in learning that a suit that may affect its rights and, upon learning of such a suit, whether the intervenor has acted "reasonably promptly" in seeking to protect those rights. *Ali v. City of Chi.*, 34 F.4th 594, 599 (7th Cir. 2022). Here, it is undeniable that the County has diligently sought to protect its rights since learning of this suit's potential impacts and that the state was not adequately representing its interests. Thus, the delay factor weighs in favor of allowing intervention.

The parties' next argument regarding timeliness is that the County's motion for mandatory intervention should be denied because it comes years after the entry of a permanent injunction in the underlying matter and that there is no precedent for allowing intervention at

such a stage in the case. Plaintiffs' Response at 4; Defendants' Response at 2-3. This is plainly incorrect. In the *Oregon* case, the Ninth Circuit explicitly recognized a line of cases specifically approving of interventions during the "remedial phase" of a case following resolution of the primary issues, <u>particularly in situations where the relief ordered "had an unexpected effect on a nonparty."</u> 913 F.2d at 588 (citing *United States v. City of Chicago*, 870 F.2d 1256, 1259-60 (7th Cir. 1989) (decree affects intervenors' chances of promotion); *Howard v. McLucas*, 782 F.2d 956, 959-60 (11th Cir. 1986) (same); *Hodgson v. United Mine Workers of America*, 153 U.S. App. D.C. 407, 473 F.2d 118, 129 (D.C. Cir. 1972) (remedial phase of labor dispute)). The shift of responsibility to provide restoration services from the State to the County occasioned by this Court's September 2022 order and the potential upcoming amendment to require the County to provide transport services are the precise sort of unexpected impacts that justify intervention at this stage of the case.

Lastly, the parties argue that they would suffer considerable prejudice from the County being permitted to intervene in a proceeding that has already been adjudicated, "dragging [them] into new rounds of discovery, motion practice, and a trial." Plaintiffs' Response at 4; *see also* Defendants' Response at 3. This considerably overstates any prejudice that the parties would suffer from intervention. Although Plaintiffs claim that they were unaware of what the County's plan is if permitted to intervene, the original motion and proposed complaint specify that it is to seek redress for several injuries related to the State's failure to provide timely transport and to avail itself of necessary protections now that its interests are directly at stake in this action:

> "[T]he County now seeks to intervene in this case to obtain redress for several harms—being required to unlawfully hold individuals in the jail, the State's issuance of an unfunded mandate and failure to otherwise provide support for the increased workload that community restoration programs are experiencing, and the inadequate treatment being provided to individuals on community restoration who still require a hospital-level

> of care. These issues and the fact that the County's rights may now be directly implicated in this litigation mean that the County should be entitled to the same rights and protections afforded to parties, including the ability to raise new issues, *see California v. United States DOI*, 381 F. Supp. 3d 1153 (N.D. Cal. 2019) ("Amicus participation goes beyond its proper role if the submission is used to present wholly new issues not raised by the parties.") (internal quotation marks omitted), the ability to respond to motions as a matter of right, *see* LR 7-1(e)(1) (permitting only parties 14 days to respond to motions), the right to receive a copy of filed documents and to be conferred with prior to motions filings, *see* FRCP 5(a)(1) (providing that service is only required on "every party"); LR 7-1(a) (requiring conferral with only parties prior to filing); and the right to seek appellate review. *See United States v. City of L.A.*, 288 F.3d 391, 400 (9th Cir. 2002) (noting that *amicus* status "gives . . . no right of appeal").

Marion County's Mot. to Intervene at 4 (ECF No. 402). Contrary to the parties' assertions, <u>the County does not seek to relitigate the underlying permanent injunction in this case.</u> Moreover, although these claims would involve some additional litigation for Defendants, that alone does not prohibit intervention. After all, whether the County is permitted to intervene in this case or is required to file a separate one, Defendants will still be subject to the exact same amount of litigation in either case. Thus, the County's motion is timely filed.

   B. *The County Has a "Significantly Protectable" Interest*

Plaintiffs argue that the County's motion to intervene should also be denied because the County lacks a "significantly protectable" interest in the litigation. Plaintiffs' Response at 7. They assert that the County's claimed interest in not being subject to an order requiring transport falls short of "significantly protectable" because the county routinely provides transportation services to and from the state hospital pursuant to circuit court orders and because the possibility of future contempt litigation is too remote. Plaintiffs' Response at 8-9. Plaintiffs also contend that the County's interest in conservation of its community restoration resources is insufficient because any impacts of the litigation constitute merely "tangential, downstream resource effects" that do not "give rise to a right to intervene." Plaintiffs' Response at 11.

Beginning with the first argument, in the Ninth Circuit "[t]he 'interest' test is not a bright-line rule." *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004). Even if an interest is not specifically protected by statute, it qualifies as "specifically protectable" if it falls within the class of interests "traditionally protected by law." *Sierra Club v. United States EPA*, 995 F.2d 1478, 1483 (9th Cir. 1993). In *Sierra Club*, the Ninth Circuit determined that the City of Phoenix had a sufficient interest when seeking to intervene in a lawsuit that, if successful, would have required the EPA to modify the conditions of wastewater treatment facility permits because the city owned several such facilities. *Id.* Because any alterations in the permits would have changed the way that the city was able to use its real property, the court explained that the city's interest fell within the scope of those "traditionally protected by law" that sufficed to support intervention. *Id.*

Here, the same principle applies in the County's case. As Plaintiffs point out, the County sheriff follows the orders of the Oregon circuit courts in transporting individuals to and from the Oregon State Hospital. However, Plaintiffs now seek in this lawsuit to upset that balance and change the way that the sheriff's office operates, requiring it to conduct transport of individuals even when *explicitly* ordered not to do so by the state circuit court. Similar to how the City of Phoenix had an interest in a lawsuit that could alter the ways in which it can use its resources in the form of real property, the County has an interest in a lawsuit that most certainly <u>will</u> alter the way that it uses its resources in the form of employees.[1]

---

[1] Plaintiffs also argue that the County lacks a significantly protectable interest in "avoid[ing] the labor of appearing in state court to oppose a contempt proceeding" because it would then just be appearing in this case. This argument completely misunderstands the nature of the County's interest in this matter. The County's concern with being subjected to contempt proceedings is not the "labor" of being forced to defend them. Rather, the County's concern is in not wishing its sheriff to be placed in the difficult position of being required to disobey the order of the state court that it works daily to support. The County is seeking intervention in this matter so as to be in a position to adequately respond to any future efforts to create such difficulties for its officials. That interest is sufficient to support intervention.

Similarly, the County's interest in conservation of its limited community restoration resources is also sufficient to support intervention. A non-speculative economic interest in litigation is sufficient to support intervention so long as it is concrete and related to the subject matter of the litigation. *Alisal Water Corp.*, 370 F.3d at 919. Here, as set out in both the proposed complaint and the declaration of Ryan Matthews supporting the motion to intervene, the sudden spike in community restoration cases has consumed an extraordinary amount of the County's resources to the point that the County is unable to provide the required care without additional support from the state. Proposed Complaint ¶ 24, 29 (ECF No. 402-1; Decl. of Ryan Matthews in Support of Marion County's Mot. to Intervene ("Matthews Decl.") ¶ 7 (ECF No. 403). That spike in cases is immediately and directly tied to this litigation, Matthews Decl. ¶ 5, and is the reason that the County seeks to intervene and obtain additional financial assistance from the state. Proposed Complaint ¶ 24, 29. Thus, the County has adequately demonstrated a significantly protectable interest in the subject matter of this lawsuit and intervention is proper.

## II. Standing

In their second argument, Plaintiffs assert that the County lacks standing to make its claims. Plaintiffs observe that the federal Declaratory Judgment Act—which forms the basis for the County's first through third claims for relief—does not itself create standing for constitutional purposes.[2] Instead, the County must independently establish the three required elements of Article III standing: (1) injury in fact; (2) a causal connection between the injury and

---

2   In addressing this point, Plaintiffs also weave into their argument an assertion that the County's requests for injunctive relief are improper because injunctive relief is not unavailable under the federal Declaratory Judgment Act. To the extent that this argument might be construed as an assertion that the County lacks standing because a favorable decision would not provide the relief requested, Plaintiffs are plainly incorrect. Injunctive relief is authorized under 28 U.S.C. § 2202. *Powell v. McCormack*, 395 U.S. 486, 499, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969) ("A declaratory judgment can then be used as a predicate to further relief, including an injunction. 28 U.S.C. § 2202.").

the conduct complained of, and (3) likelihood of redress by a favorable decision.

With respect to the County's first claim for relief, Plaintiffs appear to take issue with the causation element, arguing that the County complains only of the "indirect consequences of delays in transportation" in the form of having to provide housing and other resources during a prolonged detention and bear liability and safety risks. It is unclear how Plaintiffs could possibly characterize these issues as "indirect consequences" of late transportation to OSH. If an individual is not picked up within the timeframe when they are supposed to be, the direct result of that fact is that the County must continue to hold that individual in the jail and provide bed space and other resources. It is also a direct consequence of the state's failure to transport that individual that they will now remain in the Jail longer and pose a risk harm to staff as well as a risk of liability for any harms to the County. The County has adequately alleged standing with respect to this claim.

With respect to the County's third claim for relief regarding Article XI, section 15 of the Oregon Constitution, Plaintiffs again attempt to take aim at the causation element.[3] Specifically, Plaintiffs argue that the County's proposed complaint does not allege that OHA or this Court's order "require" it to do anything, such that there is no connection between OHA's practice of releasing individuals early and the injury complained of—namely, insufficient funding to serve individuals on community restoration. Plaintiffs' Response at 15.

For standing purposes, the causation element requires a showing that the injury complained of is "fairly traceable to the challenged action of the defendant, and not the result of

---

[3] In this section, Plaintiffs also make an argument that the County's second claim for relief concerning ORS 430.640 is improper because that statute does not provide an independent cause of action. Plaintiffs' Response at 13. This argument attempts to expand the matters at issue during a motion to intervene and should instead be raised in the form of a motion under Federal Rule of Civil Procedure 12(b)(6) once intervention is allowed and the County can address any deficiencies if necessary.

Page **9** of **13** – **MARION COUNTY'S REPLY TO THE PARTIES' RESPONSES IN OPPOSITION TO MOTION TO INTERVENE**

the independent action of some third party not before the court." *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014). The proposed complaint on intervention addresses the causational issue explicitly. In paragraph 8, the complaint alleges that OHA stipulated to a court order that requires the discharge of individuals from the state hospital according to specified timeframes. Proposed Complaint ¶ 8 (ECF No. 402-1). Paragraph 11 then connects that conduct through to the County's resource shortage on community restoration, noting that when a person is discharged and they cannot be committed, the state circuit court "has been required" to place them on community restoration services. *Id.* ¶ 11. That placement, in turn, is what then consumes community restoration resources. *Id.* ¶ 12. Those allegations clearly establish a causational relationship between OHA's conduct and the injuries complained of. The County has therefore satisfied that requirement of the Article III standing analysis.

With regard to the County's fourth and final claim for relief on behalf of individuals on community restoration under 42 U.S.C. § 1983, Plaintiffs argue that the County has no authority to raise a Fourteenth Amendment claim either itself or on behalf of the individuals involved in the litigation. While the County is not a "person" within the meaning of § 1983 and is unable to maintain an action on its own behalf, a party has standing to maintain an action on behalf of another if: (1) the individual "is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability," and (2) the party "has some significant relationship with, and is truly dedicated to the best interests of, the [individual]." *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018). Here, the County's proposed complaint alleges that the individuals discharged from OSH and placed onto community restoration have been found unable to aid and assist, meaning that they lack "sufficient present ability to consult with [a] lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of

Page **10** of **13** – MARION COUNTY'S REPLY TO THE PARTIES' RESPONSES IN OPPOSITION TO MOTION TO INTERVENE

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220 | Fax: 503-373-4367

the proceedings." *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). That allegation is thus sufficient to satisfy the requirement that the individuals are unable to litigate their own cases.

As for the second requirement of a "significant relationship," both the Ninth Circuit and Supreme Court have repeatedly held that care providers have a significant relationship so as to confer standing to pursue rights on behalf of their patients. *See, e.g.*, *Singleton*, 428 U.S. at 114; *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Isaacson v. Horne*, 716 F.3d 1213, 1221 (9th Cir. 2013), *cert. denied*, 571 U.S. 1127 (2014); *Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 918 (9th Cir. 2004). This is because health care providers maintain an intimate, confidential relationship with patients and the rights of one frequently affect the rights of the other. *Singleton*, 428 U.S. at 117–18; *Griswold*, 381 U.S. at 481. In fact, in the context of a relationship specifically with a public health provider such as the County, a patient and health care provider's interests are even more aligned than usual given that a public provider's goal is only to provide treatment, not make a profit. Accordingly, the County has also satisfied this element of the analysis and has Article III standing to pursue its fourth claim for relief.

### III. Subject Matter Jurisdiction

Plaintiffs' third argument is that this Court lacks subject matter jurisdiction over the County's first through third claims for declaratory judgment. Notably, Plaintiffs acknowledge that, as pled, this Court does have supplemental jurisdiction under 28 U.S.C. § 1367 over the County's first through third claims given that it has federal question jurisdiction over the County's fourth claim under 28 U.S.C. § 1331. Plaintiffs' Response at 15-16. However, on the assumption that the County's fourth claim for relief will be dismissed, Plaintiffs assert that this Court will lack subject matter jurisdiction over the remainder. *Id.* ("Plaintiffs further note that

the Court lacks subject matter jurisdiction over the state law claims, assuming the Fourteenth Amendment claims should be dismissed."). Plaintiffs are incorrect.

As outlined in the County's original motion to intervene, under 28 U.S.C. § 1367, a district court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." A claim is part of the same "case or controversy" as another if they both "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021). To make this determination, the Ninth Circuit uses a "transaction test" which asks whether the claims "are related to the same set of facts and whether they could conveniently be tried together." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1026-27 (9th Cir. 2019).

Here, the underlying claim for which this Court has original jurisdiction is that OHA and OSH are violating individuals' due process right to receive prompt restoration treatment by failing to provide them timely transport after being found unable to aid and assist. The County's first claim directly tracks this underlying claim, as it concerns the exact same practice. The County's second and third claims are also closely related, as they concern the impacts of OSH's failure to provide that timely transport on the community restoration system. Contrary to Plaintiffs' suggestions, these claims are close enough together that they form "but one constitutional case," *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002), and therefore this Court has subject matter jurisdiction over them independent of the County's fourth claim for relief.

### IV. Permissive Intervention

Lastly, Plaintiffs argue that the County fails to meet the requirements for permissive

intervention because their claims do not share common questions of law or fact with the underlying action. Plaintiffs' Response at 16. For largely the same reasons as this Court has supplemental jurisdiction, this element of the analysis is satisfied. All of the County's claims concern OSH's failure to provide timely transport and the impact that has had on the County's community restoration system. Thus, the County should be permitted to intervene on a permissive basis.

### V. Conclusion

For the reasons stated above, the County is entitled to intervene in this case as a matter of right or, in the alternative, on a permissive basis. Accordingly, it respectfully requests that its motion be granted.

Dated this 26th day of June, 2023

Respectfully submitted,

JANE E. VETTO
MARION COUNTY LEGAL COUNSEL

_____
Jane E. Vetto, OSB #914564
Marion County Legal Counsel
Attorney for Defendants Marion County