Emily Cooper OSB #182254
ecooper@droregon.org
Thomas Stenson OSB #152894
tstenson@droregon.org
**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

Jesse Merrithew OSB #074564
jesse@lmhlegal.com
**Levi Merrithew Horst PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants. | Case No. 3:02-cv-00339-MO (Lead Case)<br>Case No. 3:21-cv-01637-MO (Member Case)<br><br>PLAINTIFFS' RESPONSE IN OPPOSITION TO JUDGES' MOTION FOR LIMITED INTERVENTION |

| | |
|---|---|
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON, <br><br>       Plaintiffs, <br><br> v. <br><br> DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity, <br><br>       Defendants. | Case No. 3:21-cv-01637-MO (Member Case) |

Five of the 177 judges of Oregon's circuit courts filed a motion to intervene in these consolidated cases and ask this Court to vacate or dissolve the August 16, 2022 Opinion and Order enjoining contempt proceedings against those associated with this case. They assert a right to intervention under Federal Rule of Civil Procedure 24(a) or, alternatively, request that the Court grant them permissive intervention under 24(b).

Plaintiffs ask this Court to deny the Motion because the individual judges lack standing to intervene under Rule 24.

## ARGUMENT

To intervene as of right under Federal Rule of Civil Procedure 24 in a pending case, the intervenor must meet the requirements of Article III standing to seek relief different than that requested by the plaintiff. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Standing is required for all relief sought, not just compensatory damages. *Id.* The party seeking relief bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The proposed intervenors have not done so here. The proposed intervenors avoid the question of Article III standing, pointing the Court to permissive rulings developed by the Ninth Circuit prior to *Town of Chester*. To the extent those cases do not require the proposed intervenor to establish Article III standing, they are no longer good law. Furthermore, the proposed

intervenors cannot establish Article III standing because the state statutory right that they seek to protect—the authority of the courts to use their contempt powers to enforce court orders—does not belong to individual judges of the courts, it belongs to the court itself. The court itself is not seeking to intervene.

## I.     Article III Standing

The principle requirement of Article III standing is "an injury in fact." *Town of Chester*, 137 S. Ct. at 1650. To the extent that the Ninth Circuit's test of "significantly protectable interest" is broader than the injury in fact requirement of Article III, it is no longer good law. *See, e.g., U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The mere existence of a statutory right does not necessarily mean that the violation or curtailment of that right creates a concrete and particularized injury capable of being redressed by the federal courts. *Spokeo*, 578 U.S. at 341.

In this case, even putting aside the fact that the county court itself is not seeking to intervene (discussed below), proposed intervenors have failed to allege a concrete and particularized injury so as to confer Article III standing. In their proposed complaint, intervenors allege generally that each of them "has had, currently has, or in the future will have criminal and civil actions pending before the judge that require the issuance of orders and/or rulings under the statutes identified in paragraph 10." *Proposed Complaint*, at 4. Intervenors neglect to make the further necessary argument: that they are reasonably likely to be in a position where they must hold OHA or its employees in contempt of a state judicial order, as a result of OHA's attempts to comply with the order in this matter. The proposed intervenors even argue in their motion that either a) the September 1 injunction may have supplanted the August 16 injunction (*Motion*, at 10-11), thus rendering their claims moot, or b) even if the August 16 injunction remains in full

force and effect, it cannot reach the proposed intervenors by definition under Rule 65 (*Motion*, at 17), which would mean that intervenors are not injured now and could not be in the future. Under these circumstances, the proposed intervenors have failed to prove a concrete and particularized injury.

State laws give state employees authority to act, but that authority does not imbue employees with a personal, litigable interest in changes to their daily job functions. *Cooper v. Newsom*, 13 F.4th 857, 867 (9th Cir. 2021) (rejecting intervention of district attorneys into litigation, as legislation that "incidentally affects the manner in which the District Attorneys are able to perform their assigned functions" does not create a significant protectable interest); *Perry v. Schwarzenegger*, 630 F.3d 898, 904-05 (9th Cir. 2011) (neither deputy clerk nor county had standing to challenge state's same sex marriage policy). Judicial action that would "directly affect the . . . performance of [one's] legal duties" as a state employee does not create standing in that employee to intervene in a lawsuit. *Perry*, 630 F.3d at 903. Judges do not have a personal interest in imposing contempt penalties on the Oregon Health Authority. Indeed, a judge must recuse themselves in a case in which they *do* have a personal interest. Or. R. Jud. Cond. 3.4. Judges have no personal interest in achieving any particular result in the cases they preside over. The putative intervenors assume, without showing, that the existence of statutes giving them authority to hold parties in contempt therefore gives them the individual right to intervene whenever that statutory authority is affected.

## II.     Individual Judges Are Not the Court

This Court must draw a careful distinction between the personal interests of the judges as individuals and their official capacity interests on behalf of the court. The state statutory authority that the intervenors allege has been unlawfully curtailed by this Court is the authority to use the power of contempt to compel compliance with orders. *Motion*, at 15-16. The intervenors fail to reckon with the fact that the authority they seek to protect does not belong to them personally, but to the court itself. Under ORS 1.020, the legislature granted the power to

"the court" to "punish for contempt in the cases and the manner provided by statute." Or. Rev. Stat. § 1.020. ORS 1.230 makes clear that when the statutes refer to "the court," they are not referring to individual judges of the court. "A judge may exercise, out of court, all the powers expressly conferred upon a judge as distinguished from a court, and not otherwise." Or. Rev. Stat. § 1.230.

The proposed intervenors fail to allege that they bring their complaint in their official capacities as representatives of their courts. Nowhere in the Proposed Complaint or Motion do the proposed intervenors state that they are acting in their official capacities. Under ORS 1.560, Oregon law precludes them from filing suit in their official capacity, absent permission from the State Court Administrator. The putative intervenors provide no evidence that they have obtained that permission, nor do they detail any process by which they could acquire official capacity to intervene. Accordingly, the putative intervenors should be presumed to be acting in an individual capacity, precluding them from acting as authorized agents of the state and asserting the state's interests. A few judges out of almost 200 statewide, acting in their personal capacities, do not have the standing to intervene in a lawsuit.

Judges do not have any particular or material interest in the outcome of any case, nor the ability to defend their decisions on appeal. The interests protected by the doctrines of comity, equity, and federalism belong to the state, not personally to individual employees of the state. The proposed intervenors assume that because they have the power to impose contempt penalties, they therefore have some litigable interest in their power to impose such. However, the proposed intervenors provide no authority for this assumption.

On a more practical level, this Court has before it five individual judicial officers. That is roughly 3% of the judicial officers in the state. The proposed intervenors assert that the August 16 injunction "broadly target[s] the state court system" and "potentially affects most of Oregon's approximately 200 judges and justices." *Motion* at 9. However, these five individual judicial officers make no claim that they have authority to speak or advocate for every judicial officer in

the state. Regardless, even were the proposed intervenors speaking for every judicial officer in the state, the contempt authority belongs to the court, not individual judges, whether five or 177.

## III. Individual Judges Are Not Designated as Agents of the Court

Individual state employees do not have standing to advance statewide interests, unless appropriately deputized to do so. The supreme judicial authority in the state of Oregon is the Chief Justice of the Supreme Court. Or. Rev. Stat. § 1.002(1). Neither the Chief Justice nor the Oregon Judicial Department are before this Court. When a state has a cognizable interest that is harmed by a federal judicial decision, the state "must be able to designate agents to represent it in federal court" to vindicate that interest. *Hollingsworth v. Perry*, 570 U.S. 693, 709-10 (2013) (citing *Poindexter v. Greenhow*, 114 U.S. 270, 288 (1885) ("The State is a political corporate body [that] can act only through agents")). Although that agent is typically the state attorney general, state law may allow other state officials to act as that agent. *Hollingsworth*, 570 U.S. at 710. However, those agents must be acting in their official capacities. *Id.* (citing *Karcher v. May*, 484 U.S. 72, 81 (1987)). The putative intervenors have not shown that they are designated agents for the judiciary.

In *Karcher v. May*, the heads of the New Jersey legislature's Assembly and Senate intervened in litigation to defend a law requiring a minute of silence before each school day, after the state Attorney General refused to defend the law. *Karcher*, 484 U.S. at 75. However, while the matter was on appeal, the two men lost their positions as heads of their legislative bodies. *Id.* at 76. The Supreme Court held that, once those two men were only two of many state legislators, they lost their standing to defend the law. *Id.* at 81. "[T]he real party in interest in an official-capacity suit is the entity represented and not the individual officeholder." *Id.* at 78. In the same way, these few judges have not shown authority to speak for the whole judicial body, either as a matter of Oregon state law or as a matter of federal standing law.

The proposed intervenors assert that plaintiffs and defendants sought an injunction they characterized as "broadly targeting the state court system," "without notice to the Oregon

Page 6 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO JUDGES' MOTION FOR LIMITED
            INTERVENTION
    131840778

Judicial Department." *Motion* at 9. They also assert that the injunction could "freeze 'any action' in Oregon's state courts – not only judge-initiated contempt cases – in which contempt might be requested." *Id.* This framing implies that the proposed intervenors seek to act on behalf of the Oregon Judicial Department. If the state court system as a whole is the targeted party, the five judges must be designated to act as agents for the state and bring the suit in their official capacities. The putative intervenors produce no evidence that they have been so designated, nor do they allege that they have been so designated.

The proposed intervenors cite ORS 1.560(3) which allows the State Court Administrator, when directed by the Supreme Court, to authorize a judge to employ private counsel "when the State Court Administrator finds that employing private counsel is necessary to protect the public interest, the integrity of the judicial system, or the interests of the judge in performing duties as a state officer." *Motion* at 26. Even if the State Court Administrator, on behalf of the state court system, had standing to intervene, the proposed intervenors have not provided any evidence to show that the State Court Administrator authorized these judges to seek to intervene or for what purpose. In fact, the proposed intervenors note that "[n]either the State of Oregon generally nor the Oregon Judicial Department specifically are parties to either consolidated action," but make no mention, and provide no proof, that they are authorized to assert the interests of the Judicial Department. *Proposed Complaint*, at 4. Presumably, if the Oregon Judicial Department wished to assert its authority as the statewide judicial body, OJD would be before the court today, or the putative intervenors would have offered evidence showing that they had been deputized by OJD to assert OJD's interests.

The putative intervenors' motion to intervene should be judged with particular concern in this case, where the Oregon Attorney General, acting as a representative for Defendants, has already appeared on behalf of the state. The Attorney General is presumed, under Oregon law, to have authority to speak for the state in litigation. Or. Rev. Stat. § 180.060(1). The Oregon Health Authority is a state agency and a defendant in this matter. In assessing this point, the putative

intervenors cite a Supreme Court holding that a "State's interests will be impaired or impeded if its *duly authorized* representatives" are not permitted to intervene in litigation. ECF 274, at 25 *citing Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2201 (2022) (emphasis added). But the putative intervenors nowhere allege, much less demonstrate, that they are in fact "duly authorized" by the state judiciary to advance its interests. The state's interests might be equally endangered by allowing unauthorized parties to appear supposedly on its behalf. In a similar case, the Ninth Circuit refused to let county-level California district attorneys intervene to advance state claims in a criminal justice reform case "when the state entities—the Governor, the CDCR, and the Warden of San Quentin—are already parties and are already represented by the Attorney General." *Cooper*, 13 F.4th at 865. In light of the already extensive involvement of representatives for the state of Oregon and the failure of OJD to intervene, five individual county-level judges are no more suited to intervene to declare what the state's interests are than the county-level district attorneys in *Cooper*.

### III.     Permissive Intervention

In deciding whether to permit intervention, courts consider a number of factors, including:

> the nature and extent of the intervenors' interest, **their standing to raise relevant legal issues**, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (citing *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir.1977)) (emphasis added).

For all the reasons stated above, Plaintiffs note that the putative intervenors have not

shown that they have standing to advance the claims in the proposed complaint.[1] As noted above, the Oregon Judicial Department (OJD) and the Chief Justice of the Oregon Supreme Court are the heads of the Oregon state judiciary. While the number of amici and putative intervenors in this matter continues to grow, neither the Chief Justice nor OJD has sought to appear before this Court. The holders of the actual interests of the state judiciary have decided not to intervene for reasons best known to themselves, possibly including avoiding conflict with state agencies and the executive branch. This Court should honor the choice by the Oregon judiciary not to intervene and reject the effort by a small group of judges to seize the initiative that the judiciary as a whole declined to take up. These individual judges lack "standing to raise relevant legal issues" under the criteria for permissive intervention.

As also articulated above, the putative intervenors' "nature and extent of interest" in the issues at stake in this case is low. Acting in their personal capacity, the putative intervenors do not have any particular interest in litigating how they execute their individual job duties.

Last, the overall importance to the litigation of a single sentence in the August 16 order is minor. The present case is about getting detainees held in jail admitted to the hospital promptly, not about collateral contempt proceedings.

For all these reasons, the putative intervenors fail to assert a basis for permissive intervention in the present matter. They lack adequate interests or standing to assert them, and the issues they present are tangential to the litigation.

---

[1] Plaintiffs note that, while the standing requirement is framed as only a factor to be considered in *Perry*, that case pre-dates *Town of Chester*. *Town of Chester* concerned only a request for intervention as of right and so did not consider the question whether an intervenor who lacked Article III standing could be *permitted* by the district court to intervene as a matter of discretion. However, there is nothing in the logic of *Town of Chester* that suggests there should be any distinction. Article III standing is a constitutional requirement that cannot be set aside by Congress or a court. Therefore, the standing question is dispositive under Rule 24.

## IV. The Court Can Also Avoid the Intervention Issue by Clarifying or Amending Its Order as It Relates to Contempt Actions

The putative intervenors admit that their sole point of interest is the limited portion of the Court's August 16 order addressing actions "seeking to hold those associated with this case in contempt for their efforts to comply with the permanent injunction." ECF 256, at 6. The putative intervenors report being confused as to what the injunction means, or even whether it remains in effect. ECF 274, at 10 n.1. Plaintiffs do not object to the Court clarifying the scope and nature of that portion of the injunction, nor to amending that portion of the injunction as the Court sees fit. Should the Court substantially clarify or amend the order in a way that addresses the concerns expressed, the Court could avoid the intervention question entirely.

DATED October 7, 2022.

LEVI MERRITHEW HORST PC

/s *Jesse Merrithew*
Jesse Merrithew OSB # 074564
jesse@lmhlegal.com
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

*Counsel for Plaintiffs Metropolitan Public Defender, Jarrod Bowman, and Joshawn Douglas-Simpson*

DISABILITY RIGHTS OREGON

/s *Emily Cooper*
Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org

511 SW 10th, Suite 200  
Portland OR 97205  
Tel:   (503) 243 2081  
FAX:  (503) 243 1738

*Counsel for Plaintiff Disability Rights Oregon*