Emily Cooper OSB #182254
ecooper@droregon.org
Thomas Stenson OSB #152894
tstenson@droregon.org
**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

Jesse Merrithew OSB #074564
jesse@lmhlegal.com
**Levi Merrithew Horst PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK ALLEN, in his official capacity as head of the Oregon Health Authority, and DOLORES MATTEUCCI, in her official capacity as Superintendent of the Oregon State Hospital,<br><br>Defendants. | Case No. 3:02-cv-00339-MO (Lead Case)<br>Case No. 3:21-cv-01637-MO (Member Case)<br><br>PLAINTIFFS' RESPONSE IN OPPOSITION TO MARION COUNTY'S MOTION TO INTERVENE |

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 1

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

| | |
|---|---|
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON,<br><br>        Plaintiffs,<br><br>    v.<br><br>DOLORES MATTEUCCI, Superintendent of the Oregon State Hospital, in her individual and official capacity, PATRICK ALLEN, Director of the Oregon Health Authority, in his individual and official capacity,<br><br>        Defendants. | Case No.  3:21-cv-01637-MO (Member Case) |

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO MARION COUNTY'S MOTION TO INTERVENE

Amicus curiae Marion County filed a motion to intervene. ECF 402. The lead case was filed 21 years ago, is well-known to Marion County, and Marion County provides inadequate explanation of its lengthy delay in filing this motion. Marion County also fails to demonstrate standing to bring the new claims it asserts, nor demonstrate how a proceeding to address its putative interests could occur two decades after trial in this matter. Because Marion County lacks standing to intervene, lacks a significant protectable interest in the matter, and its intervention is untimely, Plaintiffs oppose the motion.

### I.     MARION COUNTY FAILS TO MEET STANDARDS FOR INTERVENTION BY RIGHT

Marion County fails to demonstrate a basis for intervention by right under the provisions of Rule 24. Under Ninth Circuit law, a party must show four points to intervene in litigation: that intervention is timely, that the party seeking to intervene has a significant protectable interest in the proceedings, that such interest would be impaired by the proceedings, and that existing parties would not adequately represent the applicant's interest. *United States v. Alisal Water*

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 2

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

*Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Further, the United State Supreme Court has held independently that a putative intervenor must demonstrate standing to intervene in the case. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). The putative intervenor has the burden to show that it meets the standards for intervention. *Alisal Water*, 370 F.3d at 919.

A.   **Marion County Failed to Intervene Promptly to Protect Its Interests**

Marion County's intervention is not timely; therefore, it has failed to meet the initial threshold for intervention. A finding of timely intervention requires a court to consider 1) the stage of the proceeding, 2) the prejudice to the other parties, and 3) the reason for and length of the delay. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Intervention into a proceeding 20 years after trial and decades into the enforcement process has virtually no precedent in the Ninth Circuit, and Marion County directs the Court to no comparable case where intervention was permitted.

The late stage of the proceedings, namely enforcement of a permanent injunction decades after it was entered, weighs heavily against Marion County. ECF 296, at 4-5 (citing cases). "The purpose of the [timely intervention] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 823 (9th Cir. 2021) *citing United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989). This matter went to trial in 2002. The enforcement of this matter has been in active motion practice since 2019. In December 2021, the parties publicly announced that they would be engaging an expert and participating in a mediation process to implement her recommendations. *Orange Cnty. v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986) (refusing to permit intervention where there had been "extensive and well-publicized negotiations"). The expert's recommendations

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 3

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

were publicly announced in June 2022 and a proposed order reflecting those recommendations presented to the Court in August 2022. Countless interventions have been declined as untimely at far earlier stages. *See, e.g., LULAC*, 131 F.3d at 1303 (intervention untimely in pretrial stages of two-year old proceeding); *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996) (intervention 3 months after a memorandum opinion on summary judgment untimely); *Smith v. Marsh*, 194 F.3d 1045, 1053 (9th Cir. 1999) (motion to intervene filed more than a year after the initial complaint untimely). Marion County does not point to any similar case where intervention in such a late enforcement stage of proceedings was judged appropriate.

The prejudice to the parties by intervention would be enormous. The present litigation has already been adjudicated, but Marion County presents a whole new complaint directed into this litigation, seeking new relief on new, unrelated claims. *Alisal Water*, 370 F.3dd at 922 (courts assume prejudice where relief from "long-standing inequities would be delayed"). Marion County does not explain or propose how the complaint should be adjudicated except by dragging both Plaintiffs and Defendants into new rounds of discovery, motion practice, and trial. *LULAC*, 131 F.3d at 1304 ("As a general rule, intervenors are permitted to litigate fully once admitted to a suit."). Inserting a brand new discovery and trial process would unquestionably prolong the current proceedings. Even if Marion County has some more modest plan, which it does not identify in its pleadings, to engage in motion practice but not full trial or discovery, that prejudice would still be substantial. *Id*. (finding prejudice would likely ensue by intervention by allowing "full-party participation at a time when the litigation was, by all accounts, beginning to wind itself down"). In addition, allowing intervention by Marion County would make it hard to resist applications from dozens of other Oregon counties in intervention. *Cooper v. Newsom*, 13

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 4

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

F.4th 857, 868 (9th Cir. 2021), *cert. denied sub nom. San Bernardino Cnty. Dist. Att'y v. Cooper*, 214 L. Ed. 2d 118, 143 S. Ct. 287 (2022) (prospect of 50+ other district attorneys moving to intervene constituted potential prejudice if intervention were granted to 3 putative intervenors).

Marion County's response is that, because it has been allowed enhanced amicus status in the proceeding, no prejudice would ensue for any party by its full intervention. ECF 402, at 8-9. Marion County cites no case law for this proposition because none exists. *State of Wash.*, 86 F.3d at 1504 (allowing belated transformation of amicus into an intervenor would "upset the delicate balance achieved by the district court"); *United States v. State of Or.*, 913 F.2d 576, 588 (9th Cir. 1990) (allowing intervention "at this stage to challenge the [fish allocation] plan would seriously prejudice all the parties"). Marion County takes the remarkable position that, because this Court and the parties extended every courtesy and consideration to it as an amicus, that courtesy and consideration has converted into an obligation for this Court and the parties to allow intervention. This position lacks legal merit.

Finally, the county's motion also fails to articulate a permissible reason for the 21-year-old delay. Marion County's delay is measured from when it should have known that its interests were at risk. *Smith*, 194 F.3d at 1052. From the outset of this litigation in 2002, the relationship of state and county authorities in providing mental health services has been at issue. *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1114 (9th Cir. 2003) (noting OSH argued that "Oregon *counties*, not OSH, have the duty to provide these defendants with constitutionally adequate care") (emphasis in original). The risk should have been obvious to any participant that any settlement or court orders in this case might require greater community mental health engagement and related care coordination services between the county and the state hospital.

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 5

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

*State of Or.*, 913 F.2d at 589 (announced annual plans indicating that ocean limits "could be discussed" at future proceedings and general awareness that "ocean fishing might be discussed in negotiations" put putative intervenor on notice). Of note, Plaintiffs' pleadings as early as 2019 specifically requested relief of a court order requiring the transport of patients to outpatient restoration or requiring their outright release from custody, the practices Marion County now complains of. *See, e.g.*, ECF 106, at 17. The reasonable knowledge standard requires that parties actively inquire into the proceedings of the litigation and make themselves aware of issues that could arise, not that they wait for a settlement or court order and then decide. *State of Or.*, 913 F.2d at 589; *State of Wash.*, 86 F.3d at 1506 (putative intervenor could not wait until emergency closure of fishery, where court had made an interim order allowing harvest of fish by any tribe 14 months earlier).

Marion County appears to defend the delay in its filing a motion to intervene until June 2023 by simply asserting that its participation as an amicus adequately justifies the delay. ECF 402, at 9. Its unsupported proposition is directly refuted by the Ninth Circuit. A party's engagement with the litigation without filing a motion to intervene is instead evidence that the party failed to act promptly. *State of Or.*, 913 F.2d at 589 (party who "made frequent inquiries about the nature of the negotiations and attempted repeatedly to participate" prior to filing its motion to intervene demonstrated knowledge of risk justifying rejection of motion to intervene); *State of Wash.*, 86 F.3d at 1505 (grant of amicus status in 1993 did not justify intervention from amicus in 1995). Amicus status is not a substitute for timely intervention. Marion County should have known and did know long before June 2023 that its alleged interests were at risk. It failed to act promptly, so its motion to intervene should be denied.

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 6

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

Denying intervention in this case would also cause no prejudice to Marion County. Marion County would still be free to file its complaint as a new case and move to consolidate to avoid any contradictory rulings. Marion County does not explain why this alternative does not adequately protect all of their interests without any danger of prejudice to the parties in this case.

**B.     Marion County Lacks a Significant Protectable Interest in the Litigation**

Marion County fails to articulate a significant protectable interest in the litigation.[1] A significant protectable interest is one "protected by law" with "a relationship between that interest and the claim or claims at issue." *Cooper*, 13 F.4th at 865. An interest that is "too contingent or speculative" is not adequate to justify intervention. *Ungar v. Arafat*, 634 F.3d 46, 52 (1st Cir. 2011). Marion County alleges two independent bases for intervention: 1) the possibility of a court order directed towards the Marion County Sheriff to transport patients and 2) the increased placement of aid-and assist patients in community-based mental health services. ECF 402, at 10. However, in neither case does Marion County explain how either interest is "protected by law."

**1.    Marion County Lacks a Legally Protected Interest in Determining Whether or How Aid-and-Assist Defendants Are Transported**

From the outset of this litigation in 2002, Oregon's framework for aid-and-assist work has been very clear: OSH is responsible for admitting and providing care to patients transported from county jails, and the county jails (operated by county sheriffs) provide transportation. *Mink*, 322 F.3d at 1107 ("The jails have the capacity to transport inmates to a treatment facility within

---

[1] Plaintiffs' arguments that Marion County lacks a "significant protectable interest" tend to merge with any argument that whatever interest Marion County has asserted will not "as a practical matter" be impaired or impeded by the present litigation. Where appropriate, plaintiffs will address the "impaired or impeded" by the present litigation prong in footnotes.

24 hours. The reason they do not transport the inmates is because defendants refuse to accept them."). In a related proceeding a few years ago, Marion County's fellow amicus Washington County provided witness testimony from a jail lieutenant at the Washington County Sheriff's Office "responsible for transporting defendants from the Washington County jail . . . to OSH." *Oregon v. Zamora-Skaar*, 308 Or. App. 337, 346, 480 P.3d 1034, 1040 (2020). Most tellingly, the Oregon State Courts have a standard form for admission of defendants in custody found unable to aid and assist, indicating that "The [blank] County Sheriff shall TRANSPORT defendant from the County Jail to OSH in Salem, Oregon and *shall return the defendant to the county jail upon notification from OSH*." Stenson Decl., Exh. A, at 3 (emphasis added). State court rules provide that transportation orders require a "separate proposed court order directing the sheriff to transport the person to and from the designated place. . . ." Or. UTCR 4.030. The policy of the state of Oregon has for decades been that the local sheriff provides transportation between a county jail and OSH for in-custody defendants in aid-and-assist proceedings. *See, e.g., Oregon v. Gilligan*, 24 Or. App. 483, 485 n.1, 546 P.2d 783, 784 n.1 (1976) (quoting a 1974 aid-and-assist commitment order requiring that the Multnomah County Sheriff "shall forthwith transport the defendant" to OSH).

Marion County states generally that it has a significant protectable interest in avoiding explicit language "ordering county sheriffs to transport individuals back from OSH upon discharge," but cite no law or facts for that premise. ECF 402, at 11. State courts have been ordering the Marion County Sheriff to transport defendants between Marion County Jail and OSH for decades. *See, e.g.,* Stenson Decl., Exh. A; ORS 206.315(1) (discussing county sheriff's role in transporting "persons with mental illness to a state mental hospital" and the means of

Plaintiffs' Response in Opposition  
To Marion County's Motion to Intervene  
Page 8

**Disability Rights Oregon**  
511 SW 10th Avenue, Suite 200  
Portland, Oregon 97205

reimbursement for that transportation). Marion County provides no evidence that it has objected to repeated compelled transportation of defendants by state courts, nor has it produced evidence (aside from the handful of 2023 state court orders apparently tending to undermine this Court's September 1, 2022 order) that state courts routinely exempt the Marion County Sheriff from the requirement of transporting prisoners. Marion County is routinely ordered to provide such transportation and providing such transportation is one of its basic functions. It lacks a significant protectable interest in refusing to perform one of its routine duties.

  Marion County's argument that it must intervene in the present case to avoid the possibility of "having to litigate state contempt proceedings" fails to identify a significant protectable interest. The mere possibility of collateral effects in a separate proceeding does not justify intervention. *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (taxpayer lacked interest justifying intervention where he could defend any interest in subsequent trial); *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993) (denying intervention because putative intervenor tribe could only adjudicate its identified interest in separate litigation). The county's remedy for any future contempt proceeding is not to intervene here, but to appear before a state court and assert the Supremacy Clause as a defense.

  Such prospect of state court action is remote. This Court held a hearing on April 3, 2023, at which the state courts were represented by counsel. At that hearing, the Court stated on the record that the Supremacy Clause governed its September 1, 2022 order, clarifying beyond doubt this Court's position on its order and whether its order could be subverted or undermined by state or municipal officials. The state courts did not, through counsel, object or seek to challenge the federal court's verbal order. Should this Court directly order Marion County to transport

Plaintiffs' Response in Opposition  
To Marion County's Motion to Intervene  
Page 9

**Disability Rights Oregon**  
511 SW 10th Avenue, Suite 200  
Portland, Oregon 97205

prisoners, the state courts would have to accept the Supremacy Clause as a bar to a state contempt proceeding. Marion County cites no evidence to indicate it would face such a contempt proceeding nor that it has been threatened with contempt. Marion County should not, and this Court cannot, simply presume that state courts will disregard basic constitutional law, especially after direct admonition by this Court. *See, e.g., Ybarra v. Wolff*, 555 F. Supp. 40, 41 (D. Nev. 1982) ("Considerations of comity require that we assume state courts will perform their duty to uphold the Constitution of the United States to the best of their abilities."). Neither does Marion County indicate that it would be without recourse in the Oregon appellate courts to redress the unlikely act of a rogue state court judge, nor would Marion County be without redress in the federal forum in the highly unlikely event of a refusal of Oregon state courts to observe basic constitutional norms. Marion County points to no case law, and plaintiffs find none, indicating that such dubious fear of future state contempt proceedings amounts to a "significant protectable interest" justifying intervention.[2]

To the extent that Marion County's purported interest is simply in avoiding the labor of appearing in state court to oppose a contempt proceeding, Marion County's proposed remedy—that it be permitted to appear in court in *this* case—makes little sense. Marion County apparently prefers certain litigation in the present forum over the remote possibility of future litigation in a state forum. Allowing intervention for that purpose would simply multiply the complexity of this litigation while ensuring that Marion County experiences the harm (expending legal effort) it

---

[2] Alternately formulated, Marion County's argues that potential subsequent state court action may impair or impede its interests, not the present federal litigation. To the extent such state proceedings would impair or impede its interests, Marion County's grievance is with the hypothetical state court allowing contempt proceedings, not the present litigation.

| Plaintiffs' Response in Opposition | **Disability Rights Oregon** |
|---|---|
| To Marion County's Motion to Intervene | 511 SW 10th Avenue, Suite 200 |
| Page 10 | Portland, Oregon 97205 |

claims to fear. Marion County cites no case law finding that the possibility of participation in future litigation is a "significant protectable interest" justifying intervention.

Last, Marion County's complaint in intervention has no claim related to, asserts no facts, and articulates no legal theory relating to whether, how, or when its Sheriff could be compelled to transport detainees to and from OSH. ECF 402-1. The profound disconnect between the complaint in intervention and the motion to intervene on this point goes wholly unexplained. Fed R. Civ. Pro. 24(c).

### 2. Marion County Lacks a Legally Protected Interest in Serving a Particular Number of Clients in Community Mental Health Services

Marion County's general statement that their "community restoration case load has tripled" and stressed their resources does not identify a significant protectable interest protected by law. ECF 402, at 10. While the county's staffing challenges are regrettable, Marion County's motion does not articulate in what sense it has a legal right to intervene as a way to avoid stress on its resources. Most litigation involving government entities will "occasion some reallocation of the limited resources of the" government, but such tangential, downstream resource effects do not constitute the "direct impact that gives rise to a right to intervene." *Benjamin v. Dep't of Pub. Welfare of Pennsylvania*, 432 F. App'x 94, 99 (3d Cir. 2011). Marion County's declaration fails to demonstrate that the challenges it faces would disappear if the September 1st order were dissolved, nor do its pleadings cite a single case finding a significant protectable interest in avoiding such resource challenges.[3] Instead, the county's interests resemble the indirect interests

---

[3] Plaintiffs deny that Marion County has a legally protected interest in not experiencing the stressed resources experienced by virtually every other entity participating in the mental health system in Oregon. Many of those stressors antedated the September 1, 2022 order. ECF 403, at 3. Marion County's failure to articulate clearly how and to what extent its interests would actually be addressed by any relief available in this proceeding tends to disprove that such interests would actually be impeded or impaired by these proceedings absent intervention.

of other officials who also lack an interest justifying intervention in matters incidentally affecting their work. *Cooper*, 13 F.4th at 867 (district attorneys lack interest justifying intervention in criminal justice litigation that "incidentally affects" the manner in which DA's performed their jobs); *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987)(even though prison population cap might affect DA's interests in "some incidental manner," DA had no "legally protected interest" in challenging population cap). Without a legally protected interest, the motion must fail.

### III. MARION COUNTY LACKS STANDING TO INTERVENE

Marion County provides no evidence or argument that it has standing to intervene in this case, ignoring the constitutional mandate for demonstrating standing in intervention. *Town of Chester*, 581 U.S. at 439. Following *Town of Chester*, the Ninth Circuit has held that a district court errs by not addressing the standing question prior to granting intervention. *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1231 (9th Cir. 2017). The "irreducible constitutional minimum of standing" requires a party show 1) an injury in fact; 2) a causal connection between the injury and the conduct complained of; and 3) a likelihood of—not mere speculation—of redress by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury-in-fact is an invasion of a legally protected interest that is concrete and particularized and one that is actual or imminent, not conjectural or hypothetical. *Id.* Since Marion County provides no argument for standing, the Court need not construct such an argument for it.

The proposed complaint in intervention demonstrates Marion County's lack of standing. ECF 402-1. Marion County alleges standing on the basis of statutes that confer neither standing

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 12

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

on them nor subject matter jurisdiction in federal court.[4] Marion County's complaint does not articulate any injury-in-fact related to a legally protected interest of its own. Marion County pleads its first claim for relief arises under the Declaratory Judgment Act. ECF 402-1, at 6 (citing 28 U.S.C. 2201). But the Declaratory Judgment Act does not create either subject matter jurisdiction or standing in a case where a party fails to establish an independent basis for an "actual case or controversy" under Article III. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). The alleged disputes Marion County believes should be resolved under the Declaratory Judgment Act are not ones where Marion County has standing. *Solenoid Devices, Inc. v. Ledex, Inc*., 375 F.2d 444, 445 (9th Cir. 1967). Notably, the claims raised under the Declaratory Judgment Act appear to be entangled with requests for *injunctive* relief, which relief is plainly not available under the Declaratory Judgment Act. ECF 402-1, at 9-11; 28 U.S.C. 2201; *Steffel v. Thompson*, 415 U.S. 452, 466 (1974).

Marion County alleges under both the Declaratory Judgment Act and Section 1983 that detainees have Fourteenth Amendment rights to prompt treatment. ECF 402-1, at 6 & 9. That is so, but that right attaches to the individuals detained, not to Marion County. Marion County complains only of the indirect consequences to itself of delays in transportation, that Marion County must "provid[e] housing and other resources" during prolonged detention and bear liability and safety risks. ECF 402-1, at 7. Marion County fails to even allege that it is a "person" within the meaning of the Fourteenth Amendment or Section 1983—which it is not. *City of S.*

---

[4] To the extent Marion County's claims arise under state law, the Court must also reject those claims as outside its subject matter jurisdiction. A party seeking intervention must demonstrate that federal subject matter jurisdiction extends to the claims pursued, because intervention under Rule 24 must "not be construed to extend or limit the jurisdiction of United States district courts." *E.E.O.C. v. Nevada Resort Ass'n*, 792 F.2d 882, 886 (9th Cir. 1986). Claims arising under Oregon statutes or the Oregon Constitution are not ones the federal court has subject matter jurisdiction over. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 13

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

*Lake Tahoe v. California Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 233 (9th Cir. 1980) (political subdivisions cannot bring Fourteenth Amendment claims against state); *Cnty. of Butler v. Wolf*, 486 F. Supp. 3d 883, 895 (W.D. Pa. 2020) (counties are "creatures of the state" that "do not possess rights under the constitution" and cannot bring Section 1983 suits); *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 & 48 (1933)(municipal entities "without standing" to sue state under federal constitution); *Plyler v. Doe*, 457 U.S. 202, 212 n. 11 (1982) (the due process clauses of the Fifth and Fourteenth Amendments extend rights to "human being[s]").

In the present litigation, the parties holding the Fourteenth Amendment rights in question are already represented by Disability Rights Oregon and Multnomah Public Defender Services. Marion County cannot have standing to advance claims arising out of rights that only belong to other people. *Powers v. Ohio*, 499 U.S. 400, 410 (1991). While the Fourteenth Amendment protects the rights of detainees, Marion County makes no argument that the Fourteenth Amendment protects its supposed right to avoid paying for housing and feeding detainees in the interim. Marion County alleges no injury-in-fact that would give it standing under the Fourteenth Amendment.

Marion County also cites an Oregon state statute defining Oregon Health Authority's role under state law. ECF 402-1, at 7, *citing* ORS 430.640. The statute in question, however, only describes broadly the statutory concept of OHA's role, conditioned on "the availability of funds." ORS 430.640. The statute does not vest any county with an enforceable right to sue to enforce the statute's general terms. *Bond v. United States*, 564 U.S. 211, 225 (2011) (not enough for standing to complain generally that government breaks the law or that a person "suffers in some indefinite way in common with people generally"). The broad terms of the statute do not

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 14

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

give Marion County standing to sue to enforce its provisions, nor does the statute require a specific level of funding for any county.

Marion County raises a further claim regarding the Oregon Constitution's "unfunded mandate" provision. The complaint does not allege that Marion County is *required* to provide community-based mental health services in the quantity and quality identified. The complaint notes that in some cases Marion County "lacks the legal ability" to restore defendants and in others by reason of "significant staffing shortage" is "unable to provide" restoration services. ECT 402-1, at 5. Marion County does not indicate that it is penalized for failure to provide community-based restoration in those cases. Marion County's complaint fails to articulate that OHA or this Court's orders "require" it to do anything, other than release detainees in a timely way. Or. Const., Art. XI, sec. 15(1). In the absence of such a requirement, Marion County lacks standing to raise such a claim.

### IV.  MARION COUNTY FAILS TO MEET PERMISSIVE INTERVENTION STANDARDS

Marion County also seeks permissive intervention for similar reasons as it seeks intervention by right. Its arguments fail for the same reason. Permissive intervention is granted where 1) the Court has independent ground for jurisdiction; 2) the motion is timely filed; and 3) there is a common question of fact or law between movant's claims or defenses and the main action. *State of Wash.*, 86 F3d at 1506-07.

As stated above, the intervention is not timely, and the parties would be prejudiced by the intervention of Marion County. Plaintiffs will not belabor this point but rely on its arguments above, beyond noting that the requirement of timely intervention is analyzed "even more strictly" in the permissive intervention context. *LULAC*, 131 F.3d at 1308. Plaintiffs further note that the

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 15

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

court lacks subject matter jurisdiction over the state law claims, assuming the Fourteenth Amendment claims should be dismissed. *See supra* note 4; 28 USC 1367(c).

The common questions of fact and law between the putative complaint submitted by Marion County and the present litigation are scarce. Even assuming the Court reached the questions raised in Marion County's complaint, the individual claims cited by Marion County in its complaint have much to do with the relative level of mental health funding provided to Marion County, how that money is expended, and how much Marion County should be compensated for its expenditures in providing mental health services. Plaintiffs and Defendants have spent little or no time presenting or preparing evidence on how or whether counties should be compensated, nor in examining financial records, because those questions are outside the scope of the suit. Brand new discovery, possible expert testimony, and much motion practice would have to ensue to make the determinations required by Marion County's complaint.

The only relief sought in Marion County's putative complaint that pertains to the present matter is an order that was *already granted* by this Court 21 years ago, the issuance of an "injunction requiring Defendants to transport individuals to OSH within seven days of being found unable to aid and assist." ECF 402-1, at 11. Marion County does not explain why reissuing the 2002 injunction would provide further relief. Otherwise, Marion County's focus on getting more funds for itself from OHA presents a largely unrelated lawsuit, with different factual and legal issues from those explored previously. The bare fact that both the present litigation and Marion County's complaint generally relate to the mental health system in Oregon is not an adequate nexus to justify intervention. The questions posed by Plaintiffs in the current cases are distinct from whether the state is properly reimbursing Marion County for mental health services.

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 16

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

They do not form "but one constitutional case." *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002). In the absence of such a common nexus of fact and law, permissive intervention should be denied.

## V.     CONCLUSION

Marion County lacks a viable basis to intervene in the present matter, either by right or permissively. Its belated action makes its intervention untimely. Its new proposed claims would impose considerable prejudice on the parties, requiring massive delays, new discovery, and extensive motion practice. Its incoherent allegations of interest are not grounded in cognizable legal interests, nor does the county demonstrate standing to pursue the relief identified in its putative complaint. For all these reasons, their motion should be denied.

DATED June 16, 2023.

LEVI MERRITHEW HORST PC

/s *Jesse Merrithew*
Jesse Merrithew OSB # 074564
jesse@lmhlegal.com
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

*Counsel for Plaintiffs Metropolitan Public Defender, Jarrod Bowman, and Joshawn Douglas-Simpson*

DISABILITY RIGHTS OREGON

/s *Emily Cooper*
Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org
511 SW 10th, Suite 200

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 17

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205

Portland OR 97205
Tel: (503) 243 2081
FAX: (503) 243 1738

*Counsel for Plaintiff Disability Rights Oregon*

Plaintiffs' Response in Opposition
To Marion County's Motion to Intervene
Page 18

**Disability Rights Oregon**
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205