Emily Cooper OSB #182254
ecooper@droregon.org
Thomas Stenson OSB #152894
tstenson@droregon.org
Disability Rights Oregon
900 SW 5th Avenue, Suite 1800
Portland, OR 97204
(503) 243-2081
*Counsel for Plaintiff, Disability Rights Oregon*

Jesse Merrithew OSB #074564
jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., & A.J. MADISON,** Plaintiffs, <br><br> v. <br><br> **SAJEL HATHI,** in her official capacity as head of the Oregon Health Authority, & **SARA WALKER**, in her official capacity as Superintendent of the Oregon State Hospital, Defendants. <br><br> **JAROD BOWMAN** and **JOSHAWN DOUGLAS-SIMPSON**, Plaintiffs, <br><br> v. <br><br> **SARA WALKER**, Interim Superintendent of the Oregon State Hospital, in her official capacity, **SAJEL HATHI**, Director of the Oregon Health Authority, in her official capacity, Defendants. | Case No. 3:02-cv-00339-AN (Lead Case) Case No. 3:21-cv-01637-AN (Member Case) <br><br> PLAINTIFFS' MOTION FOR FURTHER REMEDIAL ORDER <br><br> ORAL ARGUMENT REQUESTED |

MOTION FOR FURTHER REMEDIAL ORDER

Page 1

**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97205
(503) 243-2081

**LR 7-1 Certification**

Plaintiffs and Defendants have met to discuss this Court's orders and the steps necessary for compliance. Defendants take no position on Plaintiffs' requested relief but reserve their rights to object to characterizations of fact or law in Plaintiffs motion.

## I.    Motion

Plaintiffs Metropolitan Public Defense (MPD) and Disability Rights Oregon (DRO) hereby move this Court pursuant to its inherent authority to enforce its own orders and require compliance with its own injunctions or judgements. *See Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992) (federal courts have "wide latitude" and "inherent power" to enforce their "lawful orders through contempt). The federal rules confer on federal courts the authority to issue injunctions. Fed. R. Civ. Pro. 65. Plaintiffs respectfully ask this Court to use its "inherent power to enforce compliance" with its own permanent injunction and enter a further remedial order to force the Defendants into compliance with the injunction. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966).

## II.    Procedural History

Starting in the Fall of 2018, Defendants have been largely out of compliance with this Court's permanent injunction.  *See* ECF 85; ECF 91. This Court made repeated efforts, giving Oregon authorities repeated opportunities to come into compliance, crafting remedial order after remedial order to encourage and facilitate Oregon's compliance with the permanent injunction. *See* ECF 127, ECF 133. The court appointed a neutral expert by stipulation of the parties in 2021 to assist in compliance efforts and to monitor the state's efforts. ECF 238; ECF 238-1. In August 2022, Plaintiffs filed an unopposed motion for an enforcement order incorporating the expert's recommendations. ECF 252. The Court granted that motion in part and then, essentially, in full

MOTION FOR FURTHER REMEDIAL ORDER

Page 2

**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97205
(503) 243-2081

in successive orders. ECF 256; ECF 271. The primary substance of these orders was to restrict the amount of time Defendants could keep patients at the state hospital for competency restoration treatment. The aim was to create greater capacity to admit those prospective patients languishing in jail for court ordered restoration services.

In January 2025, after the delays for detainees stretched to almost a month. Plaintiff Disability Rights Oregon (DRO) filed a motion seeking contempt of court sanctions and remedial orders. Plaintiff Metropolitan Public Defender (MPD) filed a motion seeking further remedial orders. The Court heard evidence from the Oregon defendants in late January and set a two-day hearing for the contempt sanctions and related motions. The parties appeared in March 2025 and presented evidence and argument. Oregon agreed that it was in violation of the permanent injunction but argued that it should not be held in contempt.

After almost seven years of noncompliance, in June 2025, the district court issued an order holding the state in contempt and imposing fines of $500 per detainee per day spent in jail beyond the seven-day limit of the permanent injunction. Despite being held in contempt of court, Defendants remain out of compliance.  The most recent waitlist indicates the average days an individual waited for admission to the state hospital was 16.5 days. Stenson Decl., Ex. K, at 9.



| Aid & Assist Admission List | Count | Avg. Days |
|---|---|---|
| On the Admission List as of the last day of the month | 60 | 9.2 |
| Admitted During the Month | 90 | 16.5 |

MOTION FOR FURTHER REMEDIAL ORDER

Page 3

**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97205
(503) 243-2081

### III.    Court Monitor's Recommendations

The Court Monitor's Eleventh Report further clarified her recommendations for compliance to include continued limitations on admissions to the state hospital as well as time limits for restoration services. ECF 620-1, at 47. With some concerns about prosecutorial charging decisions, Dr. Pinals also recommended, "Admissions could be further restricted such that misdemeanor defendants not be eligible for OSH admission for restoration purposes (consistent with remedies suggested by both plaintiffs)." *Id.* at 48. Dr. Pinals has also informed the parties that she supports limiting the exceptions to restoration timelines. Stenson Decl., Ex. K, at 32. While these exceptions were implemented as part of mediation with amici as rarely used provision, we learned that 135 individuals obtained an exception to the restoration timeline resulting in additional 7059 hospital days in 2025. *See* Stenson Decl. Ex. K, at 19.

### IV.    Argument

**A. When the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable.**

A district court has the inherent power to hold a party in civil contempt in order to enforce compliance with an order of the court or to compensate for losses or damages. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Courts may also consider other broad remedial measures to address noncompliance. *Brown v. Plata*, 563 U.S. 493, 541 (2011) (imposing prison population limit); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 546 (9th. Cir. 1987) (affirming appointment of a Special Master). When the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable. *Stone*, 968 F.2d at 861 (citing *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978)).

//

MOTION FOR FURTHER REMEDIAL ORDER

Page 4

**B.**    **The Longstanding Nature of the Noncompliance Militates in Favor of More Intrusive Enforcement Orders and Contempt Proceedings**

While "state and local authorities have primary responsibility for curing constitutional violations," the federal court may act where "those authorities fail in their affirmative obligations." *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978). A federal court has "broad" "equitable powers" in this duty, particularly in "seeking to bring an ongoing violation to an immediate halt." *Id.* A district court that has been "overseeing a large, public institution for a long period of time" has greater leeway to address noncompliance through contempt. *Stone*, 968 F.2d at 856. "[W]hen the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable." *Id.* at 861. Courts possess "whatever powers are necessary to remedy constitutional violations." *Id.* Courts "must not shrink from their obligation to enforce the constitutional rights of all persons." *Brown v. Plata*, 563 U.S. 493, 511 (2011).

Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights. *Stone*, 968 F.2d at 861, citing *Hutto v. Finney,* 437 U.S. 678, 687 n. 9 (1978); *Milliken v. Bradley (Milliken II),* 433 U.S. 267, 280 81 (1977). This Court's orders may infringe on state laws because "otherwise valid state laws or court orders cannot stand in the way of a federal court's remedial scheme if the action is essential to enforce the scheme." *Stone*, 968 F.2d at 862. Violations that "persist[] for years" merit particular attention and aggressive action by court. *Plata*, 563 U.S. at 499; *id*. at 514. A court that "patiently exhaust[s] other alternatives" may select more intrusive remedies considering "historical failures." *Balla v. Idaho State Bd. of Corr*., 869 F.2d 461, 472 (9th Cir. 1989). In the present context, the Defendants have made some but not substantial progress.  Thus, modifying

MOTION FOR FURTHER REMEDIAL ORDER

Page 5

the remedial order to add additional requirements to ensure compliance is necessary to enforce the constitutional rights of pretrial detainees languishing in jail for court ordered services.

## V.    Requested Relief

Plaintiffs respectfully seek this Court's broad remedial powers to address Defendants' continued lack of compliance by issuing a remedial order that limits who can come to the state hospital for competency restoration services and how long they may stay at the hospital as supported by the Court's Monitor. This Court has employed other means to help Defendants comply with its Order including establishing a Neutral Expert to assist Defendants and imposing hospital restoration timelines. Unfortunately, these efforts have not been successful in sustained compliance and more intrusive measures are now required to compel compliance. The current remedial orders are insufficient to resolve the prolonged, serial violations of the United States Constitution and this Court's injunction. Allowing it to continue is not an option. Thus, Plaintiffs respectfully ask this Court for a further remedial order designed to achieve compliance.

1.    <u>Reduce Pressure on Oregon State Hospital's Front Door</u>.

Plaintiff MPD asked this Court to stop permitting in-patient restoration of misdemeanor defendants in January 2025, noting that it was necessary to achieve compliance in the short term. Dkt. 557, at 5. The Court declined to do so. The Defendants remain out of compliance and the Court Monitor has recommended consideration of either A) eliminating admission all non-person level C felony charges that carry a sentence of ninety (90) days or less or B) eliminate from admission the class A misdemeanors that are all too often seen as an interaction with officers that are not indicative of public safety threats (specifically resisting arrest). Stenson Decl. Ex. K, at 32-33. Relatedly, the Court Monitor goes on to recommend that the state continue to foster crisis services, as they have been, that help eliminate any unnecessary interactions with law

MOTION FOR FURTHER REMEDIAL ORDER

Page 6

**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97205
(503) 243-2081

enforcement to avoid arrests when treatment and supportive services would be indicated as a better route to enhance public safety. *See* Stenson Decl., at ¶¶ 6-10; ¶¶ 11-14; ¶¶ 16-20; ¶¶ 21-24; ¶¶ 25-31; ¶¶ 55-57 (case studies of extensive treatment resources dedicated to misdemeanors); *id* at ¶¶ 33-39. (case study of extensive treatment resources dedicated to nonviolent C felony charges).

2. Eliminate 30-Day Extensions.

The 30-day extensions to this Court's admission limitations were a negotiated solution to a particular problem. However, OHA's data concludes that fully half of those extensions do not meet this Court's requirements. Eliminating these particular extensions would have saved 1462 bed days in 2025. Stenson Decl., Ex. K, at 18. The Court Monitor noted over half of these extension requests are ordered without following agreed-upon terms, and some are ordered more than once. Stenson Decl., Ex. K, at 32-33. These take up relatively few beds but many do not meet the agreed-upon criteria. These extensions are often unnecessary and unjustifiable. *See* Stenson Decl., at ¶¶ 6-10; ¶¶ 11-15; ¶¶ 33-39; ¶¶ 55-57 (case studies of 30-day extensions).

3. Limit "Safety Valve" Extensions to a Single 180-Day Extension.

The 180-day extensions to this Court's admission limitations were also a negotiated solution to a particular problem raised by Amici. It was supposed to be a rarely used exception but over time their use has gone up dramatically. Prosecutors and judges sometimes fail to apply the required standards. Stenson Decl., at ¶¶ 25-32; ¶¶ 49-54 (case studies of 180-day extension discussions). As a result, the use of these extensions is now having a significant impact on compliance. The 180-day extensions are currently allowed to be repeated until the patient hits their state statutory maximum stay. However, as the Court Monitor notes, these extensions have diminishing returns and there are cases where no clinical opinion informs whether the additional

**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97205
(503) 243-2081

time would be likely to improve the individual's mental state. Stenson Decl., Ex. K, at 19 & 32. As a first step, Plaintiffs ask this Court to limit the 80-day limitations to only one extension and limit to exclusively Measure 11 crimes. Further, the Court Monitor notes that this limited extension should only be permitted with a judicial review of the defendant's current symptoms that render them incompetent and should be accompanied prior to a decision to include a recent clinical opinion that the extended time has a substantial likelihood of restoring the defendant. Stenson Decl., Ex. K, at 33.

### VI.     CONCLUSION

Defendants have failed to provide court ordered competency restoration services within seven days in violation of this Court's orders. Plaintiffs request the Court to use its broad authority to modify the Court's order to impose additional injunctive relief.

DATED this 17th day of March, 2026

DISABILITY RIGHTS OREGON

/s *Emily Cooper*
Emily Cooper OSB # 182254
ecooper@droregon.org
Thomas Stenson, OSB # 152894
tstenson@droregon.org
Dave Boyer OSB # 235450
dboyer@droregon.org
511 SW 10th, Suite 200
Portland OR 97205
Telephone: (503) 243 2081
Facsimile: (503) 243 1738

*Counsel for Plaintiff*
*Disability Rights Oregon*

Jesse Merrithew OSB #074564
jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415

MOTION FOR FURTHER REMEDIAL ORDER

Page 8

**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97205
(503) 243-2081

Portland, Oregon 97205
(971) 229-1241
*Counsel for Plaintiff, Metropolitan Public Defender*

**Disability Rights Oregon**
900 SW 5th Avenue, Suite 1800
Portland, OR 97205
(503) 243-2081