IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON[1];<br>METROPOLITAN PUBLIC DEFENDER<br>SERVICES, INC.; and A.J. MADISON,<br><br>Plaintiffs,<br>v.<br><br>SEJAL HATHI, in her official capacity as Director<br>of the Oregon Health Authority; and JAMES<br>DIEGEL, in his official capacity as Interim<br>Superintendent of the Oregon State Hospital,<br><br>Defendants. | Case No.: 3:02-cv-00339-AN (lead)<br>3:21-cv-01637-AN<br>(consolidated)<br><br><br>ORDER |

Currently pending before this Court is plaintiff Disability Rights Oregon's ("DRO") motion to vacate orders permitting fine exemptions. Plaintiffs Metropolitan Public Defender Services, Inc. ("MPD") and A.J. Madison have not stated a position on the motion. Defendants Dr. Sejal Hathi, in her official capacity as Director of the Oregon Health Authority ("OHA"), and James Diegel, in his official capacity as Interim Superintendent of the Oregon State Hospital ("OSH"), oppose the motion. No party has requested oral argument. For the reasons stated herein, DRO's motion is GRANTED.

## BACKGROUND

The factual background of these consolidated cases is well set out in prior opinions and orders, including the Court's June 6 opinion and order (the "contempt order"). *See* Op. & Order of June 6, 2025, ECF 604. The following background focuses only on facts that are particularly pertinent to the subject motion.

In the contempt order, the Court made several relevant rulings. The Court first found that

---

[1] Plaintiff Disability Rights Oregon ("DRO") is named on the docket as "Oregon Advocacy Center" and has been referred to as both DRO and Oregon Advocacy Center since approximately January of 2023. The Court uses "DRO" in this Opinion and Order.

1

defendants are in contempt of the permanent injunction that has been in place in this case since 2002. *Id.* at 11, 14. Based on this finding, the Court ordered the implementation of monetary fines and certain remedial measures. *Id.* at 17. Specifically, the Court "impose[d] monetary sanctions in the amount of $500.00 per class member[2] per day," and directed defendants to submit a proposed calculation of contempt fines on the fifteenth day of each month, until defendants reach substantial compliance with the permanent injunction. *Id.* at 17-18. The Court also changed the role of the then-neutral expert in this case, Dr. Debra A. Pinals, to Court Monitor, and additionally ordered that periodic status conferences take place every ninety days. *Id.* at 19. Defendants appealed the contempt order. Notice of Appeal to the 9th Cir. (6/17/2025), ECF 607.

On June 16, 2025, in compliance with the contempt order, defendants filed their first report regarding the calculation of contempt fines. 1st Fine Calc. Rep., ECF 606. The report indicated that there are occasionally delays in admission to OSH that are caused by circumstances outside defendants' control, such as where OSH offers a bed to a county jail for an individual being held therein, but the jail declines to transport that individual. Order of June 17, 2025, ECF 608. On June 17, the Court ordered defendants to file a supplemental report addressing two specific questions:

1.      When a bed is offered to and declined by a county jail, what happens to the individual who would have been taken to OSH if not for the jail's declin[ing] to transport? In other words, is that individual offered the next available bed, moved to the bottom of the list, or something else?

2.      And, if the same circumstances occur such that an individual remains housed at OSH longer than is deemed necessary by OSH, what is the mechanism to return that individual back to the appropriate county's jail?

*Id.* On June 18, defendants filed the supplemental report and proffered answers to both of the Court's

---

[2] Though this is not a class action, the Court defined the term "*Mink-Bowman* class members" to mean all criminal defendants determined by Oregon courts to be unfit to proceed to trial due to either an inability to aid and assist in their own defense or a court order finding them to be "guilty except for insanity." Op. & Order of June 6, 2025, at 6-7. Since the issuance of the contempt order, defendants have described those subject to inclusion in the fine calculations as "all persons ordered committed to [OSH] pursuant to [Oregon Revised Statutes] § 161.370." Defs. 1st Fine Calc. Rep., ECF 606, at 3; Defs. 2d Fine Calc. Rep., ECF 634, at 2. The Court has recognized defendants' description to be consistent with the language in the contempt order. *See* Op. & Order of August 6, 2025, ECF 645, at 6 n.7. The Court now uses the term "class members" to refer to these individuals.

questions. Defs. Suppl. Rep. Re: Fines, ECF 609, at 2-4. Separately, but also on June 18, defendants filed a motion for stay, seeking a stay of the contempt order pending defendants' appeal to the Ninth Circuit. Defs. Mot. for Stay, ECF 610. DRO opposed the motion for stay. *See* DRO Resp. to Defs. Mot. for Stay, ECF 619.

On June 20, DRO filed a brief regarding the calculation of contempt fines, which the Court construed as an objection to defendants' first contempt fine calculation report. *See* DRO Obj., ECF 618; Order of June 24, 2025, ECF 622. Specifically, DRO objected to defendants excluding from the contempt fine calculations any delays based on jails' declining to transport, arguing that such delays are not ultimately outside defendants' control and that the "assessment of contempt fines should reflect the state's ultimate responsibility" for timely treating incapacitated criminal defendants. DRO Obj. 3-4. DRO also noted that it is inherently problematic to "[a]llow[] OSH to make the subjective decision about whether delays are the fault of OSH or of recalcitrant county sheriffs," particularly where the imposition of contempt fines incentivizes defendants to minimize their own financial responsibility. *Id.* Defendants filed a response in opposition to DRO's objection on June 27, 2025. Defs. Resp. to DRO Obj., ECF 623.

On July 15, defendants filed their second contempt fine calculation report. 2d Fine Calc. Rep., ECF 634. In it, defendants again excluded from the proposed amount any fines for "days where the delay was caused by circumstances outside Defendants' control." *Id.* at 3.

On August 6, the Court denied defendants' motion to stay and sustained DRO's objection to the first contempt fine calculation report. Op. & Order of August 6, 2025, ECF 645. Therein, the Court reasoned, in relevant part:

> The law of this case and the Ninth Circuit makes clear that the onus falls on defendants to comply with the Permanent Injunction. In addressing defendants' motion to stay the Permanent Injunction [in 2002], Judge Panner made clear that the seven-day period must be calculated from the date the court order is issued—not the date that OSH receives a copy of the court order—in part because "defendants' desire for administrative convenience should not trump the needs and rights of the persons requiring hospitalization." Order of May 28, 2002, [ECF 65,] at 3. Likewise, in affirming the Permanent Injunction, the Ninth Circuit conclusively held that "it is OSH, not counties, that has the duty to accept incapacitated defendants once they have been certified as such by a circuit court." Mandate from U.S. Ct. of Appeals[, ECF 76, at] 32. The Ninth Circuit called OSH "solely responsible" for satisfying the Permanent Injunction and noted that "'[l]ack of funds, staff

3

or facilities cannot justify the State's failure to provide [incapacitated criminal defendants] with [the] treatment necessary for rehabilitation.'" *Id.* at 36 (quoting *Ohlinger v. Watson*, 652 F.2d 775, 779 (9th Cir. 1980)).

*Id.* at 12-13. Based on this reasoning, the Court sustained DRO's objection, directed defendants to resubmit the first and second contempt fine calculation reports, and ordered that all future fine calculation reports conform to the rulings in the Court's opinion and order. *Id.* at 14. Defendants promptly resubmitted their first and second contempt fine calculation reports. *See* ECF 646, 647. Defendants also appealed the Court's denial of the motion for stay. Notice of Appeal to 9th Cir. (8/27/2025), ECF 652.

On August 15, defendants submitted their third contempt fine calculation report. 3d Fine Calc. Rep., ECF 651. In this report, in compliance with the Court's opinion and order, defendants included fines related to days "that resulted from delays outside of Defendants' control." *Id.* at 2-3.

On September 4, the Court issued the first judgment regarding contempt fines. 1st Contempt Fine J., ECF 656. Defendants appealed the first judgment. Notice of Appeal to 9th Cir. (9/9/2025), ECF 660.

On September 8, the Court held the first quarterly status conference following its issuance of the contempt order. *See* Mins. of Proceedings of September 8, 2025, ECF 664. On the record, defendants made three requests to the Court regarding the contempt fine process. First, defendants asked that the Court exclude from the calculation of contempt fines days resulting from court clerks' failure to timely send commitment orders to OSH. *Id.*; *see* Tr. of Proceedings of September 8, 2025, ECF 708, at 13:14-23. Second, defendants asked that the Court exclude from the calculation of contempt fines days resulting from the failure to transport persons from jail to OSH, so long as defendants can show they provided timely notice to the county jail, issued a constitutional rights directive to the jail, and informed the Court of the circumstances. Mins. of Proceedings of September 8, 2025; *see* Tr. of Proceedings of September 8, 2025, at 13:24-14:17. Third, defendants asked that the Court permit them to pay the first and any future judgments related to contempt fines with state-issued checks, as opposed to cashier's checks. Mins. of Proceedings of September 8, 2025; *see* Tr. of Proceedings of September 8, 2025, at 14:18-15:3. The Court immediately granted the third request and then provided plaintiffs an opportunity to be heard as to the first two requests. Tr. of Proceedings of September 8, 2025, at 15:4, 15:12-15. MPD inquired as to a hypothetical situation

4

regarding the impact of defendants' proposed exclusion requests on a delayed transfer, at which point the Court reminded that defendants are "always to work with Dr. Pinals as the court monitor." *Id.* at 15:16-16:6. MPD inquired as to how the Court wanted to "administer those types of issues if they arise, whether the court monitor would be authorized to administer." *Id.* at 16:7-10. The Court confirmed that the Court Monitor would be authorized to administer issues related to defendants' proposed exclusion requests. *Id.* at 16:11.

DRO opposed the proposed exclusions. *Id.* at 19:17-19. Regarding the first proposed exclusion, DRO suggested ideas for how defendants might "build a belt-and-suspenders double-checking process" to prevent court clerks from failing to timely send commitment orders to OSH. *Id.* at 17:14-16. DRO did not, however, offer further argument regarding the second proposed exclusion. Upon consideration of the parties' arguments, the Court granted both of defendants' requested exclusions and asked defendants "to continue to work with the court monitor" with regard to future fine calculation reports. *Id.* at 20:13-16.

On September 15, defendants filed their fourth fine calculation report. 4th Fine Calc. Rep., ECF 666. In it, defendants noted proposed exclusions in red and described their process working with the Court Monitor to review fine exclusions. *Id.* at 3 & Ex 2. On October 1, defendants filed a revised fourth fine calculation report, again noting proposed exclusions in red and this time also noting whether the Court Monitor approved each requested exclusion. Rev. 4th Fine Calc. Rep., ECF 672, at 3 and Ex. 2. Also on October 1, defendants filed an unopposed motion to adjust deadlines for submitting proposed fine calculations, asking to adjust the schedule so as to provide plaintiffs and the Court Monitor additional time "to review Defendants' proposed exclusions and supporting documentation before Dr. Pinals makes her decision as to whether to grant any exclusions." Defs. Unopp. Mot. to Adjust Deadlines, ECF 671, at 2-3. The Court granted this motion. Order of October 6, 2025, ECF 673.

On November 3, defendants filed their fifth fine calculation report. 5th Fine Calc. Rep., ECF 678. On December 1, defendants filed their sixth fine calculation report. 6th Fine Calc. Rep., ECF 681. In both reports, defendants again noted proposed exclusions in red and whether the Court Monitor approved each requested exclusion. 5th Fine Calc. Rep. 2-3 & Ex. 2; 6th Fine Calc. Rep. 3 & Ex. 2.

On December 8, the Court held the second quarterly status conference following the contempt order. *See* Mins. of Proceedings of December 8, 2025, ECF 689. On December 9, the Court issued the second judgment regarding contempt fines. Corrected 2d Contempt Fine J., ECF 690. Defendants appealed the second judgment. Notice of Appeal to 9th Cir. (12/29/2025), ECF 694.

On January 2, 2026, defendants filed their seventh fine calculation report. 7th Fine Calc. Rep., ECF 699. Defendants again noted proposed exclusions in red and whether the Court Monitor approved each requested exclusion. *Id.* at 3 & Ex. 2.

On January 8, the Court issued the third judgment regarding contempt fines. 3d Contempt Fine J., ECF 701. Defendants appealed the third judgment. Notice of Appeal to 9th Cir. (1/20/2026), ECF 707.

On January 23, DRO filed the instant motion to vacate orders permitting fine exemptions. DRO Mot. to Vacate, ECF 710. Defendants filed a response in opposition, Defs. Resp., ECF 713, and DRO filed a reply in support, DRO Reply, ECF 714.

On February 3, defendants filed their eighth fine calculation report. 8th Fine Calc. Rep., ECF 712. On March 3, defendants filed their ninth fine calculation report. 9th Fine Calc. Rep., ECF 716.

## DISCUSSION

### A.    Conferral

Before turning to the substance of DRO's motion, the Court addresses the issue of conferral. DRO's motion to vacate asserts that defendants "willfully declined to confer by telephone or in person, after an exchange of emails." DRO Mot. to Vacate 2. Defendants respond that their "counsel engaged in meaningful, substantive conferral with DRO via email." Defs. Resp. 3.

The plain language of Local Rule 7-1(a)(1) provides, in relevant part, that a movant must certify either that (A) "the parties made a good faith effort *through personal or telephone conferences* to resolve the dispute and have been unable to do so," or (B) "[t]he opposing party willfully refused to confer." (Emphasis added.) The direction of Local Rule 7-1(a)(1) is clear, and here, defendants concede they did not confer via personal or telephone conferences. Defendants are reminded of their obligation to comply with this rule to its letter.

6

**B.    Motion to Vacate Orders Permitting Fine Exemptions**

Turning to the substance of the motion, DRO "asks the Court to vacate any verbal orders and the written order allowing" Dr. Pinals, "to grant exemptions to fines for delays caused by sheriffs and court staff." DRO Mot. to Vacate 2. In support of the request, DRO argues that although defendants submitted an unopposed motion asking "this Court to allow them to submit documentation to Dr. Pinals and allow her to deduct fines due in part to delays from the failures of state court staff and county sheriffs," defendants now, on appeal to the Ninth Circuit, complain that this process "assign[s] Dr. Pinals the role of adjudicating whether OSH is entitled to" certain exemptions and thereby "delegate[s] the quasi-judicial function . . . to [Dr. Pinals], a nonjudicial officer." *Id.* at 2-3 (citation and quotation marks omitted). DRO notes that defendants also complain on appeal that the Court "has not established any procedure for challenging [Dr. Pinals'] determination" and call the process an "improper delegation." *Id.* at 3 3 (citation and quotation marks omitted). DRO also argues that the granted "[f]ine exemptions have not fostered sufficient reductions in constitutional violations to justify their continuation." *Id.* at 4. Therefore, DRO asserts, requiring Dr. Pinals "to spend hours reviewing the state's communications with court staff and sheriff's offices is not a good use of her time and energy." *Id.*

In response, defendants concede that the "Court has jurisdiction to amend or modify its order[s] regarding fine exclusions" but argue that it should not do so because (1) DRO's motion "materially misstates the record before th[e] Court and misunderstands the scope of Defendants' appeal from the" Court's contempt order; and (2) "there is simply no present reason to" amend or modify the orders permitting fine exemptions. Defs. Resp. 2. On the first point, defendants assert that DRO misdescribes the unopposed motion defendants filed, which was merely a motion to adjust deadlines and not a request for Dr. Pinals to adjudicate fine exclusion requests. *Id.* at 5 (citing Defs. Unopp. Mot. to Adjust Deadlines). That process, defendants argue, was not proposed (only acquiesced to) by defendants. *Id.* On the second point, defendants reason that the orders permitting fine exemptions "appropriately prevent[] Defendants from being fined for circumstances over which they have no control, because in such circumstances fines can have no coercive effect"; and, "contrary to DRO's assertions and to the extent relevant, since the fine

7

exclusion order[s] issued, there has been a reduction in admission delays caused by jail transport issues," meaning the process is not "a misuse of Dr. Pinals' time." *Id.* at 2.

The Court declines to wade through the parties' many disagreements regarding the appellate record and the nature of defendants' arguments on appeal. The Court need not reach these arguments to find that amendment of its prior orders permitting fine exemptions is permissible and appropriate under the circumstances at hand. The Court therefore exercises its discretion and inherent authority to VACATE its prior orders allowing Dr. Pinals to grant exemptions from fine calculations for delays caused by sheriffs and court staff. Defendants are ordered to provide the Court with a proposed calculation of all fines previously exempted from the first through third judgments issued in this case, located at ECFs 656, 690, and 701. These judgments encompass defendants' first through seventh fine calculation reports, located at ECFs 646, 647, 651, 672, 678, 681, and 699. Upon receipt of this proposed calculation, and barring any objections needing resolution, the Court will enter a supplemental judgment encompassing the calculated amounts previously excluded. Consistent with the law of this case and the Ninth Circuit, *see* Op. & Order of August 6, 2025, at 12, the Court will no longer exempt from the contempt fine calculations delays related to sheriffs and court staff. Defendants are further ordered to re-submit their eighth and ninth proposed fine calculation reports, ECFs 712 and 716, without any delays exempted. The Court will enter a fourth judgment encompassing the amounts set forth in the re-submitted eighth and ninth proposed fine calculation reports.

## CONCLUSION

For the reasons stated herein, plaintiff Disability Rights Oregon's motion to vacate orders permitting fine exemptions, ECF 710, is GRANTED. Accordingly, the Court's prior orders allowing Dr. Pinals to grant exemptions from contempt fine calculations for delays caused by sheriffs and court staff are VACATED. Within fourteen (14) days, defendants are ordered to (1) provide the Court with a proposed calculation of all fines previously exempted from the first through third judgments issued in this case, as outlined in this Order, to be included together in a supplemental judgment; and (2) re-submit their eighth and ninth proposed fine calculation reports without any delays exempted. Moving forward, the Court will

8

no longer exempt from the contempt fine calculations delays caused by sheriffs and court staff.


IT IS SO ORDERED.


DATED this 26th day of March, 2026.

Adrienne Nelson
United States District Judge