DAN RAYFIELD
Attorney General
CARLA A. SCOTT #054725
CRAIG M. JOHNSON #080902
Senior Assistant Attorneys General
JILL CONBERE #193430
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Carla.A.Scott@doj.oregon.gov
        Craig.M.Johnson@doj.oregon.gov
        Jill.Conbere@doj.oregon.gov

Attorneys for Defendants Patrick Allen, Sejal Hathi, Dolores Matteucci, and James Diegel

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON, | Case No.  3:02-cv-00339-AN (Lead Case)<br>Case No.  3:21-cv-01637-AN (Member Case) |
| Plaintiffs, | JUNE 2026 STATUS REPORT |
| v. | |
| SEJAL HATHI, in her official capacity as head of the Oregon Health Authority, and JAMES DIEGEL in his official capacity as Interim Superintendent of the Oregon State Hospital, | |
| Defendants. | |
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON, | Case No.  3:21-cv-01637-AN (Member Case) |
| Plaintiffs, | |
| v. | |
| JAMES DIEGEL, Interim Superintendent of the Oregon State Hospital, in his official capacity, DOLORES MATTEUCCI, in her | |

Page 1 -    JUNE 2026 STATUS REPORT
        CAS/j3b/32142872

individual capacity, SEJAL HATHI, Director
of the Oregon Health Authority, in her official
capacity, and PATRICK ALLEN in his
individual capacity,

        Defendants.

## I.    Introduction

The Oregon Health Authority (OHA) and the Oregon State Hospital (OSH) submit this Status Report in advance of the status conference set for June 9, 2026.  This Status Report provides an update regarding:

- Current compliance status with the seven-day admission requirement for those found unable to aid and assist in their defense (Aid and Assist persons).

- OHA-driven capacity building in the community for those discharging from OSH from 2022 to the present.

- Legislation.

- Forensic evaluations at OSH and in the community.

- OSH leadership update.

- The capacity audit ordered by this Court in its June 6, 2025, Opinion and Order.

- Status of the County Financial Assistance Agreements.

The following representatives of OHA and OSH will attend the status conference and will be prepared to answer questions this Court may have in their respective areas of expertise:

- James Diegel, Interim Superintendent, OSH

- Kristine Kautz, Deputy Director for Administration, OHA

- Christa Jones, Behavioral Health Deputy Director, Service Delivery, OHA

## II.    Compliance Status

As of June 3, 2026, the average number of days an Aid and Assist person has waited in jail for admission to OSH is 10 days (down from 15 days in March 2026).  Since

Page 2 -   JUNE 2026 STATUS REPORT
      CAS/j3b/32142872

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Defendants' March 2026 Status Report, OSH received 99 new orders in March 2026, 83 in April 2026, and 97 in May 2026.  The below chart depicts the discharges, admissions, and new orders received each month from September 2022 to May 2026:

| Month | Discharges | Admissions | New Orders |
|---|---|---|---|
| Sep-22 | 85 | 76 | 84 |
| Oct-22 | 90 | 91 | 95 |
| Nov-22 | 85 | 81 | 89 |
| Dec-22 | 92 | 77 | 74 |
| Jan-23 | 93 | 101 | 107 |
| Feb-23 | 94 | 107 | 78 |
| Mar-23 | 129 | 128 | 109 |
| Apr-23 | 108 | 107 | 103 |
| May-23 | 88 | 87 | 94 |
| Jun-23 | 101 | 97 | 86 |
| Jul-23 | 103 | 104 | 73 |
| Aug-23 | 112 | 100 | 109 |
| Sep-23 | 102 | 95 | 93 |
| Oct-23 | 97 | 93 | 97 |
| Nov-23 | 103 | 108 | 98 |
| Dec-23 | 64 | 83 | 92 |
| Jan-24 | 96 | 82 | 83 |
| Feb-24 | 97 | 81 | 73 |
| Mar-24 | 79 | 85 | 87 |
| Apr-24 | 84 | 96 | 99 |
| May-24 | 93 | 108 | 127 |

Page 3 -    JUNE 2026 STATUS REPORT
CAS/j3b/32142872

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

| Month | Discharges | Admissions | New Orders |
|-------|-----------|-----------|-----------|
| Jun-24 | 79 | 74 | 90 |
| Jul-24 | 102 | 103 | 128 |
| Aug-24 | 95 | 95 | 99 |
| Sep-24 | 86 | 84 | 92 |
| Oct-24 | 109 | 107 | 102 |
| Nov-24 | 80 | 77 | 89 |
| Dec-24 | 99 | 111 | 105 |
| Jan-25 | 93 | 93 | 89 |
| Feb-25 | 90 | 97 | 79 |
| Mar-25 | 88 | 85 | 96 |
| Apr-25 | 104 | 128 | 101 |
| May-25 | 99 | 99 | 82 |
| Jun-25 | 118 | 109 | 105 |
| Jul-25 | 99 | 102 | 111 |
| Aug-25 | 111 | 107 | 111 |
| Sep-25 | 95 | 99 | 124 |
| Oct-25 | 102 | 108 | 100 |
| Nov-25 | 88 | 69 | 89 |
| Dec-25 | 100 | 108 | 101 |
| Jan-26 | 101 | 109 | 86 |
| Feb-26 | 94 | 90 | 106 |
| Mar-26 | 106 | 106 | 99 |
| Apr-26 | 102 | 100 | 83 |
| May-26 | 105 | 99 | 97 |

Page 4 -     JUNE 2026 STATUS REPORT
CAS/j3b/32142872

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Defendants have been working diligently to complete recommendations given by Dr. Pinals.  At the end of April, defense counsel reviewed the complete project tracker with Dr. Pinals to discuss the current status and purpose of each recommendation and make adjustments as needed.  Defendants are continuing to work with Dr. Pinals to establish appropriate sequencing of recommendations, and modification where appropriate, to ensure that the work increases Defendants' ability to comply with the seven-day admission requirement.  Defendants' progress is reflected in the monthly status report submitted to the parties and this Court on June 3, 2026.

### III.    OHA-driven Capacity Building in the Community from 2022 to the Present

Because OSH is at capacity, the primary and most direct way for Defendants to return to compliance is to build enough capacity in the community to place patients who are ready to discharge from OSH or to divert them from being admitted to OSH in the first instance.

Exhibit 1 to the Declaration of Christa Jones (Jones Decl.) filed contemporaneously with this Status Report describes the increase by calendar quarter from 2022 to the present in licensed and non-licensed beds in the community for patients to discharge to when they are ready to leave OSH or to divert them from entering OSH in the first instance.[1]  Jones Decl. ¶ 3.  Defendants have worked to secure legislative appropriations for several years and have been using the appropriated funds to build capacity throughout the behavioral health system, including in residential treatment homes, residential treatment facilities, secure residential facilities, and supportive housing.  *Id.* ¶ 5. Occupancy dates for those projects began in 2022 and are projected to continue through 2028.  *Id.* ¶ 6.  From the fourth quarter of 2022 to the present, OHA has established approximately 891 new beds (26 new beds were added in the first quarter of 2026, and 59 more beds will be added by the end of the second quarter) to

---

[1] Exhibit 1 does not include additional capacity that has come online during this time period without financial investment by OHA.

Page 5 -    JUNE 2026 STATUS REPORT
CAS/j3b/32142872

serve the populations discharging from OSH or to divert persons from entering OSH in the first instance. *Id.*

In addition, OHA continues to work creatively to find placements in response to the increasing number of Aid and Assist commitment orders to OSH and the resulting heightened demand for community placements for individuals discharging from OSH.  For example, OHA's Behavioral Health Division (BHD) collaborated with Northwest Regional Re-Entry Center (NWRRC) leadership to establish a temporary pathway for expanded bed access.  The current contract with Behavioral Health provides funding for 35 beds. To ensure full utilization, NWRRC has historically accepted up to 38 referrals, acknowledging that not all referrals result in placement but consistently maintaining occupancy of at least 35 beds per week.  Earlier this year, NWRRC agreed to temporarily expand referral capacity to 41, assuming the additional staffing burden while continuing to prioritize safety. At that time, it was recognized that NWRRC may return to the 38-referral cap at its discretion, and NWRRC has recently done so due to safety concerns.  However, OHA continues to work to keep all 35 beds at NWRRC filled.

Just before Defendants' March Status Report, NWRRC experienced a decrease in bed utilization for aid and assist persons. That decrease was due to several expedient discharges from NWRRC to lower levels of care and an increase in the acuity of individuals on the OSH ready to place (RTP) list, making them not suitable for admission to NWRCC.  The Extended Care Management Unit, which currently partners with eight counties to address placement barriers for individuals on the RTP list, increased communication with those counties to identify and address obstacles that OHA may be able to address in order to support referrals to NWRRC.  Those efforts have been successful, and NWRRC's weekly capacity report has shown 33 or more beds filled since April 22, 2026, with 36 beds filled as of June 3, 2026.

Page 6 -    JUNE 2026 STATUS REPORT
CAS/j3b/32142872

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## IV.    Implementation of HB 2005

Among other things, HB 2005, 2025 Leg., Reg. Session (Or. 2025)[2] imposes statutory time limits on inpatient and community restoration consistent with Dr. Pinals' recommendations.  But this bill allows for various pauses and exceptions to these time frames which are not consistent with Dr. Pinals' recommendations and which Defendants advocated against.  HB 2005 also makes potentially problematic changes to the "ready to place" process for Aid and Assist patients who no longer require hospital level of care, and thus no longer need to remain at OSH.  Some provisions in HB 2005 became effective on September 29, 2025, and others became effective on January 1, 2026.

While there are understandable concerns about HB 2005's potential to negatively impact *Mink* compliance, OHA does not yet have sufficient data to measure whether any provisions in HB 2005 are in fact having such an impact.  As a result, OHA did not have a realistic basis to seek any changes to HB 2005 in the recently completed short legislative session that began on February 2, 2026, and ended on March 8, 2026.  That said, as described in the Governor's signing letter submitted with Defendants' September Status Report (ECF No. 657-2), the Governor's Office is actively managing implementation of this new law and is working with OHA to best ensure the new provisions are not misused.  And, as data becomes available, OHA and the Governor's Office will analyze the effects, if any, that HB 2005 has on *Mink* compliance and take appropriate steps to address any negative effects in the next long legislative session scheduled for 2027.

On February 5, 2026, the Governor's Office provided Dr. Pinals with their plan over the next six months to guide development of new legislation to follow HB 2005.  At a minimum, the goals for the new legislation will be to: (1) establish permanent statutory timelines for OSH commitment and community restoration; and (2) make any statutory

---

[2]https://olis.oregonlegislature.gov/liz/2025R1/Downloads/MeasureDocument/HB2005/Enrolled

Page 7 -    JUNE 2026 STATUS REPORT
        CAS/j3b/32142872

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

changes necessary to ensure compliance with the seven-day admission requirement for those found unable to aid and assist in their defense.

## V.     Forensic Evaluations Update (at OSH and in the Community)

There are currently 266 defendants in community restoration waiting for court-ordered evaluations, 129 of whom are waiting for their first interview to be scheduled. OSH's Forensic Evaluation Services (FES) has experienced a significant increase in the demand for evaluations due to the new 90-day evaluation requirements included in HB 2005 (since the enactment of HB 2005, FES has received 184 orders for 90-day evaluations) but will continue to make every effort to complete all evaluations within the statutory time, as has been done up to this point.  The current waitlist of 129 is due in part to receiving court orders for 90-day evaluations that do not meet the statutory guidelines for the 90-day evaluation timeframe.

To meet new statutory requirements for conducting forensic evaluations for those in community restoration,[3] and consistent with Dr. Pinals' recommendations, OHA is creating a centralized Community Restoration Evaluation Unit (CREU) through a contracting model to be managed and overseen by OHA.  OHA estimates that CREU's budget for 2025-27 will be $2.4M, which will come from general fund dollars for the remainder of the biennium. OHA's BHD has been working with OSH FES leadership to develop CREU, including collaboration on the program manual, contracting statements of work, program operations development, and position descriptions.

With eight newly created OHA positions, CREU will oversee and manage court-ordered competency evaluations for individuals on community restoration orders by using a

---

[3] HB 2005 imposes statutory time frames for conducting forensic evaluations for those in community restoration; before this bill, there were no statutory timeframes for evaluating those in community restoration.  Under the bill, all defendants in community restoration must be evaluated for fitness "at least every 180 days."  HB 2005 § 45(5)(c).  Additionally, defendants for whom the most serious offense charged is a violation or misdemeanor other than a person Class A misdemeanor must receive an evaluation "90 days after the order to engage in community restoration services is entered."  HB 2005 § 45(5)(d)

Page 8 -   JUNE 2026 STATUS REPORT
        CAS/j3b/32142872

network of contracted evaluators to complete these evaluations statewide. OHA estimates that it will complete hiring of CREU staff and execute the necessary contracts with evaluators by the end of 2026 or early in 2027.  OHA intends to begin onboarding contracted evaluators in the fall of 2026 and use OSH FES as a training setting for them to create a bridge for the CREU evaluators to begin alleviating the strain of OSH FES while CREU is finalized.  OHA further estimates that CREU will begin scheduling its own community evaluations no later than March 2027.

Below is a visual for how CREU will be organized:



While OHA works to operationalize CREU, OSH Forensic Evaluation Services (FES) will continue to perform court-ordered evaluations for the aid and assist population both in OSH and in the community.  To help alleviate some of the administrative burden borne by the FES director and associate director, a one year-job rotation for an administrative assistant has been created and filled.  OHA and OSH are also exploring other options to support OSH FES and is keeping Dr. Pinals informed regarding those options.  Additionally, FES is currently in the process of recruiting for open positions.

Page 9 -    JUNE 2026 STATUS REPORT
CAS/j3b/32142872

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## VI.    OSH Leadership Update

With interim OSH Superintendent Jim Diegel's term set to end this July, the recruitment process to secure a permanent Superintendent is nearly complete.  The most recent recruitment has yielded a strong field of competitive candidates with varied strengths and backgrounds, and a decision will be made soon regarding final selection.  Upon the start of a new permanent Superintendent, interim Superintendent Jim Diegel will continue in an advisory capacity for an approximately 30-day period to support a smooth transition.

## VII.    Capacity Audit

Public Consulting Group (PCG) is completing its draft report.  Defendants expect the final version of PCG's report to be completed by July 31, 2026.

## VIII.    Status of the CFAAs

The County Financial Assistance Agreements (CFAA) is a grant agreement through which, OHA provides financial assistance for operation of a Community Mental Health Program (CMHP) to provide and coordinate, among other things, services to both persons discharging from the Oregon State Hospital (OSH) and to persons at risk of being committed to OSH or other facilities.  OHA has executed all the CFAAs, which will be in effect through June 30, 2027.

## IX.    Improving GEI Discharge Efficiencies

The conditional release process involves OSH, Community Mental Health Providers (CMHPs), and the Psychiatric Security Review Board (PSRB).  To increase clarity about the steps in the conditional release process and the party responsible for each step, Defendants developed a process flow map in collaboration with the PSRB and in conversation with Dr. Pinals.  In addition, Defendants reviewed each step in that process and shortened the time given for each step to reduce the total target time for an individual to complete the conditional release process in 121 days, replacing the prior expectation of 171 days.

CAS/j3b/32142872

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Because moving an individual through the conditional release process requires work from multiple agencies and providers, Defendants have also worked to improve communication and processes among those groups and support improvements by all participants.  For example, OHA promulgated rules and updated the CMHP contracts to reduce the time allowed for evaluations for placements from 45 days to 30 days.  The PSRB has also evaluated their administrative practices and eliminated those determined to be unnecessary, as well as creating a streamlined process for administrative approval of a placement if an individual has previously approved at a full hearing for a substantially similar program with a longer wait time.  Additionally, to ensure that there is continual monitoring of the status of individuals in the conditional release process, Defendants meet with the PSRB twice monthly to review each individual case, discuss barriers to placement, and identify potential solutions.

Defendants are continuing to review all aspects of the conditional release process to find areas of friction, such as the current rule requiring prioritization of patients in the aid and assist population for placement, and opportunities for increased capacity, such as arranging for a bed at Northwest Regional Re-entry Center for individuals in the GEI population who require additional stabilization to prevent revocation to OSH.  Defendants will continue these efforts in collaboration with the PSRB, CMHPs, and other partners, as well as in conversation with Dr. Pinals.

Defendants met with Dr. Pinals twice since their last Status Report to review each individual stage of the conditional release process and the time an individual spends at each stage of the process, as well as the efforts OHA and OSH are undertaking to continue to improve efficiency.  Comparing the period of March 2024-March 2025 to April 2025-March 2026, Defendants have lowered the average days an individual spends in the GEI discharge process from 130.1 days to 110.2 days, a 15.3% improvement. Defendants and Dr. Pinals are currently in conversation regarding the appropriateness of the 20% improvement metric

Page 11 -  JUNE 2026 STATUS REPORT
CAS/j3b/32142872

recommended in Dr. Pinals' 11th Neutral Expert Report and the effect of outliers created by individuals with very specific placement needs within the relatively small number of GEI patients.

DATED June  5 , 2026.

Respectfully submitted,

DAN RAYFIELD
Attorney General


    s/ Jill Conbere
CARLA A. SCOTT #054725
CRAIG M. JOHNSON #080902
Senior Assistant Attorneys General
JILL CONBERE # 193430
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Carla.A.Scott@doj.oregon.gov
Craig.M.Johnson@doj.oregon.gov
Jill.Conbere@doj.oregon.gov
Of Attorneys for Defendants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000