DAN RAYFIELD
Attorney General
CARLA A. SCOTT #054725
SHEILA H. POTTER #993485
CRAIG M. JOHNSON #080902
Senior Assistant Attorneys General
JILL CONBERE #193430
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Carla.A.Scott@doj.oregon.gov
        Sheila.Potter@doj.oregon.gov
        Craig.M.Johnson@doj.oregon.gov
        Jill.Conbere@doj.oregon.gov

Attorneys for Defendants Patrick Allen, Sajel Hathi, Dolores Matteucci, and Sara Walker

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, METROPOLITAN PUBLIC DEFENDER SERVICES, INC., and A.J. MADISON,<br><br>Plaintiffs,<br><br>v.<br><br>SEJAL HATHI, in her official capacity as head of the Oregon Health Authority, and SARA WALKER[1] in her official capacity as Interim Superintendent of the Oregon State Hospital,<br><br>Defendants. | Case No. 3:02-cv-00339-AN (Lead Case)<br>Case No. 3:21-cv-01637-AN (Member Case)<br>Case No. 6:22-CV-01460-AN (Member Case)<br><br>MOTION FOR STAY OF<br>JUNE 6, 2025, ORDER |
| JAROD BOWMAN, JOSHAWN DOUGLAS-SIMPSON,<br><br>Plaintiffs,<br><br>v. | Case No. 3:21-cv-01637-AN (Member Case) |

---

[1] Sara Walker is no longer the Interim Superintendent of the Oregon State Hospital. Defendants will file a motion to update the caption in these cases.

Page 1 -   MOTION FOR STAY OF JUNE 6, 2025, ORDER
           CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

SARA WALKER, Interim Superintendent of the Oregon State Hospital, in her official capacity, DOLORES MATTEUCCI, in her individual capacity, SEJAL HATHI, Director of the Oregon Health Authority, in her official capacity, and PATRICK ALLEN in his individual capacity,

        Defendants.

LEGACY EMANUEL HOSPITAL & HEALTH CENTER d/b/a UNITY CENTER FOR BEHAVIORAL HEALTH; LEGACY HEALTH SYSTEM; PEACEHEALTH; and PROVIDENCE HEALTH & SERVICES OREGON,

        Plaintiffs,

v.

SEJAL HATHI, in her official capacity as Director of Oregon Health Authority,

        Defendant.

Case No. 6:22-CV-01460-AN (Member Case)

## LR 7-1 CONFERRAL STATEMENT

Counsel for the parties made a good faith effort through a telephone conference to resolve the subject of this motion. Plaintiff Metropolitan Public Defender takes no position on this motion to the extent it seeks to stay the finding of contempt and imposition of fines but opposes this motion to the extent it seeks to stay the remedial measures. Plaintiff Disability Rights Oregon opposes this motion.

## MOTION

Pursuant to FRCP 8, Defendants respectfully ask the Court to stay its Order entered on June 6, 2025 (the Order) pending appeal.

Page 2 -   MOTION FOR STAY OF JUNE 6, 2025, ORDER
           CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## I. INTRODUCTION

OHA and OSH meet the four applicable factors to warrant a stay pending appeal of the Order finding them in contempt of the permanent injunction in *Mink* (the *Mink* Injunction), imposing fines, and ordering remedial injunctive relief.

OHA and OSH have substantial basis for appeal on at least two grounds: (1) the Order includes legal error because in rejecting their reasonable steps defense, it relied solely on information provided to the Court outside of judicial proceedings two months after the contempt hearing ended which are not in the official court record; and (2) several of remedial relief terms do not meet the requirements for injunctive relief because they do not provide OHA and OSH with enough specificity to know how to comply. Further, OHA and OSH are likely to suffer irreparable harm if required to pay fines, because money will necessarily need to be taken immediately away from other crucial efforts OHA and OSH are undertaking to maintain behavioral health services and ensure OSH adequately serves its patients. Because OHA and OSH are very close to compliance with the *Mink* Injunction (average wait time as of June 18 is 7.6 days), a stay will not substantially injure other parties; the public interest favors a stay for the same reasons.

## II. LEGAL STANDARD

"The power to grant a stay pending review [is] part of a court's 'traditional equipment for the administration of justice.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009). The purpose of a stay pending appeal is to preserve the status quo so that the appellate court may take the necessary time to make a reasoned decision. *Id*. The four factors relevant to issuance of a stay pending appeal are: "(1) whether the [moving party] has made a strong showing that [it] is likely to succeed on the merits; (2) whether the [moving party] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted).

Page 3 -    MOTION FOR STAY OF JUNE 6, 2025, ORDER
           CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"The likelihood of success and irreparable injury 'are the most critical' factors." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (quoting *Nken*, 556 U.S. at 433-34). "These two factors fall on 'a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Id.* (quoting *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008)). "On one end of the continuum, the proponent must show a 'strong likelihood of success on the merits' and at least 'the possibility of irreparable injury to the [proponent] if preliminary relief is not granted.'" *Id.* (quoting *Golden Gate Restaurant Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1116–17 (9th Cir. 2008)). "At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Id.* (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983)).

### III.    ARGUMENT

#### A.    Defendants have a substantial case for relief on the merits on appeal.

The moving party is not required to show that "success is more likely than not[,]" but rather only that it "has a substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-968 (9th Cir. 2011). As explained below, Defendants have a substantial case to reverse the Order for legal error.

##### 1.    The Order relied on facts not in the record and provided after the contempt hearing outside of any court proceedings, which deprived Defendants of an opportunity to litigate their reasonable steps defense.

Although significant evidence was put forward in Defendants' favor during the contempt hearing regarding Defendants "all reasonable steps" defense, the Court's Findings of Fact used to reject that defense rely exclusively to the Eleventh Report submitted by

Page 4 -    MOTION FOR STAY OF JUNE 6, 2025, ORDER
           CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Dr. Debra Pinals to the Court by e-mail nearly two months after that hearing.[2] The Eleventh Report was not filed in the court register for this case. The Court's Findings of Fact, made in reliance on that report, included things such as the purported effect of personnel changes at OSH and some delays or less than perfect performance on some of Dr. Pinals' recommendations, Defendants were not given an opportunity to be heard or controvert any of those facts or to challenge their significance in relation to compliance. Indeed, had Defendants been given an opportunity to address those facts on the record before this Court, they would have been able to prove that those facts did not have any causal effect on meeting the seven-day admissions timeframe.

By relying solely on the post-hearing report for its Findings of Fact used to reject Defendants' reasonable steps defense without giving Defendants an opportunity to be heard, the Court committed reversible error. *See, e.g., Int'l Union, United Mine Workers of Am v. Bagwell*, 512 U.S. 821, 827 (1994) (Civil contempt sanctions may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard.).

### 2. The injunctive relief ordered in paragraphs 4. a-d lack the requisite specificity for injunctive relief.

Each of the remedies ordered in paragraphs 4. a-d require defendants to use "all reasonable steps" or "all reasonable efforts" toward a goal. These terms do not provide the requisite specificity for injunctive relief. None of the remedies in paragraphs 4. a-d are sufficiently specific as to be enforceable injunctive relief. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) (concluding that an order including requirements like "a 'systematic' program for screening and evaluation, participation of 'sufficient' numbers of mental health professionals, and implementation of a 'basic' program for identifying, treating, and supervising suicidal prisoners," was not sufficiently specific to hold

---

[2] The only Findings of Fact that do not rely on the Eleventh Report are the fact of the original *Mink* Injunction and Defendants' concession that they were not presently in compliance with that injunction as of the contempt hearing.

Page 5 -    MOTION FOR STAY OF JUNE 6, 2025, ORDER
            CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

a state in contempt); *see also Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 US 64, 74 (1967) (concluding that an order to "abide by the Arbitrator's Award" was not sufficiently clear and definite for contempt).

      Here, each of the ordered remedies in paragraph 4. a-d are insufficiently specific to give Defendants appropriate notice for what is required of them to be in compliance with the Order. First, in paragraph 4. a, the Court ordered Defendants to "use all reasonable steps to impose limitations on community restoration consistent with [neutral expert] Dr. Pinals' recommendations." ECF No. 218, p. 19. However, as Defendants briefed in their response to the contempt motion, Defendants do not have a direct way to cut off funding to any individual defendant in community restoration. Defendants do not have the power or ability to unilaterally impose community restoration limits either through cutting off funding or any other mechanism. Proposed legislation that would impose time limits is currently before the legislature and being supported by defendants. But beyond those efforts, nothing in the Court's order makes clear what actions would be sufficient for compliance with this portion of the Order.

      Second, in paragraph 4. b, the Court orders Defendants to "use all reasonable efforts to facilitate and expedite discharges of parties no longer needing hospital level of care, including working with the local Community Mental Health Programs and the committing court to expeditiously effect discharges." ECF No. 218, p. 20. This portion of the Order does not specify what it would mean for Defendants to "work with" the local community mental health programs or the committing court, nor does it make any mention of what, after the briefing and testimony presented by Defendants in response to the contempt motion, reasonable steps the Court believes Defendants have not taken. Defendants have presented evidence of working with community providers and courts, such as through the ECMU

Page 6 -   MOTION FOR STAY OF JUNE 6, 2025, ORDER
CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

project, and Defendants do not have the authority to discharge patients over contrary state-court orders. This portion of the Order, accordingly, also fails to give appropriate notice of what defendants must do to prove compliance.

Third, in paragraph 4. c, the Court orders Defendants to "use all reasonable efforts to reduce delays at every step of the GEI discharge review and the 'conditional release ready' discharge processes." ECF No. 218, p. 20. As with the other remedial relief discussed above, this portion of the Order does not require Defendants to take any specific actions, nor does it explain what steps defendants must take, in addition to the work in this area they already provided evidence of at the contempt hearing, to comply with this order. Additionally, the GEI discharge process is not exclusively within Defendants' control: community mental health providers and the PSRB both control multiple steps of the process, and this order makes no differentiation between the steps of the process that Defendants control and those it does not.

Finally, in paragraph 4. d, the Court orders defendants to "use all reasonable efforts to eliminate the backlog of forensic evaluations within a reasonable time to be determined by Dr. Pinals and to ensure that there are sufficient long-term evaluator positions to maintain an ability to complete all ordered forensic evaluations in a timely manner." ECF No. 218, p. 20. The Order does not specify what it means by "within a reasonable time" or "in a timely manner" and thus does not provide Defendants with enough specificity to know how to comply. *Compare Coleman v. Newsom*, 131 F.4th 948 (2025) (ordering concrete remedies, such as reducing employment vacancy rate to "25 percent"). As Defendants explained at the contempt hearing, OSH FES had a solid plan to reduce the backlog of ordered forensic evaluations in the community and that plan has now come to fruition. Defendants have now hired and onboarded three additional full-time forensic evaluators, and Defendants predicted they would have the waitlist for community evaluations managed by June 2025, which has turned out to be accurate. *See* Declaration of David Baden (Baden Decl.) ¶ 8.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

> **B.    There is a strong probability that Defendants and other parties will suffer irreparable harm absent a stay.**

The party seeking a stay is required to show that "there is a *probability* of irreparable injury if the stay is not granted." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012). "[T]he second factor asks [courts] to 'anticipate what would happen as a practical matter following the denial of a stay.' In analyzing whether there is a probability of irreparable injury, [courts] also focus on the individualized nature of irreparable harm and not whether it is 'categorically irreparable.'" *Id.* (quoting *Leiva-Perez*, 640 F.3d at 968-969). The moving party must show that "irreparable injury is likely to occur during the period before the appeal is decided." *Index Newspapers LLC v. United States Marshals Service*, 977 F.3d 817, 824 (9th Cir. 2020) (internal citations omitted).

Both OHA and OSH are required to operate within established budgets and all funds in their budgets for the relevant biennium (2025-2027) are allotted to crucial programs and staffing. Baden Decl. ¶ 3; Declaration of Ebony Clarke (Clarke Decl.) ¶ 3. OHA and OSH anticipate splitting the cost of the fines between their respective budgets. There are no discretionary funds available to pay fines and OHA anticipates a loss of $4,556,029.28 in federal funds due to cuts imposed by the federal government. Clarke Decl. ¶ 3. If a stay of the Order imposing fines is not granted, irreparable harm will result. For example, just the fines for the period of June 7 through June 15 will amount to at least $38,000, which if continued at that rate for a year, would amount to 17-20 Mental Health Therapy Technicians FTE positions at OSH. Baden Decl. ¶ 5.

After performing an analysis of where potential fine money would come from to minimize negative impacts, the following reductions in OHA's and OSH's budgets are likely to occur:

- OHA may be unable to pay COLA increases to the behavioral health workforce in the community necessary to keep pace with increased workforce needs.

- OHA may be unable to pay COLA increases to the entire behavioral health workforce in the community necessary to maintain the pace of increased workforce demands.

Page 8 -    MOTION FOR STAY OF JUNE 6, 2025, ORDER
           CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

- OHA would also likely become unable to meet unplanned or unexpected behavioral health needs, leaving it unable to serve Oregonians when emergency situations arise.

- Reductions in OSH's training budget.

- OSH would likely not be able to fill mental health treatment technician and custodian positions at OSH, which would result in additional duties assigned to existing, already overworked staff, fewer patient/staff interactions, and potentially not be able to meet custodial service levels expected in CMS regulations.

- Reductions in OSH management staff with layoffs or partial reductions in FTE positions.

- Elimination of six administrator positions that oversee secure residential treatment facilities on OSH campuses.

- Removal of an IT position assigned to implement an upgrade to the hospital's Electronic Health Record System.

- Elimination of two Nurse Practitioner positions in the Psychiatry Department at OSH, which will put additional strain on existing staff and likely impact patient care.

- Elimination of the Person Directed Transition Team contractors who serve a vital role in finding placements for patients who are ready to discharge from OSH, which will place additional strain on OSH's Social Work Department to coordinate community placements.

These are real impacts that will affect an already strained system, likely causing irreparable harm to the people OHA and OSH serve.

**C.  A stay will not substantially injure other parties, and the public interest would be served by a stay.**

The last two factors require the court "to weigh the public interest against the harm to the opposing party." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012) (internal citations omitted). "[A]nalysis of the public interest in a stay is in part subsumed in [the] analysis of the balance of hardship to the parties." *Golden Gate Restaurant Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008) (noting that third factor analysis "is necessarily narrower than a public interest analysis" because it involves everyone impacted by the challenged government action, not just the parties, but also the "friends and family" of everyone impacted, and the general public). Here, the public interest weighs heavily in favor of granting a stay, and Plaintiffs will not be harmed.

Page 9 -    MOTION FOR STAY OF JUNE 6, 2025, ORDER
         CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

First, a stay will not affect or slow down the system-wide efforts OHA and OSH are engaging in to return to compliance. Due to ongoing efforts to meet Dr. Pinals' expansive recommendations, which will continue despite a stay, and long-planned capacity-building in the community, which is now regularly bringing new community placements online, the average wait time for admission to OSH following issuance of a .370 order is OSH is currently 7.6 days, with 23 persons on the admissions waitlist. *See* Baden Decl., ¶ 7. The below chart reflects the ongoing capacity building that is now occurring in the community:

| Organization & Facility Name* | Facility Type | Population Addressed | Capacity (Beds) | Anticipated Occupancy Date** |
|---|---|---|---|---|
| Ohana Ventures New Wave – Centurion RTH | RTH | Civil/PSRB/AA | 5 | 4/01/25 |
| New Narrative – Gresham RTF | RTF | PSRB | 11 | 5/01/25 |
| Coos County – Azalea House AFH | AFH | Serious and Persistent Mental Illness and Activities of Daily Living | 5 | 5/15/25 |
| Lane County - Bracole AFH | AFH | Serious and Persistent Mental Illness | 5 | 06/01/25 |
| Lifeworks - Kendall House | RTH | AA | 5 | 08/31/2025 |
| CGCH II, Inc – 300 RTF | RTF | Civil/AA | 10 | 07/30/25 |
| Live.Grow.Share - Lotus RTF | RTF | Civil/PSRB | 16 | 07/31/25 |
| Cascadia – Treeline RTF | RTF | AA | 10 | 08/01/25 |
| KBBH - RTF & Crisis Center | RTF | Serious and Persistent Mental Illness | 16 | 12/01/25 |
| Cascadia - Buena Vista RTF | RTF | PSRB | 6 | 06/30/2025 |
| CGCH II, Inc – 301 RTF | RTF | Civil/AA | 10 | 12/30/25 |
| **Total** | | | **99** | **By End of 2025** |

Clarke Decl. ¶ 5.

Page 10 -   MOTION FOR STAY OF JUNE 6, 2025, ORDER
         CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

A stay will also not impede progress that OSH Forensic Evaluation Services (FES) has made and will continue to make in completing ordered evaluations of aid and assist defendants in the community:

- FES has hired and onboarded three new evaluators.

- As of 1/22/25, 267 defendants in community restoration were waiting for FES to complete court-ordered evaluations.

- As of 4/14/25, 150 defendants in community restoration were waiting for FES to complete court-ordered evaluations.

- As of 5/29/25, 63 defendants in community restoration were waiting for FES to complete court-ordered evaluations.

- As of 6/18/25, 90 defendants in community restoration were waiting for FES to complete court-ordered evaluations. The number grew because FES received a record number of orders (49) in May and another 28 in June to evaluate aid and assist defendants in the community.

- FES projects that it will be able to complete all currently ordered evaluations within four months.

In addition, if the Order is stayed, OHA and OSH will nevertheless implement the parts of the Order to which they do not object, including (1) hiring an independent auditor, under Dr. Pinals' direction, to study capacity in the community for behavioral health services and identify what levels of care may be lacking; (2) abiding by the extension of the operative remedial order at ECF No. 416; and (3) the recommendations in Dr. Pinals' Eleventh Report noted in the Order, to the extent that they are not subsumed in paragraph 4. a-d of the Order or to the extent Dr. Pinals has or will further modify them. OHA and OSH also reasonably expect that the legislature will grant their and the Governor's funding requests, which will enable OHA to build even more capacity and significantly increase services to the aid and assist population in the community.

By contrast, the public and non-parties will suffer significant harm should a stay be denied. *See Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021) (explaining that the public interest includes "the consequences of granting or denying the injunction to non-parties").

Page 11 -   MOTION FOR STAY OF JUNE 6, 2025, ORDER
            CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

As outlined above, the fines will force Defendants to make real cuts to staffing at OSH and render OHA unable to keep pace with workforce pay demands and meet emergency needs, further straining an already stressed system.

In short, a stay of the Order will not impact efforts to return to compliance with the *Mink* Injunction, but denying it likely will impact crucial programs and staffing levels and also risks impeding further progress towards compliance.

## IV.   CONCLUSION

For the reasons set forth above, OHA and OSH respectfully request a stay of the Order pending appeal.

DATED June 18, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

*s/ Carla A. Scott*
CARLA A. SCOTT #054725
CRAIG M. JOHNSON #080902
SHEILA H. POTTER #993485
Senior Assistant Attorneys General
JILL CONBERE # 193430
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Carla.A.Scott@doj.oregon.gov
Sheila.Potter@doj.oregon.gov
Craig.M.Johnson@doj.oregon.gov
Jill.Conbere@doj.oregon.gov
Of Attorneys for Defendants

Page 12 -   MOTION FOR STAY OF JUNE 6, 2025, ORDER
         CAS/j3b/993398935

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000